UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X
LAMAR WHITEHEAD

                                            Petitioner,                    **PETITION FOR A WRIT
                                                                           OF HABEAS CORPUS**

        - against -


WILLIAM T. HAGGETT,
SUPERINTENDENT, MT. MCGREGOR
CORRECTIONAL FACILITY
                                            Respondent.
--------------------------------------------------------------------------X

**TO THE HONORABLE UNITED STATES JUDGE:**

        Petitioner, Lamar Whitehead, is currently confined at the Mt. McGregor Correctional Facility in Wilton, New York. Through undersigned counsel and pursuant to the Constitution of the United States and 28 U.S.C. § 2254, Mr. Whitehead petitions this Court to issue a Writ of Habeas Corpus and to order his release from confinement on grounds that his custody violates the Constitution and laws of the United States.


**A.      JURISDICTION**

        1.      This court has personal jurisdiction pursuant to 28 U.S.C. § 2241(d) because Mr. Whitehead was convicted after a jury trial in the County Court, Suffolk County, City and State of New York, and his conviction was affirmed by the Supreme Court, Appellate Division, Second Judicial Department, Kings County, City and State of New York. Subject matter jurisdiction is conferred by 28 U.S.C. § 2254.  Petitioner claims that his rights to substantive due process, to a fair trial and to effective assistance of counsel guaranteed him by the Fifth, Sixth and Fourteenth

*Page 1 of 54*

Amendments were violated.

### B.   PROCEDURAL HISTORY

This application follows a judgment entered in the County Court of the State of New York, Suffolk County on April 1, 2008, convicting petitioner, after a trial by jury, of the crimes of Scheme to Defraud in the First Degree (Count 1), Attempted Grand Larceny in the Second Degree (Count 10), Identity Theft in the First Degree (Counts 3, 4, 8, 9, 11, 12, 14, 15, 17, 18, 21, 24 and 27) and Identity Theft in the Third Degree (Counts 5 and 16). This followed a jury trial at which Mr. Whitehead was acquitted of seventeen of the thirty-four charges against him and convicted of seventeen of the thirty-four charges against him. Mr. Whitehead was sentenced to an indeterminate term of ten to twenty years of imprisonment and is currently serving this sentence.

Following his conviction, Mr. Whitehead timely perfected his appeal before the Appellate Division, Second Department.  On or about May 17, 2011, the court modified and affirmed the conviction (A copy of the court's decision is annexed hereto as **Exhibit A**).  Thereafter, Mr. Whitehead timely sought leave to appeal to the New York Court of Appeals; said leave was denied on or about August 4, 2011   (A copy of the order denying leave is annexed hereto as **Exhibit B**).

In April, 2012, petitioner filed a motion to vacate the judgment of conviction, pursuant to C.P.L. 440.10(1)(d), (g), and (h) (A copy of this motion is annexed hereto as **Exhibit C**). The motion, supported by four separate affidavits, alleged that Petitioner was afforded ineffective assistance of counsel, exacerbated by the prosecution's due process violations in failing to timely

furnish requisite materials to the defense.  The motion further alleged that the trial court erred in denying Mr. Whitehead an opportunity to litigate the propriety of searches which yielded the majority of evidence used against him at trial. On or about September 10, 2012, the trial court denied this motion without conducting an evidentiary hearing (a copy of this order is annexed hereto as **Exhibit D**).

As a final predicate to state exhaustion of this claim, Petitioner timely filed an application for leave to appeal the denial of the 440 motion (a copy of this application is annexed hereto as **Exhibit E**). Our motion is currently pending.

As such, all litigable state claims have been exhausted or are still in the process of being legitimately and timely exhausted.

### C.     PREDICATE FACTS

Lamar Whitehead was alleged to have stolen the identities of several people and to have used those identities in order to request fraudulent loans to purchase vehicles or to obtain currency. He was alleged to have received the personal identifying information of these individuals, including their names, addresses, dates of birth and Social Security numbers, from a former girlfriend, Valerie Rodriguez, who was an employee of Baron Honda in Patchogue, New York.   Ms. Rodriguez allegedly had access to the computer program used to check the credit of Baron Honda's customers. Most of the individual "victims" were customers of Baron Honda who had provided their names, addresses, dates of birth and Social Security numbers as part of the process of purchasing a vehicle on credit.

It was further alleged that Mr. Whitehead created email accounts in the names of the

*Page 3 of 54*

individuals through Yahoo, and that these email accounts were provided as contact information on fraudulent loan applications made in the names of the individuals whose identities were assumed. The contrived identities were used to file loan applications either online or over the phone with E-loan, Capital One, M&T Bank and Chase Bank. Mr. Whitehead is also alleged to have set up the voicemail boxes that were used as contact telephone numbers for these applications through a company called Aero-Beep, which provides voicemail box services.

Some of these applications were set up to provide funding directly to dealerships in exchange for vehicles and some were set up for individual to individual sales. Where funds were provided directly to dealerships, Mr. Whitehead or an accomplice allegedly went to the dealerships and impersonated the individual whose identity had been assumed in order to take delivery of the vehicles. In the case of loans for individual -to-individual transactions, an application for a loan was filed in the name of an assumed identity, and a separate account was created for the intended recipient in the name of a second assumed identity, allowing a transfer of funds between two stolen identities. One check was received as a result of these applications, which was deposited but did not clear. Anita Bryant, an alleged accomplice of Mr. Whitehead's, then attempted to withdraw funds from the account in the name of the second individual, but was frightened off by the bank's delay in handling the withdrawal. Ms. Bryant was thereafter apprehended.

On August 5, 2005, Judge Gaetano B. Lozito, Judge of the District Court in Suffolk County, authorized search warrants for 905 Cleveland Street, the residence of Nigel DeFreitas and 974 Park Place, the residence of Michael Redmen. At this time, the Suffolk County District Attorney's Office was conducting an investigation into the crimes described above. Pursuant to

*Page 4 of 54*

the ensuing searches, Suffolk County police confiscated certain computers and took several photographs of both residences. A computer forensic analysis was conducted of three computers from 905 Cleveland, including a desktop and a laptop. Mr. Connelly testified at trial that he searched the computers for victims' names and found none. Investigators also confiscated two computers and a wireless router from 974 Park Place, including one desktop and one Sony laptop.

On January 25, 2006, Judge Toni A. Bean issued a search warrant, based on information that Brenda Ridenour was a victim of Identity Theft for a Range Rover and cell phones used to purchase this vehicle without her knowledge. Mr. Whitehead was identified as the alleged perpetrator of this fraud by law enforcement.

During the ensuing investigation, three identification procedures were conducted. A photographic array was shown to Frank Wall, who worked at Kings Cycles and sold a motorcycle to a woman using the name Maria Macarle, who had come to the location accompanied by a man. A photographic identification was also conducted with a single photograph with Nigel Defreitas, whose internet connection had been used to file several of the applications, and Tunde Ojo, who worked at Kwik Copy center and identified several documents as having been faxed from his store. Ojo had described the man who faxed them as an African-American male of medium build. Each of these individuals identified Mr. Whitehead, however, the identification by Mr. Wall was withdrawn after the People informed the court that Detective Gabriele had provided him with Mr. Whitehead's name prior to showing him the array and that the witness had then looked up a picture of Mr. Whitehead.

Mr. Whitehead was arrested in his car in the early afternoon of January 25, 2006 shortly

*Page 5 of 54*

after crossing the George Washington Bridge from New Jersey into New York.

On January 27, 2006 Suffolk County Detective Thomas Gabriele contacted the Teaneck Police Department and advised Lieutenant Dean Kazinci that Mr. Whitehead had been arrested in New York, and that he "wanted to obtain a search warrant for his residence." Detective Gabrielle faxed over his "affidavit qualifications" for a search warrant from Suffolk County and a search warrant application was thereafter drafted and presented to Judge Young of the Teaneck Municipal Court. On January 27, 2006, Judge Young of the Teaneck Municipal Court issued a search warrant for 92 Howland Avenue, Mr. Whitehead's home (A copy of the warrant with the Gabrielle affidavit is annexed hereto as **Exhibit F**).

To that point, the Teaneck Police Department had no involvement with this investigation. Mr. Whitehead was never a target of any investigation in New Jersey, and the application was based entirely upon the faxed affidavit of Detective Gabrielle (See, **Exhibit F**). This affidavit recounted the prior searches detailed above as well as the evidence recovered during these searches, and Detective Gabrielle's opinion as to its incriminating nature. While the actual application refers to the affidavit of Detective Gabrielle, the information contained therein is not repeated in the application. Indeed the actual application merely recites the fact of the request that the New Jersey authorities obtain the warrant.

There were many facial deficiencies on these documents. For example, the first page of the warrant application dated January 27, 2006 (**Exhibit F**) stated that Detective Michael Richter "personally appeared" before the court, was sworn, and presented his affidavit in support of the search warrant. In the application, Detective Richter indicated that Detective Gabrielle provided his affidavit to Detective Richter on the same date, January 27, 2006. This is verified by the

actual affidavit from Detective Gabriele (**Exhibit F**), which bears the facsimile information affixed to the top, which indicates that it was faxed from the "SCPD ID THEFT UNIT" at "9:42" from "631-852-6820." There is every indication that Detective Gabrielle was not present for the signing of the warrant and notarization of the New Jersey affidavits submitted in support. Nevertheless, on the last signature page, on which the Court signed the warrant and notarized the *two* affixed signatures, the signature of Detective Gabrielle appears, as the affiant, above that of Detective Richter. Despite the presence of Gabriele's signature, the warrant specifically states that it was only Michael Richter who personally appeared before the Court.

While the pages of Gabrielle's affidavit, which was submitted with Detective Richter's New Jersey warrant application, bear a notary stamp, there is neither an indication on any of the pages that the document was actually sworn to, nor is there any indication as to when the document was actually signed and notarized.

The warrant authorized law enforcement agents of the State of New Jersey to conduct the search, although it is now clear that Detective Gabrielle was part of the team that executed the warrant. Finally, the items seized were not properly maintained by the Teaneck Police Department as required by the warrant, which specifically mandated that the property be maintained in the custody of the *authorized seizing agents* of which Suffolk County Detectives were not included. Instead these items were taken in the custody of Suffolk County authorities without court order and without any documentation reflecting precisely what was taken. There was no proof of an appropriate chain of custody sufficient to warrant admission of these items at

trial. (See, collectively, **Exhibits G and H**).[1]

Judge Young's order directed that all items seized from the 92 Howland Avenue residence were to be returned to the Teaneck Municipal Court.[2] This was not done. They were instead taken by Suffolk County Detective Gabrielle to his office where they were kept in "bags" until the trial preparation began at which time subsequent unauthorized searches of these materials were repeatedly conducted as the detective and prosecution culled through the bags segregating items to be admitted at trial (See, Exhibit I-4, pages 144, 146, and 153). This evidence consisted of the Gateway computer from which a wealth of evidence was seized and subsequently admitted at trial, as well as dozens of documents used by the prosecution to establish the separate substantive counts in the indictment. While a partial inventory was seemingly completed by the officers in New Jersey, there were no reports provided to establish an inventory of the items taken by Detective Gabrielle or the chain of custody related thereto. Gabrielle simply bagged the items he wanted and took them back to Suffolk County with no documentary accounting whatsoever. While the return we have received lists part of the property recovered, it is not sworn as required by C.P.L. §690.50 (5), and there is no indication that this property was ever properly returned to the court with jurisdictional authority to dispose of the property (See, **Exhibit H**). As set forth in the 440 motion, this partial return was one of the many

---

[1] **Exhibit G** is a letter from ADA Rafael Pearl to Ms. Abate dated January 18, 2008. **Exhibit H** contains the documents received from Teaneck Police Department relating to the search of the Whitehead home. Exhibits H-1 through H-3 are copies of the following: Exhibit H-1: chain of custody paperwork from the Teaneck Police Department, Exhibit H-2: Teaneck Police Department Incident Reports, Exhibit H-3: a list of items seized pursuant to an executed search warrant in Teaneck and the return of the Teaneck search warrant

[2] Annexed hereto as Exhibits I-1 through I-5 are transcripts from the trial conducted on March 17th (Exhibit I-1), 18th (Exhibit I-2), 20th (Exhibit I-3) 25th (Exhibit I-4), and 26th (Exhibit I-5) of 2008. These transcripts make clear that Det. Gabriele took the items from the house in Teaneck, New Jersey directly to Yaphank, Suffolk County.

documents we received from counsel in New Jersey in August 2011 and one of many documents never provided by the Suffolk County prosecutors. There was never a court order sought in New Jersey by Suffolk County requesting the release of this property to a separate jurisdiction as required by C.P.L. §690.55 (2). In truth, Detective Gabrielle took a veritable wealth of unidentified items, in bags, and simply stored them in his office for two years up to trial.

On January 30, 2006, a Computer Search Warrant was issued by the Honorable Steven A. Lotto authorizing the search of a Sprint Cellular phone, a Boost Mobile Cellular Phone, a Motorola Razor Cellular and a Gateway 4540 Laptop Computer Serial Number N824CD1005690, all of which were seized pursuant to the warrant executed at Mr. Whitehead's Teaneck home just days earlier (See, **Exhibit H-3**). (A copy of the January 30, 2006 Computer Search Warrant is annexed hereto as **Exhibit J**). This computer search warrant was not signed by the Court – the document bears only a stamp. There are, however, handwritten notations contained thereon. Immediately in front of the stamp is the notation "/s/" and above the line delineated "Time signed" there is a handwritten notation "13:15." These handwritten notations clearly suggest that the Court did not sign or utilize the stamp in endorsing the search warrant. Had the court made the handwritten notations, one would assume the court would have simply signed the warrant as well. Additionally, the items to be searched were not properly identified in the application.

On February 3, 2006, based in large part upon the evidence seized pursuant to the searches described, supra, Mr. Whitehead was indicted on Case # I-355-2006 on one count of Identity Theft, First Degree and one count Attempted Grand Larceny, Second Degree. (Annexed hereto as **Exhibit K** is a copy of the February 3rd, 2006 Indictment).

Mr. Whitehead initially retained Robert Macedonio to represent him.  On February 13, 2006 and March 23, 2006, Macedonio filed motions for discovery. (Annexed hereto and labeled **Exhibit L** and **M** are the February 13, 2006 and March 23, 2006 discovery motions, respectively). In both motions, Macedonio requested, *inter alia*, photographs, property recovered, search warrants and affidavits submitted in support thereof.

On April 4, 2006, Suffolk County Assistant District Attorney Douglas Byrne responded to these motions. (A copy of ADA Douglas Byrne's April 4, 2006 response is annexed hereto as **Exhibit N**). In this response,  Byrne specifically stated the "items responsive to the defendant's demands that are currently in possession of the People are being provided at this time."  Counsel stated that any other materials subsequently obtained by the People would be provided "at the appropriate time."  In their substantive response, the prosecution essentially stated that they were unaware of any property photographed at the direction of law enforcement, expert reports generated or scientific tests conducted.   It was later disclosed that photographs were taken of the vehicle recovered during the search of Mr. Whitehead's home, and during the searches of 905 Cleveland Street and 974 Park Place.  Byrne further stated that the prosecution was unaware of any property obtained from the defendant except "three cellular phones and one vehicle" (See, **Exhibit N** Page 3).  As indicated, *supra*, law enforcement seized three cellular phones and a laptop computer and other property from Mr. Whitehead's home in New Jersey and then applied for a search warrant to further search the items recovered from the home. Hence at this early stage in the proceedings, the express representations as to the *non-existence* of the very evidence used to convict Mr. Whitehead began.

On or about April 25, 2006, Mr. Whitehead was indicted on a superseding indictment

*Page 10 of 54*