to show method, but in effect this testimony showed an anticipated future fraud. This was testimony related to an uncharged crime and did not properly fall within a <u>Molineux</u> exception.

It was stipulated that Gerald Thurman [Counts 28 and 29] and Brenda Foley [Count 31] would have testified in a similar manner to that of the named victims who testified that they had purchased vehicles at Baron Honda and subsequently discovered that someone had unsuccessfully tried to use credit in their names.

***The Baron Honda Staff***

Gloria Tricario was the controller of Baron Honda at the time that the identities of Baron Honda customers were used (**Exhibit X-282**). She described the workings of the in-house computer program, called Dealer-Track, which was used by vehicle dealerships to get credit information about potential customers (**Exhibit X-283-286, 309-311**). Ordinarily, only managers have access to Dealer Track (Exhibit X-313). She then identified purchase records maintained at Baron Honda for:

- Maria Macarle, August 25, 2004 (**Exhibit X- 294-295**)
- Raymond and Nerina Sperl, October 16, 2004 (**Exhibit X- 295-297**)
- Wendy and Thomas Palladino, October 16, 2004 (**Exhibit X- 297-298**);
- Brian and Lisa Smith, August 27, 2004 (**Exhibit X- 299**)
- Kathleen Suhr and Michael Nolan, August 27, 2004 (**Exhibit X- 300-301**)
- Joseph Sweeney, August 31, 2004 (**Exhibit X- 301-302**)
- Eric Besso, September 4, 2004 (**Exhibit X- 302-303**)
- Kathleen March, September 5, 2004 (**Exhibit X- 303-304**)
- Briton Lawlor, August 30, 2004 (**Exhibit X- 304-305**)
- Brian and Brenda Foley, September 11, 2004 (**Exhibit X- 305-306**)
- Gloria Conaty, October 6, (**Exhibit X- 306-307**)
- Gerald Thurman, September 5, 2004 (**Exhibit X- 307-308**)

Valerie Rodriguez testified that she was a former salesperson at Baron Honda and a former girlfriend of Mr. Whitehead. She had access to the Dealer-Track system and explained it

to Mr. Whitehead, providing him business leads from it. She identified several voicemail recordings as containing Mr. Whitehead's voice but using different names.1 (**Exhibit X**-314-371, 434-510).

*The Bank Representatives*

Kenneth Scales, a senior fraud investigator for Chase, explained that an individual seeking a loan from Chase Auto Finance could apply either at a dealership, online or over the phone, and that for any of these methods, identifying information must be provided. This information was then used to make an initial determination if the applicant was eligible for a loan (**Exhibit X**-532-534). He identified a series of documents as Chase applications for auto loans which were in the names of various named victims, and testified that all of them had been denied (**Exhibit X**-534-545). Kevin Lee, a legal recourse manager for Capital One, testified similarly, adding that a loan application could be made for funds to purchase a vehicle from another individual, as opposed to a dealership. Two applications made to Capital One were initially approved but then cancelled, prior to being funded, due to fraud alerts; one loan was actually funded (**Exhibit X**-549-590). 3 He also stated that two person-to-person checks cleared (**Exhibit X**-607-609). Her further explained that a loan application may result in a check being sent to a customer, but that funds were only presently obtainable with such checks after they had received final approval (**Exhibit X**-597-598).

Kelly Thomas of the First Internet Bank of Indiana testified that an account had been opened in the name of Maria Macarle (**Exhibit X**-619-629); Henry Waite of Commerce Bank testified as to an account being opened in Maria Macarle's name at a branch in Queens, New York. An attempt was made to withdraw $17,000 from this account the day before a check from

a person-to-person transaction was deposited. He identified this check as having been deposited to the account, and having been returned to the issuing institution prior to clearing successfully. While Commerce Bank's representative Henry Waite testified that this check had not cleared, this was the same Capital One check which Kevin Lee had testified had been funded (Exhibit X-635-655). James Eriksen of M&T Bank testified concerning several applications made in the name of identified victims in this case, all of which were denied (**Exhibit X-657-675**). Nancy Carraveo of E-loan testified as to applications made and denied and one application which was approved (**Exhibit X-680-722**).

*The Service Providers*

James Carrick of Verizon testified that the MCI residential customer database indicated that Tiesha Lamont had been an MCI residential customer with the phone number of 718-230-4369 at the address of 385 Lexington Avenue, Apartment 4B, Brooklyn, NY 11216 from July 28, 2004 to July 25, 2005 (**Exhibit X-736-740**). This address had been used as the home address in several of the applications and Teisha Lamont was the sister of Anita Bryant, an alleged accomplice of Mr. Whitehead's.

Dan Jensen of Sprint/Nextel identified 718-772-6498 as a phone number registered to Lamar Whitehead, 347-623-1549 and 347-228-4956 as phone numbers registered to Woycieh Wachnik which were cancelled due to fraud, and 917-604-0969 as a phone registered to Ieshah Williams (**Exhibit X-743-756**). Erik Larson of Verizon identified several phone numbers as belonging to relatives of Mr. Whitehead's (**Exhibit X-1058-1091**). He also identified a phone which was recovered as having the same serial number as one of the phones issued in the name of Mr. Wachnik (**Exhibit X-789-799**).

Anne Cheung of Yahoo identified several Yahoo accounts as having been set up in the names of charged victims (**Exhibit X-774-787**). Robert Egan of Cablevision identified the IP address of the computer used to set up some of the Yahoo accounts as that of Nigel Defreitas (**Exhibit X-789-799**). Christine Gardener of Verizon identified the other IP address as having been assigned to Michael Redman (**Exhibit X-800-808**). Kris Taneja of Aero-Beep and Voicemail Services identified the contact numbers used on the loan applications as belonging to three blocks of numbers Aero-Beep had sold to accounts in the names of Henry Black, John Wilson and Anthony Williams for use as voicemail boxes. She also testified that Mr. Whitehead had an account in his own name with the company, an account which was not related to any of the charged conduct (**Exhibit X-811-846**). Tunde Ojo of Kwik Copy Center identified several documents as having been faxed from his store and described the man who faxed them as an African-American male of medium build (**Exhibit X-21-31**).

*The Dealership Representatives*

Robert O'Shinsky of Land Rover of Massapequa testified that a man had sought to arrange the purchase of a vehicle for his aunt in the name of Nouri Khabieh. The Suffolk County Police contacted him regarding this sale being fraudulent, and he consequently turned the purchase documents over to Detective Peeker of the Suffolk County Police (**Exhibit X-1106-1140**). Frank Wall of Kings Cycles testified that he had sold a motorcycle to a woman, who was accompanied by a man, using the name Maria Macarle.

*Accomplice Testimony*

Anita Bryant testified that she is the sister of Teisha Lamont and had a close relationship to Mr. Whitehead. Her testimony was given pursuant to a cooperation agreement with the

Suffolk District Attorney's office, which promised that she would be spared any prison sentence for her involvement in the charged identity thefts. She claimed that Mr. Whitehead had directed her to purchase a motorcycle in the name of Maria Macarle at Kings Cycles in March of 2005. She also claimed that he had instructed her to withdraw $17,000 from an account in the name of Maria Macarle at Commerce Bank. She left behind identification documents at the bank after becoming frightened, and these documents were used to identify and apprehend her (**Exhibit X-905-1021**).

*The Police Witnesses*

Police Officer Frank Gallagher of the New York City Police testified that he stopped Mr. Whitehead while he was operating a motorcycle reported stolen by Kings Cycles on June 7, 2005 (**Exhibit X-940-946**). He was not permitted to describe the motivation or results of this stop as the trial court precluded this testimony as connected to an arrest for a crime for which Mr. Whitehead had never been convicted.

Karen Ensalata of the Suffolk County Police Identification Unit testified that she had compared Mr. Whitehead's fingerprints taken by Detective Hayes to fingerprints on the documents turned over to Detective Peeker by Robert O'Shinsky of Land Rover of Massapequa, and that she matched four fingerprints on those documents to those of Mr. Whitehead. She identified the existence of cracks in Mr. Whitehead's fingerprints as taken by Detective Hayes of the Suffolk County Police but not present on the recovered documents and opined that they were due to dry skin and were potentially transitory. Throughout her testimony, Ms. Ensalata made reference only to a report of a comparison she had made in 2008 in preparation for trial. At no point did she disclose that there was in existence a report from 2004, concerning the same

fingerprints, which had not been turned over to the defense (**Exhibit X-41**). It was later learned that this report from 2004 formed the partial basis for the issuance of a search warrant of Mr. Whitehead's home. This report listed the exact locations on the documents from which the comparison prints had been lifted and contained the names of other suspects whose fingerprints the Suffolk Police had requested to be compared to those on the purchase documents.

Detective Thomas Gabriele, the prosecution's central law enforcement witness, testified that he has been a detective with the Suffolk County Police Department Identity Theft Unit since April of 2004, and that the Unit's duty was to investigate all identity theft cases in Suffolk County (**Exhibit X-27, 1022-1023**). He stated that he also knew Lamar Whitehead by the names "Lamor Whitehead" and "Lamor Miller" (R1023). He became involved in this investigation on May 5, 2005 after receiving a complaint that Maria Macarle's identity had been used to obtain a loan to purchase a motorcycle (**Exhibit X-1023-1024**). In response to her complaint, Detective Gabriele interviewed Maria Macarle and then visited Kings Cycles on Utica Avenue in Brooklyn on June 2, 2005 (**Exhibit X-1027**). Rocco Gargano, the owner of Kings Cycles, gave him a purchase agreement for a motorcycle and a copy of a New York State picture license that had been used to effectuate the purchase of the motorcycle (**Exhibit X-1028-1029**). The picture on the license was not a picture of Maria Macarle but a picture of the People's cooperating witness, Anita Bryant (Exhibit X-1032).

In the course of his investigation Gabriele contacted E-Loan, Capital One Auto Finance, Chase Bank, M&T Bank, Commerce Bank and Internet Bank (**Exhibit X-1035-1037**). He contacted these financial institutions pursuant to information he obtained from Maria Macarle

when he asked her to identify any activity on her credit report which she did not recognize (**Exhibit X -1037-1038**). He visited Commerce Bank in Brooklyn and received two checks, for which payment had been stopped, from Capital One Auto Finance as well as a Florida driver's license with a picture of Anita Bryant (**Exhibit X-71**).

According to Gabrielle, after his visit to Kings Cycle on June 2, 2005 he viewed Mr. Whitehead as a suspect on June 8, 2005 after he spoke to Police Officer Frank Gallagher, who had arrested Mr. Whitehead while he was riding the Kings Cycle motorcycle. (**Exhibit X-984-985**). After obtaining the Florida driver's license, Detective Gabriele placed it on Crime Stoppers (**Exhibit X-985-986**). Chris Strom responded to the Crime Stoppers information by identifying Anita Bryant. Gabriele interviewed Strom, thereby leading to the arrest of Anita Bryant. (**Exhibit X-986**). The foregoing testimony was taken on February 28, 2008 after which Detective Gabrielle was not called back to testify until March 14, 2008.

On March 14, 2008, after the testimony of nineteen intervening witnesses, Detective Gabriele returned to testify without re-taking a testimonial oath, or being admonished that his previous oath was still in effect (**Exhibit X-1371**).

Gabriele testified that he arrested Mr. Whitehead on January 25, 2006, after conducting surveillance on his home on January 23 and 24, 2006 (**Exhibit X-1397-1401**). He stated that at all times Mr. Whitehead was driving a maroon Range Rover with Pennsylvania license plate GFG-2947 (**Exhibit X-1401**).

The detective visited Aero Beep and showed Mr. Taneja a picture of Mr. Whitehead. Taneja did not recognize Mr. Whitehead and Detective Gabriele informed the District Attorney's Office of this. This information had not been turned over to trial counsel. Trial counsel moved

for a mistrial on the basis of this <u>**Brady**</u> violation. Judge Hudson suggested re-calling Mr. Taneja as the appropriate cure for this, which trial counsel declined, arguing that Mr. Taneja would now have had the opportunity to review the testimony of other witnesses, making this an insufficient remedy (**Exhibit X-1536-1549**).

*Verdict and Sentence*

At the conclusion of the evidence, closing arguments and jury instructions, the jury rendered its verdict as illustrated below: (**Exhibit X-1811-1827**)

| Indictment Count | Class | Verdict | Identity and Date |
|---|---|---|---|
| 1 - Scheme to Defraud - 1st degree | E Fel. | Guilty | No identity, 9/04-5/05 |
| 2 - Identity Theft - 1st degree | D Fel. | Acquitted | Maria Macarle, 2/15/05 |
| 3 - Identity Theft - 1st degree | D Fel. | Guilty | Maria Macarle, 2/15/05 |
| 4 - Identity Theft - 1st degree | D Fel. | Guilty | Maria Macarle, 2/17/05 |
| 5 - Identity Theft - 3rd degree | A Mis. | Guilty | Maria Macarle, 3/25/05 |
| 6 - Identity Theft - 3rd degree | A Mis. | Acquitted | Maria Macarle, 3/25/05 |
| 7 - Identity Theft - 1st degree | D Fel. | Acquitted | Nerina Sperl, 2/15/05 |
| 8 - Identity Theft - 1st degree | D Fel. | Guilty | Nerina Sperl, 2/15/05 |
| 9 - Identity Theft - 1st degree | D Fel. | Guilty | Nauri Khabieh, 10/14/04 |
| 10 - Grand Larceny - 2nd degree | D Fel. | Guilty | Land Rover of Massapequa, 10/14/04 |
| 11 - Identity Theft - 1st degree | D Fel. | Guilty | Joseph Sweeney, 10/13/04 |
| 12 - Identity Theft - 1st degree | D Fel. | Guilty | Joseph Sweeney, 10/13/04 |
| 13 - Identity Theft - 1st degree | D Fel. | Acquitted | Woycieh Wachnik, 10/28/04 |
| 14 - Identity Theft - 1st degree | D Fel. | Guilty | Woycieh Wachnik, 10/13/04 |

| | | | |
|---|---|---|---|
| 15 - Identity Theft - 1st degree | D Fel. | Guilty | Woycieh Wachnik, 10/13/04 |
| 16 - Identity Theft - 3rd degree | A Mis. | Guilty | Woycieh Wachnik, 10/14/04 |
| 17 - Identity Theft - 1st degree | D Fel. | Guilty | Briton Lawlor, 10/4/04 |
| 18 - Identity Theft - 1st degree | D Fel. | Guilty | Briton Lawlor, 9/28/04 |
| 19 - Identity Theft - 1st degree | D Fel. | Acquitted | Brian Foley, 10/4/04 |
| 20 - Identity Theft - 1st degree | D Fel. | Acquitted | Brian Foley, 9/28/04 |
| 21 - Identity Theft - 1st degree | D Fel. | Guilty | Brian Smith, 9/28/04 |
| 22 - Identity Theft - 1st degree | D Fel. | Acquitted | Michael Nolan, 9/28/04 |
| 23 - Identity Theft - 1st degree | D Fel. | Acquitted | Michael Nolan, 10/7/04 |
| 24 - Identity Theft - 1st degree | D Fel. | Guilty | Raymond Sperl, 10/18/04 |
| 25 - Identity Theft - 1st degree | D. Fel. | Acquitted | Raymond Sperl, 2/24/05 |
| 26 - Identity Theft - 1st degree | D. Fel. | Acquitted | Gloria Conaty, 2/15/05 |
| 27 - Identity Theft - 1st degree | D Fel. | Guilty | Gloria Conaty, 2/15/05 |
| 28 - Identity Theft - 1st degree | D Fel. | Acquitted | Gerald Thurman, 2/22/05 |
| 29 - Identity Theft - 1st degree | D Fel. | Acquitted | Gerald Thurman, 2/22/05 |
| 30 - Identity Theft - 1st degree | D Fel. | Acquitted | Eric Besso, 10/7/04 |
| 31 - Identity Theft - 1st degree | D Fel. | Acquitted | Brenda Foley, 10/7/04 |
| 32 - Identity Theft - 1st degree | D Fel. | Acquitted | Kathleen March, 10/13/04 |
| 33 - Identity Theft - 1st degree | D Fel. | Acquitted | Thomas Palladino, 10/27/04 |
| 34 - Identity Theft - 1st degree | D Fel. | Acquitted | Michael Tricario, 10/24/04 |

On June 30, 2008, Judge Hudson sentenced Mr. Whitehead to concurrent terms for each count of conviction pertaining to one single identity. For example, Mr. Whitehead was sentenced

to concurrent terms for each count related to the use of Maria Macarle's identity, and concurrent terms for each count related to the use of Wojcieh Wachnik's identity. These concurrent terms for the counts related to each individual were then run consecutively to the others. This included ordering consecutive terms for the scheme to defraud, which encompassed all charged conduct and the other counts and ordering consecutive terms for the Identity Theft of Nauri Khabieh and the attempted larceny from Land Rover of Smithtown which had served as one of the elements of the Khabieh identity theft. This resulted in an aggregate sentence of ten to thirty years, which was deemed a sentence of ten to twenty years as a result of the operation of Penal Law §70.30(c).[5]

Upon the exhaustion of all state remedies as detailed above this writ has been brought seeking to overturn the convictions rendered above and the release of Lamar Whitehead from custody. To the extent our application for leave to appeal the denial of the April, 2012 440 motion is pending, we ask that this Court stay these proceedings pending the exhaustion of this remaining remedy.

D.  **LEGAL ARGUMENT**

1.  **Petitioner Was Denied The Effective Assistance Of Counsel**

Under the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a state court conviction "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law,

---

[5] On appeal, the Second Department modified the sentence, on the law, by (1) adding a provision thereto directing that the sentence for scheme to defraud in the first degree under count 1 of the indictment is to run concurrently with the sentences on all other counts, and (2) adding a provision thereto directing that the sentences for identity theft in the first degree under count 12 of the indictment and attempted grand larceny in the second degree under count 14 of the indictment run concurrently with each other.

as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A state court decision will be deemed "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." **Williams v. Taylor**, 529 U.S. 362, 412–13(2000); *accord* **Hoi Man Yung v. Walker**, 468 F.3d 169, 176 (2nd Cir. 2006); **Ernst J. v. Stone**, 452 F.3d 186, 193 (2d Cir.2006). The phrase, "clearly established Federal law," limits the law governing a habeas petitioner's claims "to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." **Carey v. Musladin**, 549 U.S. 70, 75 (2006) (*quoting* **Williams**, 529 U.S. at 412); *accord* **Hawkins v. Costello**, 460 F.3d 238, 242 (2nd Cir. 2006).

"The 'unreasonable application' standard is independent of the 'contrary to' standard ... [and] means more than simply an 'erroneous' or 'incorrect' application" of federal law. **Henry v. Poole**, 409 F.3d 48, 68 (2d Cir.2005). A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. See **Williams**, 529 U.S. at 413, 120 S.Ct. at 1523. The inquiry for a federal habeas court is not whether the state court's application of the governing law was erroneous or incorrect, but, rather, whether it was "objectively unreasonable." **Id**. at 408–10; *see also* **Aparicio v. Artuz**, 269 F.3d 78, 94 (2nd Cir. 2001); **Lurie v. Wittner**, 228 F.3d 113, 128–29 (2nd Cir. 2000).