UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
LAMAR WHITEHEAD,

                              Petitioner,

         - versus -

WILLIAM T. HAGGETT, Superintendent
Mt. McGregor Correctional Facility,

                         Respondent.
--------------------------------------------------------X

                         **ANSWER/RETURN**

                         12-CV-4946 (SJF)

      MICHAEL J. MILLER, pursuant to 28 U.S.C. §1746, affirms to the best of my knowledge that:

      1.  I am an attorney at law admitted to practice before this Court and an Assistant District Attorney of Suffolk County, of counsel to THOMAS J. SPOTA, District Attorney of Suffolk County, New York, and the attorney of record for Respondent, William T. Haggett.

      2.  Lamar Whitehead (Whitehead or petitioner) petitions this Court for a writ of habeas corpus pursuant to 28 USC §2254.  He maintains that he was denied the effective assistance of trial counsel, that it was error to admit testimony about uncharged crimes, and that a police detective gave unsworn testimony.  The petition should be denied because there is no merit to Whitehead's claims and because these claims are not amenable to federal habeas corpus review.

      3.  On May 5, 2005, Detective Thomas Gabriele received a complaint from Ms. Marie Marcarle that her identity had been stolen and used to obtain a fifteen thousand dollar loan that was subsequently used to purchase a motorcycle (Trial Transcript, 2-4-08, p. 56-57).  Ms. Marcarle's complaint led Detective Gabriele to Kings Cycles in Brooklyn where he learned that a woman using Ms. Marcarle's name had purchased a Honda motorcycle, which was delivered

on March 30, 2005 (T.T., 2-4-08, p. 59-64).   A review of Ms. Macarle's credit report led Detective Gabriele to contact E-Loan, Capital One Auto Finance, First Internet Bank, Chase Bank, and Commerce Bank (T.T., 2-4-08, p. 68-70).  He found that Ms. Marcarle's identity was used at Commerce Bank in an attempt to negotiate fraudulent checks (T.T., 2-4-08, p. 70-74).  At both Kings Cycles and the Commerce Bank, Ms. Marcarle's name was attached to a forged driver's license (a New York and Florida license, respectively) that depicted Anita Bryant – who was identified through Crime Stoppers – an associate of defendant (T.T., 2-4-08, p. 64, 71-72; 2-28-08, p. 18).

4.  Petitioner became a known suspect in the Marcarle identity theft on June 8, 2005, after he was arrested in Brooklyn while in possession of the motorcycle purchased in Ms. Marcarle's name (T.T., 2-28-08, p. 16-17).  Throughout 2005, Detective Gabriele investigated numerous car-loan identity thefts perpetrated by petitioner, including thefts that pre-dated the Marcarle case (T.T., 3-28-08, p. 80-81; 3-14-08, 17-18).

5.  On January 23, 2006, Detective Gabriele and other police officers began surveillance of petitioner's home in Teaneck, New Jersey (T.T., 3-14-08, p. 38-39).  The next day the police continued surveillance on petitioner's home and then followed him when he left his home driving a maroon Land Rover (T.T. 3-14-08, p. 40-42).  The officers continued the surveillance the following day and again tailed petitioner when he drove off in the Land Rover.  This time, on January 25, 2006, the police stopped petitioner on Riverside Drive in Manhattan and arrested him (T.T., 3-14-08, p. 42-48).

6.  Later that same day – January 25, 2006 – Judge Bean signed a search warrant for the Land Rover and it was searched for evidence relating to identity theft (T.T., 3-14-08, p. 68-80). Evidence obtained from the Land Rover included numerous documents, business cards, a jacket

which also contained documents, and three cell phones.  These items were introduced into evidence (Exhibits 113 through 127) without objection (T.T., 3-14-08, p. 71-81).  The documents found in petitioner's car linked him to various identity thefts.  For example, several documents found in the Land Rover purported to belong to Ms. Marcarle (T.T., 3-17-08, p. 32-35).

7.   On January 27, 2006, a search warrant was executed at petitioner's home in New Jersey (T.T., 3-17-08, p. 78-79).   Among the items recovered from petitioner's home were numerous documents, a laptop computer, and three more cell phones (T.T., 3-17-08, p. 84-118).

8.   The initial case against petitioner in Suffolk County was presented to a grand jury and a true bill was voted on February 2, 2006.  Petitioner was arraigned on Indictment 355-2006 on February 7, 2006 and he pleaded not guilty to one count of Identity Theft in the First Degree (N.Y. P.L. §190.80) and one count of Grand Larceny in the Second Degree (N.Y. P.L. §155.40).  At this time petitioner was represented by Robert Macedonio and the People were represented by Douglas Byrne, Esq.

9.   While the Identity Theft case was pending in Suffolk County, petitioner was prosecuted in New York County based on criminal possession of the 2004 Land Rover.  The New York County indictment was filed during March 2006 and a jury trial was held during October 2006.  At the New York County trial both Detective Richter from Teaneck, New Jersey and Detective Gabriele from Suffolk County testified.  Although we do not have the transcript from that trial, the appellate briefs and Whitehead's motion to set aside the jury verdict establish that both detectives testified about the search of petitioner's home in New Jersey.  Camille Abate, who at one time represented petitioner on the Suffolk County case, was associated with Andre Soleil, Esq., who represented Whitehead on the New York County case.  Furthermore,

Camille Abate both filed the motion to set aside the verdict and perfected the appeal on the

Manhattan case.

10.   At least since 2006 both petitioner and his attorneys were aware of the facts and

circumstances of the search of petitioner's New Jersey home.  Indeed, Ms. Abate wrote in the

Affirmation in Support of the motion to set aside the verdict that:

> The first witness, Detective Michael Richter of the Teaneck, New
> Jersey Police Department, testified that he executed a search
> warrant at petitioner's home in Teaneck, and recovered a laptop
> computer, a laser jet printer, various pieces of mail, a couple of cell
> phones, two drivers licenses, and a 9-mm. handgun and bullet
> proof vest. (Upon objection, the court struck the testimony about
> the gun and vest.) Photographs of the computer and petitioner's
> house were admitted into evidence.
>                    (Affirmation of Camille Abate, 11-8-06, ¶ 5(a)).

Later, after addressing the testimony of other witnesses, Ms. Abate wrote that:

> Detective Thomas Gabriele next testified, identifying himself on
> the record as "assigned to the Identity Theft Unit of the Suffolk
> County Police Department." He testified to a stake-out of the
> defendant's home in Teaneck, New Jersey, where he observed the
> 2004 Land Rover parked.  At some point petitioner came out of his
> house, got in to the car, and drove off.   Detective Gabriele
> followed him and then lost him in traffic. On a second date,
> Detective Gabriele "tailed" him and pulled him over for a "traffic
> stop" on Riverside Drive in Manhattan. Petitioner was then
> arrested for Criminal Possession of Stolen Property. Admitted into
> evidence were a number of traffic summonses for petitioner, which
> were in the car. (Assuming that the police officers who wrote the
> summonses ran the license plate, it did not come up "stolen.")
> Detective Gabriele also testified that he was present when the
> search warrant was executed on petitioner's house, and identified
> the laptop computer, plus a "towing receipt" and some cell phone
> bills as having come from petitioner's house. On cross
> examination, the judge would not permit defense counsel to elicit
> any testimony about the ownership of the car.
>                    (Affirmation of Camille Abate, 11-8-06, ¶ 5(d)).
>                    (emphasis deleted).

11.   Ms. Abate also represented Whitehead on the direct appeal from the New York County judgment of conviction.   In the appellate brief she repeated what she had written about Detectives Richter and Gabriele in the motion to set aside the verdict.   She added some additional information regarding the search of the Land Rover conducted by Detective Gabriele. And she wrote about Suffolk County Detective John Frieberg's extraction of files from a laptop computer recovered from petitioner's home.   The appellate brief was, likewise, filed in 2006.

12.   The extent of the trial testimony in the New York County case was further explained in the Respondent's brief in reply to the brief filed by Ms. Abate.   Thus, according to the New York County prosecutor:

> On January 23, 2006, Detective Thomas Gabriele, who had been working for the Suffolk County Police Department for fourteen years, went to 92 Howland Avenue in Teaneck, New Jersey as part of an investigation into a stolen car case (Gabriele: 112-113). He saw a maroon Range Rover parked in the driveway.  The next day, Detective Gabriele went back to 92 Howland Avenue and saw the same Land Rover parked in the driveway (Gabriele: 113). After about an hour of surveillance, Gabriele observed the Land Rover pull out of the driveway. Gabriele followed the Land Rover until it stopped about a quarter of a mile from the driveway (Gabriele: 114-115). Defendant got out of the driver's side and walked to a gas station nearby.   Soon after, defendant returned to his car and drove away. Gabriele attempted to follow defendant but lost sight of him in traffic (Gabriele: 115-116).
>
> On January 25, 2006, Detective Gabriele went back to 92 Howland Avenue and saw the same Land Rover parked in the driveway (Gabriele: 117). At about 11:55 a.m., the Land Rover pulled out of the driveway, and Gabriele followed the car across the George Washington Bridge to Manhattan, where he stopped the car on Riverside Drive (Gabriele: 117). There, Gabriele arrested defendant, who was driving the Land Rover with VIN SALMF 145A142490. [FN4]. There was no one else in the car (Gabriele: 117-119). The car was then transported to the Suffolk County Police Department (Gabriele: 118).

[FN4.   The transcript shows the VIN recited as SALMF 145A142490, which lacks two numbers; the VIN for the Land Rover in question is SALMF 1145A142490.]

Detective Michael Richter, who worked at the General Investigations Bureau of the Teaneck Police Department, obtained a search warrant to search defendant's Land Rover and his home, located at 92 Howland Avenue in Teaneck, New Jersey (Richter: 22; Gabriele: 123). Later that day, Detective Gabriele searched defendant's car, which was in good condition, and recovered from the car twenty-one traffic summonses, of which one summons was issued on July 10, 2005 for "driving while suspended" and included defendant's name and listed the 2004 Land Rover.   The remaining twenty parking tickets were issued from March 14, 2005 to January 24, 2006. The detective also recovered a Con Edison bill in the name of "Dawn Little," which had the same tracking/account number XXXXXXXXXXX and the same amount due ($230.06) as the Con Edison bill that was submitted to Capital One to prove residency of the purported "Brenda Ridenour" (Gabriele: 119-123; People's Ex. 11: traffic summonses; People's Ex. 12: Con Edison bill in Dawn Little's name) [FN5].

[FN5.   Detective Gabriele also recovered defendant's Nextel telephone bill addressed to 1305 Park Place, Brooklyn, New York 11213 bearing the account number XXXXXXX (Gabriele: 123; Ex. 16: Nextel telephone bill).]

On January 27, 2006, Detectives Richter and Gabriele, along with six to eight other police officers, went to execute the search warrant on defendant's home (Richter: 23-24; Gabriele: 124). From a closet, Detective Gabriele recovered the New Jersey certificate of title from Creative Leasing for the 2004 Land Rover with Identification Number SALMF 11454A142490 (Gabriele: 126-128; People's Ex. 7: New Jersey certificate of title from Creative Leasing). He also found a triplicate, carbon copy Midland Auto Mall purchase agreement form that was partially completed, listing the salesperson as "David", an estimated delivery date of April 20, 2005, a price of $56,000, and the VIN of SALMF 11454A142490 (Gabriele: 126; People's Ex. 8: Midland Auto Mall purchase agreement for). Aliba, whose first name was David, did not recognize the handwriting on that form that stated, "For use only by sellers registered as dealers under Article 16 of the Vehicle and Traffic Law," and which he never gave out as a blank form to customers (Aliba: 91; People's Ex. 8). The detective also found from the closet a piece of paper with "David Ridenour" written on

it (Gabriele: 128-129; People's Ex. 13: piece of paper with David Ridenour's name) [FN6].

[FN6. From the same closet, the detective also recovered an invoice from Apple Towing Company bearing defendant's name and 2004 Land Rover dated 7/27/05 (People's Ex. 14); an invoice detailing the service of the Land Rover including defendant's name and address of 1305 Park Place, Brooklyn, New York 11213 dated 7/29/05 (People's Ex. 15); and an overdue Nextel bill with defendant's name, addressed to 1305 Park Place, Brooklyn, New York 11213, bearing an account number XXXXXXX (People's Ex. 17) (Gabriele: 129-130).]

From the top of the dining room table, Detective Gabriele recovered various pieces of mail addressed to defendant as well as an open Gateway laptop computer (Richter: 24-25, 33; Gabriele: 125; People's Exs. 2a-2c: photographs of laptop and mail; People's Ex. 3: laptop computer). He found a successfully opened "yahoo mailbox" for the e-mail address BrendaRidenour111@yahoo.com (Frieberg: 156-158; People's Ex. 13: "welcome page of BrendaRidenour 1 111's e-mail account). He also found a portion of a yahoo e-mail from Capital One Auto Finance to "DVDRDNR@yahoo" (Frieberg: 158; People's Ex. 19: e-mail from Capital One Auto Finance) [FN7].

[FN7. Frieberg also recovered a document sent to the printer on January 28, 2005 with defendant's name on it (Frieberg: 159-162; People's Ex. 21: file created on January 28, 2005), three documents consisting of defendant's credit report faxed from MetBank mortgage company, a temporary internet folder regarding defendant's home equity loan application, and a document titled "LamarWhitehead.doc" regarding a civil law suit between defendant and Mortgage Electronic Systems, Inc. (Frieberg: 178-181; People's Ex. 22: defendant's credit report; People's Ex. 23: temporary internet folder; People's Ex. 24: LamarWhitehead.doc). In addition, Frieberg recovered from the hard drive two photographs of defendant (Frieberg: 178, 181; People's Ex. 25: photographs of defendant).]

No later than the end of the trial in October 2006, Whitehead and Ms. Abate knew both that petitioner's home was searched pursuant to a warrant and the extent of the search of petitioner's home.

13. Petitioner was convicted in New York County of Criminal Possession of Stolen Property based on his possession of the Land Rover. See, *People v Whitehead*, 48 AD3d 237 (1st Dept), *lv to app den,* 10 NY3d 872 (2008).

14. Meanwhile, in Suffolk County, Indictment 355-2006 was superseded as to petitioner by Indictment 1159A-2006. Indictment 1159-2006 charged both petitioner and Anita Bryant with five counts of Identity Theft in the First Degree (NY PL §190.80), three counts of Unlawful Possession of Personal Identification Information in the Third Degree (NY PL §190.81), one count of Grand Larceny in the Second Degree (NY PL §155.40), and two counts of Grand Larceny in the Third Degree (NY PL §155.35). Defendant was arraigned on Indictment 1159A-2006 on April 25, 2006; he was still represented by Mr. Macedonio.

15. Mr. Macedonio engaged in discovery and motion practice. Mr. Macedonio's request for discovery and motion for discovery, and our responses to both the demand and motion for discovery are exhibits to Whitehead's 2012 motion to vacate his judgment of conviction.

16. Ms. Camille Russell replaced Mr. Macedonio as defendant's attorney during September 2006; she first appeared for defendant on September 19, 2006.

17. On or about September 20, 2006, Ms. Russell filed an omnibus motion. The omnibus motion is also an exhibit to Whitehead's 2012 motion to vacate his judgment of conviction. As part of the motion, defendant sought to suppress evidence taken from his home:

> Upon information and belief, the People intend to offer at trial property seized from defendant by law enforcement personnel, namely, data from a laptop computer found in defendant's home, and cellular phone(s) taken from defendant.
>
> Upon information and belief, such property was seized in violation of his rights under the Fourth, Fifth, and fourteenth Amendments to the United States Constitution and Article I, 6 of the New York

State Constitution and should, therefore, be suppressed, including but not limited to cellular telephone.

More particularly the evidence was obtained unlawfully because:

•      The warrant under which the property was seized was issued without probable cause,
•      The affidavits or sworn testimony of which the warrant was issued contained material and false allegations that were made knowingly and in reckless disregard for the truth,
•      The warrant under which the property was seized fails to describe the place to be searched with sufficient particularity,
•      The warrant under which the property was seized was executed beyond its authorized scope,
•      The warrant under which the property was seized was executed at night without lawful authorization,
•      The warrant under which the property was seized was executed without giving proper notice of the executing officer's purpose and authority and in the absence of a no-knock authorization,
•      The officers executing the warrant failed to make a proper and timely return of the warrant,
•      The warrant did not authorize search of the data contained on the laptop.

In light of the lack of probable cause and the unconstitutional manner in which law enforcement acquired the properties in question, the defense requests a *Mapp/Darden* hearing to determine the issues raised.

18.  The information contained in this motion is consistent with the information from the New York County case, and it raised all of the issues that petitioner now claims defense counsels overlooked.  Moreover, on October 2, 2006, Assistant District Attorney Byrne responded to petitioner's Omnibus motion and affirmed that all the material taken from petitioner's home was made available to defense counsel.  He wrote:

On September 27, 2006 defense counsel met with this prosecutor and detectives at the District Attorney's Office in Hauppauge, New York. At that time counsel was able to see all property seized from the defendant, and was able to listen to tapes of the defendant. At

this time the People offered to make copies of the tapes if counsel would provide blank cassette tapes. Furthermore, property seized pursuant to a New Jersey search warrant and the subsequent search of the defendant's vehicle was also shown to defense counsel. The only item that was not available at this meeting was a laptop computer that was seized from a New Jersey search warrant. This item is made available to defense counsel at any date time convenient for her to travel to the property section in Yaphank, New York.

As the court is aware the defendant has new counsel. The People were in the process of setting up a similar meeting with prior counsel, however, he was removed from the case by defendant. New counsel appeared on the case September 19, 2006, and within one week the People made available all property pursuant to CPL §240.20.

19. A.D.A. Byrne also responded to counsel's motion to suppress the physical evidence obtained via search warrant. A.D.A. Byrne maintained that the warrants were supported by probable cause and were, therefore, valid:

The People submit that the property recovered from defendant is admissible because it was seized pursuant to a valid search warrant. A presumption of validity attaches to a search warrant, which has already been tested by the issuing judge, thus simplifying the suppression court's task in determining whether the issuing judge could reasonably have concluded that probable cause existed. *People v Ortiz,* 234 AD2d 74. Thus, any property seized via a lawful search and seizure in which an issuing magistrate determined there was in fact probable cause for issuing a search warrant for the search and seizure of such place and property, should not be suppressed.

Further, the defendant moves this Court for an Order suppressing evidence pursuant to CPL §710.20. The People oppose the defendant's motion based on the fact that the defendant has failed to include sworn allegations of fact, which sufficiently support the relief requested.

A.D.A. Byrne also wrote that petitioner's motion was conclusory and failed to establish a reason to hold a suppression hearing.  Respondent's answer to the discovery issue is attached as an exhibit to our response to Whitehead's 2012 motion to vacate his judgment of conviction.

20.   On October 5, 2006, petitioner replied to the People's opposition to his omnibus motion.  In the reply counsel for petitioner argued that she had met with the prosecutor and detective to discuss the case but she disputed the extent and significance of the disclosure:

> If the People are aware of their obligations under CPL 240.20 as they claim, they should also be aware that attempting to provide the demanded material where they previously claimed non-existence is not a cure for their failure to disclose and produce. The fact that I met with Assistant District Attorneys as well as detectives assigned to this case on September 27, 2006, does not override the People's failure to disclose the information nor does this fact excuse their former claim that the information never existed. If the People could simply invite defense attorneys to view material they claim did not exist and then cite the meeting as a cure, particularly after counsel served a motion to preclude, then section 240.20 of the CPL would (1) be meaningless and (2) defense attorneys would simply avoid any meeting with the prosecution out-of-fear that such a meeting would defeat their preclusion motion.

> At the meeting I listened to tape recordings, of both males and females, and saw a mutilated identification card with my client's face on it. That is all the evidence I saw – nothing else. I also saw a chart created by Suffolk County detectives which can in no way be deemed evidence. I did not see any of the numerous mailings nor the three cellular phones that the People claim to possess in their Discovery Response. Furthermore, I did not have the opportunity to see the laptop computer that the People failed to disclose in their Discovery Response, that they now claim to have as evidence admissible on their case-in-chief.

21.   Defense counsel also argued that the motion to suppress should be granted because there was no probable cause to issue the warrant.

The People contend that a magistrate issued a search warrant therefore they necessarily had probable cause to arrest the defendant. However, they have not disclosed any evidence that could conceivably support the basis for probable cause which leads to one obvious conclusion-no probable cause existed. The only pre-arrest evidence is allegedly the defendant's fingerprint on a manila envelope/insurance card and alleged possession of a stolen Land Rover. Law enforcement observed the defendant leave his home, enter the Land Rover, and followed him into New York at which point they arrested him. The reason law enforcement needed to arrest the defendant in the Land Rover, the same vehicle Your Honor returned, is because they believed the vehicle was stolen. This erroneous belief (that the vehicle is stolen) is the same one law enforcement proffered to the issuing magistrate as a basis to support probable cause for arrest. I respectfully submit that had the issuing magistrate known that the vehicle is in fact free from any criminal activity, the Court would not have issued a warrant for a search of the vehicle and the defendant's arrest. Hence any subsequent evidence that flows from that warrant and the arrest should be precluded. It is important to note that I have requested a copy of any warrants issued in this case and the People have yet to comply with this demand. Where the police use a search warrant, the defense may obtain discovery of the warrant and the underlying application. *People v Chachine*, 150 Misc2d 242, 568 NYS2d 526 (City Crim Ct 1991*); People v Brown*, 104 Misc2d 157, 427 NYS2d 722 (City Crim Ct 1980).

The sufficiency of the factual allegations in a suppression motion should be evaluated by the face of the pleadings, the context of the motion and the defendant's access to information. Furthermore, a *Mapp* hearing was warranted where the defendant specifically denied his involvement in the crime that led to his arrest; a moving defendant does not need to raise an issue of fact as to every allegation put forth by the prosecution for a hearing to be ordered. *People v Bennett*, 240 AD2d 292, 659 NYS2d 260 (1st Dept 1997). Here, the defendant was driving a 2004 Land Rover, when law enforcement stopped the vehicle and arrested him. This allegation is sufficient to warrant a *Mapp* hearing and the People respectfully request suppression or in the alternative a hearing to address the issues aforementioned.

22.  On October 30, 2006, the motion for a *Mapp/Dunaway* hearing was denied because there was no factual predicate for a hearing.  The Court wrote that:

> Defendant further motioned for a *Mapp/Dunaway* hearing (*Mapp v Ohio*, 367 US 643, 81 S Ct 1684 [1961]); *Dunaway v New York*, 422 US 200, 99 S Ct 2248 [1979]) to determine whether there was sufficient probable cause for the defendant's arrest and seizure of evidence. The defendant did not submit an affidavit containing sworn allegations of fact (CPL 710.60). Instead, the defense attorney submitted an affirmation based on an inspection of the record, conversations with the assistant district attorney, and defense counsel's own investigation. The affirmation only alleged legal conclusions and conclusory allegations. The Court of Appeals stated in *People v Mendoza* (82 NY2d 415, 604 NYS2d 922 [1993]), that hearings are not automatic or generally available for the asking by boilerplate allegations. Rather, the Court is required to review the factual sufficiency of the motion with reference to the pleadings, the context of the motion and defendant's access to information. Here, the defendant's bare legal conclusion and conclusory allegations are fatal to the motion (*People v Mendoza, Id.*). To accept defendant's allegations (in their present form) would be in derogation of the aforementioned statute. Such an action on the Court's part would be legislative in nature and a patent violation of the venerable (yet still viable) maxim expression *unius est exclusion alterius*. Therefore, the defendant's application for a probable cause hearing and a hearing to suppress the physical evidence in this case is denied.

23.  Part of Ms. Russell's reply noted that the Land Rover, which she believed played a role in establishing probable cause for the search of petitioner's home, was returned because it was not stolen.  The order to return the Land Rover was, however, rescinded.  A copy of both orders – one returning and the second rescinding the return order – were made part of our response to the 2012 motion to vacate the judgment of conviction.

24.  A.D.A. Byrne represented the People until early December 2006, when he left the District Attorney's Office.  A.D.A. Pearl took over the case and he explained in a conversation that he believed that there was a disposition of this case at that time. According to A.D.A. Pearl,

he believed that petitioner would enter into a negotiated plea and sentencing disposition and he prepared for this for his first appearance on this case.  According to A.D.A. Pearl, defendant was to plead guilty to one felony and receive a one-year jail sentence.  The plea and sentencing deal was not completed, and A.D.A. Pearl reassessed the case in the light of appellant's decision not to plead guilty.

25.  Indictment 1159A-2006 was superseded by Indictment 539-2007.  Defendant was arraigned on the new indictment on February 28, 2007.  Also, on or about that date, Camille Abate replaced Ms. Russell as defendant's attorney.  It is also my understanding, based on a conversation with A.D.A. Pearl, that there was a sentencing offer from the court based on the new (final) indictment of 1 ½ to 3 years imprisonment, and that this offer was rejected by defendant.

26.  Ms. Abate requested discovery and a bill of particulars and, on April 11, 2007, we responded to her request.  Attached to our response was a list of 35 categories of items given to defense counsel, except that number 25 informed defense counsel that material obtained via search warrants was available for inspection at the District Attorney's Office:

> 25. Copies of items found on defendant's person, car, home and computer (**there are numerous items of evidence found as a result of the execution of various search warrants – all these items are reviewable at the District Attorney's Office at a time convenient to all parties**). (emphasis in original)

27.  Ms. Abate also moved for omnibus relief on or about May 25, 2007.  Our response to her motion was filed in early June 2007, and the response to the demand for discovery and bill of particulars was attached to the response as "Exhibit A."

28.   Whitehead had also been charged in New Jersey with receiving a .9-mm semi-automatic handgun that he knew was stolen property.   After speaking with New Jersey authorities, it is my understanding that Whitehead pleaded guilty to this charge on June 11, 2007, and that he has yet to be sentenced in that case.   Furthermore, it is my understanding that petitioner did not contest the search of his home, which led to the recovery of the weapon. Petitioner did not contest the search of his home in the jurisdiction that issued the warrant for that search.

29.   As a result of petitioner's pretrial motion practice, a combined *Wade* and *Huntley* hearing was held during November 2007.   Before the hearing began, petitioner asked to adjourn the hearing so that he could again hire new counsel.   His request was denied, the hearing was held and the Court reserved decision on the *Huntley/Wade* issues.

30.   On January 8, 2008, the parties returned to court and petitioner asked that the case be adjourned so that he could obtain new counsel (T.T., 1-8-08, p. 4-6).   The Court allowed petitioner one further adjournment – until February 4, 2008 (T.T., 1-8-08, p. 6).   At that time, an addition to the *Wade* hearing would take place (T.T., 1-8-08, p. 7).

31.   On February 4, 2008, petitioner retained Mr. Keahon to represent him on these charges and Ms. Abate was relieved as counsel for petitioner (T.T., 2-4-08, p. 2).   The identification hearing continued and after it concluded, a *Molineux* hearing was held (T.T., 2-4-08, p. 121-23, 124-53).   Additionally, prompted by a question by defense counsel whether the search warrant was addressed by prior counsel, the court noted that a request for a *Mapp/Dunaway* hearing had been denied (T.T., 2-4-08, p. 154-57).

32.   On February 5, 2008, additional preliminary matters were resolved.   Defense counsel asked for time and permission to file a motion directed to the sufficiency of the search warrant

(T. 3-31).    The Court denied this request (T. 4, 32).    The Court also ordered an additional hearing to determine if certain voicemail recordings would be admissible at trial (T. 4-12), received an *Antomarchi* waiver (T. 32-35), noted that *Rosario* material was turned over to the defense (T. 36-38), and indicated that *Sandoval* would be addressed later (T. 38-39).

33.    Also, on February 5th, the prosecutor moved to dismiss 23 counts of the 57-count indictment.  The remaining 34 charges were renumbered counts 1 through 34 and the wording of some charges was changed to conform to the renumbered charges (T. 14-26).  The Court noted that the renumbered charges were only for the presentation to the jury and that the court's records would refer to the original indictment numbers (T. 16).  Indeed, the Court referred to the original indictment when petitioner was sentenced on June 30, 2008.  Petitioner did not object to this procedure.

34.    Jury selection also began on February 5th (T. 40).   During breaks in the jury selection process, a hearing was held to determine if Nigel DeFrietas, Valerie Rodriguez, and Anita Bryant would be allowed to testify that they recognized Whitehead's voice on multiple voicemail introductions (You have reached …) (T. 141, 143 et seq.).   These messages were found on voicemail phone numbers rented from a firm – Aerobeep – that provided voicemail and mail box services (T. 144-45).  After the hearing, the court held that the identification procedures (having petitioner's friends listen to the taped messages) were merely confirmatory and the motion to suppress them was denied (T. 278-79).

35.    During this proceeding defense counsel noted that he had already made "20 motions" for mistrial before asking for one again (T.T., 3-17-08, p. 91-92).  He also moved to exclude and to redact documents obtained in defendant's home (T.T., 3-17-08, p. 95-118).  At no time during

the trial did defense counsel indicate that he was unaware of either the documents or items seized or the content of those documents.

36.   Petitioner was found guilty of 17 of the 34 charges, and on June 30, 2008 he was sentenced to serve an aggregate term of imprisonment of 10 to 30 years.

37.   Petitioner appealed and his judgment of conviction was affirmed with some minor modifications.  Leave to appeal to the Court of Appeals was denied.  See, *People v Whitehead*, 84 AD3d 1128 (2d Dept), *lv to app den,* 17 NY3d 823 (2011).  In his direct appeal, Whitehead argued, among other issues, that the trial court erred in allowing uncharged crime evidence and that the failure to remind a detective who had previously been sworn that he was still under oath was error.   The Appellate Division specifically held that the trial court properly admitted evidence of certain uncharged crimes and that the contention that the trial court erred when it failed to have a detective reminded that he was still under oath was not preserved for appellate review.

38.   Post-conviction petitioner separately moved to vacate his sentence and vacate his judgment of conviction.  Both of these motions were denied.  Defendant, *pro se*, also moved to reargue his appeal and this application was, likewise, denied.  These proceedings do not provide a basis for the present habeas corpus petition.

39.   In 2012, however, petitioner moved to vacate his judgment of conviction based on the allegation that he was denied the effective assistance of trial counsel.  Specifically, he maintained that trial counsel failed to promote the benefits of a guilty plea, failed to move to controvert the search warrant related to the search of his home, and failed to controvert the search warrant related to the examination of various electronic devices tied to appellant.  Finally, appellant argued that the court erred when it failed to grant defense counsel's eve of trial request

to controvert the search warrants.  Each of these claims was buttressed by the assertion that the prosecution failed to provide timely and full discovery, although there was no free-standing discovery claim.

40.  After we responded to the motion, it was denied on September 12, 2012:

> The Court notes further that Mr. Whitehead has appealed his conviction to the Supreme Court, Appellate Division, Second Department. He received a decision from that court hand has since applied for leave to appeal to the Court of Appeals, which leave has been denied. The instant application represents the third such motion brought pursuant to Criminal Procedure Law §440. CPL §440.10(2)(c) states:
>
> > …the court must deny a motion to vacate a judgment when:
> >
> > [c] Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.
>
> The purpose of those provisions is to prevent CPL §440.10 from being employed as a substitute for direct appeal when defendant was in a position to raise an issue on appeal or could have readily don so; *People v Cooks,* 67 NY2d 100 (1986). In the instant matter, we find this to be the case. Mr. Whitehead has not satisfied this Court that there exists an adequate reason that the issue was not raised for review by the appellate court.

41.  Whitehead, *pro se,* has petitioned for a writ of error coram nobis in the Appellate Division, Second Judicial Department.  The petition is currently pending. In that petition Whitehead argues that appellate counsel provided ineffective assistance on his direct appeal. Counsel on the direct appeal also filed this petition for a writ of habeas corpus.

42.  In this petition for a writ of habeas corpus, Whitehead maintains that he was denied the effective assistance of trial counsels.  This issue was raised on his 2012 motion to vacate his judgment of conviction.   The motion was denied and leave to appeal was also denied.  Petitioner's two other claims – regarding uncharged crime evidence (*Molineux* evidence) and Detective Gabriele re-taking the witness stand and continuing his testimony without being reminded that he was still under oath – were raised in the direct appeal and in petitioner's request for leave to appeal to the Court of Appeals of New York.  These claims are technically exhausted for the purposes of federal habeas corpus review.

43.  Nevertheless, the petition should be denied.  The claims of ineffective assistance of counsel and unsworn testimony were denied on adequate and independent state law procedural rules and are, therefore, procedurally defaulted.  The *Molineux* claim does not present a federal question, and Whitehead did not argue in the state courts that this error led to a denial of due process of law.  There is no merit to any of these claims.

44.  Attached as Exhibits are:[1]

1) Whitehead's motion to set aside the verdict in the New York County case;

2) Appellant's and Respondent's briefs from the direct appeal of the New York County case;

3) Petitioner's brief on direct appeal to the Appellate Division;

4) Respondent's brief on the direct appeal to the Appellate Division;

5) Petitioner's revised brief and reply brief on the direct appeal to the Appellate Division;

---

[1]   Because the transcript is voluminous, it is not attached as an exhibit to this Answer/Return. Instead, a hard copy of the transcript together with a CD of the transcript is submitted to this Court.

6) Appellate Division's decision affirming the judgment of conviction;

7) Application for Leave to Appeal to the Court of Appeals, Respondent's opposition, and Decision & Order denying leave to appeal;

8) Petitioner's first CPL §440.10 motion to vacate his judgment of conviction filed in 2010;

9) Respondent's answer to the 2010 motion to vacate the judgment of conviction;

10) Decision denying the 2010 motion to vacate the judgment of conviction ;

11) Petitioner's 2012 motion to vacate his judgment of conviction;

12) Respondent's answer to the 2012 motion to vacate the judgment of conviction; and

13) Decision denying the 2012 motion to vacate the judgment of conviction and Decision and Order denying leave to appeal to the Appellate Division.

WHEREFORE, the petition for a writ of habeas corpus should be denied.

I declare, under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct to the best of my knowledge.


DATED           February 15, 2013
                Riverhead, New York


                                    THOMAS J. SPOTA

                                    District Attorney of Suffolk County
                                    200 Center Drive
                                    Riverhead, New York  11901
                                    (631) 852-2500

                                    By:  MICHAEL J. MILLER (2206)
                                    Assistant District Attorney
                                    Of Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on 15th day of February 2013, the foregoing document was filed with the Clerk of the Court, and a hard copy was served in accordance with the Federal Rules of Civil Procedure and/or the Eastern District's Local Rules and/or the Eastern District's Rules on Electronic Service, upon the following parties and participants:

    James Kousouros, Esq.
    Attorney for Petitioner
    80-02 Kew Gardens Road
    Suite 1030
    Kew Gardens, New York  11415

                                        MICHAEL J. MILLER (2206)
                                        Assistant District Attorney

                                        Suffolk County District Attorney's Office
                                        Criminal Courts Building
                                        200 Center Drive
                                        Riverhead, New York  11901