# JAMES KOUSOUROS
### ATTORNEY AT LAW
~

260 Madison Avenue, 22nd floor, New York, NY 10016   Tel: 212•532•1934 Fax: 212•532•1939

80-02 Kew Gardens Road, Suite 1030, Kew Gardens, New York 11415   Tel: 718•575•5450 Fax: 718•793•0165

~

E-mail:james@kousouroslaw.com

June 15, 2011

Chief Judge Jonathan Lippman
New York State Court of Appeals
20 Eagle Street
Albany, New York 12207-0951

Re:   **People v. Lamar Whitehead**
     **Case No: 2008-07307**

Dear Judge Lippman:

Please accept this letter-petition for leave to appeal to the New York State Court of Appeals in the above-entitled matter.

This application arises from a judgment of conviction rendered in the County Court of the State of New York, Suffolk County on April 1, 2008, convicting petitioner, after a trial by jury, of the crimes of Scheme to Defraud in the First Degree (Count 1), Attempted Grand Larceny in the Second Degree (Count 10), Identity Theft in the First Degree (Counts 3, 4, 8, 9, 11, 12, 14, 15, 17, 18, 21, 24 and 27) and Identity Theft in the Third Degree (Counts 5 and 16) . This followed a jury trial at which Mr. Whitehead was acquitted of seventeen of the thirty four charges against him and convicted of seventeen of the thirty four charges against him. Mr. Whitehead was sentenced to an indeterminate term of ten to twenty years of imprisonment and is currently serving this sentence.

Timely notice of appeal was filed by petitioner with the Appellate Division, Second Department on July 16, 2008. Thereafter appellant filed his brief and appendix in May, 2010. The respondent's brief and appendix were filed on or about December 2010. On or about May 17, 2011, the Second Department court issued a decision affirming the convictions, however, modifying the judgment by: 1) adding a provision directing that the sentence for Scheme to Defraud in the First Degree [Count 1] of the indictment is to run concurrently with the sentence on all other counts, and 2) adding a provision directing that the sentences for Identity Theft in the First Degree [Count 12] of the indictment and Attempted Grand Larceny in the Second Degree [Count 14] of the indictment run concurrently with each other.

We respectfully submit that the following issues are appropriate for consideration by the Court of Appeals. We enclose herewith the following exhibits for the Court to review:

- Brief for Lamar Whitehead
  Supreme Court, Appellate Division Second Department

- Appendix (Volumes 1 through 10)
  Brief of Respondent
  Supreme Court, Appellate Division Second Department

- Reply Brief for Lamar Whitehead
  Supreme Court, Appellate Division Second Department

- Decision and Order
  Supreme Court, Appellate Division Second Department
  Issued May 17, 2011

- Affidavit of Service

2

**Point One [Point One In Appellant's Initial Brief]**

The Evidence Introduced As To Counts 4, 8, 12, 14, 17, 18, 21, 24, and 27 (Identity Theft in the First Degree) Was Insufficient To Prove The Predicate Crime Of Attempted Grand Larceny in the Third Degree.

The petitioner was convicted of nine counts of Identity Theft in the First Degree pursuant to the provisions of P.L. §190.80(3). This statute sets forth, inter alia,

> A person is guilty of identity theft in the first degree when he or she knowingly and with intent to defraud assumes the identity of another person by presenting himself or herself as that other person, or by acting as that other person or by using personal identifying information of that other person, and thereby . . .
>
> (3) commits *or attempts to commit* a class D felony or higher level crime or acts as an accessory in the commission of a class D or higher level felony.

Penal Law 190.80 (3); (Emphasis Added).

In the instant case, the predicate felony for Counts 4, 8, 12, 14, 17, 18, 21, 24, and 27 was Attempted Grand Larceny Third Degree, and the conduct underlying this charge, as evidenced both by the facts adduced at trial and by the trial court's charge to the jury, was the filing of an application for a loan while assuming the identity of another.

The statutory definition of Grand Larceny in the Third Degree is generic:

> A person is guilty of grand larceny in the third degree *when he or she steals property* and . . .
>
> 1. when the value of the property exceeds three thousand dollars;

Penal Law § 155.35 (emphasis added)

Penal Law § 155.05, whose terms unquestionably apply to the crimes charged in the instant case, further elucidates the parameters of the completed crime.

3

1. A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.

2. Larceny includes a wrongful taking, obtaining or withholding of another's property, with the intent prescribed in subdivision one of this section, committed in any of the following ways:

(a) By conduct heretofore defined or known as common law larceny by trespassory taking, common law larceny by trick, embezzlement, or obtaining property by false pretenses;

The final piece of the salient statutory framework is the definition of attempt found in Penal Law § 110.00, which details that an attempt is committed " . . . when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime."

As might well be expected, the courts have looked beyond the vague terms of Section 110.00 in articulating a viable definition for the attempt to commit a crime. As a consequence, the standard for determining whether a particular act rises to the level of an attempt is well settled. "The act need not be 'the final one towards the completion of the offense'... but it must carry the project forward within dangerous proximity to the criminal end to be attained.' " **People v. Bracey**, 41 NY2d 296 (1977). The requirement of "dangerous proximity" means that "[t]he act or acts must come or advance very near to the accomplishment of the intended crime' **People v. Rizzo**, 246 NY 334, 337 (1927) (emphasis added). The **Rizzo** "dangerous proximity" rule sets a much more daunting standard than the Model Penal Code "substantial step" test adopted by some Federal courts (see, e.g., **United States v. Jackson**, 560 F2d 112 (2d Cir.), cert. denied 434 US 941); **People v. Acosta**, 80 NY2d 665, 670 (1993); **People v. DiStefano**, 38 NY2d 640 (1976).

Factors considered when determining whether someone has attempted to commit a crime are (1) the temporal and geographic proximity between the act and the object crime,

4

(2) the existence of "several contingencies" standing between the act and the object crime, **People v. Warren**, 66 NY2d 831, 833 (1985), and (3) the remoteness or immediacy of the act in relation to that crime. **People v. Rizzo**, *supra*, 246 NY at 337. The necessity of further steps for completion of the crime and the possibility of abandonment or renunciation are also factors to be considered in evaluating whether conduct has come "dangerously close" to success. **People v. Mahboubian**, 74 NY2d 174, 190 (1989).

In **People v. Rizzo**, 246 NY 334 (1927), this Court held that "[a]n act in order to be criminal attempt must be immediately and not remotely connected with an [act] directly tending to the commission of an offense." *supra*, at 337 (emphasis added). This Court explained further:

> The line has been drawn between those acts which are remote and those which are proximate and near to the consummation. The law must be practical, and therefore considers *those acts only as tending to the commission of the crime which are so near to its accomplishment that in all reasonable probability the crime itself would have been committed, but for timely interference.*

**Id**. (emphasis added)

The Court explained its analysis in terms which resonate to the facts in the instant matter:

> The crime of attempt to commit robbery was committed, if these defendants did an act tending to the commission of this robbery. Did the acts above described come dangerously near to the taking of [the victim's] property? Did the acts come so near the commission of robbery that there was reasonable likelihood of its accomplishment but for the interference?

246 N.Y. at 338.

Applying the **Rizzo** analysis to the facts of the instant matter, it is clear that petitioner did not come dangerously near committing any of the attempt crimes for which

5

he was convicted. Indeed in this case, the preliminary act of simply submitting the application only triggered myriad requirements of other acts necessary by the applicant with strict time requirements imposed for moving forward with the loan application. If these requirements were not met, the application was deemed abandoned.

The factual mechanism of the conduct underlying the Attempted Grand Larceny counts in this case was complex, nuanced and required several significant steps for completion. As the alleged thefts involved the procurement of loans to purchase items, an application was first required for the credit and for the loan. This application had to be reviewed and then preliminarily approved by the financial institution. The financial institution then had to make a more thorough assessment of the application, at which time additional documentation such as a driver's license, proof of residence and employment would be required. After these significant steps, the financial institution would make a final determination as to the integrity of the credit of the applicant. Once done, the financial institution would then issue a check which could then be presented to a vehicle dealership or individual selling a vehicle. This check then had to be accepted by the seller, and then a final review of the loan was necessary prior to its being funded. Finally, the vehicle had to actually be provided or the funds had to actually be transferred for the theft to be complete. In this case, however, on the counts of conviction herein challenged, the applications were denied in the very first instance, thereby foreclosing the commission of the substantive crime. This summary denial kept the initial act remote from the additional contingencies which lay squarely between that initial preparatory step and completion of the larceny.

In addition, this Court has ascribed significance to the question of whether an act goes to the extent of placing it in the power of a person to commit the offense unless interrupted. If nothing but interruption prevents the commission of the offense, such conduct may go sufficiently beyond mere preparation and amount to overt acts intentionally done toward the commission of the offense, so as to constitute an attempt.

6

**People v. Acosta**, 80 NY2d 665 (1993);  **People v. Mahboubian**, 74 NY2d 174 (1989);
**People v. Warren**, 66 NY2d 831 (1985) **People v. Sobieskoda**, 235 NY 411, 418 (1923).

In this case, the defendant committed no act that placed it within his power to commit these offenses.   There was no timely interference by law enforcement which forestalled completion.   Instead, the rejection of the loan applications, solely within the control of the financial institutions, kept the conduct in the preparatory phase, remote from the additional steps necessary to bring it "dangerously close" to completion. While the acts taken by an accused need not be the final act necessary to complete the crime, it is required that the action taken by an accused be "so near to its accomplishment that in all reasonable probability the crime itself would have been committed, but for timely interference." **People v. Mahboubian**, *supra*, 74 NY2d at 196 (Titone, J., *concurring in part, dissenting in part quoting from* **People v. Rizzo**, *supra* at 337).   Additionally, to support a finding of Grand Larceny in the Third Degree, ownership and value had to be proven beyond a reasonable doubt (**People vs Colon** 12 AD3d 689 2d. Dept. 2004) In this case at bar, Attempted Grand Larceny in the Third Degree was an essential element under 190.80 (3) which requires the commission of class D or higher level felony.   As such, sufficient evidence of a value in excess of $3000.00 was necessary.

The Appellate Division did not address this issue on the merits and found that the issue was unpreserved.  As pointed out in petitioner's reply brief, a motion based upon the People's failure to prove the elements of each crime beyond a reasonable doubt was made and thus preserved this issue (See, Transcript, March 26, 2008, pages 105-106). As such, the issue was proper for appellate consideration and we submit the legal questions embodied in this claim are appropriate for review by this Court.

**Point Two [Point Two In Appellant's Initial Brief]**

As Submitted, Counts in this Indictment Were Duplicitous And it Is Impossible to Ascertain Whether The Jury Reached a Unanimous Verdict Concerning the Same Conduct for Several Counts.

In a criminal case, a defendant is entitled to a unanimous verdict as to each crime he is charged with violating. N.Y. Crim. Proc. Law § 310.80 (McKinney 2002); **People v. Archer**, 238 A.D.2d 183, 183-84 (1st Dept. 1997); **People v. Shaughnessy**, 286 A.D.2d 856, 857 (4th Dept., *lv. to appeal denied*, 97 N.Y.2d 688 (2001). A defendant's right to a unanimous verdict is violated where " 'it is impossible to ascertain ... whether different jurors convicted [the] defendant based on different acts.' " **Shaughnessy**, 286 A.D.2d at 857. As this Court held in **People v. Keindl**, 68 N.Y.2d 410, 509 N.Y.S.2d 790 (1986):

> [t]he prohibition against duplicity ... ensures the reliability of the unanimous verdict. If two or more offenses are alleged in one count, individual jurors might vote to convict a defendant of that count on the basis of different offenses; the defendant would thus stand convicted under that count even though the jury may never have reached a unanimous verdict as to any one of the offenses.

**Id.** at 418.

Moreover, when a count in an indictment potentially covers more than one offense, rendering it facially duplicitous, it is incumbent upon the trial court, in its instructions to the jury, to assign a specific offense to a specific count. **People v. Archer**, 238 A.D. 2d at 183; **People v. Jones**, 233 A.D.2d at 342. A court's failure to do so constitutes reversible error and requires dismissal of the flawed count or counts. **Archer**, 238 A.D. 2d at 183; **Jones**, 233 A.D.2d at 342; **People v. Jones**, 251 A.D.2d 350 (2nd Dept. 1998); cf. **People v. Cummings**, 249 A.D.2d 38 (1st Dept. 1998).

These points are cogently illustrated in **People v. Archer**, *supra*, wherein the defendant was charged with three counts of third-degree criminal possession of a weapon.

8

**Archer**, 238 A.D. 2d at 183. Three separate guns were involved in the case and none of the weapon-possession charges specified to which gun they applied. **Id.** As did the court below here, the trial court failed to assign a specific gun to a specific count; the jury thereafter convicted the defendant of one of the counts. **Id.** Since none of the charges in the indictment indicated the offense to which it applied, each charge was duplicitous. **Id.** at 184. Moreover, because, as here, the court failed to link each charge to a specific weapon (i.e., a specific offense), it was therefore impossible to determine, on appeal, whether the jury unanimously convicted the defendant of the same offense.  As a consequence, the conviction was reversed.

In the case before this Court, the indictment upon which petitioner was tried contained numerous counts which were differentiated only by their dates. These dates were extremely close to one another and were described as approximate dates using the language "on or about." For example, Counts 3 and 4 alleged that the defendant committed acts constituting identity theft "on or about February 15, 2005" and "on or about February 17, 2005" respectively.  In addition, many of the counts of the indictment were differentiated only by an exclusionary phrase that the conduct in the count was "other than as alleged in [the prior count]."  In its instructions to the jury, the trial court grouped together all offenses charged under any given section of the Penal Law and defined the elements necessary to establish a violation of that section, but, like the indictment, provided no information which could have been used to differentiate between charges with overlapping dates and conduct. As such it is now impossible to determine the jury's unanimity or lack thereof as to the verdicts on these counts.

The trial court's failure to adequately instruct the jury resulted in "a fundamental defect in the jury verdict." **People v. Scott**, 159 A.D.2d 975, 97 (4th Dept. 1990). Where unanimity of the verdict cannot be ascertained, a defendant's conviction must be reversed. **Archer**, 238 A.D.2d at 183-84; **Shaughnessy**, 286 A.D.2d at 857; **Payne**, 241 A.D.2d at

9

467.

In addition, this *de facto* merging of identical counts, distinguished only by parenthetical language, evokes the very dangers identified by the **Archer-Jackson** line of case. In addition, the results in this case are the realization of the proposition that where a jury convicts a defendant of certain counts of an indictment and acquits on other identically worded counts, the conviction on all counts must be reversed because appellate review of the conviction is impossible, without implicating the prohibition against double jeopardy. **People v. Sykes**, 22 N.Y.2d 159 (1968); **People v. George,** 255 A.D.2d 881 (4th Dept. 1998); **People v. Ball**, 231 A.D.2d 853 (4th Dept. 1996); **People v. McNab**, 167 A.D.2d 858 (4th Dept. 1990); **People v. Caliendo**, 158 A.D.2d 531 (2nd Dept. 1990).

While the duplicitousness of the counts has not been preserved for review, courts have chosen to review this type of error in the interest of justice because of the "fundamental" taint involved. **People v. Archer**, 238 A.D. 2d at 184; **People v. Jackson**, 174 A.D.2d at 446; **People v. Payne**, 241 A.D.2d 466. Because the taint that occurred in this case was no less fundamental than that in **Archer**, **Jackson**, or **Payne**, we urge review of this issue in the interest of justice. Clearly this is an issue for which clear and unequivocal direction is required so as to avoid such a fundamental miscarriage of justice in the future.

### Point Three [Point Four In Appellant's Initial Brief]

The Court Erroneously Received Evidence of Uncharged Crimes.

The trial court permitted the prosecution to elicit evidence from two witnesses, Katherine Reid and Brenda Ridenour, Anita Bryant to the effect that they had not given permission and authority to petitioner to utilize their respective names and identities. This was related to certain documents reportedly recovered, whose possession was attributed to petitioner. Neither of these women was a "charged" victim, nor did the prosecution

10

identify any recognized purpose for introducing such evidence. Although strenuously objected to by the defense, the court gave no contemporaneous instruction to the jury regarding the purpose for which the evidence was received.

A criminal defendant is entitled to have the jury determine his guilt or innocence solely upon evidence tending to prove the crime charged and uninfluenced by irrelevant and prejudicial facts and circumstances. **People v. Cook**, 42 N.Y.2d 204, 208 (1977).  This rationale for disallowing proof of uncharged crimes is rooted in the fear that the jury might more readily convict, even absent proof beyond a reasonable doubt, where it is led to believe that the defendant has previously committed a similar crime. **People v. Ely**, 68 N.Y.2d 520, 529 (1986); **People v. Molineux**, 168 N.Y. 264, 313 (1901).  Given "the human tendency more readily 'to believe in the guilt of an accused person when it is known or suspected that he had previously committed a similar crime,' "evidence of uncharged criminal or immoral conduct is not admissible if its "sole purpose is to show that the defendant was predisposed to commit the crime charged." **People v. Ventimiglia**. 52 N.Y.2d 350, 359 (1981); **People v. Allweiss**, 48 N.Y.2d 40. 46 (1979). Unless it can be shown as a threshold matter that the proffered evidence is relevant to some valid issue, and not just to criminal propensity, the evidence must be excluded as a matter of law. **People v. Hudy**, 73 N.Y.2d 40, 55 (1988); *see also* **People v. Alvino**, 71 N.Y.2d 233 (1987); **People v. Molineux**, *supra*, at 293.

Even after the threshold showing of relevancy has been met, a court still must exclude evidence of uncharged crimes or bad acts when the probative value of the evidence is outweighed by its prejudicial effect. *See* **People v. Till**, 87 N.Y.2d 835 (1995); **People v. Hudy**, 73 N.Y.2d at 55.

Weighing probative value against prejudice "is a delicate business," as there always is the danger that the evidence will "improperly divert the jury from the case at hand,"

11

resulting in improper prejudice and an unfair trial. **People v. Resek**, 3 N.Y.3d 385, 389 (2004). The standard used to determine when the probative value of the evidence outweighs its potential for prejudice is that the evidence must be "directly probative" such that the evidence sought to be admitted is "inextricably interwoven" with the crime to be proved. **People v. Vails**, *supra*. Thus, the evidence must be explanatory of the acts done or words used in the otherwise admissible part of the evidence and reference to the other crime must be intrinsic to the presentation of the evidence of the crime to be proved such that the value of the evidence clearly outweighs any possible prejudice. **People v. Vails**, *supra*.

Materiality and necessity are the key factors in the determination of to what degree the evidence is inextricably interwoven. **People v. Ventimiglia**, 52 N.Y.2d 350, 359 (1981). Critically, the evidence must be fundamentally necessary to the People's case and not merely cumulative. **People v. Ely**, *supra* at 531, *citing* **People v. Robinson**, 68 N.Y. 2d 541; **People v. Ventimiglia**, *supra* at 361).

In the instant case, the extraneous evidence was manifestly unnecessary to the presentation of the prosecution's case. There was a significant quantity of evidence presented by the prosecution for the charged counts. As such, the evidence of uncharged crimes (Katherine Reid, Brenda Ridenour, Anita Bryant) could in no fashion be classified as essential to the prosecution's prima facie case. Indeed, given the wealth of evidence relating to the charged offenses, this other proof would seem to embody the concept of cumulative evidence. As a result, the prosecution put before the jury evidence that was neither material nor necessary but which served only to prejudice appellant by suggesting his propensity for the very type of crime contained in the charged counts. **People v. Ventimiglia**, *supra*.

12

Moreover, even if there was some faintly discernable probative value to the proof, it was far outweighed by potential for the jury to see it as nothing more than evidence of the defendant's propensity for fraudulent, document-generated crimes.

Despite the clear genesis of the **Molineux** rule, we submit that, as in the instant case, there has been a gradual but concrete judicial shift towards an inclusionary approach, where it becomes incumbent upon the defense to dispel the court of the presumptive admissibility of the evidence. This trend stands in stark contrast to the remonstration of this Court in **People v. Resek**, 3 N.Y.3d 385, 390 (2004).  The court warned that its prior decisions:

> should not be interpreted as automatically allowing the prosecution to introduce evidence of uncharged crimes *merely because the evidence is said to complete the narrative or furnish background information*. On the contrary, under our Molineux jurisprudence, we begin with the premise that uncharged crimes are *inadmissible and, from there, carve out exceptions.*

(Emphasis added).

Due to the extremely prejudicial nature of uncharged crimes evidence, courts have recognized the limited value of even prompt, complete cautionary instructions after the improper elicitation of such evidence. *See* **People v. Matthews**, 68 N.Y.2d 118, 122 (1986); **People v. Ventimiglia**, 52 N.Y.2d at 362; **People v. Stanard**, 32 N.Y.2d 143, 148 (1973); **People v. Barranco**, 174 A.D.2d 343, 344-45 (1st Dept. 1991); **People v. Gautier**, 148 A.D.2d 280, 285-88 (1st Dept. 1989).  Where, as here, the instructions given by the trial court were so generic as to not inform as to the purpose of the receipt of the evidence, they were not of a type to cure the prejudice caused by submission of that evidence to the jury.

We submit that this Court should address this issue and provide the clear demarcation necessary to avoid the unwarranted judicial shift towards inclusion of otherwise inadmissible evidence of uncharged crimes.

### Point Four [Point Three In Appellant's Initial Brief]

Testimony Of A Competent Witness Over the Age of Twelve Was Received Without Giving the Defendant the Safeguard of a Testimonial Oath.

The People's main law enforcement witness, Detective Gabriele, concluded his initial testimony on February 28, 2008. Over the following two weeks the jury heard from 19 witnesses. Detective Gabriele returned to provide the second half of his admittedly bifurcated testimony on March 14th, 2008. The testimonial oath was not re-administered on March 14th, 2008 nor was the detective even reminded that he was under an oath administered two weeks prior. The Appellate Division, Second Department held that the failure to object to the "detective's unsworn testimony served to waive any argument that the testimony was not properly admitted" citing, **Matter of Brown v. Ristich**, 36 N.Y.2d 183, 189. We respectfully submit that this holding was in error and that on its merits, this is an issue not previously addressed by this Court and, as such review is in order.

There can be no dispute that our Constitutions, both State and Federal, require that prior to taking testimony in a criminal proceeding, an oath must be properly administered to the witness. Criminal Procedure Law Section 60.20 requires that any competent witness over the age of twelve be sworn prior to testifying. The requirement for the oath assures the fundamental integrity of a criminal proceeding for which a person's liberty is at stake and in this regard its purpose is two-fold. The oath serves to foster the moral suasion to tell the truth and to assure the viability of a perjury prosecution should false testimony be given (**People v Copeland**, 70 A.D. 2d 884 (2d Dept. 1979). Every criminal defendant has the constitutional right to presume that the witnesses against him will be duly sworn and thus constrained by the precepts for which the oath is constitutionally mandated. This

14

constitutional right cannot be waived unless said waiver is knowing, voluntarily and intelligently waived *See* (**Johnson v. Zerbst**, 304 U.S. 458 (1938)). This oath is a fundamental requirement of paramount importance which cannot be overlooked in any instance and an accused can never be subjected to the loss of liberty through testimony for which the oath is not properly administered (**People v. Parks,** 41 N.Y.2d 36 (1976)). The receipt of unsworn testimony has been held to violate Due Process (**People v Copeland**, *supra*) and grounds for automatic reversal (**People v. Peters**, 71 A.D. 2d 641 (2d Dept. 1970).

As even the People have not disputed that the oath was not re-administered to Detective Gabriele on March 14, 2008, this failure, *a fortiori*, constituted a defect in the proceedings, which we submit, affected the fairness and integrity of the trial in violation of CPL Section 60.20 and the State and Federal Constitutions (4th, 5th, 6th and 14th Amendments) (**People v. Coons,** 552 N.Y.S.2d 94 (1990)); People v. Martin, 808 N.Y.S.2d 865 (4 dept 2006) **People v. McClean** 905 N.Y.S.2d 536 (2010); *See:* **People v. Parks**, *supra*; **People v Copeland**, 70 A.D. 2d 884 (2d Dept. 1979).

The Appellate Division, instead of deciding this issue on its merits, held that the failure to object to the unsworn testimony served as a waiver citing **Matter of Brown v Ristich**, 36 N.Y.2d 189 (1975). We respectfully submit the receipt of unsworn testimony was an error requiring reversal and that **Ristich** does not support the conclusion reached by the Appellate Division.

**Ristich** involved the admission of unsworn testimony from a victim and another mentally retarded patient in an administrative disciplinary proceeding. The Appellate Division originally reversed and held that reliance upon the unsworn testimony denied the petitioner of a fair hearing. This Court reversed and held that "in an *administrative hearing such as this where the administration of the oath would be unavailing for the*

15

***purpose for which an oath is normally administered***, unsworn testimony may be received" provided that the hearing officer were to find that the witness possessed the requisite testimonial capacity (id. *emphasis added*).  This Court made clear in **Ristich** the seemingly isolated application of the holding to the peculiar circumstances extant in that case.  Essentially in dealing with witnesses whose competence was clearly impaired, the more salient inquiry was the hearing officer's determination that the witness possessed testimonial capacity apart from the ability to participate in the process of being sworn. The Court further held that again, within the context of an institutional setting as existed in **Ristich**, policy considerations supported the holding "since the right to complain of treatment may not be denied on the basis of inability to conceptualize the nature of the oath" (id.).  As such, given the foundation elicited by an expert as to the testimonial capacity of the witnesses, this Court held that the testimony was properly received.

The facts herein are clearly distinguishable.  This was a criminal matter for which this petitioner was facing, and based in large part on the unsworn testimony in issue, is serving, a sentence of ten to twenty years in prison.  Clearly the oath in this criminal matter cannot be characterized as "unavailing for the purpose for which an oath in normally administered" as Detective Gabriele was a competent adult able to comprehend the oath and its attendant purpose – to wit; to provide for a perjury prosecution in the event of purposeful mistruths. CPL 60.20 provides an absolute bar against any witness over the age of 12 from testifying without first taking an oath (**People v. Vasquez**, 464 N.Y.S. 2d 686. Upon taking an oath or affirmation an individual is transformed from speaker to witness and as such, bare and unsworn assertions  are elevated from conversation to testimony, the cornerstone of our criminal justice system upon which we rely in matters of paramount importance to both prosecution and defendant.  Failure to swear a witness cannot be dismissed as a mere irregularity which may be waived.  This is an issue of constitutional magnitude and a right for which silence by counsel cannot serve as a waiver by the defendant (*See*, **Barnaby v. Coreman Inc.** 25 Misc. 3d 855, 890 N.Y.S. 2d 291 (2009).

16

To the extent that the Appellate Division based it's holding that petitioner waived the argument based upon **Ristich** and mention therein of C.P.L.R. Section 2309.05 we respectfully submit that the application of the C.P.L.R. was inappropriate as applied to a criminal matter (*See*, **People v Silva**, 122 A.D. 2d 750 (1st Dept. 1986); **People v. Digianni**, 2010 N.Y. Slip Op 50683U; 27 Misc. 3d 1211A; 910 N.Y.S.2d 407; **People v. Fevziekinici** 743 N.Y.S. 2D 651 (Sup. 2002). There can be no dispute that the Criminal Procedure Law, under Section 60.20 governs this issue and is thus not silent on the requirement that the oath be administered. As stated, *supra*, unless a defendant properly waives this right, counsel's silence cannot operate as a waiver.

Two issues are presented relative to the unworn testimony in issue herein. We submit that the testimony of Detective Gabriele from March 14, 2008 was unsworn and this was a defect which affected the fundamental integrity of the proceedings and should have been considered on its merits by the Appellate Division. This is, we submit, an issue of first impression on its specific facts and one which this Court should address. Indeed any judicial direction away from the necessity of the proper administration of the oath in a criminal case is of paramount importance and thus proper for this Court's consideration. Second, we submit that the application of civil doctrine to resolve an issue for which the Criminal Procedure Law is not silent should also be addressed by this Court.

Wherefore, based upon the foregoing, we respectfully request that this Court grant leave to appeal the decision of the Appellate Division, Second Department, and for such other and further relief as the Court may deem necessary and proper.

17

Respectfully submitted,

JAMES KOUSOUROS

CC:   Clerk of the Court
New York State Court of Appeals

Michael Miller
Assistant District Attorney

Lamar Whitehead

# COUNTY OF SUFFOLK
## OFFICE OF DISTRICT ATTORNEY



### THOMAS J. SPOTA
#### DISTRICT ATTORNEY

July 18, 2011

Hon. Robert S. Smith
Judge of the Court of Appeals
Court of Appeals Hall
20 Eagle Street
Albany, New York  12207-1095

Re:   *People v Lamar Whitehead*
      Application for leave to appeal

Dear Judge Smith:

Lamar Whitehead seeks permission to appeal to the Court of Appeals from a Decision and Order of the Appellate Division, Second Judicial Department, dated May 17, 2011.  *People v Whitehead*, 84 AD3d 1128 (2d Dept 2011).  The Appellate Division affirmed the judgments of conviction, but modified Whitehead's sentence.  We maintain that leave to appeal should not be granted both because the issues raised are unpreserved for appellate review and because they present no question of law that ought to be reviewed by this Court.  See, CPL §§ 450.90 and 460.20.

After a jury trial, Whitehead was found guilty on 17 of the 34 charges contained in the indictment.  He was convicted of one count of Scheme to Defraud in the First Degree (PL §190.65[1]), one count of Attempted Grand Larceny in the Second Degree (PL §§ 110.00 and 155.40), thirteen counts of Identity Theft in the First Degree (PL §190.80[1]), and two counts of Identity Theft in the Third Degree (PL §190.78).  Whitehead was sentenced on June 30, 2008 to serve an aggregate term of imprisonment of ten (10) to thirty (30) years.

Whitehead's brief in the Appellate Division contained nine points.  Three of the nine points related to sentencing and the Appellate Division effectively reduced Whitehead's sentence by holding that concurrent sentences were appropriate in two specific instances.  *Whitehead*, 84 AD3d at 1129, 1131.  From the non-sentencing issues, Whitehead now highlights four that he submits warrant review by the Court of Appeals.

First, he maintains that the identity theft charges cannot be sustained because his actions did not rise to the level of an attempt to commit grand larceny through the use of another person's

identity.  Under his theory, assuming another person's identity in order to file fraudulent loan applications is mere preparation to commit grand larceny.  Whitehead, however, did everything necessary to commit these crimes and, but for the diligence of various loan officers, his crimes would have been successful.  Thus, in response to Whitehead's claim, we argued both that this issue was not preserved for appellate review and that it was meritless.  The Appellate Division found that this issue was not preserved for appellate review and declined to reach it through the exercise of its interest of justice jurisdiction.  *Whitehead*, 84 AD3d at 1131.  This claim should not, therefore, be reviewed by the Court of Appeals both because it is not preserved for review and because it is without merit.

Second, Whitehead argues that the charges against him were not sufficiently differentiated, which makes it impossible to ascertain whether the jury voted unanimously to convict on any one of the particular charges.  He further alleges that this error precludes adequate appellate review.  This issue is also unpreserved for review and meritless.

Appellate review is unavailable because Whitehead not only did not object to the charge as given, he also affirmatively lobbied against any reference that would "marshal" the evidence (3/26/08 at 225; 3/27/08 at 2, 7-8, 10-12).  Whitehead affirmatively prevented the trial court from relating such count in the indictment to specific conduct by Whitehead.  This not only failed to preserve the issue for review, it also effectuates a waiver of the issue.  *People v Greenberg*, 89 NY2d 553 (1997) (failure to request change of venue acts as waiver).  Furthermore, the testimony, exhibits and arguments presented to the jury provided a clear basis to distinguish among the charges.  The Appellate Division declined to review the claim because it was not preserved for review.  *Whitehead*, 84 AD3d at 1131.

Third, Whitehead maintains that the trial court erred when it allowed evidence about other bad acts to be presented to the jury.  In the Appellate Division, we argued that parts of Whitehead's *Molineux* claim were not preserved for review.  We also argued that the trial court's rulings were correct, essentially because the limited *Molineux* evidence was used to either explain the scope of Whitehead's hydra-headed fraudulent activity or to eliminate a potential defense to the charges.  For example, Ms. Ridenour's brief testimony was the counterpart to her ex-husband's testimony and it obviated any possibility that his testimony alone was insufficient to show that Whitehead misused the Ridenour name.  Similarly, Ms. Reid's altered W-2 form – found in Whitehead's home – illustrated the cut and paste method Whitehead used to alter documents.  The Appellate Division held that the County Court properly admitted testimony about the uncharged crimes and that its probative value outweighed any possible prejudice.  *Whitehead*, 84 AD3d at 1120.  This factual/evidentiary issue presents no novel legal theory and it falls well within the mainstream of decisional authority regarding *Molineux*.  As such, it presents no question of law that ought to be reviewed by this Court.

Fourth, Whitehead argues that a witness – a police detective – was not reminded that he was under oath when he resumed his testimony after about a two-week hiatus.  Detective Gabriele testified on six different days and was reminded that he was under oath on five of those days.  On the day that the warning was not given, Whitehead made no complaint about the procedure.  Respondent, therefore, argued that the issue was not preserved for review and that there was

abundant testimony other than the single day of Detective Gabriele's testimony, that established Whitehead's guilt. After all, unsworn testimony may be heard by the jury provided that the sworn testimony provides an adequate basis for conviction. *People v Groff*, 71 NY2d 101 (1987) (unsworn testimony of child victim sufficiently corroborated to establish commission of crime).

The Appellate Division held that there was no merit to the unsworn witness claim and that the issue was waived:

> The defendant's contention that reversal of his conviction is required because of the County Court's failure to have a detective re-sworn before he continued his testimony on one trial date is without merit. The defendant's failure to object to the detective's unsworn testimony served to waive any argument that the testimony was not properly admitted (*see Matter of Brown v Ristich*, 36 NY2d 183, 189 [1975]).

*Whitehead*, 84 AD3d at 1130. The Appellate Division decision is correct, Whitehead waived this issue (and it is meritless) and there is, therefore, no question of law that ought to be reviewed.

Respondent submits that the Appellate Division correctly decided the issues in this case and that leave to appeal should not be granted.

Very truly yours,


MICHAEL J. MILLER
Assistant District Attorney
Appeals Bureau

Cc:   James Kousouros, Esq.
       260 Madison Avenue – 22nd Floor
       New York, New York  10016


MJM: ks



# State of New York
# Court of Appeals

BEFORE:  HON. ROBERT S. SMITH,
_____ Associate Judge

THE PEOPLE OF THE STATE OF NEW YORK,

Respondent,

-against-

LAMAR WHITEHEAD,

Appellant.

**ORDER
DENYING
LEAVE**

Appellant having applied for leave to appeal to this Court pursuant to Criminal Procedure

Law § 460.20 from an order in the above-captioned case;*

UPON the papers filed and due deliberation, it is

ORDERED that the application is denied.

Dated: *August 4, 2011*
*New York, NY*

_____
Associate Judge

*Description of Order:  Order of the Supreme Court, Appellate Division, Second Department,
entered May 17, 2011, modifying a judgment of the County Court, Suffolk County, rendered
June 30, 2008, by (1) adding a provision directing that the sentence for scheme to defraud in the
first degree under count 1 of the indictment is to run concurrently with the sentences on all other
counts, and (2) adding a provision directing that the sentences for identity theft in the first degree
under count 12 of the indictment and attempted grand larceny in the second degree under count
14 of the indictment run concurrently with each other; affirming the judgment as so modified.