COUNTY COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK: PART 7

————————————————————————x

PEOPLE OF THE STATE OF NEW YORK,

           - against -                                 **NOTICE OF MOTION**

                                                     Ind. No: I539-07

LAMAR WHITEHEAD,

                        Defendant.

————————————————————————x

     **PLEASE TAKE NOTICE** that upon the annexed affirmation of James Kousouros, and all of the proceedings heretofore had, defendant will move the County Court, 210 Center Drive, Riverhead, New York before Honorable James Hudson, on the 26th day of April, 2012 at 9:30 o'clock in the forenoon or as soon thereafter as counsel can be heard for an order pursuant to Section 440.10 (1) (d), (g) and (h) of the Criminal Procedure Law to vacate the judgment of conviction entered herein and for a new trial and for a full evidentiary hearing, as the defendant was denied his constitutional right to the effective assistance of counsel under the Constitution of this state or of the United States, and for such other relief as this Court may deem just and proper.

Dated:       April 4, 2012                     Respectfully Submitted,
             New York, New York

                                        James Kousouros
                                        260 Madison Ave, 22nd Fl.
                                        New York, New York 10016
                                        (212) 532-1934

1

TO:    Suffolk County District Attorney
       ADA Steven Hovani -- Appeals Bureau

       Clerk of the Court

COUNTY COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK: PART 7

———————————————————————— x

PEOPLE OF THE STATE OF NEW YORK,

- against -

**ATTORNEY'S
AFFIRMATION**

Ind. No: I539-07

LAMAR WHITEHEAD,

Defendant.

———————————————————————— x

JAMES KOUSOUROS, an attorney admitted to practice in New York, affirms the following under penalty of perjury:

1.  I am counsel for Lamar Whitehead and, as such, am fully familiar with the facts and circumstances underlying this application.

2.  I submit this affirmation in support of the within motion for an Order, pursuant to Section 440.10(1) (d), (g) and (h) of the Criminal Procedure Law to vacate the judgment of conviction entered herein and in the alternative, for an evidentiary hearing to resolve the issues raised in this motion, and for such other and further relief this Court may deem just and proper.

**Factual Background**

*Introduction*

3.  The instant claim of ineffective assistance of counsel arises from Lamar Whitehead's conviction, in April, 2008 on sixteen counts of Identity Theft, Scheme to Defraud and related crimes. To follow is a chart reflecting the verdicts on the counts tried, the counts of conviction and the sentences imposed thereon.

3

| INDICTMENT COUNT | CLASS | VERDICT | TIME IMPOSED | VICTIM ALLEGED |
|---|---|---|---|---|
| 1 - Scheme to Defraud - 1st degree | E Fel. | Guilty | 1 1/3  to 4 Consecutively with all other sentences.[1] | |
| 2 - Identity Theft - 1st degree | D Fel. | Acquitted | | |
| 3 - Identity Theft - 1st degree | D Fel. | Guilty | 1 to 3 Concurrently with Counts 4 & 6; consecutive with all other counts. | Maria Marcale |
| 4 - Identity Theft - 1st degree | D Fel. | Guilty | 1 to 3 Concurrently with Counts 3 & 6; consecutive with all other counts. | Maria Marcale |
| 5 - Identity Theft - 3rd degree | A Misd. | Guilty | Not sentenced | Maria Marcale |
| 6 - Identity Theft - 3rd degree | A Misd. | Acquitted | 1 year Concurrently with Counts 3 & 4; consecutive with all other counts. | Maria Marcale |
| 7 - Identity Theft - 1st degree | D Fel. | Acquitted | | Nerina Sperel |
| 8 - Identity Theft - 1st degree | D Fel. | Guilty | Not sentenced | Nerina Sperel |
| 9 - Identity Theft - 1st degree | D Fel. | Guilty | Not sentenced | Nauri Khabeih |
| 10 - Grand Larceny - 2nd degree | D Fel. | Guilty | 1 to 3 Consecutively to | |

---

[1] On appeal, the Appellate Division directed that the consecutive sentences on Counts One and Fourteen be run concurrent as they were improperly imposed to run consecutively.

4

| | | | all other counts. | |
|---|---|---|---|---|
| 11- Identity Theft - 1st degree | D Fel. | Guilty | Not sentenced | Joseph Sweeney |
| 12 - Identity Theft - 1st degree | D Fel. | Guilty | 1 to 3<br><br>Consecutively to all other counts. | Joseph Sweeney |
| 13 - Identity Theft - 1st degree | D Fel. | Acquitted | | Woyciech Wachnik |
| 14 - Identity Theft - 1st degree | D Fel. | Guilty | 1 to 3<br><br> Consecutively to all other counts. | Woyciech Wachnik |
| 15 - Identity Theft - 1st degree | D Fel. | Guilty | 1 to 3<br><br>Concurrent with Count 16 & consecutive with all other counts. | Woyciech Wachnik |
| 16 - Identity Theft - 3rd  degree | A Misd. | Guilty | Unauthorized sentence of 1 to 3<br><br>Concurrent with Count 15 & consecutive with all other counts. | Woyciech Wachnik |
| 17 - Identity Theft - 1st degree | D Fel. | Guilty | Not sentenced | Briton Lawler |
| 18 - Identity Theft - 1st degree | D Fel. | Guilty | Not sentenced | Briton Lawler |
| 19 - Identity Theft - 1st degree | D Fel. | Acquitted | 1 to 3<br><br>Concurrent with Counts 20 & 21 and consecutively with all other counts. | Brian Foley |
| 20 - Identity Theft - 1st degree | D Fel. | Acquitted | Illegal sentence of 1 to 3<br><br>Concurrent with Counts 19 & 21 | Brian Foley |

| | | | | |
|---|---|---|---|---|
| | | | and consecutively with all other counts. | |
| 21 - Identity Theft - 1st degree | D Fel. | Guilty | 1 year<br><br>Concurrent with Counts 19 & 20 and consecutively with all other counts. | Brian Smith |
| 22 - Identity Theft - 1st degree | D Fel. | Acquitted | 1 to 3<br><br>Concurrent with Count 24 & consecutively with all other counts. | Michael Nolan |
| 23 - Identity Theft - 1st degree | D Fel. | Acquitted | | Michael Nolan |
| 24 - Identity Theft - 1st degree | D Fel. | Guilty | 1 to 3<br><br>Concurrent with Count 22 & consecutively with all other counts. | Raymond Sperl |
| 25 - Identity Theft - 1st degree | D. Fel. | Acquitted | | Raymond Sperl |
| 26 - Identity Theft - 1st degree | D. Fel. | Acquitted | | Gloria Conaty |
| 27 - Identity Theft - 1st degree | D Fel. | Guilty | Not sentenced | Gloria Conaty |
| 28 - Identity Theft - 1st degree | D Fel. | Acquitted | | Gerald Thurman |
| 29 - Identity Theft - 1st degree | D Fel. | Acquitted | | Gerald Thurman |
| 30 - Identity Theft - 1st degree | D Fel. | Acquitted | 1 to 3<br><br>Consecutively to all other counts. | Eric Besso |
| 31 - Identity Theft - | D Fel. | Acquitted | | Brenda Foley |

6

| 1st degree | | | | |
|---|---|---|---|---|
| 32 - Identity Theft - 1st degree | D Fel. | Acquitted | | Kathleen March |
| 33 - Identity Theft - 1st degree | D Fel. | Acquitted | | Thomas Palladino |
| 34 - Identity Theft - 1st degree | D Fel. | Acquitted | | Michael Tricarico |
| 36 - Identity Theft - 1st degree | D Fel. | No such count considered by jury | 1 to 3 Consecutively to all other counts. | |

4.      To follow is a timeline detailing the investigation, recovery of evidence and subsequent failure of defense counsel to investigate and litigate issues of admissibility. The deficiencies outlined herein were of constitutional magnitude and ultimately deprived Mr. Whitehead of his right to the effective assistance of counsel and a fair trial. They relate primarily to the failure of counsel to obtain and properly move to controvert search warrants which were issued in this case. A review of the affidavits submitted in support of these warrants, most significantly the warrant to search the home of Mr. Whitehead in Teaneck, New Jersey, reveals facial and evidentiary defects which raise significant legal questions.  This search yielded a wealth of evidence against Mr. Whitehead without which the conviction which ensued would have been unlikely. Motions specifically addressing jurisdictional and evidentiary defects in any of the several search warrants and affidavits submitted in support thereof were never filed. When on the eve of trial, counsel William Keahon moved to litigate the propriety of the search warrant related to Mr. Whitehead's home, the application was denied as untimely notwithstanding the fact that

7

the affidavits were provided only weeks prior to the commencement of trial (Annexed hereto and labeled **Exhibit A, B,** and **C** are affidavits from counsel Camille Russell, Lamar Whitehead and William Keahon, respectively).[2]

5.     To the extent that the failures of defense counsel were precipitated by the conduct of the District Attorney's Office in failing to provide evidence for which suppression motions should have been filed, this evidence further supports our claim that Mr. Whitehead was deprived of his right to a fair trial. Finally we submit that notwithstanding the conduct of counsel, the Court, in finding William Keahon's motion to litigate the legality of search warrants executed in this case as time barred was in error as these warrants were provided to counsel Camille Abate less than thirty days prior to the commencement of trial. Thus while any prejudice from the failure to litigate the admissibility of evidence could have been avoided, it was not. As will be discussed, infra, this was in contravention of Criminal Procedure Law §255.20 which provides for pretrial motions to be filed within 45 days of arraignment or within such additional time as the Court deems appropriate. Of significance in this matter, the statute further provides that the Court must entertain and decide on its merits "at any-time before the end of trial, any appropriate pre-trial motion based upon grounds of which the defendant could not, with due diligence, have been previously aware, or which, for other good cause, could not reasonably have been raised within the period specified" in subdivision one of the statute. C.P.L. §255.20 (3).  As will be set forth herein, at the time the application was made by counsel Keahon, he had not been provided with the letter or affidavits contained therein

2 While the timeline of these attorneys representation will be set forth, *infra*, these affidavits establish the failure of the District Attorney's office, despite repeated requests, to provide this and other evidence and the consequent inability of counsel to address these issues until the eve of trial, only to then be denied access to the court's review on the basis of timeliness.

and, as such was not aware that the materials were purportedly provided only weeks prior to his retention.  The ADA, who authored the letter, did not apprise the court of the lateness of the provision and instead argued that the motion was untimely.

*Timeline*

6.      On August 5, 2005, Judge Gaetan B. Lozito, Judge of the District Court in Suffolk County, authorized search warrants for 905 Cleveland Street, the residence of Nigel DeFreitas and 974 Park Place, the residence of Michael Redmen.  At this time, the Suffolk County District Attorney's Office was conducting an investigation into Identity Theft and related crimes. Pursuant to the ensuing searches, Suffolk County police confiscated certain computers and took several photographs of both residences.  A computer forensic analysis was conducted of three computers from 905 Cleveland, including both a desktop and a laptop by Michael Connelly. Mr. Connelly testified at trial that he searched the computers for victims' names and found none.  As such the computers were returned to the owners thereof.  Upon information and belief the report of this analysis was never turned over to the defense and the defense was not afforded an opportunity to inspect this property. The police also confiscated two computers and a wireless router from 974 Park Place, including one desktop and one Sony laptop.[3] These items as well were not indicative of any criminal conduct by Mr. Whitehead.

7.      On January 25, 2006, Judge Bean issued a search warrant, based on information that Brenda Ridenour was a victim of Identity Theft, for a Range Rover and cell phones used

---

3 While at first glance these searches and the evidence seized is insignificant, a later search of the defendant's home in New Jersey resulted in the seizure of a Gateway computer which seemingly linked this defendant to several of the crimes charged. At trial, however the People's expert indicated in his report that the computer he analyzed was a *Sony* laptop.

to purchase this vehicle without her knowledge (Annexed hereto and labeled **Exhibit D** is a copy of the search warrant issued by Judge Bean). Mr. Whitehead was identified as the alleged perpetrator of this fraud by law enforcement.

8.  Mr. Whitehead was arrested on or about January 25, 2006. He thereafter retained Robert Macedonio to represent him in the matter.4

9.  On January 27, 2006 Suffolk County Detective Gabriele contacted the Teaneck Police Department and advised Lieutenant Dean Kazinci that Mr. Whitehead had been arrested in New York that that he "wanted to obtain a search warrant for his residence." Detective Gabrielle faxed over his "affidavit qualifications" for a search warrant from Suffolk County and a search warrant application was thereafter drafted and presented to Judge Young of the Teaneck Municipal Court. (Annexed hereto and labeled **Exhibit E1** through **E5** are copies of the following: **Exhibit E1**: A letter to Mr. Whitehead from James Doyle, **Exhibit E2**: a letter from ADA Rafael Pearl to Ms. Abate dated January 18, 2006 **Exhibit E3**: chain of custody paperwork from the Teaneck Police Department, **Exhibit E4**: Teaneck Police Department Incident Reports, **Exhibit E5**: a list of items seized pursuant to an executed search warrant in Teaneck and the return of the Teaneck search warrant.5   Annexed hereto and labeled as **Exhibits F1 and F2** are the search warrant application dated January 27th, 2006 and the actual search warrant respectively. Annexed hereto and labeled as **Exhibit G** is Detective Gabriele's affidavit in support thereof). On January 27, 2006, Judge Young of Teaneck Municipal Court issued a search warrant for 92 Howland Avenue, Mr. Whitehead's home. As demonstrated, *infra*, it is this warrant and the application submitted in support thereof that were clearly susceptible

---

4 Mr. Macedonio was later implicated in several criminal acts for which he was prosecuted.  He was disbarred as a result of his conviction.

to legal challenge.

10.     At the outset, the Teaneck Police Department had no involvement with this investigation. Mr. Whitehead was never a target of any investigation in New Jersey, and the application was based entirely upon the faxed affidavit of Detective Gabrielle *(See,* **Exhibit G**). This affidavit recounted the prior searches detailed above as well as the evidence recovered during these searches and the incriminating nature thereof as opined by Detective Gabrielle. While the actual application refers to the affidavit of Detective Gabrielle, the information contained thereon is not repeated in the application. There are many troubling facial deficiencies on these documents the clarification of which was indispensable to a finding as to the admissibility of the evidence seized pursuant to this warrant.

11.     For example, on the first page of the warrant application dated January 27, 2006 (**Exhibit F-1**) it is stated that Detective Michael Richter **"personally appeared"** before the court, was sworn, and presented his affidavit in support of the search warrant. In the application, Detective Richter indicated that Detective Gabrielle provided his affidavit to Detective Richter on the same date, January 27, 2006 (*See,* **Exhibit F1,** ¶4). This is verified by the actual affidavit from Detective Gabriele (**Exhibit G**) which bears the facsimile information affixed to the top which indicates that it was faxed from the "SCPD ID THEFT UNIT" at "9:42" from "631-852-6820." There is every indication that Detective Gabrielle was thus not present for the signing of the warrant and notarization of the New Jersey affidavits submitted in support thereof. And yet, on the last signature page, on which the Court signed the warrant and notarized the *two* affixed signatures, the signature of Detective Gabrielle appears, as the affiant, above that of Detective Richter.

Putting aside for the moment the propriety of a New York Detective formally applying for a search warrant in New Jersey, the warrant specifically states that it was only Michael Richter who personally appeared before the Court.[5]

12. As for the affidavit of Detective Gabrielle which was submitted with Detective Richter's New Jersey warrant application, while the pages bear a notary stamp, there is no indication on any of the pages that the document was actually sworn to nor is there any

---

5. It is axiomatic that there are territorial limitations to the scope and reach of the search warrant authority. For example, in New York State, C.P.L. § 690.20 mandates:

> 1. A search warrant issued by a district court, the New York City criminal court or a superior court judge sitting as a local criminal court may be executed pursuant to its terms anywhere *in the state.*

> 2. A search warrant issued by a city court, a town court or a village court may be executed pursuant to its terms only in the county of issuance or an adjoining county.

(emphasis added)
This limitation is imposed by the strictures of the New York Constitution, art. 6 § 1(c)

> *All processes, warrants and other mandates* of the court of appeals, the Supreme court including the appellate divisions thereof, the court of claims, the county court, the surrogate's court and the family court *may be served and executed in any part of the state. . .*

(emphasis added)

Neither the Constitution nor Article 690 provide for any extra-territorial jurisdiction for any of the "processes" or "warrants" which otherwise are properly within the jurisdiction of the Supreme Court. There is nothing revelatory here. Permitting court orders to be randomly executed outside the boundaries of the state would violate all known principles of federal constitutional comity. As such, it is as clear that a Supreme Court judge may order execution of process anywhere within the state as it is that no such process will lie outside its boundaries. *See generally,* People v. Harrara, 112 A.D.2d 315, 316 (2nd Dept. 1985); People v. Fishman, 48 A.D.2d 726 (3D Dept. 1975); Matter of Stephen, 239 A.D.2d 963 (4th Dept. 1997); Matter of Carroll v. Gammerman, 193 A.D.2d 202 (1st Dept. 1993). Within the context of these well established principles logically emerges the tenet that while an official of law enforcement can certainly *request* that a search warrant be issued in a separate jurisdiction, the warrant can only be applied by law enforcement of the jurisdiction in which the property to be searched is located.

12

indication as to when the document was signed and notarized.[6]   Absent a personal appearance before the issuing magistrate, this affidavit was not properly sworn to and thus could not have formed the basis upon which this warrant was granted.

13.    With respect to the actual search conducted, the warrant authorized law enforcement agents of the State of New Jersey to conduct the search. Reports recently received by the defense indicate that the search was conducted by Detective Gabrielle as well.[7]  Finally, the items seized were not properly maintained by the Teaneck Police Department as required by the warrant which specifically mandated that the property be maintained in the custody of the seizing agents.  Instead these items were taken by Suffolk County New York authorities without court order and based upon reports turned over to the defense in August, 2011.  There was no proof of an appropriate chain of custody sufficient to warrant admission of these items at trial. (*See,* **Exhibit E-3 and E-5).**

14.    Judge Young's order directed that all items seized from the 92 Howland Avenue residence were to be returned to the Teaneck Municipal Court. Annexed hereto as **Exhibits H-1** through **H-5** are transcripts from the trial conducted on March 17th **(Exhibit H-1)**, 18th **(Exhibit H-2)**,  20th **(Exhibit H-3)** 25th **(Exhibit H-4)**, and 26th **(Exhibit H-5)** of 2008.  These transcripts make clear that Det. Gabriele took the items from the house in Teaneck, New Jersey directly to Yaphank, Suffolk County.  They were then maintained in "bags" in his office until the trial preparation began at which time subsequent unauthorized searches were repeatedly conducted. (*See,* **Exhibit H-4**, pages 144, 146, and 153).  This evidence consisted of the Gateway computer from which a

---

6 The required language is "Sworn to this   day of      20__".
7 As will be set forth, *infra*, Mr. Whitehead received several documents from his counsel in New Jersey, on August 24, 2011 **(Exhibit E)**. These documents were never provided to the defense and include chain of custody documents which reflect telling facts attendant to the search.

wealth of incriminating evidence was admitted as well as dozens of documents used by the People to establish the separate substantive counts in the indictment. While a partial inventory was seemingly completed by the officers in New Jersey, there were no reports provided to establish an inventory of the items taken by Detective Gabrielle or the chain of custody related thereto. While the return we have received lists part of the property recovered, it is not sworn as required by C.P.L. §690.50 (5), and there is no indication that this property was ever properly returned to the court with jurisdictional authority to dispose of the property, (*See*, **Exhibit E-5**). There was never a court order sought in New Jersey by Suffolk County requesting the release of this property to a separate jurisdiction as required by C.P.L. §690.55 (2). In truth, Detective Gabrielle took a veritable wealth of unidentified items, in bags, and stored them in his office for two years up to trial. Many of these items formed the evidentiary foundation for the People's presentation.

15.    Of pivotal significance for purposes of this motion, the redacted copies of this search warrant affidavit and of "all search warrant applications" utilized in this case were provided to counsel Camille Abate on January 18, 2008, two weeks prior to trial (See **Exhibit E-2**).This correspondence was never provided to trial counsel and was obtained by Mr. Whitehead on August 24, 2011 from separate counsel.  It was not a part of the file turned over to the defense subsequent to the conviction.

16.    On January 30, 2006, a Computer Search Warrant was issued by the Honorable Steven A. Lotto authorizing the search of a Sprint Cellular phone, a Boost Mobile Cellular Phone, a Motorola Razor Cellular1 and a Gateway 4540 Laptop Computer Serial Number N824CD1005690, all of which were seized pursuant to the warrant executed at Mr. Whitehead's Teaneck home just days earlier (See, Exhibit F-5).  (Annexed hereto as

14

*inter alia*, photographs, property recovered, search warrants and affidavits submitted in support thereof. (*See* **Exhibit I, pp 1-2, ¶¶4, 5, 6, 10; Exhibit J, pg 3, ¶¶6, 11, 31, 38, 39**).

19.    On April 4, 2006, Assistant District Attorney Douglas Burne responded to these motions. (Attached hereto and labeled **Exhibit K** is a copy of ADA Douglas Burne's April 4, 2006 response). In this response counsel for the People specifically stated the "items responsive to the defendant's demands that are currently in possession of the People are being provided at this time."   Counsel stated that any other materials which are subsequently obtained by the People would be provided "at the appropriate time," (*See*, **Exhibit K, page 1**). In their substantive response, the People stated that were unaware of any property photographed at the direction of law enforcement, expert reports generated or scientific tests conducted. *(See*, **Exhibit K, Page 3, ¶1(e))**.  It was later disclosed that photographs were taken of the vehicle recovered during the search of Mr. Whitehead's home, and during the searches of 905 Cleveland Street and 974 Park Place. Of course, the searches and resultant seizures of property detailed above had also been conducted at the time of this response. Indeed, all of these events preceded the response to the discovery motion and yet only a fraction of the evidence requested was disclosed by the People.[8] The People further stated that they were unaware of any property obtained from the defendant except "three cellular phones and one vehicle" (*See*, **Exhibit K Page 3, ¶1(f)**). As indicated, *supra*, law enforcement seized three cellular phones and a laptop computer and other property from Mr. Whitehead's home in New Jersey and then applied for a search warrant to further search the items recovered from the home.

---

8 While indeed several of these items were ultimately disclosed, this failure to timely and accurately respond to defense requests by various counsel was an oft repeated occurrence in this matter and unquestionably contributed to the failure of counsel to properly litigate suppression issues.

*inter alia*, photographs, property recovered, search warrants and affidavits submitted in support thereof. (*See* **Exhibit I, pp 1-2, ¶¶4, 5, 6, 10; Exhibit J, pg 3, ¶¶6, 11, 31, 38, 39**).

19.     On April 4, 2006, Assistant District Attorney Douglas Burne responded to these motions. (Attached hereto and labeled **Exhibit K** is a copy of ADA Douglas Burne's April 4, 2006 response). In this response counsel for the People specifically stated the "items responsive to the defendant's demands that are currently in possession of the People are being provided at this time."   Counsel stated that any other materials which are subsequently obtained by the People would be provided "at the appropriate time," (*See*, **Exhibit K, page 1**). In their substantive response, the People stated that were unaware of any property photographed at the direction of law enforcement, expert reports generated or scientific tests conducted. *(See*, **Exhibit K, Page 3, ¶1(e)**).  It was later disclosed that photographs were taken of the vehicle recovered during the search of Mr. Whitehead's home, and during the searches of 905 Cleveland Street and 974 Park Place. Of course, the searches and resultant seizures of property detailed above had also been conducted at the time of this response. Indeed, all of these events preceded the response to the discovery motion and yet only a fraction of the evidence requested was disclosed by the People.[8] The People further stated that they were unaware of any property obtained from the defendant except "three cellular phones and one vehicle" (*See*, **Exhibit K Page 3, ¶1(f)**). As indicated, *supra*, law enforcement seized three cellular phones and a laptop computer and other property from Mr. Whitehead's home in New Jersey and then applied for a search warrant to further search the items recovered from the home.

---

[8] While indeed several of these items were ultimately disclosed, this failure to timely and accurately respond to defense requests by various counsel was an oft repeated occurrence in this matter and unquestionably contributed to the failure of counsel to properly litigate suppression issues.

20. On or about April 25, 2006, Mr. Whitehead was indicted on a superseding indictment (#1159A-2006) on three counts of Identity theft 1st degree, two counts Grand Larceny in the 3rd degree, and three counts Unlawful Possession of Personal Identification in the 3rd degree. (Annexed hereto as **Exhibit M** is a copy of the superseding indictment dated April 25, 2006).

21. On August 28, 2006 a supplemental response was submitted by Assistant District Attorney Burne in which the People represented that assorted mail had also been seized but again, there is no mention of the searches and resultant seizures of evidence which constituted the most damaging evidence admitted at the trial of this matter. (Annexed hereto as Exhibit N is a copy of the ADA Burne's supplemental response dated August 28, 2006).

22. On or about September 4, 2006 Mr. Whitehead discharged counsel and retained Camille Russell.

23. On September 19, 2006, Camille Russell conferenced the case with Assistant District Attorney Douglas Burne and the Court. (*See,* **Exhibit A**). During this conference, the People disclosed for the first time that they intended to utilize tape recordings in their case in chief. The court directed that motions be filed. At this time, the ADA and Ms. Russell scheduled a meeting during which counsel would be given an opportunity to review all the evidence in the People's possession in order to facilitate the filing of inclusive motions. This meeting was held on September 20, 2006. At this meeting, Ms. Russell listened to recordings, was shown a mutilated identification card, and a chart created by the DA's office. At no time was she shown any computers or laptops and at no time did the People disclose the existence of search warrants in this case (*See,* **Exhibit**

17

A).

24.   On September 27, 2006, Camille Russell filed an Omnibus Motion in which she sought to preclude any evidence that had been requested but not disclosed (Attached hereto and labeled **Exhibit O** is Ms. Russell's Omnibus Motion). Ms. Russell moved to suppress property, however as indicated in her affidavit, she had never been informed of any search warrants in this case. As such, counsel's motion was general in nature and pertained to the suppression of physical property without reference to search warrants or evidence seized pursuant thereto.

25.   On October 2, 2006, Assistant District Attorney Douglas Burne responded to Ms. Russell's Omnibus Motion. (Attached hereto and labeled **Exhibit P** is copy of this response).  In the People's response, the existence of the New Jersey search warrant was disclosed and it was asserted that the evidence seized during the search had been disclosed to Ms. Russell during the September 20, 2006 meeting.

26.   On October 5, 2006, Camille Russell submitted a reply in which she detailed that during her meeting with the DA, she was *not* informed as to the existence of the search warrant nor any evidence seized pursuant thereto. Ms. Russell demanded that the search warrants and the affidavits in support thereof be provided to the defense.9 (Annexed hereto as **Exhibit Q** is Camille Russell's October 5, 2006 reply). Counsel sought preclusion as to any undisclosed evidence in this motion.

27.   On October 30, 2006, the Court rendered its decision on the motions. (Annexed hereto as Exhibit R is a copy of the Court's October 30, 2006 decision). With respect to the

---

9 Any dispute concerning whether the existence of this evidence was disclosed at the September 20, 2006 was thus beside the point.  Counsel was now aware of it, demanded production of the warrants in order to properly move the court for relief and the People had an absolute legal obligation to provide these documents or move for a protective order and *in camera* review is such action was deemed appropriate. In any event, it was at this point in the litigation that these dual obligations, both of which were not fulfilled, became clear.

recordings the People originally claimed did not exist, the Court denied preclusion, citing the meeting conducted on September 20, 2006, during which counsel had an opportunity to listen to the tapes. The court extrapolated from this meeting that the People had "corrected any errors they may have made in their discovery response" and were thus in full compliance" with discovery obligations.  The court did not address the search warrants and applications which had not been provided and it is unclear whether the Court was even aware of these items at the time the decision was rendered.  With respect to the motion to suppress property, the Court denied the motion as the defense did not submit an affidavit to factually assert a lack of probable cause. (*See*, **Exhibit R**, Page 3, Paragraph 4). No affidavit was thereafter submitted and a motion to re-argue was not made. As for the search warrants and the affidavits, as far as the documentary file in this case reveals, these were not provided until January 18, 2008, the eve of trial (*See*, **Exhibit E-2**).  The reality here is that Ms. Russell made the motion with the limited information she had. She was told of a warrant(s), she then requested the warrant and the affidavits, but they were never provided.  Her motion was thus general in nature and while this was due to the People's failure to provide the affidavits and warrants, the lack of a motion to reargue or further follow-up on this issue was of significant and deleterious consequence for this defendant. Ms. Russell was discharged shortly after the motion was decided.

28.   On or about January 2007 Mr. Whitehead retained Camille Abate.

29.   On February 8, 2007, a superseding indictment was returned charging Mr. Whitehead with 57 counts of Identity theft and Grand Larceny, using the evidence seized during the searches detailed above.  On May 23, 2007, Ms. Abate filed a motion to dismiss the

indictment based upon an inspection of the grand jury minutes. (Annexed hereto as **Exhibit S-1** is Ms. Abate's May 23, 2007 motion to dismiss the indictment). Ms. Abate did not, at any time, follow up on the demand for the search warrants or affidavits submitted in support thereof and thus failed to properly litigate the propriety of these warrants. We have requested an affidavit from Ms. Abate on several occasions. (Annexed hereto as **Exhibits T** and **U** are letters from the undersigned to Ms. Abate dated October 11, 2011 and November 4, 2011 respectively, each requesting an affidavit from Ms. Abate). Ms. Abate has not responded to our written requests, however, in a conversation with the undersigned in the Supreme Court, County of Bronx, Ms. Abate candidly admitted that during her representation of Mr. Whitehead she had been running for office, was clearly pre-occupied with the time and financial demands of the campaign, and was thus not fully attentive to Mr. Whitehead's case.   With regard to the motions and the search warrants, Ms. Abate stated that she felt bad about the situation and agreed to review the file and submit an affidavit for this motion. Again, despite several telephone calls and our written requests, we have not received a response.[10]

30.    On September 6, 2007, Judge Hudson entered an order denying Camille Abate's motion to dismiss the indictment (See, **Exhibit S-2**). Over the course of the next several months, Mr. Whitehead was often unable to communicate with Ms. Abate.  Based thereon, Mr. Whitehead requested an opportunity to secure new counsel during an appearance on January 8, 2008.  At this time, the Court granted one final request for Mr. Whitehead to do so and, over Ms. Abate's objection, refused to relieve counsel. (*See* **Exhibit W, page 8**).  The matter was adjourned to February 4, 2008 for trial.

---

[10] In a personal conversation in the Supreme Court, Bronx County on January 10, 2012 Ms. Abate again promised to review the documents and respond to our requests.

31.   On January 18, 2008, Assistant District Attorney Raphael Pearl sent a letter to Ms. Abate in which he noted that the trial was scheduled to begin on February 4, 2008 and he provided "pursuant to the People's voluntary discovery policy...additional discoverable materials". One of the items enclosed was the "[r]edacted copies of all warrant applications." (See, **Exhibit E-2**). This was the only provision of these materials to the defense.

32.   On February 1, 2008 Mr. Whitehead retained William Keahon to try the case. On February 4, 2008 Mr. Keahon appeared before the Honorable Judge Hudson. The matter was set to proceed with a continued Wade hearing. The People at this time withdrew their intention to offer an in court identification by witness Frank Wall as they had been informed that after the conclusion of his previous testimony Detective Gabrielle had informed the People that this witness had observed a single photograph of Mr. Whitehead on the date prior to his viewing of the photo array in issue (*See*, **Exhibit X, page 8**).

33.   Counsel sought to contest the search warrants as the trial was set to begin and the Court denied the motion as time barred (*See*, **Exhibit Y**, page 1-10). As such the search warrants in this case were never litigated and the evidence seized in this case was admitted without contest.

### Argument

### LAMAR WHITEHEAD WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL

1.   **Applicable Law in General**

The right to the effective assistance of counsel, as set forth in **Strickland v Washington**,

21

466 U.S.668, 687, 104 S.Ct.2052, 80 L.Ed. 2d 674 (1984), is violated when "counsel's performance was deficient" such that counsel's representation fell below that guaranteed by the Sixth Amendment to the United States Constitution and when that "deficient performance prejudiced the defense" in that "counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable." Pursuant to the New York State Constitution, our Court of Appeals has adopted the first **Strickland** prong of deficient performance but has departed from the second ("but for") prong enunciated in **Strickland**.   A defendant in New York must demonstrate the "absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (**People v Caban** 5 N.Y.2d 143, 152, *citing,* **People ve Rivera**, 71 N.Y. 2d 705, 709, 530 N..S.2d 52 (1988); See also, **People v Turner**, 5 N.Y. 2d 476, 480, 806 N.Y.S. 2d 154 (2005).  As a second prong, New York utilizes a "meaningful representation" test which is broader than the Strickland prejudice test (**People v Caban**, 5 N.Y. 3d 143, 152; *citing*, **People v Benevento**, 91 N.Y. 2d 708, 712, N.Y.S. 2d 629 (1998); **People v Baldi**, 54 N.Y. 2d 137, 147, 444 N.Y.S. 2d 893 (1981). While the second prong of the New York standard has a prejudice component, it focuses "on the fairness of the process as a whole", rather than on the particular impact of a deficiency on the outcome of a case (**People v Ozuna**, 7 N.Y.3d 913, 915, 828 N.Y.S.2d275 (2006).  Meaningful representation "does not require a defendant to fully satisfy the prejudice test of *Strickland*" although the defendant's showing of prejudice is a "significant but not indispensable element in assessing meaningful representation" (**People v Caban**, 5 N.Y.3d at 155-156, *quoting*, **People v Stultz**, 2 N.Y. 3d 277 at 284 (1984).  "What constitutes effective assistance of counsel is not and cannot be fixed with yardstick precision, but varies according to the unique circumstances of each representation" (**People v Baldi**, 54 N.Y. 2d 137, 146, 444 N.Y.S. 2d 893 (1981).  It is respectfully submitted that the record herein reveals

22

obvious and inexplicable deficiencies in counsel's representation of Mr. Whitehead and that based thereon, he did not receive effective assistance of counsel pursuant to the United States and New York State Constitutions.

In assessing whether a defendant has received effective assistance of counsel, courts will consider several facets of counsel's representation in order to determine the "fairness of the process as a whole" (**People v Ozuna**, id at 915). For instance, in **People v. Ryan**, 46 A.D.3d 1125, 847 N.Y.S.2d 726 (3rd Dept. 2007), the court found that counsel had been effective where counsel "pursued a feasible, though unsuccessful, strategy at trial." (*Id.* at 1126). However, where there is no discernable strategic reason to support a clearly ineffective and prejudicial defense, courts are less willing to defer to strategic decisions for which no strategic benefit can be extrapolated.  Moreover, "strategy" cannot serve as an excuse for failings that are not strategic; if certain conduct or omissions "cannot be explained convincingly as resulting from sound trial strategy, but instead arose from oversight, carelessness, ineptitude or laziness," the quality of representation will be deemed to be constitutionally deficient. **Eze v. Senkowski**, 321 F.3d 110, 112 (2d Cir. 2003). A "strategic" decision means a "conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." **Cox v. Donnelly**, 387 F.3d 193, 198 (2d Cir. 2004); **Pavel v. Hollins**, 261 F.3d 210, 218 (2d Cir. 2001). The path to an acceptable strategy includes weighing the advantages and disadvantages to the defendant of different courses of action.  "[T]rue strategic choices" are "choices between alternatives that each have the potential for both benefit and loss." **Profitt v. Waldron**, 831 F.2d 1245, 1249 (5th Cir. 1987).

In **People v. Kholodenko**, 16 Misc.3d 136(A), 847 N.Y.S.2d 904 (Table) (N.Y. Sup. Ct. App. Term 2007), the court held that where the trial counsel had failed to provide an opening or

23

closing statement, had not cross-examined the People's witness and had not formulated a meaningful strategy, counsel was ineffective. In **People v. Chapman**, 54 A.D.3d 507, 862 N.Y.S.2d 660 (3rd Dept. 2008), the court found that the defendant had not received effective assistance of counsel where, without a discernible strategic reason, the trial counsel had failed to request severance of offenses that were both prejudicial and non-joinable, failed to object to the repeated introduction of prejudicial hearsay testimony, failed to object to prejudicial comments made by the prosecuting attorney, failed to make an opening statement and failed to cross-examine certain witnesses. The court found that, while none of these failures was sufficient on its own to establish ineffective assistance of counsel, the combination of all of these factors undermined confidence in the fairness of the outcome of the trial.

In **Schultz v. Marshall**, 528 F.Supp.2d 77 (E.D.N.Y. 2007) assistance of counsel was held to be ineffective where defense counsel had been aware of another possible perpetrator of the crime but had failed to interview witnesses in order to determine whether they were able to identify that other individual as the perpetrator. Trial counsel was likewise found ineffective for failing to contact or call exculpatory witnesses in **People v. Maldonado**, 278 A.D.2d 513, 718 N.Y.S.2d 387 (2nd Dept. 2000) where the trial attorney was aware of several individuals who would have provided alibi testimony for the defendant but failed to interview or call those individuals as witnesses.

2. **Mr. Whitehead was denied his right to a fair trial and his right to the effective assistance of counsel.**

As demonstrated above, the vast bulk of the investigative work in this case from a search and seizure perspective was conducted between January 25, 2006 and January 30, 2006. During this time, search warrants for a Range Rover, Mr. Whitehead's home in Teaneck, New Jersey

and the evidence seized during these searches were applied for and conducted. Within days the initial indictment in this case was returned and over the course of the ensuing year the matter morphed into a 57 count indictment based largely on this evidence. And yet, despite repeated requests for this evidence, the affidavits were not provided to the defense until January 18, 2008, seventeen days prior to the scheduled trial date (*See,* **Exhibit E-2).** Our claim is multi-faceted. The People's failure to provide these warrants and affidavit deprived Mr. Whitehead of his right to a fair trial and precipitated the ineffective assistance of counsel which followed. This began with the plea negotiation process and ended with a trial in which evidence which should have been challenged and suppressed was admitted and contributed greatly to the defendant's conviction. The People's failure to provide these discoverable items, upon which constitutional claims would have been posited is ample ground for the vacatur of these convictions. **People v. Robinson**, 133 A.D. 2d 859 (2d Dept. 1987). This defendant has clearly demonstrated the requisite prejudice that resulted from this clear error.

*The Plea Process*

As reflected in the affidavit of Camille Russell, **(Exhibit A)**, given the dearth of disclosed evidence from the People, her plea discussions with Mr. Whitehead were entirely misplaced. Had she been aware of the evidence in the People's possession, her professional advice with respect to the offer made by the People of a misdemeanor and one year incarceration would have surely been different and in all likelihood the matter would not have proceeded to trial. This failure alone, precipitated by the People's failure to provide the demanded warrants and affidavits as well as a plethora of other evidence as required by CPL 240.20, deprived Mr. Whitehead of the due process and effective assistance of counsel to which he was entitled.

It is unquestioned that the **Strickland** analysis applies to ineffective assistance claims

25

which arise out of the plea process. Hill v. Lockhart, 474 U.S. 52, 57 (1985); see also Von Moltke v. Gillies, 332 U.S. 708, 721 (1948). Under the performance prong of the Strickland standard, trial counsel "must give the client the benefit of counsel's professional advice on [the] crucial decision of whether to plead guilty." Purdy, 208 F.3d at 44 (quoting Boria v. Keane, 99 F.3d 492, 497 (2d Cir.1996)). This obligation has a number of dimensions, since the decision whether to plead guilty is both critical and nuanced.  As the Court aptly noted in Moltke v. Gillies,

> Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the *facts, circumstances, pleadings and laws involved* and then to offer his informed opinion as to what plea should be entered.

332 U.S. at 721 (emphasis added).

Clearly this obligation presupposes the obtaining and analysis of the prosecution's evidence and it's admissibility at trial. Only with this information can defense counsel give his client the full benefit of his professional acumen on this "crucial decision." Boria v. Keane, 99 F.3d 492, 497 (2d Cir.1996). In attempting to gauge the full range of factors which counsel should expound to the client, the Second Circuit observed:

> Counsel rendering advice in this critical area may take into account, among other factors, *the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea* (whether or not accompanied by an agreement with the government), whether the defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision.

Purdy, 208 F.3d at 45 (emphasis added).

In order to provide representation that is within the bounds of prevailing professional norms, trial counsel has a duty to correctly advise a client with respect to the applicable facts and

26

law that would be necessary for him to make an informed decision about whether to accept a plea offer or go to trial. **Davis v. Greiner**, 428 F.3d 81, 88 (2d Cir.2005); **Mask v. McGinnis**, 233 F.3d 132 (2d Cir.2000); **Boria v. Keane**, *supra*. Again this obligation can only be fulfilled if counsel has a complete knowledge and understanding of the admissible evidence in the case and how it affects a defendant's ability to successfully defend against the accusations which arise from the evidence.

In **Boria**, the Second Circuit held that "'[t]he decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case [and] counsel may and must give the client the benefit of counsel's professional advice on this crucial decision.'" **Boria v. Keane**, 99 F.3d at 496-97. *(*quoting Anthony G. Amsterdam, **Trial Manual for the Defense of Criminal Cases** (1988))(emphasis in original).[11]

In **Carrion v. Smith**, 644 F.Supp.2d 452 (S.D.N.Y. 2009), Judge Shira Sheindlin noted that:

> Among the "basic duties" of a defense attorney are the "duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." [citation omitted]. The professional norms of conduct "provide at least two benchmarks for the representation of a client who is deciding whether to accept a plea offer."
>
> The Model Rules of Professional Conduct provide that a "lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." [citation omitted]. When a plea offer is made, *"knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision* whether to plead guilty.' " [citation omitted]. Accordingly, the lawyer *"should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed."* [citation omitted]

---

11 The Second Circuit has expressly reaffirmed the authoritativeness of Amsterdam's Trial Manual as a source of professional responsibility guidance, and cited approvingly the Manual's statement regarding a defense attorney's obligation to give his client meaningful professional advice as to the ramifications of the plea decision. **Purdy v. United States**, 208 F.3at 47.

644 F. Supp2d at 465 (emphasis added).

These obligations, among the most important in the defense of another, simply cannot be satisfied without as complete an understanding of the evidence as is possible under the circumstances.   There can be no question but that for Camille Russell, the offer of a misdemeanor plea would have been presented in a far different light had she been advised of the search warrants and resultant evidence seized. All of this was known to the People or clearly should have been known to the People and yet, despite the two demands from counsel Macedonio, the motion by Ms. Russell and subsequent demand for the affidavits, warrants, and any other unknown evidence, the evidence was not turned over until the eve of trial.  Indeed, Ms. Russell was justified in believing that she had all the evidence which the People intended to introduce. There are often instances when the People execute search warrants and elect to not use the fruits thereof at trial.   Indeed in this very case the searches at 974 Park Place and 905 Cleveland Street yielded no evidence of consequence. In the final analysis, by the time the affidavits were turned over, the matter was trial ready, the defendant has been re-indicted on 57 counts and the offer made was no longer available.

Camille Abate never followed up on the affidavits, did not file motions to controvert the warrants and never engaged in plea discussions with the People. When Mr. Keahon was retained on the eve of trial, he had a veritable mountain of documents and evidence to review and was never made aware of the People's disclosure of January 18, 2008. If Mr. Keahon had this document, he could have effectively responded to the People's inaccurate assertion of untimeliness (See, **Exhibit Y**). The fact is that Ms. Abate never provided a file to Mr. Keahon. Not one of Mr. Keahon's calls to Ms. Abate were ever returned.

We submit that the People's failure to provide the search warrant affidavits followed by

28

counsel's failure to follow up on the demands for the production of these documents [deprived?]
Mr. Whitehead of his right to the effective assistance of counsel relative to the plea negotiation
process.

### Counsel's failure to file motions

*no basis to contest warrants*

As demonstrated above, there can be no dispute that after two demands by counsel
Macedonio, the People not only failed to disclose the existence of the Teaneck warrant and its
successor, they affirmatively represented that no such evidence existed.  Once the existence of
the Teaneck warrant was disclosed to Camille Russell, her subsequent demand for the production
and/or preclusion thereof went unanswered (*See*, **Exhibit Q**).   From this point on, defense
counsel Russell and Abate woefully failed to discharge their obligations to obtain the affidavits,
warrants and file motions to controvert the warrants in issue. Counsel Abate's failure to address
this issue once she received the People's disclosure on January 18, 2008 (**Exhibit E-2**)  was only
further exacerbated by her failure to even alert counsel Keahon to this disclosure once he had
been retained. Had Mr. Keahon been made aware of the January 18, 2008 letter (**Exhibit E-2**),
he would have been able to address the People's and the Court's response as to the timeliness
thereof, as Keahon explained to the court during the February 5th, 2008 proceedings. (Annexed
hereto as **Exhibit Y** is a portion of the transcript from the February 5th, 2008 proceedings,
wherein Keahon asked the court for permission to address the propriety of the January 27th, 2006
search warrant for Mr. Whitehead's Teaneck residence).

Merely failing to bring a particular motion does not itself constitute ineffective assistance
of counsel (**People v. Rivera**, 71 N.Y. 2d 705 (1988); **People v. Biro**, 85 A.D. 3d 1570 (4th
Dept. 1996). However ineffectiveness has been found based upon the failure to file motions in
the following instances: **People v. Langlois**, 265 A.D. 2d 683 (3d. Dept. 1999)[Sandoval];

**People v. Montgomery**, 293 A.D. 2d 773 (3d. Dept. 2002); **People v. Noll**, 24 A.D.3d 688 (2d Dept. 2005)[Huntley]; **People v. Felder**, 186 A.D. 2d 1050 (4th Dept. 1992) [Molineux]; **People v. Echavarria**, 167 A.D. 2d 138 (1st. Dept. 1990)[Wade]; **People v. Donovan**, 184 A.D.2d 654 (2d Dept. 1992); **People v. Johson**, 37 A.D. 3d 363 (1st. Dept. 2007)[Fourth Amendment]; **People v Toporczyk**, 178 A.D. 2d 947 (4th Dept. 1991)[Bill of Particulars]. Clearly the question as to the failure to file motions relative to counsel's performance will depend largely upon whether counsel evaluated the issues presented and drew a supportable conclusion as to the viability of any motion. Thus, while counsel cannot be faulted for not filing a frivolous motion, ineffective assistance will be found where a viable and meritorious motion existed but was not filed. Clearly then the initial investigation – the discernment as to the viability of a suppression motion – is indispensable to the appropriate discharge of counsel's constitutional obligations to his or her client in this regard.

In this case, Camille Russell was informed of the Teaneck warrant, requested the affidavit and search warrant, but however, did not follow up or file a motion to controvert the warrant which would have at least properly placed the issue before the Court. Counsel Abate did nothing to obtain the warrant affidavit and also did not file a motion to controvert the warrant. Of note, counsel Abate did file a motion to inspect the grand jury minutes and to dismiss the superseding indictment. Clearly a motion addressing the failure of the People to provide the affidavits and to controvert the warrant should have been included in this motion. Of additional note, the superseding indictment returned on Ms. Abate's watch was a 57 count indictment and thus included dozens of additional counts more than the previous indictment. It is only reasonable to require that additional discovery motions would have been required in this instance and this too would have properly placed the issue of the searches before the court. On this

30

record, it was not until January 18, 2008 that Ms. Abate received the People's disclosure of the search warrant affidavits in this case (*See*, **Exhibit E-2**).  Ms. Abate never turned the letter over to Mr. Keahon who was then unable to articulate an effective response to the People's assertion that any such motion was untimely.

The failure to file these motions and take these actions clearly falls below the applicable standards for effective assistance of counsel.  The viability of these motions makes clear the prejudice to Mr. Whitehead and that the process as a whole was not fair and constitutionally proper (See, **People v. Bodden**, 82 A.D. 3d 781 (2d Dept. 2011).

*The Teaneck Warrant*

In this regard, there is no question that the Teaneck warrant was flawed and open to significant attack. The Teaneck warrant may not have been properly sworn to or submitted. The actual application notes that only Michael Richter personally appeared before the issuing magistrate and yet the signature page bears the signatures of both Michael Richter and Detective Gabrielle with Gabrielle's signature as the *primary* movant. (*See*, **Exhibit F**, page 4). The supporting affidavit from Detective Gabrielle appears to have been faxed from Suffolk County at 9:42 AM on the same date that the warrant was signed thus signifying that Detective Gabrielle was not present in Teaneck (*See*, **Exhibit G**). The Court's signature however is in the form of a notary which would have required the personal appearance of Detective Gabrielle at the time the warrant was issued. We further submit that the submission of a warrant application in Teaneck, New Jersey by a Detective from Suffolk County was improper and invalidated the warrant.

The affidavit from Detective Gabrielle is also defective in that it was not properly sworn and attested to. While the pages contain a notary stamp there is no indication that the document was actually sworn to nor is there any date on any of the pages on the affidavit. The law is well

31

settled that a complete affidavit must satisfy three elements: a written oath embodying the facts as sworn to, the signature of the affiant, and the attestation by an officer, in this case a notary, that the affidavit was actually sworn to by the affiant. In this case, Detective Gabrielle's affidavit has his signature on the pages however there is nothing on the document, anywhere to indicate that the oath was administered on any particular day (*See*, **Exhibit G**).  There is a notary stamp and the indication that the notary commission was set to expire on April 22, 2006. This affidavit was the basis for probable cause for the New Jersey search warrant.

The manner in which the property was disposed of after the execution of the warrant raised significant statutory concerns as well as chain of custody concerns. Criminal Procedure Law §690.55 provides for the disposition of property seized after the execution of a search warrant.  The statute provides that upon receiving property seized pursuant to a search warrant a court must either retain the property in the "custody of the court" pending further disposition or:

> (b) Direct that it be held in the custody of the person who applied for the warrant. Or of the police officer who executed it, or of the governmental agency or department by which either such public servant is employed, ***upon condition that upon order of such court*** such property be returned thereto or delivered to another court.
> 2. A local criminal court which retains custody of such property must, ***upon request of another criminal court in which a criminal action involving or relating to such property is pending***, cause it to be delivered thereto.

(Emphasis added) The Teaneck warrant directed that the property recovered be taken to and maintained by the Teaneck Police Department. Both police reports and trial testimony make abundantly clear that the items were taken directly to Suffolk County by Detective Gabrielle and that no court order authorized the removal of this evidence from the jurisdiction in which it was recovered (See Detective Gabrielle's March 22th 2008 testimony, **Exhibit H-4** , page 147).[12]

---

12 While Detective Gabrielle clearly assumed primary responsibility for this search, he generated no reports to memorialize his conduct, the retrieval of the property or the chain of custody from the time of the seizure to the two

Indeed it is clear from the "List of Items Seized Pursuant to Execution of Search Warrant." (**Exhibit E-5**) that these documents were not included in the property maintained by New Jersey law enforcement after the execution of the search warrant. Detective Gabrielle testified on March 25, 2008 (**Exhibit H-4,** page 146) that he took these items from the house directly to his office in Suffolk County. This evidence was then used to further investigate the crimes ultimately charged and voluminously admitted at the trial of this matter.

The Teaneck warrant was issued by a New Jersey magistrate and thus authorized the execution of the warrant by New Jersey law enforcement and the return of the seized property to *this issuing magistrate*. Only upon proper application by a court of competent jurisdiction could this property have been turned over to Suffolk County. Instead the search was tantamount to an unauthorized free for all during which items seized were cherry picked by Detective Gabrielle and taken to Suffolk County without any documentation to justify or memorialize same. Many of the items seized were instrumental in the People's presentation during the trial of this matter. These items include the Gateway computer from which a wealth of evidence was derived, cellular phones and several other items which connected Mr. Whitehead to the victims in this case. In the People's presentation of their case, these dozens of documents were memorialized in a chart on which the exhibits were connected to victims. Detective Gabrielle testified that these documents were retrieved from a bag in his office which was brought there by him after the execution of the search warrant at 92 Howland (**Exhibit H-4,** page 165). Indeed, Detective Gabrielle made clear that no property was submitted to any Suffolk County Repository as it was all taken to his office and kept there. (**Exhibit H-4,** page 165).

At an absolute minimum, the above demonstrates a veritable litany of issues that should have been addressed in a motion to controvert this search warrant. The facial sufficiency of the

---

years during which the property remained in his office.

warrant application, the viability of the affidavits upon which it was predicated, and then the patently unlawful execution and maintenance of the seized property were all issues that when analyzed through the lens of applicable law would have resulted in the suppression of this evidence.

Finally, the only reports provided to the defense make clear that no chain of custody was established for the computer and other evidence seized at 92 Howland which constituted the most damaging evidence against Mr. Whitehead at the trial. (*See*, **Exhibit E3** and **E5**).

*The Warrant to Search the Gateway Computer, Sprint Cellular Phone, the Boost Mobile Cellular phone and the Motorola Razor Cellular Phone*

At the outset, this warrant was to further search items recovered pursuant to the search executed at 92 Howland Avenue. As this was thus a derivative search warrant, the illegality of the initial warrant, if established, would have invalidated this warrant as well given the lack of any sufficient attenuation. One thing is clear from the timing of this warrant. The Teaneck warrant was executed on January 27, 2006. The items sought to be searched in this warrant were recovered pursuant to the Teaneck warrant. Clearly, these items were taken directly to Suffolk County without a court order, (See, **Exhibit H-1,** pages 128-129 and pages 146- 148), without a proper application to take custody of these items as required by C.P.L. 690.55(2) and without any documentation to memorialize what was taken and precisely when.

Moreover, this computer warrant issued by Judge Lott on January 30, 2006 in Suffolk County, (**Exhibit Z**), was also subject to attack based on the facial irregularities contained thereon. There is no indication that any sworn testimony was taken or that the warrant was sworn to by the deponent. The warrant bears the stamp of the Court's signature and there are handwritten notations on the page indicating where the Court's signature should have been affixed and the time "13:15". This raised a question as to whether the warrant was actually

issued by the Court.  Logic would dictate that the individual that affixed the handwritten notations on the document did so contemporaneously with the court's issuance of the warrant as these handwritten notations reflect the time that the warrant was signed. If the Court wrote the notations, there would have been no need for a stamp.

These are all valid questions raised by the document on their face and clearly should have been raised by counsel in a motion to suppress.  Clearly if the facts upon which these motions should have been based were proved true, suppression would have ensued.  We submit that the very fact that Mr. Whitehead was denied his opportunity to mount these constitutional challenges bespeaks the fundamental unfairness of these proceedings which is the cornerstone of this state's standard for a claim of ineffective assistance of counsel.

### The Court erred in denying Mr. Whitehead's request to litigate the propriety of the search warrants in issue.

While the sequence of events which precipitated the resultant prejudice to Mr. Whitehead is somewhat circuitous, in the end, counsel failed in their collective obligations to bring motions to controvert the search warrants which yielded the vast majority of evidence used by the People in this case and the Court, having not been apprised of the facts attendant to the ultimate disclosure of the affidavits, erroneously concluded that the motion, made by William Keahon on February 5, 2008, the eve of trial, was untimely. (*See,* **Exhibit Y**). As we have set forth, *supra,* despite repeated requests, the People never turned over the affidavits in question until January 18, 2008 (*See,* **Exhibit E-2**), which at the time was only two weeks prior to the commencement of the trial.  Indeed, in all prior written disclosures by defense counsel, the People *omitted* these affidavits from their responses to motions requesting same. In the preceding months, Camille Abate, entirely subsumed in her run for office, had not attended to this matter, had not filed motions to controvert the warrants and had not sought the affidavits from the People.  This was

35

notwithstanding the fact that a superseding indictment of significant magnitude was returned on her watch and the fact that she did file motions to inspect the grand jury minutes relative thereto.

The People sent Ms. Abate a letter, dated January 18, 2008 in which they provided the redacted copies of the search warrant affidavits as "additional discoverable materials" (**Exhibit E-2**). This was on the proverbial eve of trial. Ms. Abate, interested only in her motion to be relieved, did not address this or file a motion to controvert but most importantly, when her motion to be relieved was granted, she did not turn the letter or the affidavits over to Mr. Keahon. As such, when Mr. Keahon cryptically referred to these searches and moved to litigate them, the People, knowing that they had only turned the affidavits over weeks before, argued that any such motion would be untimely.  Mr. Keahon, not knowing that the affidavits were turned over on the eve of trial did not have the requisite information to apprise the court of the late disclosure.  The Court, aware of the longstanding pendency of the case and obviously under the assumption that the affidavits were turned over previously, denied the motion as untimely. Clearly we submit that had this Court known of the inexcusably late disclosure of these materials it would have granted Mr. Keahon's motion to controvert the warrants, heard argument and taken evidence thereon and properly ruled on the myriad issues set forth above.  Indeed, this Court had always shown its indefatigable patience not only in the pace of the proceedings but in the changes in representation over the course of two years.  We submit that had the Court been aware of these salient facts, fairness and justice would have prevailed.

*An Evidentiary Hearing is required in the event the motion is not granted on submission.*

The standard for summary denial of a motion to vacate a judgment is uncomplicated. The court *must* afford the movant an evidentiary hearing when he submits an affidavit "which sets forth facts which did not appear in the record on direct appeal from her conviction [and which]

36

are material and if established could entitle defendant to the relief sought. **People v. Ferreras**, 70 N.Y.2d 630, 518 N.Y.S.2d 780 (1987); **People v. Jenkins**, 68 N.Y.2d 896, 508 N.Y.S.2d 937 (1986); **People v. Satterfield**, 66 N.Y.2d 796  497 N.Y.S.2d 903 (1985). This is acutely so where the defendant is alleging specific instances of ineffective assistance of counsel. **People v. Castaneda**, 189 A.D.2d 890, 592 N.Y.S.2d 758 (2d Dept.,1993); **People v. Liggins,** 181 A.D.2d 916, 582 N.Y.S.2d 211 (2d Dept.,1992). Even if a defendant's chances of success in meeting his burden of proof may be slight or remote, that, by itself, does not furnish a basis to deny the motion without a hearing. **People v. Hughes**, 181 A.D.2d 912, 581 N.Y.S.2d 838 (2d Dep't 1992). There can be no question but that the facts submitted in support of the within motion are at least in part, facts *dehors* the record, and, as such warrant the granting of the requested relief or a full evidentiary hearing to enable the court to find facts upon which an informed determination can be predicated.

WHEREFORE, it is respectfully requested that this Court grant to the defendant, LAMAR WHITEHEAD, the relief requested herein, and all such other and different relief as to this Court may seem just and proper.

Dated:          April 4, 2012                    Respectfully Submitted,
                New York, New York

                                                 James Kousouros
                                                 260 Madison Ave, 22nd Fl.
                                                 New York, New York 10016
                                                 (212) 532-1934

TO:     Suffolk County District Attorney
        ADA Steven Hovani – Appeals Bureau

        Clerk of the Court

                                                                    37