1

COPY

COUNTY COURT OF THE STATE OF NEW YORK

COUNTY OF SUFFOLK : TRIAL TERM: PART 7

------------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK

               -against-

LAMAR WHITEHEAD,

                          Defendant

                            CASE NO.
                            00539-2007

                            190.65-01
                            VOIR DIRE &
                              TRIAL

------------------------------------------x

                          Riverhead, New York
                          February 5, 2008, 2pm

BEFORE:         HON. JAMES HUDSON,
                     County Court Justice

APPEARANCES:

                HON. THOMAS J. SPOTA, ESQ.
                District Attorney of Suffolk County
                For the People
                200 Center Drive
                Riverhead, New York

                BY:  RAPHAEL PEARL, ESQ.
                     Assistant District Attorney

                    JODI FRANZESE, ESQ.
                    Assistant District Attorney

            WILLIAM KEAHON, ESQ.
            Attorney for Defendant
            One Suffolk Square
            Islandia, New York

                    BARBARA O'DONNELL
                    Official Court Reporter

FILED OCT 20 2009

Proceedings

THE CLERK:  Case on trial, People versus Whitehead.  All parties present.

THE COURT:  Do you have a copy of the Court's decision on the underlying Huntley Hearing?

MR. KEAHON:  I have, Your Honor.

THE COURT:  I believe I supplied a courtesy copy for counsel.

MR. KEAHON:  Yes, Judge.

THE COURT:  Your exception will be noted, Mr. Keahon.

MR. KEAHON:  Thank you, Judge.

THE COURT:  Is there anything further from the People before we hear from Mr. Keahon regarding the People's Molineux application at this time or do you want to--

MR. KEAHON:  I need more time.

THE COURT:  You do feel comfortable beginning --

MR. KEAHON:  Absolutely.

I do have a couple of things I wanted to raise with the Court, if I could.

THE COURT:  Yes.  I would be happy to hear them now.

|   |   |
|---|---|
| 1 | Proceedings |
| 2 | MR. KEAHON:  Judge, in review of the |
| 3 | file, I saw that a proforma motion was done as |
| 4 | far as the search warrant for 92 Howland Avenue |
| 5 | in New Jersey. |
| 6 | THE COURT:  Yes. |
| 7 | MR. KEAHON:  I know it is somewhat |
| 8 | late but I would like the opportunity, with the |
| 9 | Court's permission, to address a motion on the |
| 10 | issue of the search warrant with that residence |
| 11 | and what was recovered. |
| 12 | THE COURT:  Do the People wish to be |
| 13 | heard? |
| 14 | MR. PEARL:  Yes, Your Honor. |
| 15 | Your Honor, just for the record, |
| 16 | there were actually five search warrants |
| 17 | executed in the course of this investigation. |
| 18 | MR. KEAHON:  Yes. |
| 19 | MR. PEARL:  Just so you know. |
| 20 | Obviously, I would oppose, would ask |
| 21 | for any motions to be made on notice to the |
| 22 | People in writing.  We are well outside the |
| 23 | forty-five days any way.  You calculate it. |
| 24 | Obviously, we have a jury waiting.  We are not |
| 25 | looking to litigate now the search warrants. |

Proceedings

1
2    THE COURT:  Thank you.

3        I understand the reason that you seek
4    to make the motion, Mr. Keahon.  However, the
5    Court has ruled on the question of the propriety
6    of the search, based upon the motion papers of
7    your predecessor.  I think it would be an
8    improper exercise in discretion to revisit it at
9    this time.

10        I do find that it is time barred and
11    your exception is noted.

12        MR. KEAHON:  Thank you, Judge.
13        THE COURT:  You are quite welcome.
14        MR. KEAHON:  There was another issue.

15        As part of a prior decision of the
16    Court dated October 30th of two thousand and
17    six, it appears that, that there was an
18    application to suppress an out of court voice
19    identification and the Court indicated that you
20    would hold a hearing to determine whether the
21    voice identification of the defendant by a
22    potential witness requires a 710.30 Notice.

23        Was that resolved, Your Honor?
24        THE COURT:  I recall that at the
25    hearing that we held on November 7th, that was

1                         Proceedings

2    not, that was not presented, that was not part

3    of the proof.

4              MR. PEARL:  No, Judge.

5              We are going to offer tape recordings

6    of the defendant to friends of his.  It is all

7    confirmatory.  There is no need to do any kind

8    of noticing requirements or no 710.30 Notice or

9    a hearing.  Case law was clear on it, I read it,

10   so.

11             MR. KEAHON:  Respectfully, I don't

12   think it is the District Attorney's place to

13   make a decision like that, as to whether or not

14   something like that is confirmatory or not.

15             THE COURT:  Let me just refer back to

16   the original decision, referring to the one of

17   October 30th.

18             MR. KEAHON:  Yes, Your Honor.

19             It is on page two, the second

20   paragraph from the top.

21             THE COURT:  Rather than delay the

22   jury selection at this point in time, which

23   witness in particular is it, Mr. Pearl, because

24   I did direct a hearing on it.

25             MR. PEARL:  Judge, we are going to --

6

1                          Proceedings

2      the tape recordings which were turned over to

3      the defense, I believe, Mr. Keahon probably has

4      them, we are going to play the voice recordings

5      of friends of the defendant.  One of them might

6      be Nigel Defreitas, if he does testify.  I am

7      not sure who we did the actual hearing with, the

8      Wade with the Rodriquez issue, which was

9      actually stipulated by Miss Abate in essence

10     that it was confirmatory.

11              All the people hearing the tapes will

12     be all people that have acquaintances with the

13     defendant.  And I understand I am going to have

14     to lay my foundation that they are acquainted

15     with his voice in that way and it was all

16     confirmatory.

17              THE COURT:  Once again, the source of

18     the tape recordings?

19              The voices.

20              MR. PEARL:  The voice on the

21     recording?

22              THE COURT:  Yes.

23              MR. PEARL:  The male voice?

24              The defendant.

25              THE COURT:  But who actually made the

1                    Proceedings

2    recording?

3              MR. PEARL:  The defendant made the

4    recording on voicemail and then we taped those

5    voicemails over the phone.

6              THE COURT:  All right.

7              MR. PEARL:  By calling the voicemail

8    numbers up.

9              MR. KEAHON:  Respectfully, Judge, on

10   page three of your order, dated October 30th of

11   two thousand and six, it indicates that the

12   defendant also moved to preclude a voice

13   identification by a potential prosecution

14   witness because the People failed to disclose

15   the identification and their 710.30 Notice

16   People versus Collins.  The People argue that

17   the witness was an acquaintance of the

18   defendant, therefore, no notice was required

19   because the identification was only

20   confirmatory.

21             While the People are correct that a

22   confirmatory identification is not required in a

23   CPL 710.30 Notice, the Court cannot ascertain

24   the level of familiarity this witness had with

25   the defendant from the papers submitted.  In

Proceedings

fact, neither in the defendant's nor the
People's paper ever indicate the identity of the
witness or how the identification procedure was
performed.  The People merely responded that the
witness and the perpetrator were known to each
other as they were acquaintances for a number of
years.

The People did not describe the
nature of their relationship and did not give
the basis for the belief that this witness could
identify the defendant's voice.

The People's response was essentially
a boiler plate answer that could have been made
in any identity confirmation or argument.

Therefore, the Court will hold a
hearing prior to trial to determine whether the
out of court identification, the defendant was
an identification that required CPL 710.30
Notice.

Now based upon the District
Attorney's comments today, that there are a
number of individuals that they seek to have
this identification of my client's voice, I
would move to preclude all of it because they

| | |
|---|---|
| 1 | Proceedings |
| 2 | have made a decision it is not required.  They |
| 3 | have not raised this issue to the Court until I |
| 4 | did just now. |
| 5 | Therefore, I move to preclude or ask |
| 6 | for the hearings. |
| 7 | THE COURT:  Do you wish to be heard |
| 8 | further? |
| 9 | MR. PEARL:  Yes, Your Honor. |
| 10 | First of all, there is no basis for |
| 11 | preclusion, counsel's asking for.  However, the |
| 12 | People will be bringing forward the defendant's |
| 13 | friends, acquaintances, people who I am going to |
| 14 | have to lay the foundation before I present the |
| 15 | case before the evidence.  If I can't lay the |
| 16 | foundation, the Court will not allow me to do |
| 17 | it, as it will be a simple misdemeanor |
| 18 | harassment trial.  When you have a voice |
| 19 | recording over the phone and that is all I am |
| 20 | going to be doing, and the witnesses are going |
| 21 | to be called, one of them is probably going to |
| 22 | be Nigel Defreitas.  It might be a few of the |
| 23 | other defendant's friends, it might be the |
| 24 | co-defendant in this case who was close to the |
| 25 | defendant, who have all had relationships with |

|    |                                                        |
|----|--------------------------------------------------------|
| 1  | Proceedings                                            |
| 2  | the defendant.  And I am going to lay that             |
| 3  | foundation before I obviously elicit the               |
| 4  | testimony.                                              |
| 5  | MR. KEAHON:  That is what disturbs                      |
| 6  | me, Your Honor.  I am a new attorney on the             |
| 7  | case, the Court issued an order, we now just            |
| 8  | don't have one individual who they hoped to make        |
| 9  | a voice identification but a number of                 |
| 10 | witnesses, which was never disclosed to me or to       |
| 11 | any other prior counsel, that I am aware of.           |
| 12 | We are about to start jury selection.                  |
| 13 | You directed that a hearing be held so that you        |
| 14 | could make certain legal determinations.  It was       |
| 15 | never raised until 2:38 by myself.  So had I           |
| 16 | gone forward, I would have been selecting a jury       |
| 17 | not knowing what I was facing.                         |
| 18 | So I would move to preclude.                           |
| 19 | THE COURT:  The application to                         |
| 20 | preclude will be denied.                               |
| 21 | The question is how is this to be                      |
| 22 | handled, whether or not the People would have to       |
| 23 | bring in the witnesses in advance or whether or        |
| 24 | not -- and I suggest this is, the motion for           |
| 25 | preclusion being denied, your exception being          |

Proceedings

1   noted, is that what I suggest, gentlemen, is

2   that the People not refer to this voice

3   identification during voir dire and as the

4   witnesses are brought before the Court outside

5   of the presence of the jury, we have a hearing

6   in limine to determine whether or not it is

7   confirmatory.  At that point in time you will be

8   able to cross-examine the witnesses and I would

9   hear any application at that time, so that the

10  potential jurors are not tainted regarding the

11  possibility of improper voice identification

12  procedures.

13          The People will not refer to them

14  during voir dire or their opening statement.

15          MR. KEAHON:  Respectfully, Judge, I

16  disagree.  Respectfully, the Court ordered it

17  prior to trial.  Once again I raised it prior to

18  trial when I went over the Court's order.  The

19  District Attorney chose not to raise it.  I

20  can't pick a jury unless I know what the

21  decisions of this Court are going to be.  It

22  will effect the manner in which I pick a jury.

23          If the Court directs me to go

24  forward, I will certainly go forward.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Proceedings

THE COURT:  If I can see counsel in chambers before, please.

(Whereupon Mr. Pearl, Ms. Franzese, and Mr. Keahon complying.)

THE CLERK:  Case on trial, People versus Whitehead.  All parties are present.

THE COURT:  Mr. Whitehead, if you would be so kind as to follow the officer's instruction, you can have a seat next to Mr. Keahon.  Thank you.

After a conference in chambers pursuant to the Court order of October 30th of two thousand and six, the Court will direct the hearing in the following manner.  In order not to waste the time of our potential jurors downstairs, yet in the same token avoid any prejudice to Mr. Whitehead, the Court will begin it's colloquy of the questioning -- excuse me, of the potential jurors, and counsel will not be asked to begin their inquiry of them until after this hearing is held.

It is my understanding that the detective in question can be called to testify tomorrow.

1           Proceedings

2               MR. PEARL:  Yes, Your Honor.

3               THE COURT:  Thank you.

4               And prior to beginning your voir

5       dire, counsel, the hearing will be held and the

6       Court will issue a ruling as to the propriety of

7       the alleged voice recordings.  And note your

8       exception, Mr. Keahon.

9               MR. KEAHON:  Thank you, Judge.

10              Respectfully, if the District

11      Attorney's Office could make me a copy of that,

12      I know I saw, of that cassette tape that you

13      have, I will give you, I will bring tomorrow a

14      blank copy.

15              MR. PEARL:  Okay.

16              MR. KEAHON:  I will supply one for

17      you.

18              MR. PEARL:  I turned it over already

19      to Miss Abate, the recordings.

20              MR. KEAHON:  Oh, I apologize.

21      Because the order says that you wouldn't.  There

22      is something in the order indicating that they

23      would have to supply one to you and they hadn't.

24              MR. PEARL:  It was just, so you know,

25      I did turn over as part of discovery the copies

14

Proceedings

of the voice recordings.  I can try to make another.

MR. KEAHON:  If you could, and just have it maybe by Friday, if you could.

MR. PEARL:  Okay.

THE COURT:  I believe the People have an application regarding the indictment before the Court.

MR. PEARL:  Yes, Your Honor.

At this time, the first application under Indictment 539-07 is to move to dismiss the following counts.

THE COURT:  Yes.

MR. PEARL:  Count 5.

MR. KEAHON:  Can you go slow, please.

MR. PEARL:  Yes.

Count five, Attempted Identity Theft in the First Degree.

Count nine, Attempted Identity Theft in the First Degree.

THE COURT:  Perhaps, counsel, if I can help you, as far as moving this along.

You are referring to all of the counts charging the defendant with Identity

1           Proceedings

2     Theft in the First degree, counts 11, 13, 14,

3     18?

4                    THE CLERK:  Fourteen is Attempted

5     Grand Larceny.

6                    THE COURT:  Oh.

7                    MR. PEARL:  If you want me to do it

8     that way.  I was trying to go slow for

9     Mr. Keahon.

10                   THE COURT:  We are just going by

11    numbers right now.  We will go by all the

12    Attempted Identity Theft.

13                   MR. PEARL:  Count 5, count 9, count

14    11, count 13, count 18, count 23, count 25,

15    count 27, count 29, count 31, count 33, count

16    35, count 37, count 39, count 41, count 43,

17    count 45, count 47, count 49, count 51, count

18    53, count 55, and count 57.

19                   THE COURT:  All right.

20                   MR. PEARL:  And I have prepared a new

21    indictment for the Court, numbered count 1

22    through 34.  Before I submitted the-- well, I

23    will submit a copy to the Court.

24                   I would also like to make some

25    amendments now to the body of the indictment.

16

Proceedings

THE COURT:  All right.  I will hear your application at this time.

MR. KEAHON:  Excuse me, Mr. Pearl, would that be on what you just gave me?

MR. PEARL:  Correct.

MR. KEAHON:  You will be addressing that?

MR. PEARL:  Yes.

THE COURT:  Gentlemen, this is just for re-numbering for purposes of the jury.  As far as the Court's record is concerned, there will be these gaps because otherwise it makes it very difficult as far as the computer itself.  The jury then will only hear these numbers, will not hear the other ones.

MR. PEARL:  Will they hear in sequential order count 1, count 2, count 3?

THE COURT:  This is what the jury would then see.  I am talking about just the official court record, that just among counsel, that the original numbers are the ones which count notwithstanding the gaps.  We understand the rationale for it.  We don't speculate as to that.

Proceedings

MR. PEARL:  Thank you, Your Honor.

THE COURT:  You're quite welcome.

I will hear your application.

MR. PEARL:  Judge, when I refer now to the amending of the count, I will refer to it under the new indictment, count one, is that okay?

THE COURT:  Yes.  Just count 1, 2, 3, yes.

MR. PEARL:  Initially, Your Honor, I will move as to court -- move as to count six, where it charges the defendant, Lamar Whitehead, on or about March 25, 2005, other than alleged in this case, I am amending that to, in count five.

THE COURT:  Let me just make sure.

MR. KEAHON:  So what you are giving now, the amendment is what I am looking at?

MR. PEARL:  Correct.

MR. KEAHON:  Great.

MR. PEARL:  It did read --

THE COURT:  Excuse me one second.

THE CLERK:  Counsel, one second.

(Whereupon the clerk conferring with

18

1                           Proceedings

2        the Court.)

3                    THE COURT:  We have to use both count

4        six.

5                    MR. PEARL:  Okay.

6                    THE COURT:  All right.

7                    MR. PEARL:   So count six was old

8        count seven.

9                    THE COURT:  Okay.  Thank you.

10                   MR. PEARL:  And I am moving to amend

11       a part that says, other than alleged in count,

12       it did read count six, I am now moving it to

13       read as count five because of the way the

14       indictment was dismissed.

15                   THE COURT:  Thank you.

16                   Do you wish to be heard, Mr. Keahon?

17                   MR. KEAHON:  No, Your Honor.

18                   THE COURT:  Thank you.

19                   Application granted.  It will be

20       amended.

21                   MR. KEAHON:  I assume all these

22       amendments are because of the new indictment

23       that has been drafted because of dismissals of

24       the counts?

25                   MR. PEARL:  No, but when they are

1          Proceedings

2   not, I will make you aware of which ones are

3   not.  I didn't get to that.

4          MR. KEAHON:  Okay.

5          MR. PEARL:  Count-- I am going to ask

6   the Court now to move to the attention on the

7   new indictment count eight.  On the old

8   indictment it was count ten.  The portion that

9   reads by the defendant, Lamar Whitehead, on or

10  about February 15, two thousand and five.  And

11  it did read other than alleged in count eight of

12  this indictment.  I am amending that to read

13  other than alleged in count seven of this

14  indictment.

15         THE COURT:  Thank  you.

16         MR. PEARL:  That is done because the

17  indictment has been changed.

18         THE COURT:  Any opposition,

19  Mr. Keahon?

20         MR. KEAHON:  No.

21         THE COURT:  Thank you.

22         Application granted.

23         MR. PEARL:  Judge, I don't have the

24  old indictment in front of me because I made

25  corrections on mine.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Proceedings

However, the next amendment would be count nine of the new indictment and count ten.

And these are going to be amendments outside of the reason for dismissing counts out of the indictment.

And those old counts were count 12, count 14.

THE COURT:  Thank you.

MR. PEARL:  The Identity Theft, First Degree, in violation of 190.80 subdivision 3 and Attempted Grand Larceny, Second Degree, in violation of 110.155.40 subdivision 1.

Those two counts are what I am moving to amend.

MR. KEAHON:  Count 9 and 10.

MR. PEARL:  Of the new indictment. Count 12 and 14 of the old indictment.

Are you ready for the amendment, Your Honor?

THE COURT:  Yes, please.

MR. PEARL:  I am moving to amend within the body of count 9, the defendant, Lamar Whitehead on or about October 14, two thousand and four.  In this amendment I would ask for,

Proceedings

1  the Court is, within the jurisdiction of Suffolk

2  County, New York.

3       MR. KEAHON:  What did it read?

4       MR. PEARL:  I just have to get the

5  old indictment.  I don't have the old indictment

6  in front of me.

7       THE COURT:  Count 13, which it refers

8  to the original one.

9       MR. PEARL:  That would be count 12.

10      THE COURT:  Excuse me, count 12.

11  That is right.  That is Attempted Identity

12  Theft.

13      Defendant, originally just reads,

14  refers to jurisdiction, the original, Lamar

15  Whitehead on or about October 14, 2004, assumed

16  the identity of Nauri Khabieh, a Suffolk County

17  resident, by using the personal identifying

18  information of that person and committed or

19  attempted to commit a Class D Felony or a higher

20  level crime.

21      And the People seek to insert the --

22      MR. PEARL:  We move.

23      THE COURT:  Yes.  Insert within the

24  jurisdiction of Suffolk County and remove a

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Proceedings

Suffolk County resident.

MR. PEARL:  Correct.

MR. KEAHON:  I would, then Judge, I would oppose that amendment and argue that this count should have been dismissed based upon motion, as there is no jurisdiction pled.

THE COURT:  People wish to be heard?

MR. PEARL:  It is going to be the same argument on the next.  I will do the next.

THE COURT:  Thank you.

MR. PEARL:  Count 10 is the defendant, Lamar Whitehead, on or about October 14, 2004, I am moving to amend within the jurisdiction of Suffolk County, New York.  I am adding the word within the jurisdiction.

THE COURT:  And originally the words were in Suffolk County, New York.

MR. PEARL:  Correct.

THE COURT:  All right.

Then Mr. Keahon, you could state your objection once again as to both.

MR. KEAHON:  Yes.

They should have been dismissed on motion because they had not pled jurisdiction.

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Proceedings

THE COURT:  I will hear you,
Mr. Pearl, briefly.

MR. PEARL:  I am moving to amend the
indictment pursuant to CPL Section 200.70, I
believe, and I am moving to amend because um--
well, specifically, Your Honor, my Bill of
Particulars which was served on counsel and
obviously, not Mr. Keahon but Miss Abatte,
actually specified the jurisdiction as to these
counts.  And I refer to the Bill of Particulars
paragraph 3, where I said please see attached
arrest report with the exact time and place of
this defendant's arrest.  And I wrote
additionally, all the victims under this
indictment are Suffolk County residents.

Additionally, any larceny charge was
committed within five hundred yards of Suffolk
County.

Therefore, pursuant to Penal Law
Section 20 -- 20.40-- 20.40 4c and 20.40 4l,
jurisdiction appropriately within Suffolk
County.

I would refer back.

So, Judge, the case law is clear that

24

Proceedings

1
2   the amendment of the indictment is permitted if
3   it conforms the indictment to the theory of
4   prosecution, and reflected in the evidence
5   before the Grand Jury. This was specifically
6   charged in the Grand Jury as well. That --
7   those sections of 20.40 of the Penal Law.
8           And I refer the Court to People
9   versus Gray, Third Department case, 157 AD 2d.
10  It said, the location of the crime amended to
11  conform to evidence before the Grand Jury and as
12  provided in the Bill of Particulars was omitted
13  by the Court.
14          THE COURT: Thank you.
15          Do you wish to be heard further,
16  Mr. Keahon?
17          MR. KEAHON: Yes, I do.
18          Count 9 deals with identity theft,
19  not a larceny. And the District Attorney made
20  reference to sections within the Penal law and
21  cited them to the Court just now, having to do
22  with a larceny, not an identity theft.
23          Secondly, I don't know what was
24  instructed-- I don't know the language of the
25  instruction to the Grand Jury.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Proceedings

Your Honor reviewed them, as I understand, reviewing prior motions of defense counsel, they all asked the Court for permission to have the legal instruction and that was not granted.

So I don't know what the Grand Jury was instructed on.

THE COURT:  Thank you.

The Court finds that this is essentially the difference between a larceny and an identity theft.  For the purposes of allowing an amendment of the pleadings is not something that distinguishes, makes it inapplicable.  This is something more in the nature of a typographical error and does not prejudice your client by allowing the amendment to conform to the proof submitted before the Grand Jury.

The People's application -- your exception will be noted.

MR. KEAHON:  Thank you.

Thank you, sir.

THE COURT:  The People's application will be allowed.

MR. PEARL:  Thank you, Your Honor.

1

2          Proceedings

3          Now moving the Court's attention to

4  under the new indictment, count 27, which is

5  under the old indictment was count 42.

6          Is the Court ready for me?

7          THE COURT:  Yes.

8          MR. PEARL:  I am moving to read the

9  body where it says, other than alleged, to read,

10  in count 26.  And that is done because the

11  indictment has been amended.

12          MR. KEAHON:  Thank you.

13          THE COURT:  Thank you.

14          Any objection?

15          MR. KEAHON:  No, sir.

16          THE COURT:  The application is then

17  allowed.

18          MR. PEARL:  Moving Your Honor's

19  attention to the new indictment, count 29, the

20  old indictment count 46.  Once again, I am

21  moving to amend the body of the charge where it

22  reads, other than alleged in count 28.  Once

23  again, that amendment is done because of the

24  dismissal of, of the counts of the indictment.

25          THE COURT:  Do you wish to be heard,

Mr. Keahon?

Proceedings

MR. KEAHON:  No, Your Honor.

THE COURT:  Application would be granted.

MR. PEARL:  Actually, Your Honor, I am sorry, I made a silly mistake.  I meant to dismiss other than any.  The difference is different victims.

THE COURT:  Do you wish to make it count 28 or just say other than alleged in any count?

MR. PEARL:  No.  Defendant, Lamar Whitehead, on or about February 22, 2005, assumed the identity -- no, I had it right.  I am sorry.  Count 28.

I don't know why-- I just got confused in the numbering.

I go back to my original application.

That is all I did for the amendment, Your Honor.

THE COURT:  Okay.  Thank you.

That is all the amendments?

MR. PEARL:  Yes.

THE CLERK:  So Mr. Pearl, just for my record, I am showing, as to the old indictment

1

Proceedings

2          numbers, count 7, 10 --

3                    MR. PEARL:  Just go slower.

4                    THE CLERK:  I am sorry.

5                    Count 7.

6               MR. PEARL:  Yes.

7               THE CLERK:  Count 10.

8               MR. PEARL:  Correct.

9               THE CLERK:  Count 12.

10              MR. PEARL:  Count 12 of the old

11         indictment?

12                   THE CLERK:  Yes.

13              MR. PEARL:  Correct.

14              THE CLERK:  Count 14.

15              MR. PEARL:  Correct.

16              THE CLERK:  Count 42.

17              MR. PEARL:  Correct.

18              THE CLERK:  And count 46.

19              MR. PEARL:  Correct.

20              THE CLERK:  Have all been amended.

21              MR. PEARL:  Correct.

22              THE CLERK:  Okay.  Thank you.

23                   (Whereupon the clerk conferring with

24         the Court.)

25                   THE COURT:  Do we have a witness list

1

                        Proceedings

2      that I can read to the potential jurors?

3              MR. PEARL:  Yes.  I apologize for--

4      can I hand it to you collectively?

5              THE COURT:  Yes.

6              MR. PEARL:  Some of the companies

7      have downsized, some of them have shut down.

8      The mortgage.  So they don't have names of

9      witnesses.  Some of them are changing and they

10     are not able to give me the names yet.  Some of

11     them, I wrote Paetec Communications or Verizon,

12     they don't have a name yet for me, to tell me

13     who is flying in.  They gave me Yahoo.

14             THE COURT:  That is why they have

15     alternates.

16             MR. PEARL:  Most of them are flying

17     in.

18             THE COURT:  Because of the length of

19     the indictment, even as amended, I will not read

20     it in toto.  What I will read is charges and

21     refer to the jury and say counts in this case,

22     some instances.  For instance, count 2 and then

23     say counts charges the defendant with Identity

24     Theft in the First Degree, counts 3, 4, 7, 8, 9,

25     counts 11 through 15, counts 17 through 34 there

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Proceedings

are two different theories encompassed by one.
I will refer to the count.  Two is also the same
theory expressed, counts 11 and 15.  Count 3 is
the one which has the remainder of the Identity
Theft in the First Degree.  And count 5 just
reads, I will read one count and then refer to
count 16 and 6, and read the other ones which
are individual with an admonition to the
potential jurors to take no notice from a mere
fact that there is thirty-four charges in the
indictment.  And that is one of the reasons that
they could be excluded as jurors in the case.

Are there any questions that you
would prefer the Court to ask and not counsel?

MR. KEAHON:  Yes, Your Honor.

First of all, I would ask you to
instruct them obviously, on the presumption of
innocence, the burden of proof, and should the
defendant choose not to testify, they can not
consider it in any way, no adverse inference can
be drawn.

THE COURT:  You would like that
specific charge?

MR. KEAHON:  Yes.

31

Proceedings

THE COURT:  Very good.

MR. KEAHON:  And secondly, Your Honor, I would request that you make an inquiry on any member of the family, friends, relatives that may have had what they believe to be an identity theft.

THE COURT:  When I ask the general questions of any potential jurors having been the victim of a crime, I will specify that as well.

MR. KEAHON:  Great.  Thank you, Judge.

THE COURT:  Let me just write my own notes to that.

MR. KEAHON:  My earlier request to graft a motion and submit it to the Court on the search warrant as to the address of 92 Howland Avenue in Jersey, I incorporate that request as to all of the search warrants that were executed.

I believe there were five, Mr. Pearl?

MR. PEARL:  I believe so, yes.

MR. KEAHON:  And I understand that your ruling is the same.

Proceedings

THE COURT: Yes. Thank you. But I appreciate you making the record more comprehensive.

MR. KEAHON: And I do take exception.

THE COURT: Quite appropriate, counsel, I understand.

Mr. Keahon, have you discussed with Mr. Whitehead the question of whether or not he wishes to be present at side-bar conferences or whether or not he is willing to execute an Antomarchi Waiver?

MR. KEAHON: I did not but I will do that right now.

THE COURT: If you would. Thank you.

(Whereupon Mr. Keahon conferring with defendant.)

MR. KEAHON: I have, Your Honor, and we are prepared to sign such an Antomarchi form.

THE COURT: Thank you.

Mr. Avitable, if you would be so kind as to present it to defense counsel, so he can see it with Mr. Keahon.

THE CLERK: (Complying.)

MR. KEAHON: Thanks.

33

Proceedings

THE COURT:   Could we bring them up, have them outside the courtroom, please.   Thank you.

I have in my hand what is entitled an Antomarchi Waiver and it will be entitled Court Exhibit Roman Numeral number I.   It reads as follows.   I, Lamar Whitehead, have been advised by my attorney, Mr. William Keahon, Esq., that I have a constitutional and statutory right to be present during any material stage of the trial. However, after consulting with him, I waive the right to be present at any side-bar discussions or conferences conducted in chambers that relate to the selection of the jury, rulings by the Court concerning the admissibility of evidence, and any pre-charge conference.

I have been advised by my attorney that he will be present at any side-bars or conferences in chambers and I am satisfied that he will effectively represent me at such side-bars or conferences in chambers.

Mr. Whitehead, there is a signature at the bottom of this page.   Actually, it is the second to last signature.   Is that your

34

Proceedings

signature?

THE DEFENDANT:  Yes, sir.

THE COURT:  Prior to signing this document, did you read through it with your attorney?

MR. KEAHON:  He really didn't, Judge. I will do it quickly.  I explained the whole thing to him.

THE COURT:  I know, counsel.  And my apologies for being pedantic.

MR. KEAHON:  I would indicate to the Court that I told my client that since the Antomarchi case I have everyone advised, everyone of my clients on trial to sign such a document, and they all have.  He is not a lawyer, he doesn't know.

THE COURT:  No, I understand.

Take your time going over that document, Mr. Whitehead, with your attorney.

(Wherepon Mr. Keahon conferring with the defendant.)

THE COURT:  Thank you, Mr. Keahon. Thank you, Officer.

Have you had the opportunity,

1                              Proceedings

2    Mr. Whitehead, have you had the opportunity to

3    read through this document?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Do you understand its

6    terms?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Do you agree to be bound

9    by its terms?

10             THE DEFENDANT:  Yes.

11             THE COURT:  That is your signature?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Mr. Keahon, is that your

14   signature?

15             MR. KEAHON:  It is.

16             THE COURT:  Thereby indicating you

17   witnessed your client's signature?

18             MR. KEAHON:  Yes.  And I fully

19   explained it to him and advised him I thought it

20   was in his best interest to do just that.

21             THE COURT:  As the Court knew that

22   Mr. Keahon, this will be marked Court Exhibit

23   number Roman Numeral number I.

24             THE CLERK:  Court I so marked.

25             THE COURT:  For your own notes,

36

Proceedings

1 counsel, we are going to be seating the

2 potential jurors beginning with number one and

3 running through number nine, and then ten

4 through eighteen.  Hope to be able to select

5 four alternates in this matter, given the

6 anticipated length of the trial.

7      MR. KEAHON:  And there is nine in the

8 back also, Judge?

9      THE COURT:  Yes, there will be nine

10 in the back.

11      MR. KEAHON:  Ten challenges, Judge?

12      THE COURT:  Yes.  The top count being

13 a D.

14      MR. PEARL:  Judge, I turned over just

15 about all of the Rosario today, ten bound

16 binders, three hundred pages, three thousand

17 pages of Rosario.  Mr. Keahon has a copy.  I

18 brought a box for the Court.  My understanding

19 is the Court only takes the Rosario to initial.

20      THE COURT:  If it is called into

21 issue, then we will mark it as a Court exhibit

22 at this time.

23      MR. PEARL:  Maybe a few more pages,

24 less, than three hundred, three thousand bound.

Proceedings

THE COURT:  Acknowledge receipt, Mr. Keahon?

MR. KEAHON:  Yes, Judge.  I checked each of the volumes and they total.  It was very nice the front cover indicated how many pages were contained in, and as it was, as Mr. Pearl said, it was bound, which is unusual for the District Attorney's Office to do that but I think because of the number of documents or pages that were involved, it was nice that it was done that way, and I appreciate it.  There are three thousand bound for me to go through. I went through my best.

MR. PEARL:  We will have an index of everything contained within it.

MR. KEAHON:  Great.

MR. PEARL:  Just when we finish.  So you will have them.

MR. KEAHON:  I will do my best to get through it all.

THE COURT:  And as we move along in this case, given certain down time, given the logistics of the Court running its calendar, the Court would be happy to work with counsel as far

38

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Proceedings

as their schedule.

MR. KEAHON:  Thank you.

THE COURT:  You are quite welcome.

Is there anything else to place on the record before we bring in the prospective jurors?

MR. KEAHON:  No, Your Honor.

THE COURT:  Mr. Whitehead, just as a matter of etiquette, when the prospective jurors come in, we all rise because they are potential judges of the facts.  However, there won't be enough seats for everyone.  I remain standing out of deference but I will direct you all to be seated.  So they will see there is no disrespect by counsel but you might as well all get chairs while you can.

MR. PEARL:  Before you bring anybody in, I did put on the record yesterday that if the defendant chooses to testify, we intended to cross-examine him.  There was never a request for a Sandoval Hearing, that I recall, but I am putting you on notice, if he decides to testify, that we would like to cross-examine him on his criminal history.

Proceedings

MR. KEAHON:  I think, Judge, what we did discuss, we would address it, specifically said, Sandoval.  I don't have to do it now.  We can do it later this afternoon because we are not going to be doing any inquiry of the jury.

THE COURT:  Correct.

MR. KEAHON:  So I have no problem moving forward and we will address the Sandoval issue before we get up to talk.

THE COURT:  If you wish, I also included it in giving you the time to respond to the People's Molineux application, if you wish to respond at that point in time, will be happy to accommodate you.

MR. KEAHON:  Thank you, Judge.

THE COURT:  Anything further at this time?

MR. PEARL:  No.

MR. KEAHON:  No.

THE COURT:  We will bring in the potential jurors, please.

(Whereupon prospective jurors entering courtroom.)

THE COURT:  Good afternoon.

Proceedings

Sergeant, we have some extra seats at the front still.

The fact that you are seated in the jury box does not mean that you are being selected for the jury. We are just trying to find as many seats as we possibly can. Thank you.

The parties may be seated, People, Mr. Keahon, Mr. Whitehead.

(Whereupon all complying.)

THE COURT: We just have to wait until everyone gets brought into the courtroom. My apologies. You will notice I keep standing until every juror has a seat. So it moves this part of the trial along very quickly. We just have to wait for just a moment.

All right. Can you hear me all the way in the back?

Thank you.

Good afternoon everyone, my name is James Hudson, I am a County Court Judge and I wish to welcome you all to your courtroom.

We will call the case at this time, please, Mr. Avitable.

1                                    Proceedings

2              THE CLERK:  Case on trial, People

3    versus Lamar Whitehead.  Prospective jurors, all

4    parties present.

5              THE COURT:  Is the People ready?

6              MR. PEARL:  The People are ready.

7              THE COURT:  Is the defense?

8              MR. KEAHON:  Yes, we are, Your Honor.

9              THE COURT:  It is estimated this

10   trial will follow the following schedule.  Jury

11   selection will begin today and hopefully finish

12   by the 11th of this month.  The trial itself may

13   last until the 20th of March.  A schedule has

14   been handed out.  I hope all of you have a copy

15   of it.  But to repeat, there will be no trial on

16   Friday, the 8th or the 15th.  Additionally,

17   there will be no trial on the 12th, Lincoln's

18   Birthday, and the 18th, Presidents' Day, as

19   shown on the schedule.

20           On some days the trial will run from

21   two o'clock in the afternoon to five o'clock in

22   the afternoon.  On other days the trial may

23   commence at eleven o'clock in the morning and

24   run through 1:30, and then again in the

25   afternoon.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Proceedings

We will try to give you any changes in this schedule.  Although we will always try to end the trial at 5 pm, there may be times we go into the early evening.  During deliberations, the end of the trial, the case may be longer.  However, there will be no sequestration, you will go home at night.

If you are on this jury you will be committed to the schedule just described to you. Jury duty is a sacrifice and obligation but that obligation has some limitations based on the expected length of this trial.  If you have an emergency situation that prevents you from being here, you will be excused.  An emergency includes but it is not necessarily limited to, a scheduled medical operation, a vacation where you have already purchased airline or railroad tickets, military service, you are the sole proprietor of business where service here would place you in default of a legal obligation, or you are the sole caregiver to a child or incapacitated person and there is literally no one else to take care of that person during trial hours.

Proceedings

That is the type of situation that would be a valid excuse for jury duty on this occasion but this is not a long trial by any means by courthouse standards.

If you serve on this jury you will have discharged your obligation and may not be called again for six years.

If you don't want to serve this time, of course, I will honor your request but you do run the risk to be called for an even longer trial in the future.

Additionally, if you answer yes to any of the following questions, you will be discharged.

Does anyone have any hearing problem or any other type of physical challenge or medical difficulty that would prevent him or her from sitting as a juror?  For instance, you would have to sit in the jury box and listen to evidence, testimony received, received for approximately, an hour and a half before breaks.

Do any of you know why you wouldn't sit as a fair and impartial juror?

Do any of you know of any personal,

44

Proceedings

moral, ethical or religious or other reason not
to sit as a juror?

This case involves the following.  It
is alleged, note the word, that is all this is,
an allegation, nothing has been proven and no
proof has yet been submitted, and the defendant
is presumed innocent of these charges.

It is alleged that going back into
September of two thousand and four, from March
of 2005, the defendant, Lamar Whitehead, engaged
in a scheme in which he allegedly used the ID's
of various Suffolk County residents without
their permission and assumed those ID's to apply
for loans and/or credit and thus to obtain
goods, moneys, and services for himself.

That is the allegation in a nutshell.
I will go into more detail later, at the
conclusion of this case.

You will be considering charges of
Scheme to Defraud, First Degree, Identity Theft,
First Degree, Identity Theft, Third Degree, an
Attempted Grand Larceny Second Degree.

In order to be selected as a juror in
this case, you will be asked to give your solemn