```
 1                        Proceedings

 2         promise that you can be fair and impartial both

 3         to the defendant and to the People in this case.

 4                    So with that in mind, if anyone has

 5         an emergency or compelling reason that they can

 6         not serve on this jury or if based on what I

 7         just described to you about this case, you feel

 8         you might not be a fair and impartial juror or

 9         feel uncomfortable being a juror in this case,

10         in other words, you do not wish to accept the

11         responsibility of being a juror in a criminal

12         case based on what I have just told to you, you

13         will be discharged from this Court.

14                    PROSPECTIVE JUROR:  I have tickets to

15         go away.

16                    THE COURT:  Very well.  That would be

17         one of your reasons.  You don't have to show

18         proof.  Your word is good enough for me.  You

19         are honest people.

20                    (Whereupon prospective jurors leaving

21         courtroom.)

22                    THE CLERK:  You ladies can step down,

23         please, and find seats in the audience.

24                    THE COURT:  Thank you.

25                    (Whereupon prospective jurors
```

46

1                           Proceedings

2       complying.)

3                   THE COURT:  Now I remain standing for

4       another reason.

5                   Mr. Avitable, would you swear the

6       panel.

7                   THE CLERK:  Would the entire panel

8       please stand and raise your right hands.

9                   THE COURT:  Mr. Avitable will

10      administer the oath.

11                  THE CLERK:  Excuse me, Ma'am, are you

12      with the panel?

13                  LADY:  No.

14                  THE CLERK:  Do each of you solemnly

15      swear to truthfully answer all questions

16      regarding your qualifications to serve as trial

17      jurors on this case, so help you God?

18                  PROSPECTIVE JURORS:  Yes.

19                  THE CLERK:  Please be seated.

20                  THE COURT: Please be seated everyone.

21                  Ladies and gentlemen of the jury

22      panel, as I just indicated, this trial is the

23      case of the People of the State of New York

24      against Mr. Lamar Whitehead.  You have been

25      called as possible jurors for this trial.

1           Proceedings

2               Before I begin, please let me note

3       the following.  Service as a juror is a vital

4       function of citizenship under our American

5       System of Justice.  Is I am sure you are aware,

6       the right to a trial by jury separates our

7       country from many many less fortunate others and

8       that right should be jealously guarded.

9               Beside being a traditional part of

10      our American history, jury service carries a

11      very great and important responsibility.  That

12      is to accord both a defendant and the People,

13      the accused and the accuser a fair trial.

14              To help ensure this, our first order

15      of business is to conduct an oral examination of

16      you, our prospective jurors.  This part of the

17      trial is called Voir Dire, and that is a more

18      legal French term.  The literally translation is

19      to see, to speak but it is an idiomatic

20      expression actually, which translates to speak

21      the truth.

22              Voir dire is the jury selection

23      process, the method by which twelve of you will

24      be chosen as jurors and a number of other as

25      alternates.  First, however, I would like to

1          Proceedings

2      explain briefly what the trial will involve and

3      the roles of the Judge and the Jury. And after

4      that I will begin to ask you some questions.

5              Please understand that I will be

6      directing my remarks to all prospective jurors.

7      A number of you will shortly be seated in the

8      jury box. I ask all of you to pay close

9      attention to the questions that I will ask later

10     because if and when any of you who are seated

11     where you are now, are outside of the rail, as

12     we call it, are called to sit up here in the

13     jury box, I will need to know your answers to

14     these general questions.

15             Also, if anyone has any trouble

16     hearing my remarks or my questions, please let

17     me know and I will be happy to repeat myself.

18             Let me emphasize that everyone who

19     serves on a criminal trial jury accepts the

20     serious responsibility of ensuring that the

21     defendant and the People will have a fair trial.

22             In order to fulfill the

23     responsibility each juror must be free from any

24     feelings or attitude of prejudice, sympathy or

25     preconceived notions that might interfere with

1                           Proceedings

2      his or her ability to be impartial and thus to

3      render a fair and just verdict based solely on

4      the evidence in this case.

5                  As to the questions, some are

6      designed or asked so as to reveal such feelings

7      or attitudes both conscious and unconscious.

8      Later, besides my questions, you may be

9      questioned by the attorneys.  And please do not

10     be offended by any of these questions.  I remind

11     you, you were just sworn to tell the truth.  You

12     will answer them honestly, and I know you will,

13     in fairness to yourself and the parties in this

14     case.

15                 As I indicated, the trial which is

16     about to begin is a criminal action against the

17     defendant, Lamar Whitehead.

18                 I will now refer you to the formal

19     indictment.

20                 Count one read as follows.

21                 The defendant, Lamar Whitehead, is

22     accused of the crime of Scheme to Defraud in the

23     First Degree, allegedly, committed as follow.

24                 The defendant, Lamar Whitehead, on or

25     about and between September of two thousand and

Proceedings

1

2    four through March of two thousand and five, in

3    Suffolk County, allegedly engaged in a scheme

4    constituting a systematic ongoing course of

5    conduct with the intent to defraud more than one

6    person or to obtain property from more than one

7    person by false or fraudulent pretenses,

8    representations or promises, and so obtains

9    property with a value in excess of one thousand

10   dollars from one or more such persons, to wit:

11   The defendant, using the identity of various

12   Suffolk County residents, obtained or attempted

13   to obtain car loans from E-Loan Corporation and

14   others in excess of one thousand dollars.

15            Count two charges the defendant with

16   Identity Theft in the First Degree, and so do

17   counts three, four, seven, eight, nine, and

18   counts eleven through fifteen, and counts

19   seventeen through thirty-seven.

20            I will read you count two.

21            The defendant, Lamar Whitehead, is

22   accused of the crime of Identity Theft in the

23   First Degree, allegedly, committed as follows.

24            The defendant, Lamar Whitehead, on or

25   about February 15, year two thousand and five,

Proceedings

assumed the identity of a Maria Marcarle or
Marcarle, a Suffolk County resident, by using
the personal identifying information of that
person, and obtained goods, money, property or
services, having a value of more than two
thousand dollars.

Count eleven and fifteen are similar
to count two.  The difference being the names of
the alleged victims and the alleged dates of the
crimes.

Count three charges the defendant,
Mr. Lamar Whitehead, with the crime of Identity
Theft in the First Degree under a different
subdivision of law, allegedly committed as
follows.

The defendant, Lamar Whitehead, on or
about February 15, year two thousand and five,
assumed the identity of Maria Marcarle, a
Suffolk County resident, by using the personal
identifying information of that person and
committed or attempted to commit a Class D
Felony or a higher level crime.

This is also charged in count four,
seven, eight, nine, twelve, thirteen, fourteen,

1                           Proceedings

2     sixteen, seventeen, eighteen, nineteen, twenty,

3     twenty-one, twenty-two, twenty-three,

4     twenty-four, twenty-five, twenty-six,

5     twenty-seven, twenty-eight, twenty-nine, thirty,

6     thirty-one, thirty-two, thirty-three, and

7     thirty-four of the indictment.

8                 Once again, the difference being the

9     names of the alleged victims and the alleged

10    dates of the crime.

11                Count five of the indictment charges

12    the defendant, Mr. Lamar Whitehead of the crime

13    of Identity Theft in the Third Degree, allegedly

14    committed as follows.

15                The defendant, Lamar Whitehead, on or

16    about March 25, in the year two thousand and

17    five, assumed the identity of Maria Marcarle, a

18    Suffolk County resident, by using the personal

19    identifying information of that person, and

20    obtained goods, money, property or services.

21                Under count six and sixteen of the

22    indictment, the defendant is also charged with

23    the crimes of Identity Theft in the Third

24    Degree.  Once again, the difference being the

25    names of the alleged victims and the alleged

53

| | |
|---|---|
| 1 | Proceedings |
| 2 | dates of the crimes. |

Count ten of the indictment before the Court charges the defendant with the crime of Attempted Grand Larceny in the Second Degree allegedly committed as follows.

The defendant, Mr. Lamar Whitehead, on or about October 14, year two thousand and four, within the jurisdiction of Suffolk County, New York, attempted to steal property from Land Rover of Massapequa, specifically a motor vehicle with a value that exceeded fifty thousand dollars.

These charges are contained in the indictment that I just read to you partially and referred to.

That indictment is only an accusation. An indictment is proof of nothing. You have heard the expression where there is smoke there is fire. An indictment is not even smoke because although smoke may be evidence of a fire, an indictment is not evidence at all and thus, may not be considered as such.

The reason for this is that an indictment is nothing more than the legal form

1          Proceedings

2          by which the State of New York brings to trial

3          the individual it claims has violated the law.

4                    The indictment is neither evidence

5          nor proof of the defendant's guilt.  Indeed the

6          defendant is presumed to be innocent and this

7          presumption of innocence continues throughout

8          the trial unless and until a jury having

9          considered all of the evidence unanimously finds

10         that a defendant is guilty beyond a reasonable

11         doubt of the charges made against that

12         defendant.

13                   Accordingly, the mere fact that there

14         are thirty-four counts or charges in the

15         indictment is of no significance nor may you

16         assign it any significance.

17                   This trial is the process by which

18         those of you selected as the jury determine if

19         the State has proved the charges against the

20         defendant by sufficient evidence.

21                   In that process, those of you who are

22         selected as jurors and I as the Judge, perform

23         separate functions.  You the jury are the

24         exclusive judges of the facts in this case.

25         During the trial counsel may suggest that you

Proceedings

1    draw certain conclusions but you and you alone

2    evaluate the testimony and exhibits and

3    determine their truthfulness, significance and

4    meaning.  You alone decide what truly happened.

5    You alone decide if the evidence establishes the

6    defendant's guilt of the charges beyond a

7    reasonable doubt.

8         Your ultimate decision is the

9    verdict.  You may find the defendant either

10   guilty or not guilty of all of the charges or

11   some of the charges.

12        The fact that this action is brought

13   in the the name of the People of the State of

14   New York or that a public offender presents the

15   evidence does not in any way indicate that the

16   public wants a specific verdict.  The People of

17   the State are served by whatever verdict the

18   evidence justifies.

19        I as the Judge will make no

20   determination about the defendant's guilt or

21   lack of guilt.  My function is to ensure that

22   you reach your verdict in accordance with the

23   law.  As part of that function, at the end of

24   the trial, after you have heard all of the

Proceedings

evidence, I will instruct you fully on the law that applies in this case and just as you are the exclusive judges of the facts, I am the exclusive Judge of the law. You must accept the law as I state it to you and apply it to the facts as you find them.

During the trial I may rule on questions concerning the conduct of the trial or what evidence you may see or hear. In making these rulings I also am applying the law. I am not evaluating the facts or indicating anything about the defendant's guilt or non-guilt.

During the trial the attorneys and I may also hold brief conferences outside of your hearing. These are called side-bar conferences and involve questions of law about which you need not and must not be concerned.

Now for the reason you are here today, jury selection, as I indicated, during this portion of the trial the jury selection process, the attorneys and I will ask you certain questions. And as I told you earlier, the purpose of these questions is to elicit information concerning your ability to be

1                           Proceedings

2      impartial in this case.

3                Let me also emphasize to you that the

4      purpose of this questioning is not to embarrass

5      you or to discover any personal details of your

6      lives.  The purpose is simply to determine

7      whether or not you are qualified to sit as a

8      juror in this particular case.

9                I advise you that if there is

10     anything you are asked by me or the attorneys

11     which would be embarrassing or uncomfortable for

12     you to answer, merely ask to answer that

13     question or questions privately and you will be

14     invited into the jury room to speak with counsel

15     and myself.

16                I also ask you please do not take

17     offense of any of the questions that I ask.

18     They are essential to ensure that the People and

19     the defendant receive a fair trial.

20                I also must advise you, in every jury

21     trial a number of prospective jurors are always

22     excused.  I can tell you now before even knowing

23     anything about any of you, that a number of you

24     will not be selected.  This is very common.

25     Some of you will not be selected because the

58

1

2      prosecution has a right to for cause, that is

3      referred to as cause, that is as a matter of law

4      you should not sit on this prospective jury.

5      And also excuse a certain amount of jurors

6      called a peremptory challenge, for which no

7      reason is to be stated.  Do not be upset if you

8      are excused peremptorily or for cause, it is not

9      anything on your integrity, patriotism or

10     capacity to serve as a juror.  It merely

11     reflects the opinion of one of the parties which

12     that person has a right by law to act upon, that

13     you should not sit as a juror in this particular

14     case.

15             At this time I will ask Mr. Avitable,

16     our courtroom clerk, to select eighteen names

17     and be so kind as to follow the officers'

18     directions.

19             Mr. Avitable.

20             THE CLERK:  When your name is called,

21     please take all of your belongings, have a seat

22     in the jury box at the direction of the

23     officers.

24             Prospective juror number one, Lavern

25     Price, P-R-I-C-E.

59

1          Proceedings

2                    Prospective juror number two, Botya

3          McKinley, M-C-K-I-N-L-E-Y.

4                    Prospective juror number three, Leon

5          Brown, B-R-O-W-N.

6                    Prospective juror number four,

7          Matthew Martino, M-A-R-T-I-N-O.

8                    Prospective juror number five, Robert

9          Cecere, C-E-C-E-R-E.

10                    Prospective juror number six,

11          Virginia Barrington, B-A-R-R-I-N-G-T-O-N.

12                    Prospective juror number seven,

13          Maryanne Lester, L-E-S-T-E-R.

14                    Prospective juror number eight,

15          MaryBeth Roehrig, R-O --

16                    MR. KEAHON: I am sorry, R-O --

17                    THE CLERK:  R-O-E-H-R-I-G.

18                    Prospective juror number nine,

19          Christopher Fuller, F-U-L-L-E-R.

20                    Prospective juror number ten, Felicia

21          Crawford, C-R-A-W-F-O-R-D.

22                    Prospective juror number eleven,

23          Leona Desner, D-E-S-N-E-R.

24                    Prospective juror number twelve,

25          Katie Werner, W-E-R-N-E-R.

1                          Proceedings

2                  THE COURT:  No, we are off.

3                  COURT OFFICER:  Oh, he is standing.

4                  THE COURT:  I am sorry, I didn't see

5       you back there.

6                  THE CLERK:  Prospective juror number

7       thirteen, Samantha Campbell, C-A-M-P-B-E-L-L.

8                  Prospective juror number fourteen,

9       Laura Palmer, P-A-L-M-E-R.

10                 Prospective juror number fifteen,

11      John Riordan, R-I-O-R-D-A-N.

12                 Prospective juror number sixteen,

13      Karen Tommasino, T-O-M-M-A-S-I-N-O.

14                 Prospective juror number seventeen,

15      James Moir, M-O-I-R.

16                 Prospective juror number eighteen,

17      James Porciello, P-O-R-C-I-E-L-L-O.

18                 THE COURT:  Thank you.

19                 If you would show it to counsel,

20      please.

21                 THE CLERK:  (Complying.)

22                 MR. KEAHON:  I am fine, thank you.

23                 THE COURT:  Thank you again.  Thank

24      you all.

25                 I am now going to ask you, our first

1       Proceedings

2       eighteen people a number of questions which call

3       for a simple yes or no answer.

4              Again, those of you on the other side

5       of the rail should listen also because you may

6       be asked the same questions shortly.

7              As to any question, if your answer is

8       no, you may remain silent.  I will consider

9       silence a no answer.  But if your answer is yes,

10      please say yes loud and raise your hand.  And if

11      you do not understand any questions, please feel

12      free to say so and I will be free to say so.

13             The defendant in this case is

14      Mr. Lamar Whitehead.

15             Mr. Whitehead, would you please stand

16      so the prospective jurors can see you.

17             Mr. Whitehead is represented by

18      Mr. William Keahon.

19             MR. KEAHON:  Good afternoon.

20             THE COURT:  The People are

21      represented by the District Attorney in this

22      county, Mr. Thomas Spota by Mr. Raphael Pearl

23      and Miss Jodi Franzese, Assistant District

24      Attorneys, will be presenting the case in this

25      trial.

Proceedings

1

2          Members of the panel, does anyone

3     have any difficulty seeing or hearing or does

4     anyone have any trouble understanding English?

5          Do any of you know the defendant or

6     any of the attorneys personally or recognize

7     their names?

8          The following people may be called as

9     witnesses in this case.  Please note, however,

10    that my mere mentioning these names does not

11    impose any burden on either side to call any of

12    these people as witnesses.

13          A Georgia Fortune or Fortune,

14    spelled F-O-R-T-U-N-E.

15          A representative from the company

16    E-Loan, cap E-L-O-A-N.

17          A representative from Chase named

18    Mr. Kenneth Scales or another person from Chase.

19          A representative from Capital One

20    Auto Finance Group, Mr. Kevin Lee.

21          A Kelly Thomas, a representative of

22    the Internet Bank.

23          A Mr. Henry Waite, spelled W-A-I-T-E,

24    from Commerce Bank.

25          An M & T Bank representative named

1          Proceedings

2    James Eriksen.

3          A Mr. Robert O'Shinsky spelled

4    O'-S-H-I-N-S-K-Y.

5          A Police Officer, Frank Gallagher.

6          A Mr. Rocco Gargano.

7          A Detective Thad Todd, T-H-A-D, first

8    name, T-O-D-D last name.

9          Probation Officer Maureen Trenk

10   spelled T-R-E-N-K.

11         A Detective Thomas Gabrielle or

12   Gabrielle spelled G-A-B-R-I-E-L-L-E.

13         A Detective Gary Miller.  A Detective

14   Gary Jensen.  A Detective Michael Connolley.  A

15   Detective Friberg spelled F-R-I-B-E-R-G.

16         A Senior Evidence Specialist Karen

17   Ensalada, spelled E-N-S-A-L-A-D-A.  A Forensic

18   Handwriting Analyst Jeffrey or Jeff Luber.

19         Mr. Ronald Richardson.  A Mr. Michael

20   Redmond.  Miss Anita Bryant.  Miss Valerie

21   Rodriguez.  A Mr. Nigel Defreitas, spelled

22   D-E-F-R-E-I-T-A-S.  A Maria Marcarle or

23   Marcarle, spelled M-A-R-C-A-R-L-E.  A Mr. Brian

24   Foley.  A Miss Brenda Foley.  A Mr. Eric Besso.

25   A Miss Nerina Sperl, first name spelled

1                        Proceedings

2    N-E-R-I-N-A, last name spelled S-P-E-R-L.  An or

3    Mr. Nauri Khabeih, spelled N-A-U-R-I,

4    K-H-A-B-E-I-H.  A Mr. Joseph Sweeney.  A

5    Mr. Woyciek Wachnik, also pronounced Woyciek,

6    spelled W-O-Y-C-I-E-K, last name spelled

7    W-A-C-H-N-I-K.  A Briton Lawlor, first name

8    spelled B-R-I-T-O-N, last name L-A-W-L-O-R.  An,

9    I believe it is a Brian Smith.  A Michael Nolan.

10   A Raymond Sperl.  A Gloria Conaty, spelled

11   C-O-N-A-T-Y.  A Gerald Thurman.  A Rhonda

12   Gassabian, spelled G-A-S-S-A-B-I-A-N.  A David

13   Riddenour, spelled R-I-D-D-E-N-O-U-R.  A Brenda

14   Riddenour.  A Kathleen F. March.  A Thomas C.

15   Palladino.  A Michael G. Tricarico.  Tricarico,

16   spelled T-R-I-C-A-R-I-C-O.  A representative

17   from SPRINT/NEXTEL Records.  A custodian from

18   that company, this case indicated is a Aymie

19   Cantor.  A Sam Valentine.  A custodian from the

20   company Yahoo, a records custodian.  A Gilda

21   Tricarico.  A Frank Wall.  A Mary Joe Moore,

22   spelled M-O-O-R-E, from the New York Department

23   of State.  A Tunde Ojo, first name spelled

24   T-U-N-D-E, last name OJO.  A Chris Noel.  A

25   witness from Verizon.  A Tiesha Lamont, spelled

1                        Proceedings

2    T-I-E-S-H-A, L-A-M-O-N-T.  An Errol Beadle,

3    first name spelled E-R-R-O-L, last name

4    B-E-A-D-L-E.  An Adrian Narayan, spelled

5    N-A-R-A-Y-A-N.  A record keeper from the company

6    known as Paetec, spelled P-A-E-T-E-C.  And

7    another witness from T-MOBILE.

8              It is quite a number of names but

9    once again, the mere mentioning of those names

10   does not impose any burden on either side to

11   call any of these people.

12             The reason I ask you those names is

13   that if any of you know those people or

14   recognize any of those names.

15             Additionally, I am going to ask you a

16   series of questions.  At any time if any of you

17   wish to discuss your answers privately, please

18   let me know and you will be asked to step in the

19   jury room one at a time with counsel and myself.

20             Have any of you ever served in the

21   Armed Services of our country?

22             Anyone?

23             We have Mr. Porciello.

24             PROSPECTIVE JUROR:  Yes.

25             THE COURT:  Anyone else?

1            Proceedings
2                 Now Mr. Porciello, first I want to
3       thank you for your service to your country.  But
4       aside from that, you are familiar with the
5       military code of military justice?
6                 PROSPECTIVE JUROR:  Yes.
7                 THE COURT:  Can you set aside the law
8       on military justice and accept my law on this
9       case?
10                PROSPECTIVE JUROR:  Yes.
11                THE COURT:  Thank you very much.
12                Questions to all of you once again.
13                Do you know anything about this case?
14                Have you witnessed anything or read
15      anything in magazines or newspapers or heard or
16      seen anything on television or radio or heard
17      anything from friends or relatives?
18                Do any of you or do any of your
19      friends or relatives work for a law enforcement
20      agency such as the Police Department, the
21      District Attorney's Office or any federal law
22      enforcement agency or state?
23                All right.
24                Or have you or anyone close to you
25      done such work in the past?

1                          Proceedings
2                    Sometimes that brings up some other
3          hands as well.
4                    We will go along.  Who had their hand
5          up in the front row?
6                    We will go along first with
7          Miss Lester.
8                    PROSPECTIVE JUROR:  Yes.
9                    THE COURT:  Who is this person,
10         please?
11                   PROSPECTIVE JUROR:  My husband.
12                   THE COURT:  And his occupation?
13                   PROSPECTIVE JUROR:  He is a Freeport
14         Police Officer, forty-three years.
15                   THE COURT:  And moving along to the
16         right, who next had their hand up?
17                   Miss Barrington, you had your hand
18         up?
19                   PROSPECTIVE JUROR:  Yes.
20                   THE COURT:  Who is this person?
21                   PROSPECTIVE JUROR:  Just my neighbor,
22         a close neighbor.
23                   THE COURT:  And what police agency or
24         law enforcement agency?
25                   PROSPECTIVE JUROR:  A detective for

1          Proceedings
2      New York City.
3              THE COURT:  And Mr. Cecere, did you
4      have your hand up?
5              PROSPECTIVE JUROR:  Yes.  Very close
6      friend of mine is a District Attorney in
7      Brooklyn.
8              I have numerous people in Suffolk and
9      Port Authority in Queens.
10              THE COURT:  Mr. Martino, who is this
11      person?  You don't have to name them.
12              PROSPECTIVE JUROR:  My sister, her
13      fiancee, and a close friend, all NYPD.
14              THE COURT:  Moving along to the
15      right, did anyone else have their hand up?
16              Oh, I am sorry, I missed you.
17              PROSPECTIVE JUROR:  I didn't put it
18      up.  I didn't realize it was.  I have a brother
19      and sister-in-law who served on the New York
20      police force.
21              THE COURT:  And Mr. Fuller, did you
22      have your hand up?
23              PROSPECTIVE JUROR:  Yes.  I have a
24      friend in NYPD.
25              THE COURT:  Anyone else in the first

Proceedings

row?

Miss Price.

PROSPECTIVE JUROR:  Sister-in-law in Sheriff's Department.

THE COURT:  Anyone -- did I miss anyone else in the front row?

We will go to the back row.

Did we have hands up back there?

Beginning with you, Mr. Porciello.

PROSPECTIVE JUROR:  Neighbor in New York City Police Department.  My niece's husband is a Judge.  And I have a very good friend who is also a Supreme Court Judge.

MR. KEAHON:  I can't hear you, sir, I am sorry.

PROSPECTIVE JUROR:  Judge.

THE COURT:  And moving along to the right, I believe you had your hand up, sir.  Is it Mr. Moir?

PROSPECTIVE JUROR:  Moir.

Two of my friends work out with Nassau County Police.

THE COURT:  To the right, anyone?

Mr. Riordan, you had your hand up?

```
 1                        Proceedings
 2              PROSPECTIVE JUROR:  My cousin has a
 3       son who is Suffolk County Police, First
 4       Precinct.  Then I have a neighbor who is New
 5       York City Police.
 6              THE COURT:  All right.
 7              Anyone else along the back row?
 8              We have Miss Werner.
 9              PROSPECTIVE JUROR:  Yes.
10              PROSPECTIVE JUROR:  My son-in-law is
11       a New York City Police Officer and we have a
12       very good friend in the department also.
13              MR. KEAHON:  I am sorry, I just can't
14       hear.
15              THE COURT:  That is all right.
16              If you don't mind, the acoustics is
17       quite bad in this room when the ventilation
18       kicks in, which we definitely need.
19              PROSPECTIVE JUROR:  My son-in-law is
20       a New York City Police Officer and we have very
21       close friends that are New York City Police
22       Officers.
23              THE COURT:  Thank you.
24              Anyone else?
25              Did I miss anyone else?
```

Proceedings

1

2          Thank you.

3          Do any of you or do any of your

4    friends or relatives work as a paid employee or

5    volunteer for a lawyer or group principally

6    concerned with the law?

7          Mr. Cecere, you anticipated that.

8          Or anyone done such work in the past

9    or friend?

10         Mr. Cecere, I think you answered that

11   before.

12         PROSPECTIVE JUROR:  No.  I am

13   actually an attorney.

14         THE COURT:  Oh, yourself.

15         THE COURT:  Yes.

16         Anyone else?

17         PROSPECTIVE JUROR:  My cousin is a

18   lawyer.

19         THE COURT:  Thank you, Miss McKinley.

20         THE COURT:  And did I miss anyone

21   else?

22         Have any of you ever served on a

23   Grand Jury in the past?

24         Mr. Moir, about how long ago was

25   this, please?

1                     Proceedings

2                     PROSPECTIVE JUROR:  I would say eight

3        years ago.

4                     THE COURT:  Did anyone else have any

5        Grand Jury experience before?

6                     Mr. Moir, I will confine my questions

7        to you.  You were instructed on the law from the

8        original impaneling Judge as well as attorneys

9        you would work with on a daily basis, Assistant

10       District Attorney.

11                    Would you be able to set aside the

12       law you have learned for your services as a

13       Grand Juror and accept the law exclusively as I

14       instruct you in this case?

15                    PROSPECTIVE JUROR:  Sure.

16                    THE COURT:  You will be able to put

17       it aside?

18                    PROSPECTIVE JUROR:  Yes.

19                    THE COURT:  Anyone served on a trial

20       jury before, either criminal or civil, it

21       doesn't matter?

22                    You got picked on twice.

23                    PROSPECTIVE JUROR:  Yeah, I always

24       get picked on.

25                    THE COURT:  Would you have any

1                            Proceedings

2        trouble following my instructions?

3                    PROSPECTIVE JUROR:  No.

4                    THE COURT:  May I ask, was it civil?

5                    PROSPECTIVE JUROR:  Civil.

6                    THE COURT:  About how long ago was

7        this?

8                    PROSPECTIVE JUROR:  Four years ago.

9                    THE COURT:  And were you, at that

10       point in time were you able to reach a verdict

11       or was it settled?

12                   PROSPECTIVE JUROR:  No, we reached a

13       verdict.

14                   THE COURT:  You did reach a verdict?

15                   PROSPECTIVE JUROR:  Yes.

16                   THE COURT:  Who else did I-- any

17       other trial jurors?

18                   Beginning with Miss Barrington, you

19       served on a trial jury?

20                   PROSPECTIVE JUROR:  Yes.  It was

21       maybe about eight years ago and it was settled

22       the first day.

23                   THE COURT:  Civil or criminal?

24                   PROSPECTIVE JUROR:  I think it was

25       civil.

Proceedings

1

2    THE COURT:  Thank you.

3    Who else in the front row?

4    We have Miss Price.

5    PROSPECTIVE JUROR:  Yes.

6    THE COURT:  About how long ago was

7    this, please?

8    PROSPECTIVE JUROR:  I guess about six

9    years.

10   THE COURT:  All right.  And was it

11   civil or criminal?

12   PROSPECTIVE JUROR:  Civil.

13   THE COURT:  Was it settled or was a

14   verdict reached?

15   PROSPECTIVE JUROR:  Settled after two

16   days.

17   THE COURT:  Thank you.

18   Anyone else in the front row that I

19   missed?

20   Going to the back row.

21   Mr. Porciello.

22   PROSPECTIVE JUROR:  About twenty

23   years ago, civil case, and it was settled.

24   THE COURT:  Thank you.

25   Mr. Riordan.

Proceedings

1

2          PROSPECTIVE JUROR:  About twenty

years also, civil case, settled by the jury.

3

4          THE COURT:  And we have

Miss Crawford.  About how long ago was this,

5

6  please?

7          PROSPECTIVE JUROR:  Twelve years ago,

civil case settled out of court.

8

9          THE COURT:  Did I miss anyone?

          Once again, thank you all for your

10

11  prior service as jurors.

          Once again, I have to extract a

12

13  promise, if you feel comfortable giving it to

14  the Court.

          In those other cases you were

15

16  instructed on the law either final or

preliminary instructions by the Court, would you

17

18  be able to set aside all the law you learned

from that prior service and accept the law as I

19

20  give you exclusively?

          Can everyone give me that assurance?

21

22          PROSPECTIVE JURORS:  Yes.

          THE COURT:  Is there anyone that can

23

24  not?

          Thank you.

25

Proceedings

The following questions concern

matters of a more personal nature.  So if the

answer to any of them is yes or they make you

wish to discuss anything, anything at all,

please merely note the question and then when I

call for hands, just let me know and you will be

called into the jury room one at a time to

discuss them.

Have any of you or anyone in your

family or close to you been the victim of a

crime?  Accused of a crime?  Or witnessed a

crime?  In particular, have you or anyone close

to you been the victim of Identity Theft?

Next, the jury's verdict must be

unanimous.  Since twelve jurors seldom agree

immediately, you would have to deliberate in

order to reach a unanimous verdict.

In order to sit on this jury you

would have to be able to promise both the People

and defense that you will, number one,

participate in the deliberations.  Number two,

express your views based on the evidence that

you hear and see exclusively as you hear and see

in this trial.  Number three, listen to the

Proceedings

1

2  views of the other jurors.  And number four,

3  keep an open mind.

4          If there is anyone who can not, we

5  have to discuss that.

6          You must judge each witness as an

7  individual and determine whether and to what

8  extent you believe his or her testimony.

9          In this case the People may offer

10  testimony from various police officers.  They

11  take the same oath as other witnesses.  They are

12  no more or less credible than other witnesses

13  simply by virtue of their occupation.  That is

14  the law.

15          Do any of you have feelings about the

16  police, District Attorney, or law enforcement in

17  general that would lead you to give their

18  testimony more weight than any other witnesses?

19          If so, we have to discuss it.

20          Each witness's testimony must be

21  evaluated on it's own merit.

22          Each defendant in a criminal trial

23  must be judged solely on the evidence.  You

24  realize, not everyone can make such objective

25  determinations.  Prospective jurors are human

Proceedings

1

2      and may have prejudices and sympathies.  I know

3      you understand, prejudices and sympathies do not

4      belong in the courtroom.

5              Some of you may have had unpleasant

6      circumstances which lead you to believe certain

7      groups are more honest or less likely to be

8      wrongly accused.  You may not allow such to

9      interfere with your deliberations.

10             If anyone feels you might have

11     prejudicial or sympathetic feelings, you are

12     bound by your oath to tell me.

13             By now you have the general kinds of

14     things that effect your qualifications to be a

15     juror.

16             If any of you know something about

17     yourself that others might think might prevent

18     you from being a fair and impartial juror in

19     this case, please be candid and tell me.

20             Again, please do not ask to be

21     excused because you don't want to perform jury

22     service.

23             At this time if you want to discuss

24     anything privately or have a yes answer, please

25     raise your hand, you will be called into the

1                          Proceedings

2      jury room one at a time.  Just allow us a moment

3      to set up.

4               Counsel.

5               (Whereupon the following occurred in

6      the jury room.)

7               (Whereupon prospective juror

8      entering).

9               THE COURT:  Miss McKinley, please

10     have a seat.

11              PROSPECTIVE JUROR:  I am in the

12     process, my check is being garnished for Mercy

13     Hospital.  I don't know if this matters.  They

14     are claiming I have no insurance when I gave

15     birth to my son, who will be fifteen, which I

16     did.  My cousin is trying to help me figure that

17     out.  And my check is being garnished for like

18     seven months now.

19              THE COURT:  Do you feel, what I

20     described to you about the case, do you feel

21     what is going on in your life right now cause

22     you to be preoccupied so you couldn't give a

23     fair trial to the defense and the People?

24              PROSPECTIVE JUROR:  It is definitely

25     aggravating me.  I am preoccupied.  I don't make

1                           Proceedings

2      that much money as it is.  Every time I get a

3      raise I don't feel it.  I work for a

4      supermarket.  They already took almost a

5      thousand dollars out of my check.

6                   THE COURT:  If you don't mind waiting

7      outside for just a moment.  Thank you.

8                   PROSPECTIVE JUROR:  Sure.

9                   (Complying.)

10                  MR. KEAHON:  Is this Miss McKinley?

11                  THE COURT:  Is there, based upon

12     Miss McKinley's statement for being preoccupied,

13     is there consent?

14                  MR. KEAHON:  I have no objection.

15                  MR. PEARL:  I have no objection.

16                  THE COURT:  Consent.

17                  PROSPECTIVE JUROR:  (Returning).

18                  THE COURT:  Miss McKinley, I

19     apologize, having brought up personal matters,

20     you are being honest according to your oath, so

21     you are going to be discharged by the Court.

22                  PROSPECTIVE JUROR:  Do I call up

23     again?

24                  THE COURT:  No, you don't have to.

25                  PROSPECTIVE JUROR:  Thank you very

Proceedings

1   much.

2           MR. KEAHON:  Good luck.

3           Could we hold it just one second.

4           We are going to be on trial five

5   weeks, jurors when they find out they are not

6   being paid are going to be outraged because we

7   all know that many companies and businesses at

8   most will pay you two weeks.  We are asking

9   these people to come on board for five to six to

10  seven weeks.  I think in fairness, we should

11  find out whether or not they know whether or not

12  they are going to be paid or not.

13          How do they survive on forty dollars

14  a day?

15          THE COURT:  Isn't that given in the

16  jury selection?  That is something we never

17  brought up.

18          THE CLERK:  I don't know what they

19  deal with downstairs.

20          THE COURT:  I did give them the out,

21  Mr. Keahon, of discussing compelling

22  circumstances, if they have hardships, as

23  Ms. McKinley.

24          MR. KEAHON:  I have had it numerous

25

Proceedings

1

2      times where jurors after two weeks raise their

3      hand and say I am not getting paid any more,

4      they only pay me a week or two weeks, and I have

5      had jurors want to walk out.

6                THE COURT:  All right.  Can you call

7      in to make sure that is what they are discussed

8      as jurors and they're not responsible otherwise.

9                MR. KEAHON:  I think it is forty

10     dollars a day.

11               THE COURT:  That is the reason I

12     don't give out a calendar how long a trial is

13     going to be.  I wanted to make sure they had it

14     in front of them how long the trial would be.

15               MR. KEAHON:  I don't think there is

16     any advice given in any of the pamphlets or

17     speaking to the prospective jurors about

18     checking to find out.  I don't think there is

19     any company that pays more than two weeks.  I

20     mean in the old days when we were doing it

21     Judge, the local guys would go two, three

22     months.

23               THE COURT:  What do you mean we?

24               MR. KEAHON:  Cowboy.

25               That is true.

Proceedings

1

2          THE CLERK:  Judge, nobody is

3   answering down there.  I would bet anything that

4   they do not.  Let me say, people know that they

5   should check with their employers to see if they

6   get paid for more than two weeks.

7          THE COURT:  Mr. Pearl, do you wish to

8   be heard on this as far as --

9          MR. PEARL:  Judge, if you want to

10  voir dire on it.

11         THE COURT:  I think we have.  As we

12  bring each person who raises their hand, we will

13  bring them in and discuss it with them very

14  briefly.

15         I think it would be appropriate to

16  make an announcement to all the prospective

17  jurors as they came in and for our next panel.

18  In all likelihood will not pick a panel from

19  this.  I don't know.  Quite a few people stayed.

20  I will make the announcement and inform them

21  economic hardship is one of the hardships

22  recognized by the Court.  If you find you will

23  be preoccupied by lost wages, that is something

24  we all would like to know.

25         MR. KEAHON:  Maybe before they go

```
 1                      Proceedings
 2       tonight, tell them to check with whoever they
 3       work with.
 4                THE COURT:  Yes, I will.  The Court
 5       is obliged to your assistance.  Sage as always.
 6       Sage is code word.
 7                MR. KEAHON:  Who is our next one?
 8                THE CLERK:  I don't know what order
 9       they are bringing them in.
10                Number five.
11                (Whereupon prospective juror
12       entering.)
13                THE COURT:  Mr. Cecere, please have a
14       seat.
15                PROSPECTIVE JUROR:  Good afternoon.
16                THE COURT:  Counsel, I will leave it
17       to you.  I guess first, where is your area of
18       practice?
19                PROSPECTIVE JUROR:  We do mostly
20       civil litigation and real estate.  I am a
21       partner in my firm that handles the real estate.
22       To be involved in a case, my office is in
23       Queens, I am not against serving but the
24       problem, I have to get a hundred miles from my
25       office to here.
```

1        Proceedings

2              THE COURT:  This is the question.

3              MR. KEAHON:  We have no objection,

4        Judge.

5              PROSPECTIVE JUROR:  Plus I just

6        finished a civil litigation where there was an

7        issue.  A son stole mother's identity, flew to

8        Taiwan, we couldn't do our closing, ended up in

9        supreme litigation.

10             THE COURT:  In other words, you are

11       saying your obligation to your own clients, that

12       you would be preoccupied in this matter?

13             PROSPECTIVE JUROR:  Yes.

14             THE COURT:  We have a consent?

15       Consent?

16             MR. KEAHON:  Yes.

17             MR. PEARL:  Yes.

18             THE CLERK:  Just report back

19       downstairs.

20             MR. KEAHON:  Do you want us to speak

21       quickly and say consent or make a record?

22             THE COURT:  If you wouldn't do it

23       immediately because your colleague is not of the

24       same mind.

25             MR. KEAHON:  I would not do that.  I

1          Proceedings
2   turned to him and said you want to consent.
3          THE COURT:  All right.
4          Well, if you are both in agrement,
5   that is fine.  Anything to save time.
6          THE CLERK:  Number six.
7          (Whereupon prospective juror
8   entering.)
9          THE COURT:  Miss Barrington, you are
10  very patient.  Thank you so much.  Please have a
11  seat.
12         PROSPECTIVE JUROR: (Complying.)
13         THE COURT:  Miss Barrington, I always
14  ask the last question first, before we get into
15  any specifics.  Based upon what we have heard so
16  far, do you think you would have any difficulty
17  being a fair and impartial juror for me in the
18  case?
19         PROSPECTIVE JUROR:  I am not sure.  I
20  just remember a person at work that had identity
21  theft and I am nervous now, so I can't even
22  think of her name but I remember all the trouble
23  she had with all going through all that.  So
24  maybe that would effect it a little and then you
25  have asked do we know anyone who had a crime.

Proceedings

THE COURT:  Yes.

PROSPECTIVE JUROR:  I forgot, I know a few other police officers and I know a police officer friend, close also that was murdered around three years ago, Pat Raferty.

THE COURT:  I am very sorry about that.

PROSPECTIVE JUROR:  It was an African American that killed him and his partner.

THE COURT:  Do you feel sitting in this case, I am not cutting you off, I want to cut to the chase, if you feel now, you have observed Mr. Whitehead, I know you want to be a fair and impartial juror, you are being honest according to your oath, you have heard my instructions regarding police testimony, do you feel you might have some difficulty?

PROSPECTIVE JUROR:  It might effect it a little bit.

THE COURT:  If you wait outside for just a moment.

PROSPECTIVE JUROR:  Sure.

THE COURT:  Thank you.

PROSPECTIVE JUROR:  (Complying.)

1              Proceedings

2                 THE COURT: Do you wish to question

3        her further?

4                 MR. KEAHON: I would -- I mean, if

5        you want, I will go into it now with her but I

6        think it should be a cause.

7                 MR. PEARL: Consent, Judge.

8                 THE COURT: Consent?

9                 MR. KEAHON: Sure.

10                THE COURT: Okay.

11                All right, we will bring in

12       Miss Barrington, please.

13                (Whereupon prospective juror

14       entering.)

15                THE COURT: Sorry to keep you

16       waiting.

17                PROSPECTIVE JUROR: That wasn't too

18       long.

19                THE COURT: You don't even have to

20       sit down because I appreciate your concerns and

21       I appreciate your honesty. This is perhaps not

22       the trial for you. All right. And but I thank

23       you very much for your service.

24                PROSPECTIVE JUROR: Thanks. Sorry.

25                THE COURT: Please, do not apologize.

Proceedings

1

2  I am sorry to have to ask these kinds of

3  questions.

4                    (Whereupon prospective juror

5  leaving.)

6             THE CLERK:  Number seven.

7                    (Whereupon prospective juror

8  entering.)

9             THE COURT:  Hello, Miss Lester, you

10  have been very patient, thank you.

11             Please have a seat.

12             Now Miss Lester, before we get to the

13  specific questions as far as a yes answer, I

14  always ask the last question first, which is,

15  based upon what you have heard so far, do you

16  think you would be able to be a fair and

17  impartial juror both for the People and defense

18  in this case?

19             PROSPECTIVE JUROR:  I am not sure.

20             THE COURT:  I understand.  That is

21  why we call people in.  It can be awkward.

22             PROSPECTIVE JUROR:  I tend to, you

23  know, just to be totally honest, you know, tend

24  to go with the Police Department.

25             THE COURT:  I understand.

1  Proceedings

2  PROSPECTIVE JUROR: But I think the

3  defendant looks a little familiar to me. I

4  don't know if I have seen him around or what but

5  he does look familiar to me, so.

6  THE COURT: Okay. Now you heard my

7  instructions regarding the police testimony. So

8  I take it then because of your own feelings

9  regarding the police, that would be very

10  difficult for you to follow?

11  PROSPECTIVE JUROR: Yes. I can't say

12  exactly that it would but I can't say for sure

13  that it would not.

14  THE COURT: Okay. See, this is how,

15  what it ultimately turns into, is that, have to

16  be able to promise, to give your solemn word

17  that you will be fair to both sides. In other

18  words, if you were the prosecution, you would

19  want you as a juror. And if you were the

20  defense, would want you as a juror if you were

21  occupying their chairs.

22  Now if you can't say that, if you

23  can't say that, that is quite understandable.

24  That is why we are having this question. If you

25  can, that is fine as well. There is no wrong

Proceedings

1
2   answer.  So I leave it to you.

3                PROSPECTIVE JUROR:  I would like to

4   be able to say that I could because I would like

5   to do the right thing but I don't really know

6   that I could.

7                THE COURT:  I understand.

8                If you would wait outside for just a

9   moment.  Thank you very much.

10               PROSPECTIVE JUROR:  (Complying.)

11               MR. KEAHON:  Her husband is a

12  Freeport PD.

13               THE COURT:  All right.

14               MR. KEAHON:  I will consent.

15               MR. PEARL:  I consent.

16               (Whereupon prospective juror

17  entering.)

18               THE COURT:  I appreciate your candor

19  and answer honestly according to your oath.  You

20  will be discharged with the thanks of the court.

21  Thank you very much.  Don't apologize, please.

22               (Whereupon prospective juror

23  leaving.)

24               THE COURT:  Off the record.

25               (Whereupon there was a discussoin off

1           Proceedings

2        the record.)

3              (Whereupon prospective juror

4        entering.)

5              THE COURT: Hello there, Mr. Fuller.

6        You have been very patient, thank you, very

7        much.

8              Mr. Fuller, I always ask the last

9        question first, which is, based upon what you

10       have heard so far, would you be able to promise

11       me that you can be a fair and impartial juror to

12       both sides?

13             PROSPECTIVE JUROR: Yes.

14             THE COURT: You had a yes answer to

15       one or more of my questions; what is that?

16             PROSPECTIVE JUROR: Currently my

17       uncle is under fraud for someone he knows stole

18       his credit card, opened up an account. We are

19       currently waiting for the credit card company to

20       send a report stating when the account's been

21       opened.

22             THE COURT: And I apologize for

23       having to ask questions about something going on

24       in your family right now but -- were you close

25       with your uncle?

Proceedings

PROSPECTIVE JUROR: Yes.

THE COURT: Now you know that Mr. Whitehead is charged with that crime of identity theft.

PROSPECTIVE JUROR: I understand.

THE COURT: If you are selected as a juror in this case you would have to be able to come in this jury room and be able to give both sides your solemn word that you would decide the case on the evidence presented in this courtroom alone.

PROSPECTIVE JUROR: Uh-huh

THE COURT: So when you are making that decision regarding Mr. Whitehead's guilt or innocence, you would not be able to allow what is going on with your uncle effect your judgment at all. That is the problem, is that we want our jurors to have common sense. That is why you are selected.

PROSPECTIVE JUROR: Yeah.

THE COURT: So that comes from life experiences but those experiences can be a burden as well.

So do you think that what is going on

94

1                    Proceedings

2       with your uncle right now, do you think it might

3       effect your judgment in some way?

4                    PROSPECTIVE JUROR:  Maybe it may.  In

5       all honestly, it may.

6                    THE COURT:  I know you are being

7       honest.

8                    If you wouldn't mind waiting with the

9       Officer for a moment, Mr. Fuller.

10                   PROSPECTIVE JUROR:  (Complying.)

11                   MR. PEARL:  Judge, I am a little torn

12      on him because he indicated he would be fair and

13      impartial.

14                   THE COURT:  Immediately.

15                   I would allow you, do you want to

16      question him?

17                   MR. PEARL:  I will ask him.

18                   THE COURT:  Certainly.

19                   (Whereupon prospective juror

20      entering.)

21                   THE COURT:  Mr. Fuller, if you can

22      come back here.  If you would be so kind to have

23      a seat.  We just have a few questions for you.

24                   Miss Franzese or Mr. Pearl.

25                   MR. PEARL:  Is it possible for you to

| | Proceedings |
|---|---|
| 1 | |
| 2 | separate what happened with your uncle and just |
| 3 | judge what is going on in this case based on the |
| 4 | testimony you hear from the stand? |
| 5 | PROSPECTIVE JUROR: I can separate |
| 6 | it, yes. Um-- I think possibly though, that I |
| 7 | would end up ultimately rethinking exactly what |
| 8 | had happened with my family and sit there and |
| 9 | say how would I want him to be judged as well. |
| 10 | At first I will be able to separate |
| 11 | it. This is one case. This is another. But I |
| 12 | think at the end it is going to end up coming |
| 13 | back to my family. |
| 14 | MR. PEARL: And you couldn't separate |
| 15 | out the defendant, give him a fair -- listen to |
| 16 | the evidence and to judge whether or not he is |
| 17 | guilty or not guilty based on just what you hear |
| 18 | from the-- |
| 19 | PROSPECTIVE JUROR: That would be a |
| 20 | little hard for me to say yes or no to right |
| 21 | now. |
| 22 | THE COURT: Mr. Keahon, anything? |
| 23 | MR. KEAHON: No. |
| 24 | Thank you very much for your |
| 25 | frankness. That gives everyone a fair trial. |

1          Proceedings

2     So your answer was the right answer coming in

3     here to talk to us.  Thank you.

4               THE COURT:  Thank you.

5               MR. PEARL:  Consent.

6               MR. KEAHON:  Consent.

7               THE COURT:  Thank you, Mr. Fuller,

8     you will be discharged with the thanks of the

9     Court.  You will receive full credit as you sat

10    on this case to the conclusion.

11              My apologies for asking a family

12    matter.  You understand my necessity.  Thank

13    you.

14              (Whereupon prospective juror

15    leaving.)

16              (Whereupon prospective juror

17    entering.)

18              THE COURT:  Hello, Miss Crawford.

19              PROSPECTIVE JUROR:  Hi.

20              THE COURT:  Thank you very much, you

21    were very patient.  Please have a seat.

22              PROSPECTIVE JUROR:  Thank you.

23              THE COURT:  Miss Crawford, I always

24    ask the last question or the ultimate question

25    first, which is, before we get into any

1        Proceedings

2        specifics, based upon what you have heard so

3        far, my brief description of the case, would you

4        be able to promise both sides that you could be

5        a fair and impartial juror for me?

6                  PROSPECTIVE JUROR:  I think so, yes.

7                  THE COURT:  Okay.  And did you have

8        any yes to any or more of my questions to

9        discuss in private?

10                  PROSPECTIVE JUROR:  I guess it was

11       but I am not sure what it is considered but one

12       of my bank statements, probably five, six years

13       ago there was money missing.  They kept giving

14       me the run around.  The bank eventually replaced

15       the money but it seems I purchased some phones

16       in Brooklyn and somebody there used my card for

17       whatever but the money was returned.

18                  THE COURT:  All right.

19                  PROSPECTIVE JUROR:  And I just felt

20       that was relevant.

21                  THE COURT:  All right.  That is why

22       we have to discuss that now.

23                  Were you satisfied with the way that

24       the bank had handled this?

25                  PROSPECTIVE JUROR:  Yes.

1              Proceedings

2                    THE COURT:  Do you feel that it could

3       give you any negative feelings either toward an

4       agency such as the District Attorney's Office,

5       the police or someone accused of stealing

6       another person's identity, such as

7       Mr. Whitehead?

8                    PROSPECTIVE JUROR:  No.  I think I am

9       partial.

10                   THE COURT:  You mean --

11                   Impartial?

12                   PROSPECTIVE JUROR:  Impartial.

13                   THE COURT:  Partial means you favor

14      the one.  Impartial means --

15                   PROSPECTIVE JUROR:  Impartial.

16                   THE COURT:  Before you said when I

17      asked you if you could be fair and impartial to

18      both sides, you said, I think so.  Sometimes

19      that is a word of modesty for which people are

20      always to be commended but the other times it is

21      kind of like being able to not make up your

22      mind.

23                   You understand, to be selected as a

24      juror you would have to be able to give your

25      solemn promise that you could be fair and

1          Proceedings

2    impartial to Mr. Whitehead and to the People.

3               Do you feel comfortable giving me

4    your word?

5               PROSPECTIVE JUROR:  Yes.

6               THE COURT:  All right.

7               Now if the-- if you heard allegations

8    concerning activities in Brooklyn, do you think

9    that that might effect, in addition to Suffolk

10   County, do you think that that might effect how

11   you look at this case?

12              PROSPECTIVE JUROR:  No.  I mean wrong

13   is wrong as far as I am concerned, no matter

14   where it is.

15              THE COURT:  In other words the locale

16   wouldn't effect it at all?

17              PROSPECTIVE JUROR:  No.

18              THE COURT:  Okay.  All right.

19              Anything that you had wished to

20   discuss prior to leaving?

21              PROSPECTIVE JUROR:  That was it.

22              THE COURT:  That was it.  All right.

23              Now in the reference to Miss Crawford

24   having been the victim of a misappropriation

25   concerning her bank account, that is of a

1               Proceedings

2      personal nature.  Any follow up questions, I

3      would like to remain in this room rather than

4      discuss in open court.

5                    Beginning with Mr. Pearl, any

6      questions?

7                    MR. PEARL:  Did you ever report it to

8      the police?  I am just curious.

9                    PROSPECTIVE JUROR:  Yeah.  I went all

10     around the world with it.  I work in Westbury,

11     my bank is in Westbury but it happened in

12     Brooklyn.  They sent me to the 3rd Precinct,

13     they sent me to Brooklyn, it was all over the

14     place.

15                   MR. PEARL:  How long was it?

16                   PROSPECTIVE JUROR:  It has been

17     awhile, about five, six years.  It has been

18     awhile before I got all my alerts and everything

19     before I signed up for that.

20                   MR. PEARL:  Thank you.

21                   THE COURT:  Mr. Keahon, any

22     questions?

23                   MR. KEAHON:  No, thank you.

24                   THE COURT:  Miss Crawford, you can

25     take your seat with all of the other potential

Proceedings

1

2      jurors.  Just take your seat.  Thank you.

3               (Whereupon prospective juror

4      leaving.)

5               (Wherepupn prospective juror

6      entering.)

7               THE COURT:  Hello, Miss Desner, you

8      have been very patient.  Thank you so much.

9      Please.

10               PROSPECTIVE JUROR:  I don't know if

11      it is pertinent but I might as well throw it

12      out.

13               Two years ago my husband was in a car

14      accident on a business trip in Philadelphia.  He

15      was all right and the passenger was all right.

16      But two years later they filed a law suit.  I

17      wasn't in the car.  I wasn't a passenger or

18      anything but they're suing me and my husband for

19      damages.  She claims she is injured now after

20      two years.  So I don't know if--

21               THE COURT:  That is why we discuss

22      things privately because the main question is,

23      is that, do you feel first being involved with

24      this, sustained a law suit --

25               PROSPECTIVE JUROR:  The insurance

Proceedings

company's handling it.  They called us in a few
months.  I don't know if they are going to
settle out of court.  This is where it stands.

THE COURT:  Could it cause you to be
preoccupied at all, that you couldn't give your
undivided attention?

PROSPECTIVE JUROR:  No.  The lawyer
says it seems like a done deal.  There is no
real adherent injuries or anything that would --
damages or anything.  So I don't think that
um -- you know, it is going to be there,
probably going to settle out of court.  It won't
be anything.

THE COURT:  Okay.  So the ultimate
question I ask everyone is, based upon what you
have heard so far, would you be able to promise
both sides you can be a fair and impartial juror
in this case?

PROSPECTIVE JUROR:  I would try my
hardest.

THE COURT:  I know you would and I
hate to pursue the question further.  Sometimes
we say I think so out of modest.

PROSPECTIVE JUROR:  Uh huh.

Proceedings

THE COURT:  Understand how in a case to be sworn as a juror, I think so may not be enough.

PROSPECTIVE JUROR: Uh-huh.

THE COURT:  That you have to be able to give your solemn word that you can be fair.

Do you feel comfortable?

PROSPECTIVE JUROR:  I would -- the best of my ability I would try my hardest.

THE COURT:  I understand.

In other words you don't see anything that you have witnessed so far or heard so far effecting your judgment to be fair and impartial both to Mr. Keahon's client, Mr. Whitehead, as well as to the people?

PROSPECTIVE JUROR:  Right.  I think so.

THE COURT:  Okay.  See, there is that word again.

PROSPECTIVE JUROR:  I think so.

THE COURT:  I apologize.

PROSPECTIVE JUROR:  Right.  Right.

THE COURT:  You understand why for some people I think so is their bond, I will

1
2    give it a hundred percent.

3              PROSPECTIVE JUROR: I will give it --

4    I will give a hundred and ten percent. Whether

5    you know-- again --

6              THE COURT: I know.

7              PROSPECTIVE JUROR: It is just so

8    hard to--

9              MR. KEAHON: I have one question, if

10   I could.

11             THE COURT: Yes.

12             MR. KEAHON: If you had a good friend

13   or relative on trial, would you want someone

14   with your state of mind and the way you think

15   about things sitting as a juror?

16             PROSPECTIVE JUROR: Yeah, I think so.

17             MR. KEAHON: I am sorry?

18             PROSPECTIVE JUROR: Yes, I think so.

19             MR. KEAHON: I just have one other.

20             You are involved in a law suit?

21             PROSPECTIVE JUROR: Uh-huh.

22             MR. KEAHON: And there is an

23   accusation that your husband caused injury?

24             PROSPECTIVE JUROR: Injury, yeah.

25             MR. KEAHON: And you are being sued

1                          Proceedings

2        too?

3                     PROSPECTIVE JUROR:  Yes, because it

4        is my car.

5                     MR. KEAHON:  So you know what it is

6        like when accusations are being made?

7                     PROSPECTIVE JUROR:  Right.

8                     MR. KEAHON:  And you heard the Judge

9        say he is presumed to be innocent.

10                     Can you follow that?

11                     PROSPECTIVE JUROR:  Yes.

12                     MR. KEAHON:  Thanks.

13                     THE COURT:  People, any questions?

14                     MR. PEARL:  No, thank you.

15                     THE COURT:  Is there anything else

16        you would like to discuss privately?

17                     PROSPECTIVE JUROR:  I think that is

18        all.

19                     THE COURT:  Then you can take your

20        seat with the other potential jurors.  Thank

21        you.  Thank you so much, again.

22                     PROSPECTIVE JUROR:  (Complying.)

23                     (Whereupon prospective juror

24        entering.)

25                     THE COURT:  Hello, Miss Campbell.

1              Proceedings

2              PROSPECTIVE JUROR:  Werner.

3              THE COURT:  Miss Werner.  I

4       apologize.  Please have a seat.

5              Miss Werner, I always ask the last

6       question first, which is, based upon what you

7       have heard so far, a brief description of the

8       case, would you be able to promise both sides

9       that you could be a fair and impartial juror for

10      me?

11             PROSPECTIVE JUROR:  Yes.

12             THE COURT:  Okay.

13             Now you had a yes answer to one or

14      more of my questions.  We can discuss it.

15             PROSPECTIVE JUROR:  I was a victim of

16      a crime.  I was mugged twice.

17             THE COURT:  I am sorry.  And I do

18      apologize, I have to bring this up, you

19      understand the necessity for it.  It is to make

20      sure that what happens to a person in their past

21      doesn't effect their judgment now.  That is the

22      only reason we inquire.

23             About how long ago was this?

24             PROSPECTIVE JUROR:  The last one was

25      probably about twenty years ago and then we also

1                        Proceedings

2        had um -- a credit card stolen over the

3        Internet, credit card number um-- stolen over

4        the Internet and used.

5                    THE COURT:  About how long ago was

6        the credit card?

7                    PROSPECTIVE JUROR:  Let me see.

8        About maybe ten years ago.

9                    THE COURT:  Now the first thing to

10       talk about is the mugging.

11                   Was anyone ever apprehended?  Was

12       anyone ever caught?

13                   PROSPECTIVE JUROR:  No.  It was

14       actually two incidents.

15                   THE COURT:  Two muggings?

16                   PROSPECTIVE JUROR:  Yeah.  I lived in

17       Brooklyn.

18                   THE COURT:  So did I.

19                   What part of Brooklyn?

20                   PROSPECTIVE JUROR:  East Flatbush.

21                   THE COURT:  Albany Avenue between

22       Declartin.

23                   PROSPECTIVE JUROR:  I lived between

24       East Forester.

25                   MR. KEAHON:  Did you guys date?

Proceedings

1

2          PROSPECTIVE JUROR:  We are actually

3     married.

4          THE COURT:  For the record, we don't

5     know each other, correct?

6          PROSPECTIVE JUROR:  No.

7          THE COURT:  Thank you, Miss Werner.

8          We have to establish that on the

9     record.

10         Did the fact the people that mugged

11    you were not apprehended, does that give you any

12    negative feelings towards prosecuting agencies

13    such as the District Attorney, Police Department

14    or people accused of crimes such as

15    Mr. Whitehead?

16         PROSPECTIVE JUROR:  Not really.  My

17    son was a police officer.  I like him.

18         THE COURT:  You heard my instructions

19    regarding police officer testimony.  Would you

20    be able to follow that?

21         PROSPECTIVE JUROR:  Uh-huh.

22         THE COURT:  You would be?

23         PROSPECTIVE JUROR:  I believe so,

24    yeah.

25         THE COURT:  Now with you being the

Proceedings

victim of a credit card fraud, like that is a form of identity theft.

PROSPECTIVE JUROR: Uh-huh.

THE COURT: Someone stealing your information and using it. Mr. Whitehead stands accused of that crime.

If you are selected as a juror in this case, would you be able to put aside what happened to you and your family as a result of that and only decide this case on the facts presented here and not let that effect you or cloud your judgment at all?

PROSPECTIVE JUROR: Yes.

THE COURT: Okay.

Now is there anything else you would like to discuss privately?

PROSPECTIVE JUROR: No.

THE COURT: All right.

Any follow up questions to Miss Werner, her family being crime victims?

Beginning with the People.

MR. PEARL: You could be fair and impartial in this case?

PROSPECTIVE JUROR: I believe so.

1          Proceedings

2                    MR. PEARL:  You have to be a little--

3                    PROSPECTIVE JUROR:  Yes.

4                    MR. PEARL:  Yes.  That is what they

5          want.  Thank you.

6                    THE COURT:  Mr. Keahon.

7                    MR. KEAHON:  How are you?

8                    PROSPECTIVE JUROR:  Good.  Thank you.

9                    MR. KEAHON:  Your son, your

10         son-in-law is with the New York City PD.

11                   We all believe in our police force

12         and many times we make calls for their

13         assistance.

14                   Do you believe that a detective could

15         take the witness stand and swear to tell the

16         truth and yet lie under oath?

17                   PROSPECTIVE JUROR:  Um-- I guess

18         anybody is possible of doing it.  I don't think

19         they're special, above the law.

20                   MR. KEAHON:  The Judge is going to

21         charge you that you have to treat all witnesses

22         the same.

23                   Is there anything in your feelings

24         that you have now, that you believe that a

25         police officer or detective is worth -- their

111

1        Proceedings

2        testimony is worth more than any other witness?

3                PROSPECTIVE JUROR: No.

4                MR. KEAHON: You can understand my

5        concerns about what happened to you with that

6        identity theft with yourself.

7                Would you agree, that since it is a

8        very similar charge in this case, you perhaps

9        would be better suited to sit on another type of

10       case rather than something that mimics what

11       happened to you?

12               PROSPECTIVE JUROR: Um--

13               THE COURT: Remember there is no

14       wrong answer and there is no trick questions.

15               PROSPECTIVE JUROR: Yeah-- I don't

16       know. Um-- you know, it was all resolved. We

17       didn't-- nothing was, you know -- it didn't cost

18       us anything, just aggravation.

19               MR. KEAHON: Sure.

20               PROSPECTIVE JUROR: It is kind of in

21       the past. Um-- I don't think it would bother me

22       to -- I don't think my opinion would be swayed

23       by what happened to me.

24               MR. KEAHON: And you can totally put

25       it out of your mind?

1      Proceedings

2           PROSPECTIVE JUROR:  I think so.  I

3  put it out of my mind until the Judge asked the

4  question.

5           THE COURT:  You can put it out once

6  again?

7           PROSPECTIVE JUROR:  I think so.

8           THE COURT:  Okay.

9           MR. KEAHON:  Thanks.

10           THE COURT:  Any other questions?

11           Then you can take your seat with the

12  potential jurors unless there is anything else

13  you would like to discuss privately.

14           PROSPECTIVE JUROR:  No.

15           THE COURT:  Thank you very much,

16  again.

17           (Whereupon prospective juror

18  leaving.)

19           THE COURT:  Off the record.

20           (Whereupon there was a discussion off

21  the record.)

22           (Whereupon prospective juror

23  entering.)

24           THE COURT:  Hello there,

25  Miss Campbell.

1                    Proceedings

2                    PROSPECTIVE JUROR:   Laura Palmer.

3                    THE COURT:  Miss Palmer.  My

4          apologies, I jumped over.

5                    Please have a seat.

6                    PROSPECTIVE JUROR:   Thank you.

7                    THE COURT:  Miss Palmer, I always ask

8          the last question first, please.  Thank you once

9          again for being so patient.

10                   The ultimate question is, based upon

11         what you have heard so far, would you be able to

12         promise both sides that you could be a fair and

13         impartial juror for me in this case?

14                   PROSPECTIVE JUROR:   Actually, I

15         can't.

16                   THE COURT:   Okay.

17                   PROSPECTIVE JUROR:   I would like to

18         say that I could but I have to be honest with

19         you.

20                   THE COURT:  And you are being honest

21         according to your oath.  What can I do other

22         than commend that.  If you don't mind waiting

23         outside for just one moment, please.

24                   PROSPECTIVE JUROR:   Sure.

25                   THE COURT:   Thank you.

1                        Proceedings

2                   PROSPECTIVE JUROR:  (Complying.)

3                   THE COURT:  I can ask the why.  She

4        seems very adamant.

5                   MR. PEARL:  I can.  Give me a chance.

6                   MS. FRANZESE:  He is kidding.

7                   MR. PEARL:  I am just curious but I

8        am fine.

9                   THE COURT:  Consent?

10                   MR. KEAHON:  Sure.

11                   THE COURT:  Absent consent, I would

12        have to inquire further.

13                   MR. PEARL:  No, no, Judge.

14                   (Whereupon prospective juror

15        entering.)

16                   THE COURT:  Miss Palmer, you are

17        going to be discharged with the thanks of the

18        Court.

19                   PROSPECTIVE JUROR:  Thank you.

20                   MS. FRANZESE:  Take care.

21                   PROSPECTIVE JUROR:  I am sorry I

22        can't serve.

23                   THE COURT:  I apologize.  Thank you

24        for your candor.

25                   PROSPECTIVE JUROR:  Thank you, again.

1                        Proceedings
2                        (Whereupon prospective juror
3        leaving.)
4                        (Whereupon prospective juror
5        entering.)
6                        THE COURT:  Mr. Riordan.
7                        PROSPECTIVE JUROR:  Hello, Your
8        Honor.
9                        THE COURT:  You have been very
10       patient, sir.
11                       PROSPECTIVE JUROR:  Thank you.
12                       THE COURT:  Mr. Riordan, I always ask
13       the last question first before we get into any
14       specifics of the questions.
15                       Based upon what you have heard so far
16       from me as far as the description of this case,
17       would you be able to promise both sides that you
18       could be a fair and impartial juror?
19                       PROSPECTIVE JUROR:  I would try.
20                       THE COURT:  Okay.
21                       Sometimes that can be said as words
22       of modesty.  You understand how in a case, that
23       the Court has to require more, that you can feel
24       comfortable giving me your word that you will be
25       fair both to the People and to the defendant.

Proceedings

1

2   Do you feel comfortable?

3           PROSPECTIVE JUROR:  Yes.

4           THE COURT:  You had a yes answer to

5   one or more of my questions or anything else you

6   would like to discuss privately?

7           PROSPECTIVE JUROR:  There are

8   actually three.

9           I recognize the defense attorney from

10  news publications, past cases.  Those cases I

11  don't remember but I just understand his

12  capacity as a criminal defense attorney.

13          THE COURT:  Okay.

14          Mr. Keahon.

15          MR. KEAHON:  Yes.

16          PROSPECTIVE JUROR:  Michael Nolan is

17  a name I recognize, someone possibly from Islip

18  used to be an administrator at Southside

19  Hospital.  I am assuming he might be sixty-five

20  years old.  His name is common.  I don't know if

21  it is the same person.

22          THE COURT:  Lets ascertain if it is

23  the same person.

24          Are you aware of any background

25  regarding Mr. Nolan?

Proceedings

MR. PEARL:  Somewhat.  I don't believe it is the same Nolan.  I have to check.

THE COURT:  Lets assume for the sake sake of argument it turns out to be the same Mr. Nolan and he comes into the courtroom, takes the stand and sits in front of you as a witness. The fact that you know this person or are acquainted with them or recognize their name, would it effect the way that you judge their testimony versus how you would judge a stranger?

PROSPECTIVE JUROR:  I would believe his testimony.

THE COURT:  Okay.  You would?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Then it is something we would have to ascertain the fact that it is not the same person.

PROSPECTIVE JUROR:  Uh-huh.

THE COURT:  Anything else?

PROSPECTIVE JUROR:  The third thing, I have been a victim of identity fraud as it relates to a family member taking checks and endorsing them and collecting amounts under five hundred dollars, and at times also taking credit

1      Proceedings

2      cards from my wife and myself and conducting

3      business that wasn't authorized, leading to

4      change our style, closing accounts, hiding

5      information like that.

6                THE COURT:  And I apologize for

7      having to bring up something of a personal

8      family matter, you understand the necessity for

9      asking these questions.

10                PROSPECTIVE JUROR:  Of course.

11                THE COURT:  Now Mr. Whitehead stands

12      accused of, among other things, identity theft.

13      If selected as a juror you would have to decide

14      this case only on the evidence presented here in

15      court.  Do you feel comfortable?  Let me know if

16      you can't.  There is no wrong answer.  But if

17      you are sitting here in this room and going over

18      evidence, discussing with the other jurors, is

19      it-- do you feel that what happened in your own

20      family, do you think it could effect your

21      judgment?

22                PROSPECTIVE JUROR:  Yes.

23                THE COURT:  Okay.

24                Is there anything you would like to

25      discuss privately?

Proceedings

1

2          PROSPECTIVE JUROR:  No.

3          THE COURT:  All right.  Then if you

4    would wait outside for just a moment.  Thank you

5    very much.

6          PROSPECTIVE JUROR:  (Complying.)

7          THE COURT:  No follow up questions?

8          MR. PEARL:  No.

9          MR. KEAHON:  No.

10          THE COURT:  Consent?

11          MR. PEARL:  Yes.

12          MR. KEAHON:  Yep.

13          THE COURT:  Okay.

14          (Whereupon prospective juror entering

15    courtroom.)

16          THE COURT:  Please have a seat for

17    just a moment.

18          PROSPECTIVE JUROR: (Complying.)

19          MR. KEAHON:  I do have a question.

20          THE COURT:  You have a question.

21          MR. KEAHON:  Mr. Riordan, do you

22    normally read those portions of the paper that

23    deal with people that are charged or on trial?

24          PROSPECTIVE JUROR:  Um-- I can't help

25    but notice them if they're in the beginning of

Proceedings

the paper.  I try to see if I can do some
research to see what kind of cases will be
coming up now, and I wasn't successful in doing
that via the Internet but there have been some
notorious cases over the last fifteen, twenty
years in Suffolk County.  I believe they are
hard not to notice.

MR. KEAHON:  Sure.  Thank you very
much.

THE COURT:  Thank you.

MR. KEAHON:  We are all sorry for,
you know, you were the victim of an identity
theft within your own family.

Thank you.

PROSPECTIVE JUROR:  Thank you.

THE COURT:  You are going to be
discharged with the thanks of the Court,
Mr. Riordan.  Thank you so much for your time,
once again.

PROSPECTIVE JUROR:  Thank you.

(Whereupon prospective juror leaving
courtroom.)

THE COURT:  Hello, Miss Tommasino.

PROSPECTIVE JUROR:  Hi.

1          Proceedings

2                    THE COURT:  You have been so patient.

3                    Miss Tommasino, before I ask the

4          specific questions, before any yes answers you

5          have, I always cut to the chase, so to speak,

6          and ask the ultimate question, which is, based

7          upon what you have heard so far, do you feel

8          comfortable promising both the People and the

9          defendant that you can be a fair and impartial

10         juror in this case?

11                   PROSPECTIVE JUROR:  I think I could,

12         yes.

13                   THE COURT:  When I say sometimes you

14         think you could, sometimes it is words of

15         qualification.

16                   PROSPECTIVE JUROR:  Yes, I could.  I

17         could.

18                   THE COURT:  Now you had a yes answer

19         to one or more of my questions.  Anything you

20         wanted to discuss privately?

21                   PROSPECTIVE JUROR:  Two things.  One

22         thing is on the identity theft, my husband did

23         have a credit card stolen from his office about

24         two and a half years ago, right before the

25         holidays, reported it.  It was only a couple of

1          Proceedings

2    thousand dollars.  We were compensated for it.

3    It is just that I had to mention that.

4               The other thing is really nothing to

5    do with anything you mentioned.  If there is a

6    hardship, do we discuss that now or later?

7               THE COURT:  No, this is a very good

8    time to discuss it.

9               PROSPECTIVE JUROR:  I am a

10   physician's assistant for a primary care

11   practice in Medford.  It is a satellite office,

12   I am the only full-time employee at that office,

13   which I can show you a schedule to prove it.

14               THE COURT:  Your word is --

15               PROSPECTIVE JUROR:  It is a hardship

16   for me.  If I don't work, I don't get paid.  I

17   have four kids in college right now.  It is also

18   a hardship for my bosses.  I am the full-time,

19   forty hour person.  I have somebody today

20   supposed to work nine to twelve, and I would

21   have worked twelve to nine tomorrow.  I am there

22   nine to five.  It would be difficult for my

23   bosses to put five or six weeks in.

24               THE COURT:  Your hardship means a

25   great deal to us, your patients, your bosses,

Proceedings

1

2      you know.

3              PROSPECTIVE JUROR:  That is the only

4      way they make money.  They don't make money, I

5      don't make money.

6              THE COURT:  That is a very important

7      consideration.

8              MR. KEAHON:  Agree, Judge.

9              THE COURT:  Consent?

10             MR. KEAHON:  Yes.

11             MR. PEARL:  Yes.

12             THE COURT:  You will be discharged

13     with the thanks of the Court.

14             PROSPECTIVE JUROR:  I would even like

15     to serve sometime.  I think I have to be

16     retired.  I can't afford to do it until the kids

17     are a little older.  I appreciate it.  Thank you

18     so much.

19             MS. FRANZESE:  Take care.

20             (Whereupon prospective juror

21     leaving.)

22             THE COURT:  Off the record.)

23             (Whereupon there was a discussion off

24     the record.)

25             THE COURT:  Back on the record.

1          Proceedings
2              (Whereupon prospective juror
3      entering.)
4              THE COURT:  Hello Mr. Moir, you have
5      been very patient.
6              Mr. Moir, before we get into any of
7      the specific questions, I always ask the
8      ultimate question first, which is, based upon
9      what you have heard so far, would you be able to
10     be a fair and impartial juror to both sides in
11     this case?
12             PROSPECTIVE JUROR:  Yeah, I think so.
13             THE COURT:  When you say you think
14     so, do you feel comfortable giving me your word?
15             PROSPECTIVE JUROR:  Yes.
16             THE COURT:  You had a yes answer to
17     one or more of my questions.
18             PROSPECTIVE JUROR:  You said if you
19     ever were a victim of a crime.  Six years ago my
20     house was robbed during a party the kids were
21     having.  We were out, my wife and I, and they
22     stole like cash and cameras.
23             THE COURT:  Were they -- were the
24     people who did this ever apprehended?
25             PROSPECTIVE JUROR:  No.

1               Proceedings

2               THE COURT:  As a result of that, do

3       you have any dissatisfaction directed towards

4       the police or --

5               PROSPECTIVE JUROR:  No.

6               THE COURT:   -- people accused of

7       crimes, that you feel would color your judgment

8       at all?

9               PROSPECTIVE JUROR:  I don't think so,

10      no.

11              THE COURT:  Anything else that you

12      had a yes answer to?

13              PROSPECTIVE JUROR:  No.

14              THE COURT:  Is that it?

15              Because Mr. Moir's experience are

16      crime victims of a personal nature, any follow-

17      up questions would remain in this room.

18              Beginning with the People.

19              MR. PEARL:  Thank you for being

20      honest.

21              THE COURT:  Mr. Keahon, any follow-up

22      questions?

23              MR. KEAHON:  I have no questions.

24      Thank you.

25              THE COURT:  You can take your seat

1      Proceedings

2      with the other potential jurors.

3              Is that a biography of Winston

4      Churchill?

5              PROSPECTIVE JUROR:  No.

6              THE COURT:  I saw it upside down.

7              All right.  Thank you.

8              (Whereupon prospective juror

9      leaving.)

10             (Whereupon prospective juror

11     entering.)

12             THE COURT:  Mr. Porciello, you have

13     been very patient.  Thank you very much, once

14     again.  Thank you for your service in uniform.

15     Once again, it can't be done.

16             I always ask the last question first

17     before we get to the specific questions.  The

18     ultimate question being, based upon what you

19     have heard so far from my brief description, do

20     you feel comfortable in being able to promise

21     both sides that you can be a fair and impartial

22     juror for me, both to the People and to the

23     defendant?

24             PROSPECTIVE JUROR:  I believe so.

25             THE COURT:  All right.  When you say

1                          Proceedings

2    I believe so, I think you are a modest man but

3    do you feel comfortable giving me your word?

4                    PROSPECTIVE JUROR:  Yes.

5                    THE COURT:  You had a yes answer to

6    one or more of my questions or anything else you

7    wish to discuss?

8                    PROSPECTIVE JUROR:  Yes.  Myself, my

9    wife were victims of credit card theft years

10   ago.  In those days it was a carbon copy behind

11   the credit card.  We believe a store employee

12   took the credit card number and charged a number

13   of items.  However, the credit card company

14   dismissed the charges because we were never in

15   those locales.

16                   THE COURT:  So you never had to pay

17   for them actually?

18                   PROSPECTIVE JUROR:  No.

19                   Subsequently, my son -- excuse me,

20   subsequently my son was also a victim.

21   Actually, his credit card was stolen from the

22   gym about six months ago.

23                   THE COURT:  Do you feel-- the

24   people -- first, we will talk about your

25   incident with you and your wife.  About twenty

```
 1                    Proceedings
 2    years ago?
 3              PROSPECTIVE JUROR:  A little over.
 4              THE COURT:  I was going to say the
 5    carbons kind of went out about that period of
 6    time.
 7              Do you feel that -- first of all, was
 8    anybody apprehended, when you say were not
 9    charged?
10              PROSPECTIVE JUROR:  We never pursued
11    it.  In those days, you recall, you would call
12    the credit card company and immediately stopped
13    the credit card from being valid.  And then
14    subsequently we found out not to long after
15    that, that the charges, we were not responsible
16    for the charges.  So we never pursued anything.
17              THE COURT:  How about what happened
18    with your son?  Was anyone ever apprehended in
19    connection with that?
20              PROSPECTIVE JUROR:  I don't believe
21    so.  I think it was the same scenario.  He
22    called the credit card company and they
23    dismissed the charges.
24              THE COURT:  Let me ask, where did
25    this take place as far as your son's gym?
```

1          Proceedings

2              PROSPECTIVE JUROR:  My son, it was in

3      Northport, I believe it was a Golds Gym.

4              THE COURT:  If chosen as a juror in

5      this case, you would have to decide this case

6      only on the facts presented at this trial.

7              PROSPECTIVE JUROR:  I understand.

8              THE COURT:  You wouldn't be able to

9      let what happened to you or your family effect

10     your judgment in order to make sure that the

11     People and Mr. Whitehead receive a fair trial.

12             Mr. Whitehead is accused of, among

13     other things, credit card identity thefts in

14     connection with that kind of information.  If

15     there is that kind of -- if you start hearing

16     similar information during the course of the

17     trial, that is my only concern, you would find

18     it difficult to avoid letting that color your

19     judgment.

20             You understand my concerns.

21             PROSPECTIVE JUROR:  I understand,

22     Your Honor and --

23             THE COURT:  Your word is good enough

24     for me, please.

25             PROSPECTIVE JUROR:  Okay.

1              Proceedings

2                   THE COURT:  So it is just, I leave it

3         up to you as far as what do you think?

4                   PROSPECTIVE JUROR:  For me to sit

5         here in front of everyone, personally, I would

6         say that it would be impossible to dismiss the

7         past knowing what I know.  However, I believe I

8         could keep an open mind.

9                   THE COURT:  See, that is the key and

10        you kind of, you hit the heart of it.  Common

11        sense comes from our experience.  It is a

12        question of whether or not it will burden our

13        present judgment.  That is the question.

14                  Do you feel it would be a burden to

15        you or you feel you would be able to set it

16        aside and say that is what happened to me but I

17        will consider the evidence as to Mr. Whitehead,

18        what is presented here in court, you won't

19        speculate or use what happened with your son or

20        yourself?

21                  PROSPECTIVE JUROR:  I believe with

22        your instructions I would say, I would be as

23        honest as I can be.  I can not dismiss the fact

24        that this occurred in my life.

25                  THE COURT:  All right.

1          Proceedings

2              Anything else you would like to

3      discuss privately?

4              PROSPECTIVE JUROR:  Um--

5              THE COURT:  Or was that it?

6              PROSPECTIVE JUROR:  I told you that I

7      have a relative who was also a court judge in

8      Suffolk County.

9              THE COURT:  In Suffolk County; who is

10     your relative?

11             PROSPECTIVE JUROR:  Um -- I always

12     forget.  Laurie and Glen Murphy.  Glen Murphy.

13             THE COURT:  Glen Murphy, sure.

14             MR. KEAHON:  District Court Judge.

15             THE COURT:  Do you ever discuss the

16     law with Judge Murphy?

17             PROSPECTIVE JUROR:  Social, no cases,

18     lets put it that way.

19             THE COURT:  Now on a personal, could

20     you promise not to hold me up to Judge Murphy's

21     standards?

22             PROSPECTIVE JUROR:  I have never been

23     in his court so I don't know.

24             THE COURT:  Good.  I can take that as

25     a yes.  If for no other reason, by default.