Gabriele-People-Cross

2  it says Sweeney on the left of it?

3       A      Disregard that.

4       Q      What is Sweeney?

5       A      Sweeney is the victim in one of the cases.

6       Q      So what number is a definite?

7       A      I will read them to you.

8       Q      Good.

9       A      212-252-2061.

10      Q      Just do the last four numbers.

11      A      0009. 0134. 0402.  0556. 5282.  1418.

12  3713.  0698.  0555.  0575.  1699.  3693.

13      Q      Okay.

14              And what about the numbers that are

15  circled up above it?

16      A      That is just some notes I took initially,

17  before we went through all the voice recordings.

18      Q      What do those things mean?

19      A      I was going to list all of the numbers

20  initially, but I did it later on, after we listened to

21  it.

22      Q      347-623-1549, what about that?

23      A      That was one of the numbers involved in

24  some of the cases and I asked her if she recognized

25  whose number that was.

```
 1                      Gabriele-People-Cross
 2      Q      What did she say?
 3      A      She did not recognize it.
 4                 MR. PEARL:  Objection.
 5                 THE COURT:  Sustained.
 6                 It was -- the witness already
 7      answered the question.
 8      Q      212-561-1482, with the name Tiesha Lamont?
 9                 MR. PEARL:  Objection.
10      Q      Was she asked about that?
11                 THE COURT:  The basis.
12                 MR. PEARL:  Relevance.  Beyond the
13      scope.
14                 THE COURT:  Offer of proof,
15      Mr. Keahon, briefly.
16                 MR. KEAHON:  Yeah.
17                 Instead of going back to statements
18      and taking forever, I don't know if this is one
19      of the numbers that she listened to.
20                 THE COURT:  To save time, I will
21      allow it.  If it saves time.
22                 MR. KEAHON:  Good.
23      A      Yes, that is one of the numbers she
24      listened to.
25      Q      What does she say?
```

1

2        A     She identified that voice, a Tiesha

3  Lamont.

4        Q     And who did she say Tiesha Lamont was?

5        A     That is her sister.

6        Q     Did she identify her voice on any of

7  these?

8        A     No, she did not.

9        Q     Or her phone number?

10       A     No, she did not.

11       Q     Or indicate to you that she knew any of

12  the other phone numbers?

13       A     No, she did not.

14            MR. KEAHON:  I have nothing further,

15      thank you.

16           THE COURT:  Thank you.

17           Any redirect?

18           MR. PEARL:  No, thank you, Your

19      Honor.

20           THE COURT:  Thank you very much,

21      Detective, you may stand down.

22           MR. KEAHON:  Oh, may I just have one

23      second.

24           I am good.  Fine.  Thank you.

25           (Whereupon witness leaving witness

1                         Proceedings

2       stand.)

3                  THE COURT:   We had a brief side-bar

4       conference before.

5                  You have an application, I believe.

6                  MR. PEARL:   Oh yes.

7                  I have an application to have an

8       Order of Protection issued, Your Honor.  At this

9       time I am asking the Court issue an Order of

10      Protection in favor of Valerie Rodriguez, that,

11      being she is a witness on this case and the CPL

12      provides the Court jurisdiction issue subpoenas

13      for witnesses on pending trial matters.

14                 I do that specifically, Your Honor,

15      in reference to within the last two weeks, this

16      defendant has contacted her.  Particularly, as

17      the case gets closer to trial, she has expressed

18      a fear to us.  We were holding off on issuing an

19      Order of Protection but now we are asking the

20      Court to issue the Order of Protection based on

21      today's hearing.

22                 THE COURT:   Thank you.

23                 Do you wish to be heard, Mr. Keahon?

24                 MR. KEAHON:   Yeah.

25                 The predicate has not been set at

|    |                                                    |
|----|----------------------------------------------------|
| 1  | Proceedings                                        |
| 2  | all.  There is no indication that my client has    |
| 3  | harassed, bothered, persuaded, pressured or done   |
| 4  | anything.                                          |
| 5  | THE COURT:  Thank you.                             |
| 6  | Over your objection, Mr. Keahon, the               |
| 7  | Court finds, that based upon the evidence          |
| 8  | adduced at the hearing today as well as the        |
| 9  | colloquy of counsel, which the Court is allowed    |
| 10 | to take into consideration, I find that good       |
| 11 | cause has been shown pursuant to Section 530.13    |
| 12 | of the Criminal Procedure Law for the issuance     |
| 13 | of a Temporary Order of Protection.                |
| 14 | By your leave, counsel,                            |
| 15 | Mr. Whitehead, I am signing an Order of            |
| 16 | Protection which will remain in pull force and     |
| 17 | effect for one year from today's date unless       |
| 18 | otherwise directed by the Court, directing you     |
| 19 | to have no contact whatsoever with                 |
| 20 | Miss Rodriguez.                                    |
| 21 | If you violate the terms of this                   |
| 22 | order, which will be served upon you at this       |
| 23 | time, then charges could be filed against you      |
| 24 | which could result, depending upon the manner in   |
| 25 | which the Order of Protection is violated, you     |

1                        Proceedings

2    receiving up to two and a third up to seven

3    years in State Prison.

4                    Please confer with your attorney.

5                    (Whereupon defendant conferring with

6    Mr. Keahon.)

7                    MR. KEAHON:  We are fine, Judge.

8                    THE COURT:  Thank you.

9                    MR. KEAHON:  I mean I take exception

10   to the Court's ruling but--

11                   THE CLERK:  Mr. Whitehead, you need

12   to sign each one of these on the "X".  What you

13   are doing is acknowledging receipt of a copy of

14   the Temporary Order of Protection.

15                   MR. KEAHON:  You have to do each one.

16                   THE DEFENDANT:  (Complying.)

17                   THE COURT:  In light of the time

18   the -- the People I think had indicated that

19   that was their sole witness.

20                   MR. PEARL:  Yes, Judge.

21                   THE COURT:  People rest for the

22   purposes of the hearing?

23                   MR. PEARL:  Yes, Your Honor.

24                   THE COURT:  The People having rested,

25   do you anticipate calling anyone?

273

Proceedings

1

2      MR. KEAHON:  No, Judge.

3      THE COURT:  Then in light of the

4 time, the Court will allow counsel to make

5 their, excuse me, as far as closing arguments,

6 at this time.

7      MR. PEARL:  I am jumping the gun.

8 Sorry.

9      THE COURT:  Closing arguments

10 concerning this aspect of the hearing.

11      MR. KEAHON:  I will rest on the

12 hearing.

13      MR. PEARL:  People rest on the

14 testimony.

15      THE COURT:  Thank you.

16      Then the Court will issue it's

17 decision tomorrow afternoon, immediately prior

18 to the resumption of jury selection.

19      MR. KEAHON:  Judge, I just have one

20 request.  I don't know whether it is contained

21 in the volumes, those 3,000 pages, but I would

22 like any Giglio material, any cooperation

23 agreements, any agreements on sentencing,

24 anything at all, any benefit that -- any of the

25 witnesses.

```
 1                      Proceedings
 2              MR. PEARL:  Within the Rosario
 3    Material is the plea minutes taken, where
 4    Assistant District Attorney Douglas Burns set up
 5    the agreement that, I believe, it is that she
 6    was going to get six and five or five straight,
 7    in essence, what the plea minutes will say.
 8              MR. KEAHON:  Or is it that she can do
 9    better but the cap is six and five?
10              THE COURT:  The important question
11    is, it doesn't have to be discussed here, merely
12    in the People feel comfortable affirming that
13    that has been turned over.
14              MR. PEARL:  Yeah, the plea minutes
15    are.
16              MR. KEAHON:  Is there any other
17    witness that you are going to call that has
18    received any benefit whatsoever or may?
19              MR. PEARL:  No.  No cooperation.
20              THE COURT:  The Order of Protection,
21    Mr. Keahon, do you acknowledge receipt of the
22    Order of Protection served upon your client at
23    this time?
24              MR. KEAHON:  Yes.
25              THE COURT:  Thank you.
```

```
 1                        Proceedings
 2               Yes.
 3               MR. PEARL:  Just to revisit the
 4      Molineux application, I am doing that now
 5      because of the hearing we did, is that I would
 6      like the Court to consider specific reference to
 7      the piece of paper where the defendant was, we
 8      submit, the defendant was actively altering
 9      paperwork.  I already made my Molineux
10      application.
11               THE COURT:  I wrote that down as far
12      as one of the aspects you sought the Court to
13      rule on.
14               MR. PEARL:  I would like to extend
15      it.  It is important for the Court to know these
16      blocked numbers were all in blocks of ten and
17      ten, and there is an identification of Tiesha
18      Lamond using the name Katherine Reed.  That was
19      the message, 1482, that Detective Gabrielle just
20      testified to.  It is important.  Those blocks of
21      numbers are coming together.  It is important
22      when Your Honor considers the Molineux
23      application, specifically, is that this
24      defendant was altering Katherine Reed's W-3 Form
25      and I want that -- I wasn't putting in my
```

1          Proceedings

2    Molineux application, I am holding it.  It was a

3    significant issue for relevancy that the Court

4    ties much stronger into the Molineux application

5    to be probative.  It is probative, necessary.

6              THE COURT:  Thank you.

7              MR. PEARL:  Just so the Court's

8    aware, I still suggest it goes to all the

9    intent.  I want the Court to fully understand

10   now that Tiesha Lamont's phone number has come

11   out.

12             THE COURT:  I won't ask you to

13   respond as per our discussion at this time.

14             MR. KEAHON:  Yes, Judge.

15             THE COURT:  The Court will stand to

16   reconvene two o'clock tomorrow for the

17   resumption of this trial.

18             I will see -- Mr. Whitehead, you are

19   free to go, I will see you tomorrow afternoon.

20             MR. KEAHON:  Two o'clock.

21             THE COURT:  Two o'clock, yes, thank

22   you.

23             (Whereupon the case was recessed to

24   February 7, 2008, 2:00.)

25

277

COUNTY COURT OF THE STATE OF NEW YORK

COUNTY OF SUFFOLK : TRIAL TERM: PART 7

-----------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK          CASE NO.
                                             537-07
            -against-
                                             190.65-01
LAMAR WHITEHEAD,
                                             VOIR DIRE
                     Defendant                  & TRIAL

-----------------------------------------x

                          Riverhead, New York
                          February 7, 2008, 2pm


BEFORE:        HON. JAMES HUDSON,
                   County Court Justice


APPEARANCES:

               HON. THOMAS J. SPOTA, ESQ.
               District Attorney of Suffolk County
               For the People
               200 Center Drive
               Riverhead, New York

               BY:  RAPHAEL PEARL, ESQ.
                    Assistant District Attorney

                    JODI FRANZESE, ESQ.
                    Assistant District Attorney


               WILLIAM KEAHON, ESQ.
               Attorney for Defendant
               One Suffolk Square
               Islandia, New York

                         BARBARA O'DONNELL
                         Official Court Reporter

1          Proceedings

2          THE CLERK:  Case on trial, People

3   versus Whitehead, all parties present, outside

4   the presence of the prospective jury.

5          THE COURT:  Thank you.

6          After the hearing on the question of

7   the confirmatory nature or not of certain voice

8   identifications pertaining to the witnesses

9   Mr. Nigel Defreitas, Valerie Rodriguez, and

10  Anita Bryant, the Court heard the testimony

11  adduced by the People of Detective

12  Thomas Gabriele, we found him to be in all

13  respects a credible witness.  His testimony

14  demonstrated that regarding Mr. Defreitas, that

15  they had been friends or acquaintances for

16  approximately, four to five years, and had

17  spoken numerous times.  The relationship between

18  Mr. Whitehead and Miss Rodriguez was that of a

19  close friendship which existed for a period of

20  approximately, ten months.  And Miss Anita

21  Bryant had also claimed to know Mr. Whitehead

22  for a period of well over ten years.  And in

23  fact, did claim a familial relationship.

24          The Court finds that the People have

25  proved by clear and convincing evidence, that

279

1                    Proceedings

2      the voice identification was merely confirmatory

3      and it was non-suggestive.

4                    In all respects the motion to

5      suppress, therefore, will be denied, and your

6      exception to the Court's ruling, Mr. Keahon,

7      will be duly noted.

8                    MR. KEAHON:  Thank you, Judge.

9                    THE COURT:  Thank you.

10                   (Whereupon the case was recessed.)

11                   THE CLERK:  Case on trial, People

12     versus Whitehead, all parties present, outside

13     the presence of the prospective jurors.

14                   THE COURT:  Thank you.

15                   Before we bring in the prospective

16     jurors, our new jurors who are selected have not

17     received all of the initial questions from the

18     Court.  That is Miss Laguerra -- is it Miss

19     Roddy --

20                   MR. KEAHON:  Yes.

21                   THE COURT:  Mr. Castro, Mr. Stingley,

22     and Mr. Calleja.

23                   MR. KEAHON:  That is correct.

24                   THE COURT:  I just want to see if I

25     missed anyone from yesterday.

1                           Proceedings

2                MR. PEARL:  Those are the ones I

3      have.

4                THE COURT:  Those are the ones you

5      have as well, Mr. Keahon?

6                MR. KEAHON:  Yes.

7                How about Vannostrand?

8                THE COURT:  Vannostrand.

9                MR. KEAHON:  Yeah.

10               THE COURT:  Was Mr. Vannostrand one

11     of the original group?

12               MR. KEAHON:  He may have been, I am

13     not sure.

14               THE COURT:  What I will do is address

15     my initial remarks, I will say to our newly

16     selective jurors as of yesterday afternoon,

17     bring them up to speed.

18               MR. KEAHON:  Great.

19               THE COURT:  Anything to place on the

20     record before we bring in our prospective

21     jurors?

22               MR. KEAHON:  No, there is not, Your

23     Honor.

24               THE COURT:  We will bring in our

25     jury.

Proceedings

1

2          (Whereupon prospective jurors

3    entering courtroom.)

4          THE COURT:  Good afternoon.

5          THE CLERK:  Case on trial, People

6    versus Whitehead, prospective jurors, all

7    parties present.

8          THE COURT:  Are the People ready to

9    proceed?

10          MR. PEARL:  Yes, Your Honor.

11          THE COURT:  The defense?

12          MR. KEAHON:  I am, sir.

13          THE COURT:  Thank you.

14          Thank you all once again.

15          Now to bring our new jurors up to

16    speed, so to speak, the-- I will ask the initial

17    of the prerequisite questions I had asked when

18    all of you had been seated originally.

19          Now my questions at this point will

20    be directed to the new jurors who came in at the

21    second call last yesterday because you are all

22    veterans of the jury selection process at this

23    point in time.

24          And again, at any point in time, if

25    you have any questions that you wish to discuss

Proceedings

1

2    privately or any matter you wish to discuss

3    privately, merely let me know, I will be happy

4    to bring you in the jury room with counsel and

5    myself to discuss it.

6              These are to our new jurors.

7              Do you recognize any of the names or

8    recognize counsel or Mr. Whitehead or any of the

9    names of potential witnesses?

10             Remember that my mere mentioning of

11   any names does not impose any burden on either

12   side to call people.

13             Has anyone close to you had a

14   conflict with the law, aside from a vehicle and

15   traffic law infraction?

16             Has anyone heard about this case?

17   Work in law enforcement now or in the past?  Or

18   work in a law office now or in the past?

19             Been the victim of a crime?  Accused

20   of a crime?

21             We have some yes answers to that.

22             Now we will bring you in one at a

23   time into the jury room.

24             Have any of our new jurors have any

25   pre-jury or trial jury experience?  Any

Proceedings

experience in Armed Forces?  Any service?

Thank you once again, gentlemen, for your service to your country.

That is Mr. Vannostrand.

PROSPECTIVE JUROR:  Yes.

THE COURT:  And Mr. Stingley.

You heard the question that I-- I also had asked you, Mr. Farmer.

PROSPECTIVE JUROR:  Farmer, right.

THE COURT:  You heard what I had asked our veterans yesterday.  You are familiar with the Uniform Code of Military Justice during your service to your country.

Would you be able to set that aside and just use the law, the instructions I give you?

PROSPECTIVE JUROR:  Yes.

PROSPECTIVE JUROR:  Yes.

THE COURT:  People who had their hand up, we will bring you in one at a time and bring you straight out.

Counsel.

(Whereupon the following took place in the jury room.)

```
 1                      Proceedings
 2                      (Whereupon prospective juror
 3       entering.)
 4                  THE COURT:  Miss Roddy.
 5                  PROSPECTIVE JUROR: It is not a
 6       secret.  It is just my sister is a detective.
 7       That is it.
 8                  THE COURT:  Okay.  That is it?
 9                  PROSPECTIVE JUROR:  Yeah, that is it.
10                  THE COURT:  You will be able to
11       follow my instructions regarding police officer
12       testimony you heard yesterday?
13                  PROSPECTIVE JUROR:  Yes.
14                  THE COURT:  Thank you.  You can take
15       your potential seat seat with the other
16       potential jurors.
17                  PROSPECTIVE JUROR:  (Complying.)
18                      (Whereupon prospective juror
19       entering.)
20                  THE COURT:  Mr. Stingley.
21                  PROSPECTIVE JUROR:  No, it is
22       Zakrewshi.
23                  THE COURT:  My apologies.
24                  What seat are you in there, sir?
25                  PROSPECTIVE JUROR:  I think it is
```

285

1                      Proceedings

2      six.

3                      THE COURT:  Okay.  All right.

4                      Mr. Zakrewski, what yes answer did

5      you have to discuss?

6                      PROSPECTIVE JUROR:  My father-in-law

7      is retired NYPD and wife's uncle's retired NYPD.

8      I have a niece who is a lawyer but she serves in

9      Massachusetts Bar.

10                     And my brother-in-law was killed.  I

11     don't know if you consider it a traffic

12     accident.  It was a police chase where they ran

13     through his house.  The car ended up running

14     through his house and killing him.  That was the

15     crime in the family.

16                     THE COURT:  What was your brother-in-

17     law's name?

18                     PROSPECTIVE JUROR:  Bill Calhoun.

19     William Calhoun.  On 109.

20                     THE COURT:  How closely did you

21     follow that case?

22                     PROSPECTIVE JUROR:  Pretty closely.

23     I didn't go to court at all.  It was right

24     after.

25                     THE COURT:  I was the Judge in that

1                        Proceedings

2          case.

3                    So would that effect you sitting as a

4          juror in this case?

5                    PROSPECTIVE JUROR:  I don't think so.

6          I don't think they're related, are they?

7                    THE COURT:  No but it is just the

8          matter you were coming before the Court.  If you

9          were coming before the Court and talk about this

10         case with relatives and then my name came up,

11         that is the reason.

12                   PROSPECTIVE JUROR:  I did recognize

13         your name when it came up but it doesn't make a

14         difference.  You didn't ask the question.

15                   THE COURT:  The only thing, that is

16         why I leave it with you, if any of your life

17         experiences would have a bearing on your ability

18         to be fair and impartial?

19                   PROSPECTIVE JUROR:  I don't think so.

20                   THE COURT:  Anything else you wish to

21         discuss?

22                   PROSPECTIVE JUROR:  I don't think so.

23                   THE COURT:  When you said I don't

24         think so, those are words of modesty.  Can you

25         promise both sides you can be fair and impartial

```
 1                          Proceedings

 2       in this case?

 3                  PROSPECTIVE JUROR:   I do that for a

 4       living.

 5                  THE COURT:   What do you do?

 6                  PROSPECTIVE JUROR:   I run an

 7       engineering group.

 8                  MR. KEAHON:   I had a question.

 9                  Was it your brother-in-law that was a

10       police officer that was killed?

11                  PROSPECTIVE JUROR:   No, he wasn't

12       killed.  My brother-in-law was just a homeowner,

13       he was in his living room, the police were

14       chasing the car, the guy lost control and ran

15       through his house.

16                  THE COURT:   So you don't have a

17       problem sitting on the case with knowing who I

18       am, as the Judge?

19                  PROSPECTIVE JUROR:   I don't think so.

20                  THE COURT:   When you say you don't

21       think so, you are an engineer?

22                  PROSPECTIVE JUROR:   No, I would not

23       have a problem.

24                  THE COURT:   You can say it to a

25       certainty?
```

```
 1                      Proceedings
 2              PROSPECTIVE JUROR:  Yes.
 3              THE COURT:  Thank you.
 4              Anything you wish to discuss
 5      privately?
 6              PROSPECTIVE JUROR:  No.
 7              THE COURT:  Okay.
 8              Any other questions touching on this?
 9              MR. KEAHON:  No.
10              MR. PEARL:  No.
11              THE COURT:  You can take your seat
12      with the other jurors.  Thank you.
13              PROSPECTIVE JUROR:  (Complying.)
14              THE COURT:  Off the record.
15              (Whereupon there was a discussion off
16      the record.)
17              (Whereupon propective juror
18      entering.)
19              THE COURT:  Mr. Stingley.
20              PROSPECTIVE JUROR:  Farmer.
21              THE COURT:  Mr. Farmer.  Oh my
22      apologies.  Have a seat.
23              PROSPECTIVE JUROR:  (Complying.)
24              THE COURT:  You had a yes answer to
25      one or more of my questions?
```

1                           Proceedings

2              PROSPECTIVE JUROR:  Yes.

3              Okay.  I remembered my sister had

4     problems with credit cards stolen and fraud

5     about eighteen years ago.

6                   I have another sister who is a

7     special agent with the F.B.I., works in

8     Manhattan.

9              THE COURT:  Would the fact that you

10    have relatives in law enforcement and your

11    sister had this problem all these years ago,

12    would you be able to be a fair and impartial

13    juror for me in this case?

14             PROSPECTIVE JUROR:  I believe I

15    would.

16             Also I work at a health department

17    for thirty-five years.  I used to file violation

18    charges in court and about a hundred and fifty

19    cases for health and sanitary codes.  On two

20    instances I had to file felony charges against

21    people who sold medicine.  I had worn a wire for

22    the District Attorney for investigating --

23             MR. KEAHON:  I can't hear you.

24             PROSPECTIVE JUROR:  Wiretap for the

25    District Attorney investigating bribery

1                          Proceedings

2      corruption about thirty years ago, Town of

3      Babylon Building Department.

4                     I currently, maybe once a year with

5      the police and F.B.I. and another -- people on

6      an anti-terrorism desk top task force.  So I am

7      involved in other activities like that.

8                     THE COURT:  Do you feel you would be

9      able to put that aside and first not use any

10     expertise that you developed over the years and

11     just decide this case on the facts of this case

12     and the laws I instruct you on?

13                    PROSPECTIVE JUROR: I feel I would.

14                    MR. KEAHON:  I had a question.

15                    THE COURT:  I just want to ask a

16     little preliminary questions.  My apologies,

17     counsel.

18                     Would you be able to give the Court

19     your word -- if you are not comfortable, that is

20     why we are discussing this privately.  I don't

21     want to put anybody on the spot.  That you would

22     not favor the prosecution or the defense as a

23     result of your background.

24                    PROSPECTIVE JUROR:  No.  I believe I

25     would.

291

| | |
|---|---|
| 1 | Proceedings |
| 2 | THE COURT:  That you would be fair to |
| 3 | both sides? |
| 4 | PROSPECTIVE JUROR:  Fair and just to |
| 5 | both sides. |
| 6 | THE COURT:  Mr. Keahon, you had a |
| 7 | question? |
| 8 | MR. KEAHON:  Yes. |
| 9 | Good afternoon, Mr. Farmer. |
| 10 | PROSPECTIVE JUROR:  Good afternoon. |
| 11 | MR. KEAHON:  You indicated that your |
| 12 | sister is with the F.B.I. |
| 13 | PROSPECTIVE JUROR: Yes, sir. |
| 14 | MR. KEAHON:  And another sister was a |
| 15 | victim of a credit card fraud? |
| 16 | PROSPECTIVE JUROR:  Yes. |
| 17 | MR. KEAHON:  When was that? |
| 18 | PROSPECTIVE JUROR:  Early 90's, '91, |
| 19 | '92. |
| 20 | MR. KEAHON:  You indicated that you |
| 21 | have worn a wire for the District Attorney's |
| 22 | Office of Suffolk County. |
| 23 | PROSPECTIVE JUROR:  Yes, sir. |
| 24 | MR. KEAHON:  You can understand my |
| 25 | concerns. |

1                        Proceedings

2              PROSPECTIVE JUROR:  Absolutely.

3              MR. KEAHON:  Do you, sir, believe

4    that a detective -- well, let me withdraw that.

5              You have heard about six detectives

6    names read off to you as possible witnesses; did

7    you know any of them?

8              PROSPECTIVE JUROR:  No, sir.

9              MR. KEAHON:  Do you believe that a

10   detective could take the stand and swear to tell

11   the truth and yet lie to you?

12             PROSPECTIVE JUROR: I believe anybody

13   could, sir.

14             MR. KEAHON:  Well, do you believe

15   because of the work that you have done, your

16   familiarity with the Court system, you lodging

17   complaints yourself against people, you wearing

18   a wire for the DA'S Office, your sister being an

19   F.B.I. agent, do you think because of all of

20   that and understandably, it might occur, that

21   you would feel that law enforcement would be

22   entitled to more of a, more credibility?

23             I mean, I only have a short time to

24   speak with you.

25             PROSPECTIVE JUROR:  I would tend to

1                          Proceedings

2       believe them unless it was something other

3       than --

4                    MR. KEAHON:  So you would start

5       off -- and this is so important because I only

6       have a few minutes to talk to you to make a

7       decision.

8                    PROSPECTIVE JUROR:  Sure.

9                    MR. KEAHON:  It is your position

10      then, sir, because of all those things I

11      mentioned to you, that you would start off

12      believing what they had to say because of your

13      associations and your work environment and your

14      family structure in law enforcement?  Is that a

15      fair statement?

16                   PROSPECTIVE JUROR:  That is a fair

17      statement.

18                   MR. KEAHON:  Do you think because of

19      it, your sister being a victim of a credit card

20      fraud and because of your association with law

21      enforcement, there might be another case that

22      you might be better suited to sit on than this

23      one?

24                   PROSPECTIVE JUROR:  I think I would

25      be unbiased in this one but there might be

1                      Proceedings
2       better cases.
3                 MR. KEAHON:  You would still, as you
4       indicated, law enforcement might be entitled to
5       a little bit more credibility starting off?
6                 PROSPECTIVE JUROR:  Yes.
7                 MR. KEAHON:  Okay.  Thank you.
8                 THE COURT:  Mr. Pearl.
9                 MR. PEARL:  Mr. Farmer, is it anybody
10      who comes into the courtroom who puts their hand
11      up and swears to tell the truth that you would
12      start believing what they said unless there was
13      something that led you not to believe them?
14                PROSPECTIVE JUROR:  Yes, correct.
15                MR. PEARL:  Does that include law
16      enforcement and civilian witnesses, the same?
17                PROSPECTIVE JUROR: I would think I
18      would trust the law enforcement more than the
19      civilian witness.
20                MR. PEARL:  Could you be fair and
21      impartial to both sides despite the fact there
22      are law enforcements who will testify for the
23      DA's Office?
24                PROSPECTIVE JUROR:  I believe I
25      would.

1          Proceedings

2          MR. PEARL:  I believe and yes or no?

3          PROSPECTIVE JUROR:  I believe I would

4     be, yes, sir.

5          MR. PEARL:  Thank you.

6          THE COURT:  Thank you.

7          Would you wait outside for just a

8     moment, please, wait with the officer.

9          PROSPECTIVE JUROR:  (Complying.)

10         MR. KEAHON:  Yes, I would challenge

11    for cause.  Sister, F.B.I., he has worn a

12    wiretap for the DA's Office, brought charges

13    himself as a semi-prosecutor, has indicated to

14    the Court he would give law enforcement more

15    belief than any other witness.

16         I think under all those circumstances

17    that he should be challenged for cause.

18         THE COURT:  Mr. Pearl.

19         MR. PEARL:  My argument is, he says

20    he could be fair and impartial.  His last answer

21    was yes, unequivocal.  I think he is not a

22    cause.

23         THE COURT:  We will seat him at this

24    time and at the conclusion of your respective

25    voir dire, I will reserve decision at this time.

```
 1                        Proceedings
 2              All right.  You can tell Mr. Farmer
 3    he can take a seat with all the other potential
 4    jurors.
 5                    Off the record.
 6                    (Whereupon there was a discussion off
 7    the record.)
 8                    THE CLERK:  This is the last one.
 9                    (Whereupon prospective juror
10    entering.)
11                    THE COURT:  Mr. Vannostrand.
12                    PROSPECTIVE JUROR:  How are you
13    doing?
14                    THE COURT:  Thank you so much for
15    your patience.
16                    Vannostrand, an old New York name.
17                    PROSPECTIVE JUROR:  Yeah, it goes
18    back a long time.
19                    THE COURT:  Mr. Vannostrand, you had
20    something you wished to discuss privately or
21    yes?
22                    PROSPECTIVE JUROR:  It was with the
23    police.  My father was a police officer.  I
24    don't know if he was retired or present, and
25    various friends that were on the police now that
```

```
1                        Proceedings
2    I went to school with.   It was nothing personal.
3              THE COURT:  The reason -- and
4    anything else, yes answer?
5              PROSPECTIVE JUROR:  No.
6              THE COURT:  Well, the reason that I
7    asked that question of people is because you
8    heard my follow-up that a police officer takes
9    the same oath as any other witness and because
10   of that, just by virtue of their occupation,
11   that they are not to receive any more
12   credibility or less credibility than any other
13   witness.  That is the law.
14             So in other words they come in as any
15   other witness and you would have to view their
16   testimony and decide whether or not you believe
17   them and what weight to give their testimony.
18             Do you feel comfortable with this
19   instruction, with that instruction?  You can
20   follow the law?
21             PROSPECTIVE JUROR:  Yes.
22             THE COURT:  Anything else you would
23   like to discuss privately?
24             PROSPECTIVE JUROR:  No.
25             THE COURT:  Then you can take your
```

298

```
 1                        Proceedings
 2       seat with the potential jurors.  Thank you.
 3                 PROSPECTIVE JUROR:  (Complying.)
 4                 MR. KEAHON:  What was the juror that
 5       indicated that his brother's house was run into
 6       by the car?
 7                 THE COURT:  Mr. Zakrewshi.
 8                 MR. KEAHON:  Zakrewshi.
 9                 THE COURT:  Zakrewshi.
10                 THE CLERK:  Zakrewshi.
11                 MR. PEARL:  Number six, right, Judge?
12                 THE CLERK:  Yeah.
13                 THE COURT:  Number six.
14                 THE CLERK:  Yes.
15                 THE COURT:  Okay.
16                 I want to make sure.  Do you have the
17       list starting with number one,
18       Miss Price, Miss Laguerra, Miss Roddy,
19       Mr. Martino, Mr. Zakrewshi.
20                 THE CLERK:  No.  Mr. Castro.
21       Frederick Castro is number five.
22                 And Mr. Zakrewshi.
23                 THE COURT:  Zakrewshi after him.
24                 THE CLERK:  Zakrewshi is six.
25                 THE COURT:  Five is?
```

1                          Proceedings

2                THE CLERK:  Castro.

3                Six is Zakrewshi.

4                THE CLERK:  Then we have Stingley,

5      Roehrig.

6                THE COURT:  Miss Roehrig.

7                THE CLERK:  Yeah.

8                THE COURT:  Farmer.

9                THE CLERK:  Farmer.

10               Crawford, Desner, Calleja.  And then

11     sixteen is Vannostrand, and seventeen, Moir.

12               THE COURT:  Got you.

13               Okay.  Lets go out, continue the

14     questioning.

15               (Whereupon the following occurred

16     back in the courtroom.)

17               THE COURT:  Thank you all once again.

18               As I have said before, my function in

19     this trial is to explain the law to you and your

20     function will be to determine the facts and

21     apply the law to them, thereby rendering a fair

22     and just verdict.

23               In order to determine your

24     willingness to follow the law as I give it, I am

25     now obliged to question you about a few specific

|    |                                                        |
|----|--------------------------------------------------------|
| 1  | Proceedings                                            |
| 2  | principles of law.                                     |
| 3  | A person accused of a crime is                         |
| 4  | presumed innocent.  The People have the burden         |
| 5  | of destroying their presumption by presenting          |
| 6  | enough evidence to convince you, the jury, of          |
| 7  | the defendant's guilt beyond a reasonable doubt.        |
| 8  | The burden of proof remains on the                     |
| 9  | People throughout the trial and never shifts to        |
| 10 | the defendant.                                         |
| 11 | The defendant is not required to                       |
| 12 | prove or disprove anything.                            |
| 13 | Are any of you unable to accept this                   |
| 14 | principle and give the defendant the presumption       |
| 15 | of innocence?                                          |
| 16 | In my instructions at the end of this                  |
| 17 | trial I will explain the exact meaning of the          |
| 18 | term beyond a reasonable doubt.  For now,              |
| 19 | however, I will just tell you that if after            |
| 20 | considering the evidence and the lack of               |
| 21 | evidence presented at the trial, you have a           |
| 22 | reasonable doubt about the defendant's guilt,          |
| 23 | you will be required to acquit this defendant.        |
| 24 | Would any of you vote to convict even                  |
| 25 | if you had a reasonable doubt about the                |

```
1                         Proceedings
2      defendant's guilt?
3                 Conversely, would any of you require
4      absolute certainty of guilt before you would
5      convict?
6                 Can all of you assure me that if you
7      find that the People have proved the defendant's
8      guilt beyond a reasonable doubt, you will return
9      a verdict of guilty as to this defendant?
10                Can you all promise me that?
11                If you can all indicate that with the
12     nod of the head and shake of the head.
13                And can you also assure me if the
14     People have not proven the defendant's guilt
15     beyond a reasonable doubt, you will return a
16     verdict of not guilty as to this defendant?
17                Can you promise me that as well?
18                Under our system of law no defendant
19     has a duty to testify or to call any witnesses
20     or to explain his actions in any way.
21                In this case the defendant might not
22     testify and indeed might not present any
23     evidence.  You may not infer anything
24     unfavorable to the defendant from this fact.
25     That is an absolute law.
```

1          Proceedings

2               Do any of you think that a

3     defendant's decision not to testify would

4     influence you in your deliberations?

5               Your function as jurors is solely to

6     determine whether or not the People have proved

7     the defendant's guilt beyond a reasonable doubt.

8     The law does not permit you to consider the

9     possibility of punishment in your deliberations

10    and your verdict may not include any

11    recommendations as to sentence.   Sentencing is

12    the exclusive function of the Court.

13              Do any of you feel you couldn't

14    render your verdict without considering the

15    possibility of punishment?

16              As jurors, although you do not have

17    to agree with or like the principles of law that

18    I explained, you must accept them and apply them

19    to the facts as you find those facts to be.

20              Do any of you feel that you will not

21    be able to accept and apply these principles?

22              Have any of you so far formed an

23    opinion or impression of the guilt or innocence

24    of the defendant?

25              I will now ask each one of you in the

Proceedings

1

2    jury box a few questions individually.  After

3    which the People and defense counsel will ask

4    you some questions as well.  If you feel that

5    any question which an attorney asks is too

6    personal, you may say so.  And if I feel the

7    question is improper, you will not have to

8    answer it.  If you feel you want to answer any

9    question privately, any question or any matter

10   privately, please let me know, I will allow you

11   to answer privately rather than in open court.

12             I remind you by your solemn oath, you

13   must answer every question truthfully, as I know

14   you will, unless I rule the question is not

15   proper, and then I shall not let you answer it.

16             Beginning with you, Miss Price, what

17   town do you live in, please?

18             PROSPECTIVE JUROR:  I live in West

19   Babylon.

20             THE COURT:  And I apologize because

21   some of these answers might have come up during

22   some of our questioning inside but I am just

23   writing them down separately.  I apologize for

24   any repetition.

25             Are you married?

1                           Proceedings
2               PROSPECTIVE JUROR:  Yes.
3               THE COURT:  Is your husband employed
4    outside the home?
5               PROSPECTIVE JUROR:  Yes.
6               THE COURT:  If I may, what does he
7    do?
8               PROSPECTIVE JUROR:  He is in
9    collections.
10              THE COURT:  And do you have any
11   children?
12              PROSPECTIVE JUROR:  Yes.
13              THE COURT:  Their ages, please.
14              PROSPECTIVE JUROR:  Twenty-five and
15   twenty-one.
16              THE COURT:  I think, memory serves
17   correct, you had a son-in-law, so one of them is
18   a daughter?
19              PROSPECTIVE JUROR:  Yes, son is
20   twenty-five and daughter is twenty-one.
21              THE COURT:  If I may ask, what do
22   they do?
23              PROSPECTIVE JUROR:  My son, he is in
24   the city, financial, is a district manager.  And
25   daughter's still in college.

305

1                          Proceedings

2              THE COURT:  What about yourself, are

3     you employed outside of the home right now?

4              PROSPECTIVE JUROR:  Yes.

5              THE COURT:  If I may ask, what do you

6     do?

7              PROSPECTIVE JUROR:  Correction.

8              MR. KEAHON:  I am sorry?

9              PROSPECTIVE JUROR: Correction.

10             THE COURT:  And do you have any time

11    for any hobbies?

12             PROSPECTIVE JUROR:  Oh, wow.

13             THE COURT:  You don't have to list

14    all of them but your favorites.

15             PROSPECTIVE JUROR:  I love to read

16    and listen to music.

17             THE COURT:  And can you assure this

18    Court that you will be a fair and impartial

19    juror both for the People and for the defendant

20    in this case?

21             PROSPECTIVE JUROR:  Yes.

22             THE COURT:  Thank you, Miss Price.

23             PROSPECTIVE JUROR:  You're very

24    welcome.

25             THE COURT:  Miss Laguerra.

1                           Proceedings

2                           PROSPECTIVE JUROR:   Laguerra.

3                           THE COURT:   My apologies.

4                           What town do you live in, please?

5                           PROSPECTIVE JUROR:   I live in

6       Shirley.

7                           THE COURT:   And are you married?

8                           PROSPECTIVE JUROR:   Yes, I am.

9                           THE COURT:   Is your husband employed

10      outside the home?

11                          PROSPECTIVE JUROR:   No, he is not.

12                          THE COURT:   And do you have any

13      children?

14                          PROSPECTIVE JUROR: Yes.

15                          THE COURT:   And their ages, please.

16                          PROSPECTIVE JUROR:   One is forty-one,

17      and the other is thirty-eight.

18                          THE COURT:   And if I may ask, what do

19      they do?

20                          PROSPECTIVE JUROR: They have roofing

21      businesses.

22                          THE COURT:   How about yourself, are

23      you employed outside the home right now?

24                          PROSPECTIVE JUROR:   No, I am not.   My

25      husband and I are both retired.

1                           Proceedings

2                   THE COURT:  If I may ask, before you

3       were retired?

4                   PROSPECTIVE JUROR:  Oh, I worked,

5       yes.  I worked at the Longwood High School as a

6       secretary.

7                   THE COURT:  Do you have any hobbies?

8                   PROSPECTIVE JUROR:  Uh-- with my

9       grandchildren, I do a lot of baby-sitting.

10                  THE COURT:  I am sure your children

11      appreciate that hobby.

12                  Can you assure this Court you will be

13      a fair and impartial juror both for the People

14      and the defendant in this case?

15                  PROSPECTIVE JUROR:  Yes, I will.

16                  THE COURT:  Thank you very much.

17                  What town do you live in, Miss Roddy?

18                  PROSPECTIVE JUROR:  Shirley.

19                  THE COURT:  And are you married?

20                  PROSPECTIVE JUROR: Two months now.

21                  MR. KEAHON:  I am sorry, I didn't

22      hear that.

23                  PROSPECTIVE JUROR:  Two months now.

24                  THE COURT:  Oh, congratulations.

25                  PROSPECTIVE JUROR: It is the second

```
 1                      Proceedings
 2      one.
 3                      THE COURT:  And is your husband
 4      employed outside the home?
 5                      PROSPECTIVE JUROR: Yeah.
 6                      THE COURT:  And what does he do, if I
 7      may ask?
 8                      PROSPECTIVE JUROR:  Security in the
 9      city.
10                      THE COURT:  Do you have any children?
11                      PROSPECTIVE JUROR: Two daughters.
12                      THE COURT:  And their ages, please.
13                      PROSPECTIVE JUROR:  Twenty-nine and
14      thirty-one.
15                      THE COURT:  If I may ask, what do
16      they do?
17                      PROSPECTIVE JUROR:  One's a teacher
18      and one's an administrative assistant in a
19      health care facility.
20                      THE COURT:  What about yourself, are
21      you employed outside the home right now?
22                      PROSPECTIVE JUROR:  Yeah.  I work for
23      Keyspan, I am a meter reader and audit person.
24                      THE COURT:  Do you have any hobbies?
25                      PROSPECTIVE JUROR:  I do crafts.
```

309

1                           Proceedings

2                   THE COURT:   And can you assure this

3       Court that you will be a fair and impartial

4       juror both for the People and the defendant in

5       this case?

6                   PROSPECTIVE JUROR:   Yes.

7                   THE COURT:   Thank you.

8                   Mr. Martino.

9                   PROSPECTIVE JUROR:   Yes.

10                  THE COURT:   What town do you live in,

11      sir?

12                  PROSPECTIVE JUROR:   Yaphank.

13                  THE COURT:   And are you married, sir?

14                  PROSPECTIVE JUROR:   No, sir.

15                  THE COURT:   Any children?

16                  PROSPECTIVE JUROR: No.

17                  THE COURT:   Are you employed outside

18      the home?

19                  PROSPECTIVE JUROR: Yes.

20                  THE COURT:   If I may ask, what do you

21      do, sir?

22                  PROSPECTIVE JUROR:   I am an

23      environmental technician.

24                  THE COURT:   Do you have any hobbies?

25                  PROSPECTIVE JUROR:   Yes.   I like back

1                          Proceedings

2          packing and photography.

3                    THE COURT:  Can you assure this Court

4          that you will be a fair and impartial juror both

5          for the People and for the defendant in this

6          case?

7                    PROSPECTIVE JUROR:  Yes.

8                    THE COURT:  Thank you.

9                    Mr. Castro, what town do you live in,

10         sir?

11                   PROSPECTIVE JUROR:  Central Islip.

12                   THE COURT:  And are you married, sir?

13                   PROSPECTIVE JUROR: Yes.

14                   THE COURT:  Is your wife employed

15         outside the home?

16                   PROSPECTIVE JUROR:  No.

17                   THE COURT:  Any children?

18                   PROSPECTIVE JUROR:  Four.

19                   THE COURT:  Their ages, please.

20                   PROSPECTIVE JUROR:  Forty-one,

21         thirty-six, thirty-five, twenty-nine.

22                   THE COURT:  And if I may ask, what do

23         they do?

24                   PROSPECTIVE JUROR:  Um, my two sons

25         work the heating/air conditioning business.  My

Proceedings

1
2     middle son works as a coordinator for a leather
3     goods company, and my daughter works for CPA.
4              THE COURT:  And I believe you had
5     indicated you are a teacher?
6              PROSPECTIVE JUROR: Yes, Western
7     Suffolk BOCES.
8              THE COURT:  Do you have any hobbies?
9              PROSPECTIVE JUROR:  Golf.
10             THE COURT:  Can you assure this Court
11    that you will be a fair and impartial juror both
12    for the People and for the defendant in this
13    case?
14             PROSPECTIVE JUROR:  Absolutely.
15             THE COURT:  Thank you Mr. Castro.
16             Mr. Zakrewshi.
17             PROSPECTIVE JUROR:  Close enough.
18             THE COURT:  I am sorry.  How do you
19    pronounce it?
20             PROSPECTIVE JUROR:  Zakrewshi.
21             THE COURT:  Mr. Zakrewshi, what town
22    do you live in, please?
23             PROSPECTIVE JUROR:  Babylon Village.
24             THE COURT:  Are you married, sir?
25             PROSPECTIVE JUROR: Yes.

1               Proceedings

2               THE COURT:  Is your wife employed

3       outside the home?

4               PROSPECTIVE JUROR: Yes.  She works at

5       the Saint Joseph's Church as an administrative

6       assistant.

7               THE COURT:  Do you have any children,

8       sir?

9               PROSPECTIVE JUROR:  Two; fifteen year

10      old daughter, twelve year old son, both

11      students.

12              THE COURT:  How about yourself, sir,

13      I believe you have indicated that you are an

14      engineer.

15              PROSPECTIVE JUROR:  Yeah.  I lead an

16      engineering group for Honeywell.

17              THE COURT:  Do you have any hobbies?

18              PROSPECTIVE JUROR:  Wood working,

19      cabinet making.

20              THE COURT:  Can you assure this Court

21      that you will be a fair and impartial juror both

22      for the People and for the defendant in this

23      case?

24              PROSPECTIVE JUROR:  Yes.

25              THE COURT:  Thank you.

1              Proceedings

2              Mr. Stingley, what town do you live

3    in, sir?

4              PROSPECTIVE JUROR:  Melville.

5              THE COURT:  Are you married, sir?

6              PROSPECTIVE JUROR: Yes.

7              THE COURT:  Is your wife employed

8    outside the home?

9              PROSPECTIVE JUROR:  She is retired.

10             THE COURT:  If I may ask, before she

11   was retired?

12             PROSPECTIVE JUROR:  She was an

13   executive with Chemical Bank.

14             THE COURT:  Do you have any children,

15   sir?

16             PROSPECTIVE JUROR:  I have two, and

17   my stepson also through a second marriage.

18             THE COURT:  Their age?

19             PROSPECTIVE JUROR: Forty-one, forty

20   and thirty-seven.

21             THE COURT:  If I may ask, what do

22   they do, sir?

23             PROSPECTIVE JUROR:  I don't know

24   what my children do, we have been estranged for

25   twenty plus years.  My stepson is an executive

1                    Proceedings

2        with Hughes Supply in Orlando, Florida.

3                    THE COURT:  How about you, are you

4        employed outside the home?

5                    PROSPECTIVE JUROR: Yes, I work for

6        Cable Vision.

7                    THE COURT:  Do you have any hobbies?

8                    PROSPECTIVE JUROR:  Competitive

9        tournament bridge, and reading.

10                    THE COURT:  Can you assure this Court

11        that you will be a fair and impartial juror both

12        for the People and for the defendant in this

13        case?

14                    PROSPECTIVE JUROR: Yes, I shall.

15                    THE COURT:  Thank you.

16                    Miss Roehrig.

17                    PROSPECTIVE JUROR: Yes.

18                    THE COURT:  What town do you live in,

19        please?

20                    PROSPECTIVE JUROR:  I live in

21        Riverhead.

22                    THE COURT:  And are you married?

23                    PROSPECTIVE JUROR: Yes.

24                    THE COURT:  Is your husband employed

25        outside the home?

315

                              Proceedings

1

2          PROSPECTIVE JUROR: Yes, he is.

3          THE COURT:  If I may ask?

4          PROSPECTIVE JUROR:  He is a sales

5   representative for windows, custom doors, that

6   type of thing.

7          THE COURT:  And do you have any

8   children?

9          PROSPECTIVE JUROR:  I have three.

10          THE COURT:  And their ages, please?

11          PROSPECTIVE JUROR:  The oldest is

12   twenty-one, and she is employed as a staff

13   reporter for a local newspaper in Nebraska.  And

14   the other two are eighteen and seventeen, and

15   one's in college, first year of college, the

16   other one's in high school.

17          THE COURT:  How about yourself, are

18   you employed outside the home?

19          PROSPECTIVE JUROR: Yes, I am.

20          THE COURT:  What do you do?

21          PROSPECTIVE JUROR: I am a director of

22   a Lutheran School.

23          THE COURT:  Do you have any hobbies?

24          PROSPECTIVE JUROR:  I like to read

25   and I volunteer at the church.

316

1          Proceedings

2              THE COURT:  Can you assure this Court

3     that you will be a fair and impartial juror both

4     for the People and for the defendant in this

5     case?

6              PROSPECTIVE JUROR:  Yes.

7              THE COURT:  Thank you.

8              Mr. Farmer, what town do you live in,

9     sir?

10             PROSPECTIVE JUROR:  Stony Brook.

11             THE COURT:  Are you married, sir?

12             PROSPECTIVE JUROR:  No.

13             THE COURT:  Any children?

14             PROSPECTIVE JUROR:  No.

15             THE COURT:  Are you employed outside

16    the home right now?

17             PROSPECTIVE JUROR: Yes.

18             THE COURT:  If I may ask, what do you

19    do?

20             PROSPECTIVE JUROR:  Suffolk County

21    Department of Health Services.

22             THE COURT:  And do you have any

23    hobbies?

24             PROSPECTIVE JUROR:  Reading.

25             THE COURT:  Can you assure this Court

1                        Proceedings

2        that you will be a fair and impartial juror both

3        for the People and for the defendant in this

4        case?

5                        PROSPECTIVE JUROR: Yes.

6                        THE COURT:  Thank you, sir.

7                        Miss Crawford, if I may ask, what

8        town do you live in, please.

9                        PROSPECTIVE JUROR:  Centerport.

10                       THE COURT:  Are you married?

11                       PROSPECTIVE JUROR: Yes.

12                       THE COURT:  Is your husband employed

13       outside the home?

14                       PROSPECTIVE JUROR:  Yes.

15                       THE COURT:  If I may ask?

16                       PROSPECTIVE JUROR:  New York Times

17       part-time writer.

18                       THE COURT:  Do you have any children?

19                       PROSPECTIVE JUROR:  Two boys; four

20       and seven.

21                       THE COURT:  How about yourself, are

22       you employed outside the home right now?

23                       PROSPECTIVE JUROR: Yes.

24                       THE COURT:  If I may ask, what do you

25       do?

1               Proceedings

2               PROSPECTIVE JUROR: Teach.

3               MR. KEAHON:  I am sorry?

4               PROSPECTIVE JUROR:  Teacher.

5               THE COURT:  You are very modest.

6               With a four and seven year old, do

7       you have any time for hobbies?

8               PROSPECTIVE JUROR:  Um -- not much.

9       But I like to read once they're in bed.

10              THE COURT:  Can you assure this Court

11      that you will be a fair and impartial juror both

12      for the People and defendant in this case?

13              PROSPECTIVE JUROR: Yes.

14              THE COURT:  Thank you, Miss Crawford.

15              Miss Desner, what town do you live

16      in, please?

17              PROSPECTIVE JUROR:  Huntington

18      Station.

19              THE COURT:  Are you married?

20              PROSPECTIVE JUROR: Yes.

21              THE COURT:  Is your husband employed

22      outside the home?

23              PROSPECTIVE JUROR: Yes.

24              THE COURT:  If I may ask, what does

25      he do?

1                    Proceedings

2                    PROSPECTIVE JUROR:   Chemical

3       engineer.

4                    THE COURT:   And do you have any

5       children?

6                    PROSPECTIVE JUROR:   Yes, three.

7                    THE COURT:   Their ages?

8                    PROSPECTIVE JUROR:   Two boys and a

9       daughter; thirty-three, thirty-four and

10      thirty-eight.

11                   THE COURT:   If I may ask, what do

12      they do?

13                   PROSPECTIVE JUROR:   My youngest is a

14      teacher in Binghamton, and my middle child is a

15      landscaper/designer and um-- does um-- pool

16      supplies and sells pool supplies.   And then the

17      oldest is a daughter that is home now, presently

18      a homemaker with two children.

19                   THE COURT:   What about yourself, are

20      you employed outside the home right now?

21                   PROSPECTIVE JUROR:   No, retired.

22                   THE COURT:   If I may ask, before you

23      were retired?

24                   PROSPECTIVE JUROR:   Office manager.

25                   THE COURT:   Do you have any hobbies?

```
 1                    Proceedings
 2              PROSPECTIVE JUROR:  Tennis, golf,
 3      swimming.  I go to the gym.  And I play with
 4      my -- I jog with my dog.
 5              THE COURT:  That is a race I would
 6      lose with my dog.
 7              And can you assure this Court that
 8      you would be a fair and impartial juror both for
 9      the defendant and the People in this case?
10              PROSPECTIVE JUROR:  Yes.
11              THE COURT:  Thank you.
12              Mr. Calleja, what town do you live
13      in, sir?
14              PROSPECTIVE JUROR:  Selden.
15              THE COURT:  Are you married, sir?
16              PROSPECTIVE JUROR:  Yes.
17              THE COURT:  And is your spouse
18      employed outside the home?
19              PROSPECTIVE JUROR:  No.
20              THE COURT:  Do you have any children?
21              PROSPECTIVE JUROR:  Four.
22              THE COURT:  And their ages, please.
23              PROSPECTIVE JUROR:  Twenty-three,
24      twenty-one, eighteen and fifteen.
25              THE COURT:  And the older ones, are
```

1                           Proceedings

2           they still in school?

3                   PROSPECTIVE JUROR:  No.  My oldest is

4           an BMB technician, and my other daughter is a

5           Phlebotomist.  The other two are in school.

6                   THE COURT:  How about yourself, are

7           you employed outside of the home?

8                   PROSPECTIVE JUROR: Yes.  I work for

9           National Grid.  I am a line man.

10                  MR. KEAHON: I am sorry?

11                  I am sorry?

12                  PROSPECTIVE JUROR:  I am a line man.

13                  THE COURT:  Do you have any hobbies?

14                  PROSPECTIVE JUROR:  Camping and

15          motorcycle riding.

16                  THE COURT:  Can you assure this Court

17          that you will be a fair and impartial juror both

18          for the defendant and for the People in this

19          case?

20                  PROSPECTIVE JUROR:  Yes.

21                  THE COURT:  Thank you.

22                  Mr. Vannostrand, what town do you

23          live in, sir?

24                  PROSPECTIVE JUROR:  Islip Terrace.

25                  THE COURT:  Are you married, sir?

1                        Proceedings

2                THE PROSPECTIVE JUROR:  Yes.

3                THE COURT:  Is your wife employed

4      outside of the home?

5                PROSPECTIVE JUROR:  Yes.  She is a

6      pharmacist.

7                THE COURT:  And do you have any

8      children?

9                PROSPECTIVE JUROR:  No.

10               THE COURT:  Are you employed outside

11     the home?

12               PROSPECTIVE JUROR:  Yes.  I am an

13     auditor.

14               MR. KEAHON:  I am sorry?

15               PROSPECTIVE JUROR:  Auditor.

16               THE COURT:  Do you have any hobbies?

17               PROSPECTIVE JUROR:  Hiking, biking.

18               THE COURT:  Can you assure this Court

19     that you will be a fair and impartial juror both

20     for the defendant and for the People in this

21     case?

22               PROSPECTIVE JUROR: Yes.

23               THE COURT:  Thank you.

24               And Mr. Moir, what town do you live

25     in, sir?

Proceedings

PROSPECTIVE JUROR:  Shirley.

THE COURT:  And are you married, sir?

PROSPECTIVE JUROR:  Yes.  My wife is in sales for Star Publications.

THE COURT:  And any children, sir?

PROSPECTIVE JUROR:  Yeah, two.  My daughter's twenty-seven, she works at a radio station and my son's a college student, he is twenty-three.

THE COURT:  And how about yourself, are you employed outside the home right now?

PROSPECTIVE JUROR:  Yes.  I drive a truck for a magazine distributor.

THE COURT:  How about any hobbies?

PROSPECTIVE JUROR:  Yeah.  I like to ski, mountain bike.

THE COURT:  Can you assure this Court that you will be a fair and impartial juror both for the defendant and the People in the case?

PROSPECTIVE JUROR: Yes.

THE COURT:  Thank you.

Thank you all.

At this time the People may inquire of the prospective jury.

1          Proceedings

2               MR. PEARL:   Thank you.

3               THE COURT:   You have thirty minutes.

4               MR. PEARL:   Thank you, Your Honor.

5               I will set up.

6               Good afternoon, ladies and gentlemen.

7     My name is Raphael Pearl, I am an Assistant

8     District Attorney assigned to the Economic

9     Crimes Bureau of the Suffolk County District

10    Attorney's Office.  This is my co-counsel,

11    Jodi Franzese.

12              MS. FRANZESE:   Good affairnoon,

13    everyone.

14              MR. PEARL:   She is also an Assistant

15    District Attorney assigned to the same unit as

16    me, and we have been appointed by the District

17    Attorney, your District Attorney, Suffolk

18    County, Thomas Spota, to prosecute this case, as

19    the Judge has told you, the People of the State

20    of New York against this defendant, Lamar

21    Whitehead.  And throughout the course of the

22    trial you might hear me refer to him as Lamar,

23    Lamor.

24              As the Judge has already told you,

25    this is voir dire, it is not a point of the case

                              Proceedings

1
2    where I am going to go into any of the real
3    underlying facts, but just basically, as you
4    have heard, the indictment charges one count of
5    Scheme to Defraud in the First Degree, one count
6    of Attempted Grand Larceny, Second Degree, and
7    then there are thirty-two counts of Identity
8    Theft, most of them First Degree.  There are a
9    few Identity Thefts, Third Degree.  And it seems
10   like maybe on the face of it, it is going to be
11   a complicated trial.  And I can tell you it is a
12   lot of potential witnesses that are going to be
13   called, Jodi and I to present the matter in a
14   certain manner, the law, to bring in thirty to
15   thirty-five witnesses in this trial so you can
16   hear the evidence and make a decision on the
17   evidence.  But basically it is simple.
18            It is alleged the defendant took
19   seventeen Suffolk County residents personal
20   identifying information.  Basically that means
21   either your name or your Social Security Number
22   and then use that information to go steal, to
23   commit another crime, attempted or commit it or
24   attempted to commit a Class D Felony or higher.
25   In this case it is always Grand Larceny.  It is

1                        Proceedings

2      always stealing something in excess of three

3      thousand dollars.

4                So basically it is a really simple

5      case.  When you really boil it down, using a

6      person's identifying information, Suffolk County

7      residents, defendant attempted, trying to steal.

8                Just using those facts, is there

9      anyone that thinks they can not be fair and

10     impartial?

11                Anybody?

12                No show of hands.

13                Miss Price, right?

14                PROSPECTIVE JUROR:  Yes.

15                MR. PEARL:   Can you be fair and

16     impartial?

17                PROSPECTIVE JUROR:  Can I be fair and

18     impartial?  Yes.

19                MR. PEARL:  Listen to those basic

20     facts.

21                Now the Judge told you, my burden is

22     beyond a reasonable doubt.  It never goes

23     higher.

24                Can you promise me, to hold me to

25     that burden, nothing higher, beyond a reasonable

1                          Proceedings

2      doubt?

3                    PROSPECTIVE JUROR: Yes.

4                    MR. PEARL:  And Miss -- if I butcher

5      anybody's name, I apologize.

6                    Miss Laguerra.

7                    You will not hold me to a higher

8      burden, beyond all doubt, beyond a shadow of a

9      doubt?  Because if it was beyond all doubt, the

10     District Attorney's Office in essence couldn't

11     do a trial.  Nothing is beyond all doubt.

12                   Do you agree with me?

13                   PROSPECTIVE JUROR:  Yes.

14                   MR. PEARL:  You agree to hold me to

15     the burden of beyond a reasonable doubt?

16                   PROSPECTIVE JUROR: Yes.

17                   MR. PEARL:  Now the Judge also has

18     mentioned, I believe he may mention in one of

19     his charges, that the People's burden is to

20     prove the defendant's guilt beyond a reasonable

21     doubt but it is to prove the elements of the

22     crime charged and that is different than proving

23     every fact that may be presented in the case.

24                   Miss Roddy, for example, the Judge

25     will tell you what -- lets go back.  Identity

1                         Proceedings

2    theft, there are elements that make up the crime

3    of identity of Suffolk County residents, using a

4    person's identifying name, stole something in

5    excess of three thousand dollars.

6              So you have, give or take, four

7    elements.  There is nothing in the law that

8    requires the District Attorney's Office, Jodi or

9    myself to prove how, how the defendant was able

10   to get seventeen Suffolk County resident's

11   personal identifying information.

12             If that is not an element, are you

13   going to hold me to a burden of proving how this

14   defendant got every single persons identifying

15   information?

16             PROSPECTIVE JUROR:  No.

17             MR. PEARL:  Mr. Martino, is that

18   something you would want to know, perhaps how

19   the defendant got these people's information?

20             PROSPECTIVE JUROR:  No.

21             MR. PEARL:  Not at all?  You wouldn't

22   be curious about it?

23             PROSPECTIVE JUROR:  No.

24             MR. PEARL:  If it is not an element,

25   you wouldn't make me prove this, though?

1          Proceedings

2          PROSPECTIVE JUROR:  No.

3          MR. PEARL:  If I prove just the

4     elements that the defendant used those

5     identities and committed the crime of theft,

6     would you beyond a reasonable doubt be able to

7     convict him of guilty of the crime of identity?

8          PROSPECTIVE JUROR:  Yes.

9          MR. PEARL:  Now as I said, it is

10    going to be potentially, potentially a long

11    trial.  I have to tell you right up, there are

12    potentially fifty to fifty-five witnesses that I

13    have to call in order to present evidence.  And

14    we could be going until March 20th, which you

15    can tell everybody you will be on trial to the

16    first day of Spring because that is the first

17    day of Spring.

18               Is there anybody who doesn't want to

19    be on trial till Spring?

20               When you say it like that, it seems a

21    lot longer.

22               Anybody doesn't want to be on trial?

23               Everybody's okay with a four to six

24    week trial?

25          PROSPECTIVE JUROR:  How about going

Proceedings

1

2   after?   The week after I am booked on a flight

3   down to Florida.   I have hotels and everything

4   on the twenty-eighth.

5                MR. PEARL:   Well, I am really hoping

6   we will be done by March 20th.

7                THE COURT:   We have attempted to

8   actually build in a margin of error.   We are

9   hoping the trial will end much earlier but that

10  is the outside number, because of that concern

11  regarding your own personal lives.

12                Please continue.

13                MR. PEARL:   But assuming we are done

14  before the vacation, by March 20th, you are okay

15  with serving till Spring?

16                PROSPECTIVE JUROR:   Yes.

17                MR. PEARL:   It has a little different

18  ring when you hear Spring.

19                Mr. Calleja, right?

20                PROSPECTIVE JUROR:   Right.

21                MR. PEARL:   You are going to the game

22  on the third?

23                PROSPECTIVE JUROR: Yes.

24                MR. PEARL:   Are you a Ranger fan or

25  an Islander fan?

1                      Proceedings

2              (Whereupon prospective juror showing

3     jacket.)

4            MR. PEARL:  If I went to your house

5     during, for that game, what would you have in

6     your house for the Rangers?

7            PROSPECTIVE JUROR:  I would have my

8     jersey on, I would have my TV going with the

9     surround sound, and listening to every shot of

10    the game.  I am not totally crazy about, my

11    father was, my brother was, you know, always

12    been a Ranger tradition.

13           MR. PEARL:  So if I came to your

14    house on March 3rd and to watch the game in your

15    house --

16           PROSPECTIVE JUROR:  I would be at the

17    Coliseum.

18           MR. PEARL:  If you weren't at the

19    Coliseum and I walk into your house and see the

20    TV on, the Rangers, I see you with your jersey

21    on, you have four kids, right, older, but they

22    are wearing Ranger jerseys?

23           PROSPECTIVE JUROR:  Well, some are

24    Islanders.  We are a divided family.

25           MR. PEARL:  Is it fair though, that

Proceedings

somebody walking into your house and seeing

that, knowing very little, I have never met you

before, I can infer that you are a diehard

Ranger man, right?

PROSPECTIVE JUROR: Yes.

MR. PEARL:  You don't have to tell me

that you are a diehard Ranger fan.  When I

walked in, I can probably infer that.

Is it fair that from things around

you, from facts that are out there, that you can

infer facts, you don't have to tell me that you

are a Ranger fan.  If I walk into your house and

see there are Ranger jerseys and the game on and

and talking, and I see everything in your house,

I can infer you are a Ranger fan.

PROSPECTIVE JUROR:  Right.

MR. PEARL:  If you came to my house

you might see the opposite, Islanders or Giants,

you can infer from the facts around, you don't

have to be told.

In this case, well, let me put it

like this, Mr. --

PROSPECTIVE JUROR:  Stingley.

MR. PEARL:  Stingley.  Two questions.

Proceedings

Number one, you work for Cable Vision.  Do you
know a Sam Valentine?

PROSPECTIVE JUROR:  No.

MR. PEARL:  There might be a witness
who testifies from Cable Vision here, put in
certain IP information.

Do you know what IP is?

Anybody have a computer?

Okay.  How many people have -- how
many people are hooked to the Internet in your
house?

Okay.  So everybody.

Miss Price, how are you hooked up
into the Internet?

PROSPECTIVE JUROR:  Optimum On-line.

MR. PEARL:  Are you through a modem
or wireless?

PROSPECTIVE JUROR:  Modem.

MR. PEARL:  Anybody have WiFi?

Anybody know what WiFi is?

Mr. Zakrewshi.

PROSPECTIVE JUROR:  It is wireless
connection, 2,000 GHZ, whatever.

MR. PEARL:  You know a lot more than

Proceedings

I do.

And are you password protected?

PROSPECTIVE JUROR:  Yes, and equipment.

MR. PEARL:  So you know about the security code?

PROSPECTIVE JUROR:  Yeah.

MR. PEARL:  Anybody have like an I-Touch or an I-Phone or something?

Anybody ever drive around and hit somebody's wireless?

PROSPECTIVE JUROR:  Yes.

MR. PEARL:  What happens when you drive around the neighborhood and hit somebody's wireless Internet?

PROSPECTIVE JUROR:  If it is not secured you can get right on everything.

MR. PEARL:  And how many people, how many times have you hit?  All the time?

PROSPECTIVE JUROR:  It is embarrassing.  It is probably ninety percent of the people don't pass.

MR. PEARL:  I have the greatest gift, my wife got me an I-Touch.  I never had anything

1                        Proceedings
2      that had WiFi.  Everywhere I go I hit people's
3      wireless Internet and I am on somebody else's
4      Internet, not because I am choosing to do it,
5      because my little I-Touch will pick it up.
6                So do you know what a Cookie is?  In
7      referring to what is a Cookie?
8                PROSPECTIVE JUROR: It is a little
9      piece of configuration data that is left behind
10     that will -- could be used for a few things to
11     store your configuration at a website that you
12     went to or maybe carry some information.  Like
13     if you bought something on line, it may actually
14     hold your credit card information and everything
15     on it.
16               MR. PEARL:  How many people have gone
17     to -- I am going to use what Mr. Zakrewshi just
18     said.  How many people, say -- Miss Druna.
19               PROSPECTIVE JUROR:  Desner.
20               MR. PEARL:  Desner.
21               PROSPECTIVE JUROR:  Leona Desner.
22               MR. PEARL:  I can't read my own
23     handwriting.  I am sorry.
24               Did you indicate you had a computer?
25               PROSPECTIVE JUROR:  I don't have a

Proceedings

computer.

MR. PEARL:  You don't go on the Internet?

PROSPECTIVE JUROR:  That is why I don't do it.  I hear too many horror stories.

MR. PEARL:  It is hard.  Not even my mom who is seventy.

But you are right, the world has changed.  Right?  Everybody is now doing stuff through the Internet?  Right?  Banking. Everything.

Miss Crawford, you have a computer, right?

PROSPECTIVE JUROR:  Yes.

MR. PEARL:  Did you ever go on Ebay, Amazon, any of those websites?

PROSPECTIVE JUROR:  Yes.

MR. PEARL:  Did you ever go through it, says hello, Miss Crawford, welcome back?

PROSPECTIVE JUROR:  Yes.

MR. PEARL:  Did you ever wonder how that happens?

PROSPECTIVE JUROR:  But it doesn't happen until I put in my password.

1                    Proceedings

2             MR. PEARL:  Right.  You go into the

3    website, says hello, happy to see you,

4    whatever your nickname is.

5             Did you ever wonder why it does that,

6    hello?

7             PROSPECTIVE JUROR:  No.

8             MR. PEARL:  How does your computer

9    know you?  How does Ebay know you're back on

10   that web page?

11            PROSPECTIVE JUROR:  Because I signed

12   in.

13            MR. PEARL:  Also -- but can you

14   answer that question?

15            PROSPECTIVE JUROR:  Sure.  It is the

16   information stored in a Cookie that says when I

17   type in this password this is my data, gets

18   uploaded.

19            MR. PEARL:  So Ebay has logged in a

20   Cookie on your computer and that Cookie now goes

21   back.  So when you go on, that Cookie now says

22   welcome back Miss Crawford, it is good to see

23   you, and that Cookie is that, if you will.

24            MR. KEAHON:  Judge, could we

25   approach, please.

338

1              Proceedings

2          THE COURT:  Yes.  If I can see

3    counsel side-bar over here.

4              (Whereupon the following occurred at

5    side-bar.)

6          THE COURT:  Okay.  How can I help

7    you, Mr. Keahon?

8          MR. KEAHON:  Judge, this is not a

9    jury selection, this is the use of their

10   testimony in their case to put to the jurors and

11   have them answer back.  He has not asked one

12   question that has anything to do with jury

13   selection in their ability to sit as fair and

14   impartial jurors in this case.

15         THE COURT:  Mr. Pearl.

16         MR. PEARL:  Judge, I am just -- my

17   case is going to require some information that

18   is going to require my people to have some

19   technological information.  I am just trying to

20   ascertain whether or not they know about

21   computers, if they can understand the testimony.

22         THE COURT:  Do you wish to be heard

23   further?

24         MR. KEAHON:  No.

25         THE COURT:  The objection will be

339

1                          Proceedings

2    overruled at this time.  Exception noted.

3              However, I caution you, I caution

4    you, Mr. Pearl, some of what you are saying to

5    the jury, it must be couched in terms of

6    questions.  You are making statements.  You must

7    not testify and appear as stating any factor to

8    them.

9              MR. PEARL:  Thank you.

10             (Whereupon the following took place

11   back in open court.)

12             THE COURT:  Thank you.

13             Mr. Pearl, you may continue your

14   inquiry.

15             MR. PEARL:   So where did I leave

16   off.

17             Mr. Castro, what do you think some of

18   the negative effects of having your identity

19   stolen could be?

20             MR. KEAHON:  I am going to object,

21   Judge.

22             THE COURT:  Overruled.

23             MR. KEAHON:  I object.

24             THE COURT:  Overruled.

25             Over your exception.

Proceedings

1

2          MR. PEARL:  Generally speaking.

3          PROSPECTIVE JUROR:  I mean, it

4   certainly can impact your financial status, one

5   I would think of right off the top.

6          MR. PEARL:  In a case where, well,

7   generally speaking, when is the last time -- I

8   will ask you, when is the last time somebody

9   here has given out their personal identifying

10   information to somebody for any reason?

11          Anybody want to volunteer?

12          PROSPECTIVE JUROR:  When we came here

13   we had to do it.

14          MR. PEARL:  I know that because my

15   wife had to do jury service last week.  You had

16   to fill out a juror card, put your Social

17   Security Number on it and give it to, I guess,

18   one of the Commissioner of Jurors downstairs.

19          Do you know anything about the person

20   that you gave that to?

21          PROSPECTIVE JUROR:  No.

22          MR. PEARL:  Do you know what type of

23   information is stored on that number?

24          PROSPECTIVE JUROR:  Everything.  Your

25   life.

1                          Proceedings

2               MR. PEARL:  Your entire life.  They

3      have access to everything.

4               What if -- and Mr. Vannostrand.

5               PROSPECTIVE JUROR:  Yes.

6               MR. PEARL:  What if the person that

7      you gave your Social Security Number to wasn't

8      trustworthy?  What could happen to you?  Did you

9      ever think about that?

10              PROSPECTIVE JUROR:  Yeah.

11              MR. PEARL:  And how long do you think

12     it would take you to find out if your identity

13     had been stolen?

14              MR. KEAHON:  Judge, I am going to

15     object.  This has nothing to do with jury

16     selection.

17              THE COURT:  It is relevant, counsel.

18     Your objection will be overruled.  Note your

19     exception.

20              MR. PEARL:  How long do you think it

21     may take?

22              PROSPECTIVE JUROR:  Um-- probably

23     quick, I would think, if somebody really wants

24     something to do with my Social Security Number.

25              MR. PEARL:  Do you monitor your

Proceedings

Social Security Number?

Does anybody subscribe to Life Lock?

PROSPECTIVE JUROR:  I tried a privacy card but it was a disaster, they didn't know anything when I registered for a new car.  I bought a new car, they didn't tell me I was supposed to tell them daily.  It took months.  Said everything is hunky-dory, no changes in your credit, and things were going on.  I was so annoyed, I dropped it.  I was paying a hundred and nineteen dollars a month.

MR. PEARL:  A month.

Miss Roddy.

PROSPECTIVE JUROR:  Not Life Lock.

MR. PEARL:  You did it through the credit card?

PROSPECTIVE JUROR:  Uh-huh.

MR. PEARL:  If you didn't catch it quickly -- well, withdrawn.

Can you see how-- well, let me give you an example, give you a comparison.

Mr. Moir, lets take one example where a person comes up to you and they assault you, they smack you in the head, they have a gun,

343

Proceedings

they rob you.

Now lets put you on the other side. You give your Social Security Number to the Commissioner of Jurors downstairs.  Three months from now you find out somebody took out a credit card in your name and charged up five thousand dollars.

MR. KEAHON:  I object.

THE COURT:  Side-bar, please.

(Whereupon the following occurred at side-bar.)

THE COURT:  Mr. Pearl, to analogize the matter before the Court and to insert a comparison with an armed robbery, the question even bleakly is improper.

MR. PEARL:  I am not doing it for that.  I am doing it for the purpose of direct ID and circumstantial ID, has the exact -- I am not--

THE COURT:  No, no, don't mention violent crimes in the connection of your voir dire because it has -- these are lay people and the mentioning of crimes like that may get them to start doing comparisons, and that would be

1                          Proceedings

2    improper.  So you have to keep away from that.

3              MR. KEAHON:  Judge, I am moving for a

4    mistrial at this point.  There is not one thing

5    that has been done in this jury selection has

6    been a proper jury selection.  All he is doing

7    is trying to make his case with his facts and

8    evidence and getting the jury to comment on it.

9    Case law tells us you are not permitted to do

10   that.  And he is forcing me to object nonstop

11   and I am moving for a mistrial because

12   everything that is being done now is totally

13   improper.

14             THE COURT:  I will hear the People.

15             MR. PEARL:  Judge, I oppose that and

16   I object to that.  That is not what I am doing.

17   I am trying to bring up the issues.  And this

18   specific issue is going to be about no direct

19   evidence.

20             I will indicate there is not going to

21   be any direct ID.  If the Court rather me do it

22   that way.

23             THE COURT:  First, in order, sustain

24   the objection to the original question.

25             As far as the motion for a mistrial,

345

Proceedings

it will be denied.

The subject matter, if couched correctly does -- is, excuse me, a relevant area because the potential juror's feelings on the question of identity theft on computer crime have a bearing on whether or not they can be fair jurors to your client.

So questions designed to elicit their feelings as far as both their technology expertise because that can be inserted in this case, required admonition or your own questioning or their exclusion as jurors or their, also their feelings, their passions, if you will, regarding this type of activity is clearly relevant.

So I will allow the inquiry but your questions however, must not belittle an innuendo or state fact.  If you continue, I don't want to have to curtail your voir dire but if there is another question as to improper form, I will stop your voir dire at this point in time.

MR. PEARL:  I will ask directly.

MR. KEAHON:  He has got nine minutes.

THE COURT:  We stop the clock when it

1                           Proceedings

2      comes here.

3                      (Whereupon the following took place

4      back in open court.)

5                      THE COURT:  Thank you.

6                      Mr. Pearl, you may continue your

7      inquiry.

8                      MR. PEARL:  Mr. Moir, with identity

9      theft there is no -- really do you get a case

10     where there is direct ID, somebody will be

11     actually -- can't point out that guy did it.

12                     If you have to rely on in essence,

13     circumstantial evidence of other things to end

14     up pointing the finger at who did it, would that

15     cause you difficulty in ultimately coming to a

16     verdict?

17                     PROSPECTIVE JUROR:  No.

18                     MR. PEARL:  Do you think that without

19     a witness who is an eye witness to a crime, that

20     the people can proof their case?

21                     PROSPECTIVE JUROR:  No.

22                     MR. PEARL:  Mr. Farmer, how do you

23     feel about that same issue, the fact that the

24     District Attorney's Office, Jodi and I are going

25     to have to rely on evidence other than, at least

347

1                         Proceedings

2        with identification, direct ID, identify theft

3        usually doesn't have, you don't know who

4        sometimes steals your identity.

5                    If you have to rely on circumstantial

6        things other than somebody coming in directly

7        saying that person stole my ID, is that going to

8        cause difficulties for you at trial and maybe

9        you not fair and impartial to the People?

10                   PROSPECTIVE JUROR:  No.

11                   MR. PEARL:  Miss Roehrig, how do you

12       feel about that issue?

13                   PROSPECTIVE JUROR:  I have no problem

14       with that.

15                   MR. PEARL:  If you woke up tomorrow

16       morning and went to the window and it is gray

17       outside and then you go out and see there is

18       water on the street, you see the car covered

19       with water, I assume your sprinklers aren't on,

20       what conclusion would you come to?

21                   PROSPECTIVE JUROR:  That it had

22       rained out.

23                   MR. PEARL:  Do you need to see it

24       actively rain to know that?

25                   PROSPECTIVE JUROR:  No.

1                           Proceedings

2                   MR. PEARL:  Do you see how that is?

3        You made a conclusion based on circumstantial

4        evidence, you see things.

5                   PROSPECTIVE JUROR: Yes.

6                   MR. PEARL:  Mr. Stingley, do you

7        agree you can come to a conclusion about it

8        without somebody telling you it was raining?

9                   PROSPECTIVE JUROR:  Under the example

10       you gave, yes.

11                  MR. PEARL:  And similar to my Ranger

12       fan here, how you can walk into his house on the

13       big game, Rangers against the Islanders, you can

14       probably see he is a Ranger fan and not an

15       Islander fan.

16                  What are some of the things,

17       circumstances that you think you would look for

18       in order to help you come to a conclusion?

19                  PROSPECTIVE JUROR: In what context,

20       in the case of identity theft or using your

21       example of raining?  I think you gave the

22       perfect one.

23                  MR. PEARL:  With identity.

24                  PROSPECTIVE JUROR:  I guess I would

25       have to see reasonable evidence and proof if

Proceedings

1

2      they had anything stolen.

3              MR. PEARL:  Would you want to know

4      how the actual theft crime occurred, not the

5      identity theft part of it?

6              PROSPECTIVE JUROR:  You mean how they

7      managed to do this?

8              MR. PEARL:  Correct.

9              It might be two part.  It might be

10     somebody taking identity and somebody committing

11     the theft part of the crime, going out and

12     stealing.

13             Would you want to know how they

14     stole?  Would that be something important for

15     you?

16             PROSPECTIVE JUROR:  I guess under the

17     context you put it, it would not be necessary

18     but it would certainly lend credibility to the

19     fact that such a thing had taken place.

20             MR. PEARL:  Miss Roddy, did I ask you

21     any questions?

22             PROSPECTIVE JUROR:  Uh-huh.

23             MR. PEARL:  If a phone was used to

24     facilitate a crime like identity theft, however,

25     that phone maybe was actually a stolen phone,

                    Proceedings

1

2    can you see how there can be levels of issues

3    involved with trying to find or with identity

4    issues, identity theft case.  Is that-- would

5    something without a direct ID witness coming in

6    to trial, saying this person stole my card and

7    did this, would that be a problem for you in

8    coming to a verdict?

9              PROSPECTIVE JUROR:  No.

10             Unless there was other evidence to

11   prove that.

12        MR. PEARL:  So you can see how a

13   direct-- there would be issues maybe with a

14   direct ID coming out, somebody pointing out this

15   person.

16             PROSPECTIVE JUROR:  Right.

17        MR. PEARL:  Now Mr. Martino, in this

18   case we may, and it is very likely we may have a

19   codefendant, a person who has already pled

20   guilty to the crime of identity theft, has been

21   promised by the District Attorney, you know,

22   less time or no time if you come to court and

23   testify truthfully.  Do you have a problem

24   with --

25             MR. KEAHON:  I am going to object,

1              Proceedings

2   Judge.  I object.

3              THE COURT:  All right.  Side-bar,

4   counsel.

5              (Whereupon the following occurred at

6   side-bar.)

7              THE COURT:  I will let you state your

8   objection more fully outside the presence of the

9   jury.

10             MR. KEAHON:  He indicated -- the

11   Assistant District Attorney indicated that, to

12   the jury that there may be a co-defendant.

13   Number one.  Who has entered a plea of guilty

14   and may get no jail or some jail but has to

15   testify truthfully.  Totally improper.

16             THE COURT:  Mr. Pearl.

17             MR. PEARL:  Judge, I am trying to get

18   to it.  They should disregard codefendant

19   testimony since this case relies on it?

20             THE COURT:  Mr. Pearl, you stated

21   facts before the jury.  You are not supposed to

22   do that because you are not a witness and it is

23   supposed to be couched in a different form.  You

24   asked the question in an improper form.  Ask

25   one further question and that is it.

Proceedings

1

2    MR. KEAHON: I am moving for a

3 mistrial on that and I take exception. I ask

4 you to instruct the jury that what he did was

5 improper.

6    THE COURT: No, I am not going to do

7 that at this point in time. I will instruct the

8 jury to disregard the last remark of counsel. I

9 will tell you to continue and ask a couple of

10 more questions.

11    MR. PEARL: Well, if I ask the

12 question with a co-defendant testifying, is that

13 good with just that?

14    THE COURT: Well --

15    MR. PEARL: Or cooperating witness.

16    THE COURT: You just can't state

17 facts. As far as cooperating witness, that is

18 valid. But to-- you went too far beyond that,

19 that is the promise asserting facts of a witness

20 testifying as far as eliciting. But the

21 question of form is important. So please be

22 guided accordingly. All right.

23    Thank you.

24    (Whereupon the following occurred

25 back in open court.)

1          Proceedings

2              THE COURT:  The jury will disregard

3      the last remark of counsel.

4              Please continue, Mr. Pearl.

5              MR. PEARL:  Mr. Martino, would you

6      disregard a witness who was perhaps cooperating

7      with the District Attorney's Office on trial?

8              PROSPECTIVE JUROR:  No.

9              MR. PEARL:  You wouldn't disregard

10     that witness, you would listen to them and see

11     if all the evidence corroborates them?

12             PROSPECTIVE JUROR:  Yes.

13             MR. PEARL:  Mr. Calleja, how about

14     you?

15             PROSPECTIVE JUROR:  Same.

16             MR. PEARL:  Miss Desner.

17             PROSPECTIVE JUROR: Yes.

18             MR. PEARL:  Miss Crawford?

19             PROSPECTIVE JUROR:  Yes.

20             MR. PEARL:  And Miss Price?

21             PROSPECTIVE JUROR:  Yes.

22             MR. PEARL:  Miss Laguerra?

23             PROSPECTIVE JUROR: Yes.

24             MR. PEARL:  And Miss Roddy?

25             PROSPECTIVE JUROR:  Yes.

1              Proceedings

2              MR. PEARL:  Mr. Castro?

3              PROSPECTIVE JUROR: Yes.

4              MR. PEARL:  Mr. Zakrewshi?

5              PROSPECTIVE JUROR: Yes, if it was in

6    line with the evidence that was presented,

7    obviously.

8              MR. PEARL:  Correct.

9              Mr. Stingley?

10             PROSPECTIVE JUROR: Yes.

11             MR. PEARL:  Miss Roehrig?

12             PROSPECTIVE JUROR:  Yes.

13             MR. PEARL:  Mr. Farmer?

14             PROSPECTIVE JUROR:  Yes.

15             MR. PEARL:  And Mr. Moir?

16             PROSPECTIVE JUROR: Yes.

17             MR. PEARL:  And Mr. Martino?

18             PROSPECTIVE JUROR: Yes.

19             MR. PEARL:  Thank you very much.

20             Thank you, Judge.

21             THE COURT:  Thank you, Mr. Pearl.

22             Thank you.

23             Mr. Keahon, you may inquire of the

24   prospective jurors.

25             MR. KEAHON:  Thank you.

Proceedings

Good afternoon, folks. We have a limited amount of time to speak with you.

Obviously, each of you throughout your lives have been faced with many situations, you made many decisions in your life for yourself and your family and you come into this courtroom with certain feelings about the criminal justice system. So please because of the limited amount of time, you people know yourselves the best, before I sit down, please let me know if there is anything about yourselves that hasn't been spoken about but which you think is important to my decision making process in determining whether you should sit on this case or not.

You know, when Mr. Whitehead first came into this courthouse and was told of the accusation made against him, he entered a plea of not guilty. Those were his words then and those are his words today. And that is why we are here. And I thank you very much for each of you responding to your jury summons.

I think all of us in this courtroom know and appreciate that none of you really want

356

Proceedings

to sit in judgment of another human being.  I
think we probably all have a difficult time
enough dealing with our own lives and trying to
lead it the right way.  But I think you also
understand and appreciate that we need people
like yourselves willing to put aside that
reluctance to sit in judgment on another person
and to take that responsibility and sit on this
case because if we didn't have folks like you,
the system would not work.

The Judge is not going to make a
determination on guilt or innocence in this
case.  The prosecutor certainly isn't.  I am not
going to.  It is up to each of you individually
and collectively as judges, those of you that
are seated to really determine whether or not
the prosecution has proven their case beyond a
reasonable doubt.

Miss Price, do you feel that on
occasion innocent people are charged with
crimes?

PROSPECTIVE JUROR:  Yes.  But all
innocent until proven guilty.  You are going to
have cases where people are going to be innocent

357

Proceedings

and go to jail but the law is innocent until
proven guilty.

MR. KEAHON:  Ma'am, do you believe
that on occasion innocent people are accused of
crimes?

PROSPECTIVE JUROR:  Yes.  I have seen
it in the newspapers.

MR. KEAHON:  What about you, Ma'am?

PROSPECTIVE JUROR:  Yes.

MR. KEAHON:  Sir?

PROSPECTIVE JUROR: Yes.

MR. KEAHON:  Sir?

PROSPECTIVE JUROR: Yes.

MR. KEAHON:  Sir?

PROSPECTIVE JUROR:  Yes.

MR. KEAHON:  Ma'am?

PROSPECTIVE JUROR: Yes.

MR. KEAHON:  Ma'am?

PROSPECTIVE JUROR: Yes.

MR. KEAHON:  Mr. Farmer?

PROSPECTIVE JUROR:  Yes.

PROSPECTIVE JUROR:  Yes.

MR. KEAHON:  Sir?

PROSPECTIVE JUROR:  Yes.

Proceedings

1
2        MR. KEAHON:  Miss?
3        PROSPECTIVE JUROR:   Yes.
4        MR. KEAHON:  Miss?
5        PROSPECTIVE JUROR:   Yes.
6        MR. KEAHON:  Miss Price, do you not
7    only believe on occasion innocent people are
8    charged with crimes but you can actually get to
9    a stage like this, you are in a courtroom where
10   you have jurors, prospective jurors seated, we
11   have a fine Judge sitting on the bench, you have
12   talented and experienced prosecutors, do you
13   think even an innocent person can get to this
14   stage?
15       PROSPECTIVE JUROR: Yes.
16       MR. KEAHON:  Do you?
17       PROSPECTIVE JUROR: Yes.
18       PROSPECTIVE JUROR: Yes.
19       PROSPECTIVE JUROR: Yes.
20       MR. KEAHON:  I will look quick.
21       And I think you said it also,
22   Miss Price, not only can innocent people be
23   accused of crimes and get to this stage in the
24   proceeding but they can even get convicted.
25       PROSPECTIVE JUROR: It is possible.

Proceedings

MR. KEAHON:  You all good with that?

PROSPECTIVE JUROR: Yes.

MR. KEAHON:  You all understand what we are asking you to do?  How important this job is going to be for you?

I would suggest to you that probably other than the most important decisions you have made in your life for your family and your children, this is the most important decision.

You have heard about the serious nature of the crime alleged.  You have heard, I am sure you know the serious consequences to all parties in this courtroom.

Is there anything about this case, Miss Price, that you feel inside, that you have already made a decision a certain way or because of the crimes that are -- my client's accused of, that you are kind of leaning like gees, maybe the fella's guilty?

PROSPECTIVE JUROR:  No.  Innocent until proven guilty.

MR. KEAHON:  What about you, Ma'am?

PROSPECTIVE JUROR:  I feel the same.

PROSPECTIVE JUROR:  Yes.

Proceedings

PROSPECTIVE JUROR:  Yes.

MR. KEAHON:  Every day I read the papers I see someone's arrested for a crime.  I automatically think they probably got the right guy.  That is what we would hope.

You understand, as we sit here the Judge has told you about the presumption of innocence.  These are not technical terms.  This is what our country is based upon.  Here we presume someone accused, to be innocent.

Miss Price, do you agree with Mr. Whitehead is presumed to be innocent?  You feel that way now?

PROSPECTIVE JUROR:  He is innocent until proven guilty.

MR. KEAHON:  Ma'am.

PROSPECTIVE JUROR:  Yes.

MR. KEAHON:  Ma'am.

PROSPECTIVE JUROR:  Yes.

MR. KEAHON:  Sir.

PROSPECTIVE JUROR:  Yes.

MR. KEAHON:  Sir, is that a reluctance or just quiet?

PROSPECTIVE JUROR:  I am just quiet.

361

Proceedings

1

2     MR. KEAHON:  Sir.

3     PROSPECTIVE JUROR: Yes.

4     MR. KEAHON:  Ma'am.

5     PROSPECTIVE JUROR: Yes.

6     MR. KEAHON:  Sir.

7     PROSPECTIVE JUROR:  Yes.

8     MR. KEAHON:  Ma'am.

9     PROSPECTIVE JUROR:  Yes.

10    MR. KEAHON:  Ma'am.

11    PROSPECTIVE JUROR:  Yes.

12    MR. KEAHON:  The Judge has told you

13    also about the burden of proof.  The burden of

14    proof is on this table right here.  The

15    accusation has been made.  They must prove it,

16    if they can.  It never shifts over to this

17    table.

18           Each of you understand that?

19           PROSPECTIVE JUROR: Yes.

20    MR. KEAHON:  Can appreciate that?

21    PROSPECTIVE JUROR:  Yes.

22    MR. KEAHON:  None of you have sat on

23    a criminal trial before and I am sure you are

24    saying to yourself, how do I do the best job I

25    can.  How do I ensure that whatever verdict I

Proceedings

will come up with, it is the right one.  And I
think all of us would agree and suggesting to
you that all you need is your common sense, your
logic and your past experiences in life because
every day of every week of every month of every
year, you make important decisions using those
things for yourself and your family.

Do each of you promise me that you
will use that good common sense and logic to
determine what is true and what is not in this
case?

PROSPECTIVE JUROR: Yes.

MR. KEAHON:  Ma'am, do you believe
that a witness could be called to the witness
stand by the prosecution, be asked to take an
oath and swear to tell the truth and yet lie?

PROSPECTIVE JUROR: Yes.

MR. KEAHON:  Do you, Mr. Farmer?

PROSPECTIVE JUROR:  Yes.

MR. KEAHON:  Mr. Calleja?

PROSPECTIVE JUROR: Yes.

MR. KEAHON:  Sir?

PROSPECTIVE JUROR: Yes.

MR. KEAHON:  Ma'am?

Proceedings

PROSPECTIVE JUROR:  Yeah.

MR. KEAHON:  Ma'am?

PROSPECTIVE JUROR: Yes.

MR. KEAHON:  How do you think you would make that determination, sir, if in fact you were being told the truth or not?  You have never met the witness before.  You have never talked to him.  You have never spoken to him. You may only see him for a half hour on the stand.

PROSPECTIVE JUROR:  Look at him in the context of everything else that is presented.

MR. KEAHON:  Would you also look to see if the person, the witness is looking to get a benefit from the prosecution?

PROSPECTIVE JUROR:  No.

MR. KEAHON:  Do you think a witness that has nothing to gain from their testimony or the outcome of the case should be considered the same as a witness that is hoping to get a benefit from the prosecution?

PROSPECTIVE JUROR:  Yes.

MR. KEAHON:  I probably asked it

1                      Proceedings

2      in-artfully.   I don't know what the question

3      means.

4                      PROSPECTIVE JUROR:   Yes, I believe

5      they should be given the same credibility once

6      they're under oath.

7                      MR. KEAHON:   So you believe that if a

8      person is hoping to get a benefit from the

9      prosecution because of their testimony, you

10     shouldn't consider that?

11                     PROSPECTIVE JUROR:   It depends what

12     you mean by consider.

13                     MR. KEAHON:   In determining the

14     credibility.

15                     PROSPECTIVE JUROR:   No.

16                     MR. KEAHON:   Okay.

17          If you had to make an important decision

18     in your life for your family -- I will withdraw

19     that.

20                     Miss Price, do you think you would

21     want to consider whether or not a witness under

22     oath who is giving testimony is hoping to get a

23     benefit from the prosecution?

24                     PROSPECTIVE JUROR:   Am I hoping?

25                     MR. KEAHON:   No.  Do you think you

1                       Proceedings
2      should consider whether or not a witness is
3      hoping to get a benefit from the prosecution?
4                 PROSPECTIVE JUROR:  Say the question
5      again.  I am sorry.
6                 MR. KEAHON:  Okay.
7                 Would you want to consider in judging
8      the credibility of a witness called by the
9      prosecution, would you want to consider whether
10     or not they were hoping to get a benefit from
11     the prosecution for their testimony?  Would you
12     consider that?
13                PROSPECTIVE JUROR:  Yeah, I would.
14                MR. KEAHON:  Ma'am.
15                PROSPECTIVE JUROR:  Yeah.
16                MR. KEAHON:  Would you, Ma'am?
17                PROSPECTIVE JUROR:  No.
18                MR. KEAHON:  You wouldn't?
19                PROSPECTIVE JUROR:  No.
20                MR. KEAHON:  Do you think in judging
21     the credibility of a witness, that you would
22     want to look to see if they have an interest in
23     the outcome of the case?
24                PROSPECTIVE JUROR:  Oh yeah.  Yeah.
25                MR. KEAHON:  Okay.

Proceedings

What about you, sir?

PROSPECTIVE JUROR:  I would try to give them the same credibility as a witness.

MR. KEAHON:  I am sorry?

PROSPECTIVE JUROR:  Testimony.

MR. KEAHON:  So you would or would not consider whether they were hoping to get a benefit?

PROSPECTIVE JUROR:  I wouldn't.

MR. KEAHON:  I am sorry?

PROSPECTIVE JUROR:  I wouldn't.

MR. KEAHON:  What about you, sir?

PROSPECTIVE JUROR:  I would look deep and I would go beyond what you were saying.  I feel that I have dealt with so many people, so many different types, that if he has got an edge to get out of it, he would have to be awfully good.

MR. KEAHON:  How do you feel about that, Mr. Stingley?

PROSPECTIVE JUROR:  In a perfect world you would like to give the same.  I think you have to sit back and assess what the reality is.

Proceedings

MR. KEAHON:  If you had to make a decision in your personal life and had to get input from a particular person and you knew that person was going to give you their advice but they benefit from the advice they gave you, if you accepted it, wouldn't you consider that in making your decision?

PROSPECTIVE JUROR:  You have to.

MR. KEAHON:  Sure.

What about you, Ma'am?

PROSPECTIVE JUROR:  I agree but hopefully you are not going to base it just on what one person says, no matter whether they're benefiting or not from it.

MR. KEAHON:  True.

PROSPECTIVE JUROR:  I hope the evidence goings beyond that.

MR. KEAHON:  You are absolutely right but I am asking specifically about credibility issues.

The Judge is going to tell you in this case as in every case, one of your major decision making processes is to determine the credibility of each witness individually and

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Proceedings

then collectively.  So I think you would want,
would you not, Ma'am, want to know if any
particular witness was hoping to gain a benefit?

PROSPECTIVE JUROR:  Oh sure.

MR. KEAHON:  Mr. Farmer?

PROSPECTIVE JUROR: Yes, I would like
to know that.

MR. KEAHON:  Mr. Moir?

PROSPECTIVE JUROR:  Of course.

MR. KEAHON:  Sir?

PROSPECTIVE JUROR:  Yes.

MR. KEAHON:  We are a nation of
routism.  We rout in politics.  We rout in
sports.

Can I have your assurance that none
of you are going to rout for either side in this
case, that your only concern is going to be
reach the right decision, the best decision you
can based upon the evidence or lack of evidence?

Do I have that assurance, Ma'am?

PROSPECTIVE JUROR:  Yes.

MR. KEAHON:  Sir, do you believe
that a, a law enforcement official can take the
witness stand and take an oath and tell the

369

Proceedings

1
2    truth and lie?

3                    PROSPECTIVE JUROR:  Yes.

4              MR. KEAHON:  Do you think it happens?

5              PROSPECTIVE JUROR: Yes.

6              MR. KEAHON:  Mr. -- sir?

7              PROSPECTIVE JUROR:  Yes.

8              MR. KEAHON:  Ma'am?

9              PROSPECTIVE JUROR:  Yes.

10             PROSPECTIVE JUROR:  Yes.

11             MR. KEAHON:  Sir?

12             PROSPECTIVE JUROR:  Yes.

13             MR. KEAHON:  It is getting later,

14   some of you have sleepy eyes.  I want to move

15   this along.

16             A number of you have friends or

17   relationships or relatives that involve law

18   enforcement.  And you heard the witness list

19   read to you and there are a number of

20   detective's names that were read to you.  You

21   can understand my concern that one or more of

22   you might give more credibility to a law

23   enforcement official just because they're law

24   enforcement.

25             Do you think you would do that,

370

Proceedings

Miss Price?

PROSPECTIVE JUROR:  No.

MR. KEAHON:  Miss Roddy?

PROSPECTIVE JUROR:  I am not sure.

MR. KEAHON:  You know every day, not every day but quite often when we have trouble, we have problems, we call for the police to help us and they respond and they help us.  And it might be natural for each of you because of that and because you want to trust law enforcement, that when you are sitting on a jury and they're called as witnesses, you automatically start accepting what they have to say merely because of their title, badge or uniform.  And that may be natural but I need an assurance from each of you that any law enforcement official that is called into this courtroom, that if you start to have that feeling, push it aside and say no, I promised Mr. Keahon and I promised the Court and I am going to treat every witness the same and nobody has an edge in this case, notwithstanding your great experience with police or yourself or your brother or your sister-in-law or your father being a police officer.

371

Proceedings

1

2                     Can you understand how important that

3   is?

4                     Is there any of you that -- Ma'am, do

5   you feel that you might not be able to do that?

6                     PROSPECTIVE JUROR:  No.

7                     PROSPECTIVE JUROR:  I would have

8   to -- I guess I would have to listen really to

9   exactly what they're saying and everything.

10                     MR. KEAHON:  Sure.

11                     PROSPECTIVE JUROR:  I wouldn't just

12  say I believe everything that is said but I

13  would look into it.

14                     MR. KEAHON:  If you were selected,

15  can you promise me that you would start

16  listening to each witness with a blank slate and

17  let them prove and establish to you that what

18  they're saying is accurate?

19                     PROSPECTIVE JUROR:  Yeah.

20                     MR. KEAHON:  And if it is a law

21  enforcement official or detective, they don't

22  start ahead of everybody else.

23                     PROSPECTIVE JUROR:  No, I can

24  understand.

25                     MR. KEAHON:  And I think really, when

372

Proceedings

we talk about these rights and we talk about
issues that I am trying to discuss with you,
just think about a good friend of yours sitting
in the courtroom as a defendant and what rights
you would want that jury to ensure that they
gave him. And if you look at it that way, then
whatever feelings you normally have, you are
going to push them aside.

Can each of you do that?

Sir?

PROSPECTIVE JUROR: Yes.

MR. KEAHON: Ma'am?

PROSPECTIVE JUROR: Yes.

PROSPECTIVE JUROR: Yeah.

MR. KEAHON: Are we starting this
case now, if each of you are selected, with a
jury that has not made any decision in this case
and truly believes that Mr. Whitehead is
presumed to be innocent, and you are going to
make them prove it beyond a reasonable doubt, if
they can?

Is that your position, Miss Price?

PROSPECTIVE JUROR: Yes.

MR. KEAHON: Ma'am?