373

Proceedings

PROSPECTIVE JUROR: Yes.

MR. KEAHON:  Ma'am?

PROSPECTIVE JUROR:  Yes.

PROSPECTIVE JUROR:  (Nod of head.)

PROSPECTIVE JUROR:  (Nod of head.)

PROSPECTIVE JUROR:  (Nod of head.)

MR. KEAHON:  I promise you that if you are selected, this being probably the first criminal case any of you have sat on, you will be very proud of the experience, and twelve jurors do come up with a great decision, you won't make a mistake.

Thank you very much.

THE COURT:  Thank you, Mr. Keahon.

The jury will be given a brief recess.

Remember my admonitions which I am required to give you at this time.

To keep an open mind.  Not to form or express any opinion about this case until it is finally submitted to you for your deliberations.

You may not discuss this case among yourselves or with anybody else or allow it to be discussed in your presence.

374

Proceedings

You are not to read or listen to any accounts of the case that may be reported by any news media, on the Internet.

And promptly report to the Court any incident involving an attempt to contact or influence any member of this jury.

Thank you once again for your hard work.  If you follow the officers' instruction.

MR. KEAHON:  Can they just remain seated for a minute, just so I can look at them and make some decisions for a minute or two?

THE COURT:  Yes, counsel.

MR. KEAHON:  Thank you.

Thank you, Judge.

THE COURT:  Thank you once again.

We will bring you back as soon as we can.

(Whereupon prospective jurors leaving courtroom.)

THE COURT:  Please be seated.

You will take a moment to go over your notes and as soon as you are ready, inform the Court, we will do the challenges.

(Whereupon Mr. Keahon conferring with

375

Proceedings

defendant.)

(Whereupon Mr. Pearl conferring with Ms. Franzese.)

MR. KEAHON:  I am ready, Judge.

THE COURT:  Are the People ready to proceed as well?

MR. PEARL:  Yes.

THE COURT:  All right.

Beginning with potential juror number one, Miss Price, and ending with prospective juror number twelve, Mr. Calleja, do we have any challenges for cause People?

MR. PEARL:  For cause, no, thank you, Your Honor.

THE COURT:  Any challenges for cause defense?

MR. KEAHON:  Yes, Judge.

Mr. Farmer.

THE COURT:  I will hear you, People.

MR. PEARL:  Judge, you know, he indicated he can be fair and impartial, the last question I asked him in chambers.  I don't see anything that Mr. Keahon brought out of him during the voir dire.

376

Proceedings

It is my position that he indicated
he can be fair and impartial, his prior
experience wouldn't effect him.

I would oppose the cause for
challenge.

MR. KEAHON:  Your Honor, he never
changed his opinion from the room to out here.

THE COURT:  Thank you.

The challenge for cause will be
allowed.

The People's exception noted.

Any other challenges for cause,
defense?

MR. KEAHON:  No, Your Honor.

THE COURT:  Are there any peremptory
challenges, People?

MR. PEARL:  Yes, Your Honor.

Two.

THE CLERK:  Can we use name and
number, please, counsel.

MR. PEARL:  Number two, Lillian
Laguerra.

Number five, Fred Castro.  Number
ten, Felicia Crawford.

377

Proceedings

And that is -- those are the three peremptories.

THE COURT:  Are there any peremptory challenges, defense?

MR. KEAHON:  Yes, Judge but there are-- I believe in that group there were only two blacks on the entire group that was brought up.  I don't know how many there were, a hundred and some odd.

Actually, I think there was an additional black who excused themselves for whatever reason when you gave the initial instructions.

Certainly, the District Attorney's Office has no problem with Miss Price because she is a Corrections Officer but I don't think there is any valid reason for Miss Crawford.

My client is black.  Out of the entire, in excess of a hundred, I believe there were only three blacks and one which excused themselves.  That left two.  Both are on the group we are inquiring on and the District Attorney has challenged one.

So I would like to note the reasons

378

1                        Proceedings

2    for that.

3                    THE COURT:    Pursuant to Batson

4    versus Kentucky, at this time I will not ask the

5    People to respond until a pattern has been

6    established.  They are not under an obligation.

7                    You have discharged your obligation

8    Mr. Keahon, by noting the race of the challenged

9    juror, Miss Crawford.  And if there was a

10   pattern I will ask the People to respond.  At

11   that time you can renew your application.

12                   MR. KEAHON:  With respect to this

13   group there can't be a pattern because we are at

14   the end of it but thank you.

15                   THE COURT:  All right.

16                   Are there any peremptory challenges,

17   defense?

18                   MR. KEAHON:  Yes, Your Honor.

19                   Miss Roddy, number three.

20                   MR. KEAHON:  Mr. Martino.  I guess

21   that is number four.

22                   Number six, I think it is

23   Mr. Zakrewshi.

24                   Dom, did I pronounce it right?

25                   THE COURT:  Zakrewshi.  Zakrewshi.

379

1                           Proceedings

2                 MR. KEAHON:  Uh-huh.

3                 Juror, I think it is, C-A-R-E-G-A.

4                 THE COURT:  Calleja.

5                 MR. KEAHON:  Yes.

6                 THE COURT:  The last juror, number

7        twelve that you are challenging?

8                 MR. KEAHON:  Yes.

9                 And --

10                THE COURT:  Well, we haven't gone

11       beyond that.  Right now we are stopping at the

12       original group of twelve.

13                MR. KEAHON:  If I may, Judge.

14                Okay.  That is fine.  Thank you.

15                THE COURT:  All right.

16                Then that leaves Miss Price as juror

17       number one.  Mr. Stingley as juror number two.

18       Miss Roehrig is number three.  And Miss Desner

19       is number four.

20                     Turning then to Mr. Vannostrand and

21       Mr. Moir, prospective jurors sixteen and

22       seventeen, is there any challenge for cause,

23       People?

24                     MR. PEARL:  No challenges, Your

25       Honor.

380

Proceedings

THE COURT:  Any challenges, defense?

MR. KEAHON:  No, Your Honor.

THE COURT:  Perempt, People?

MR. PEARL:  No, Your Honor.

THE COURT:  Perempt, defense?

MR. KEAHON:  Yes.

Mr. Moir.

Je ne se qua.

THE COURT:  I believe the defense has used five.  People, the People three.

MR. PEARL:  That is correct.

THE COURT:  Mr. Vannostrand will be--

MR. PEARL:  Just briefly, my understanding is the defense has challenged Mr. Martino, Mr. Zakrewshi, Mr. Calleja, and now Mr. Moir.

THE COURT:  Yes.

MR. PEARL:  Four Caucasian males.

THE CLERK:  He also challenged Miss Roddy.

MR. PEARL:  But four Caucasian males. All males, no women.

Judge, at this time the People are making a Batson challenge.

381

Proceedings

1

2          THE COURT:  Having established a

3    pattern, if you would be so kind, Mr. Keahon, as

4    to state a nondiscriminatory reason for your

5    challenges.

6          MR. KEAHON:  Well, number one, half,

7    more than half the group that we have had were

8    white male Caucasians.  Number two, I

9    challenged, my first challenge was Miss Roddy,

10   she is a female.

11          THE COURT:  Right.

12          MR. KEAHON:  Mr. Martino's sister is

13   on the New York PD and had numerous friends that

14   he said were on the PD.

15          THE COURT:  That is more than

16   sufficient.  That is more than sufficient.

17          We have to go juror by juror.  If you

18   would be so kind, just for the record, in terms

19   of Mr. Zakrewshi.

20          MR. KEAHON:  Mr. Zakrewshi, his

21   father-in-law is on the New York City PD.

22          THE COURT:  Thank you.

23          MR. KEAHON:  His brother-in-law is an

24   officer.

25          THE COURT:  That is sufficient.

382

Proceedings

MR. KEAHON:  Uh-- Mr. Farmer was for cause.

THE COURT:  Mr. Calleja.

MR. KEAHON:  I didn't like him.  I thought he was a wise guy.  When we talked in chambers he was very quick.  Just something about him I didn't like.

THE COURT:  That is sufficient.

Turning to Mr. Moir.

MR. KEAHON:  He said two of his best friends were Nassau PD.

THE COURT:  You have discharged your obligation under Batson.  Thank you.

MR. KEAHON:  Thank you.

THE COURT:  All right.

Then Mr. Vannostrand will be juror number five.  We will bring in our jury.  We will discharge the ones who have not been selected, with the thanks of the Court.  We will swear our five and tell them to come back on Wednesday at 2 pm.

MR. KEAHON:  Great.

THE COURT:  Thank you.

MR. KEAHON:  And can we take a break?

Proceedings

THE COURT:  Yes.

(Whereupon prospective jurors entering courtroom.)

THE COURT:  Thank you.  Please be seated everyone.

THE CLERK:  Case on trial, People versus Whitehead.  Prospective jurors, all parties present.

THE COURT:  Thank you.

Ladies and gentlemen of the jury, some of you have been selected to serve as jurors in this case and some have been discharged.  The fact you are not selected for this jury is no reflection on your intelligence, integrity or patriotism.  All have been amply demonstrated before this Court.

Those of you not selected, you are discharged with the thanks of the Court without any further duty.

THE CLERK:  The following jurors please remain seated, the rest are excused with the thanks of the Court, please report back downstairs, Central Jury.

Remain seated, Lavern Price, Ronald

384

Proceedings

Stingley, MaryBeth Roehrig, Leona Desner, and Robert Vannostrand.

The rest are excused. Thank you.

(Whereupon prospective jurors leaving courtroom.)

THE COURT: Thank you once again.

If counsel will remain standing for a moment.

Mr. Avitable.

THE CLERK: Remaining jurors please stand and raise your right hand.

Do each of you solemnly swear that you will truly try this case, render a true verdict according to the evidence and the charge of the Court, so help you God?

SELECTED JURORS: I do.

THE CLERK: Please be seated.

Miss Price, you are juror number one. Mr. Stingley your are juror number two. Miss Roehrig, you are juror number three. Miss Desner you are juror number four. Mr. Vannostrand, you are juror number five.

THE COURT: Thank you once again. You can tell the jury selection process is a

385

Proceedings

rather lengthy one.  There is an old saying, the wheels of justice turn slowly but they grind exceedingly fine.

The process will continue.  Rather than have you come back day after day, I will discharge you, direct you to come back the day we hope the jury will be fully constituted, you can begin to hear evidence rather than you have to wait in the jury room.  That date is next Wednesday, 2 pm.

Jury selection will continue on Monday.  Hopefully, the jury will be fully selected on that date.  I will give you further instructions on the law on Wednesday before you undertake your duties.

Once again, the law requires me to instruct you as far as your duties between now and then.  And I know we all know them by heart together.

First of all, to keep an open mind, not to form or express any opinion until this case is finally submitted for your deliberations.

You may not discuss this case or any

386

Proceedings

matter connected with the trial or anyone else, not even members of your family, allow it to be discussed in your presence.

You are not to read or listen to any accounts or discussions of the case that may be reported by the news media, on the Internet.

You may not visit the place or places where the offenses charged were allegedly committed or any other premises discussed during the course of this trial.

You must promptly report to the Court any incident within your knowledge involving an attempt by any person to contact or influence any member of this jury.

You may not discuss with any person the receiving or accepting of any payment or benefit in consideration for supplying any information concerning this trial.

Given the length of this trial you will be allowed to take notes.  I will give you special instructions on the manner of note taking and you will be provided with notebooks by the Court.  You are not to take your own notes because the notebooks will be collected at

                    Proceedings

1

2    the end of the day.  And I must give you

3    specific instructions immediately prior to

4    opening statement as to the manner in which the

5    notes will be taken.

6            Having that in mind and thanking you

7    once again for your hard work and your patience

8    over the next few weeks, you will be discharged

9    for the day, with the thanks of the Court and I

10   will see you next Wednesday at 2 pm.  Thank you.

11           THE SERGEANT:  Step this way jurors,

12   follow me.

13           (Whereupon five selected jurors

14   leaving courtroom.)

15           THE COURT:  Thank you.  Please be

16   seated.

17           The Court will take a brief recess,

18   Mr. Keahon.  And lets see if we can get the new

19   jury up here in five minutes, officer, I don't

20   want everyone mixing in the hallway once more.

21   So once Mr. Keahon has returned, then we will

22   bring the jury up at that time.

23           Court will stand in recess.

24           (Wherepon a short recess was taken.)

25           THE COURT:  Is there anything to

388

Proceedings

1

2    place on the record before we bring in our

3    prospective jurors?

4         MR. KEAHON:  No, there isn't.

5         THE COURT:  Thank you.

6         My compliments to the prospective

7    jurors, their presence is required.

8         (Whereupon prospective jurors

9    entering courtroom.)

10         THE COURT:  Thank you very much.  We

11    are trying to make sure everyone that can

12    possibly find a seat, find one at this time

13    because there aren't going to be enough.

14         THE COURT:  Good afternoon.

15         THE SERGEANT:  Officer, we can fit

16    one more up here.  Thank you.

17         Counsel and the parties may be

18    seated.

19         THE CLERK:  Case on trial, People

20    versus Whitehead.  Prospective jurors, all

21    parties present.

22         THE COURT:  Thank you.

23         Are the People ready?

24         MR. PEARL:  People ready, Your Honor.

25         THE COURT:  Is the defense ready?

Proceedings

MR. KEAHON:  I am, sir.

THE COURT:  Thank you.

Good afternoon, everyone, my name is Judge James Hudson, I am a County Court Judge. I want to welcome you all to your courtroom.  I am presiding over the trial.  We have been doing jury selection from yesterday to today, the trial each one of you has also been subpoenaed as a prospective juror.  I also will remain standing until every prospective juror has a seat.  It tends to keep this portion of the trial moving along very quickly.

My first questions are directed to all of you.  It is estimated this trial will follow the following schedule.  I see all of you have been provided with a schedule.

To repeat, jury selection began yesterday and will finish on the 11th.  That is this Monday.  The trial itself may last until the 20th of March.  As counsel so pointed out, it is the first day of Spring.

A schedule was handed out and there will be no trial once again tomorrow, Friday, the 8th, and on the 15th.  Additionally, there

Proceedings

will be no trial on the 12th, Lincoln's Birthday, and the 18th, President's Day, the Courts are closed on those days, as shown on the schedule.

On some days the trial will run from two o'clock in the afternoon until five o'clock in the afternoon.  On other days, however, the trial may commence at eleven o'clock in the morning and run through 12:30 in the afternoon and then once again in the afternoons.  We will try to give you a days notice of any changes in the schedule.  Although we will always try to end the day at 5 pm, there may be times when we run into the early evening.  At deliberations, at the very end of the case, a trial may end later in the evening.  However, there will be no sequestration, you will go home at night.  If you are to serve on this jury you will be committed to the schedule given.

But jury duty is a sacrifice and obligation.  That obligation has some limitations.  Based on the extended length of the trial, if you have an emergency situation preventing you from being here, you will be

Proceedings

excused.

An emergency includes but is not necessarily limited to, a scheduled medical operation, a vacation where you have already purchased airline tickets or travel tickets. Military service. You are the sole proprietor of a business where service here would place you in default of a legal obligation to someone else. Or you are the sole caregiver to a child or incapacitated person, there is literally no one else to take care of that person during trial hours.

Also, you must consider the economic consequences of service. I know you have all done your patriotic duty and appeared in answer to the jury summons. You know how important it is. However, you only know your financial situation, sacrifice. I know you are prepared to do that. If the economic would be so great as far as economic loss to you and your family in a trial of this length, so much so that you could fairly say that you would be preoccupied and unable to give your undivided attention to this jury, to this trial, then you will also be

Proceedings

excused.

That is the type of situation that would be a valid excuse for jury duty on this occasion.

This is not a long trial by courthouse standards. If you serve on this jury, you will have discharged your obligation, may not be called again for six years.

If you don't wish to serve this time, of course, I will respect your wishes but you do run the risk of being called for a longer trial in the future.

Additionally, if you answer yes to any of the following questions you will also be discharged.

Does anyone here have any hearing problem or any other type of physical challenge or medical difficulty that would prevent him or her from sitting as a juror if selected?

As a juror you would have to sit in the jury box approximately, an hour, an hour and a half between breaks.

Do any of you know of any reason why you would not sit as a fair or impartial juror?

1                           Proceedings

2                   Do any of you know a personal, moral,

3          ethical or other reason not to sit as a juror?

4                   In this case it involves the

5          following.  It is alleged, note that word, an

6          allegation, nothing has been proven and no proof

7          has yet been submitted and the defendant has

8          been presumed innocent of these charges.  It is

9          alleged by going back into September of the year

10         two thousand and four through March of the year

11         2005, the defendant, Lamar Whitehead engaged in

12         a scheme in which he allegedly used the

13         identities of various Suffolk County residents

14         without their permission and assumed those

15         identities to apply for loans and/or credit and

16         thus obtain goods and money and services for

17         himself.

18                  At the conclusion of this case you

19         will be asked to consider charges of Scheme to

20         Defraud in the First Degree, Identity Theft in

21         the First Degree, Attempted Identity theft --

22         excuse me.  Identity Theft in the Third Degree,

23         and Attempted Grand Larceny in the Second

24         Degree.

25                  In order to be selected as a juror

1                    Proceedings

2         in this case you will have to be able to swear

3         that you can be a fair and impartial juror to

4         both sides in this matter.  You would have to be

5         able to give your solemn word, your solemn oath

6         to both sides.

7                    So with that in mind, if anyone here

8         has a personal or compelling reason that they

9         can not serve on this jury or if based on what I

10        just described to you about this case you feel

11        that you might not be a fair or impartial juror

12        or feel uncomfortable being a juror in this

13        case, in other words you do not wish to assume

14        the responsibility of sitting as a juror in a

15        criminal case, after hearing the description

16        that I just gave, merely raise your hand and you

17        will be discharged without any further inquiry

18        from this Court.

19                   Thank you.  If you would follow the

20        officers' instructions.   Those remain seated

21        for just a moment and wait for the officers'

22        instructions.  Thank you.

23                   PROSPECTIVE JUROR:  We have a

24        question.

25                   COURT OFFICER:  Hold on for a minute.

1          Proceedings

2               If you raised your hand, you will be

3     going out into the hallway.

4               PROSPECTIVE JUROR:  Will this last

5     until the 20th?

6               THE COURT:  The 20th.

7               PROSPECTIVE JUROR:  Of March?

8               THE COURT:  Of March.

9               COURT OFFICER:  Just watch your step

10    coming down.

11              (Whereupon prospective jurors leaving

12    courtroom.)

13              PROSPECTIVE JUROR:  I go to school at

14    night Monday and Wednesday.  Should I leave?  I

15    don't know.

16              THE COURT:  Remember the questions

17    that I gave.  If you are not going to be able to

18    be here.

19              PROSPECTIVE JUROR:  Yeah.  Okay.

20              COURT OFFICER:  Folks in the box, you

21    can take seats in the audience, please.

22              PROSPECTIVE JUROR:  (Complying.)

23              THE COURT:  All right.  If you would

24    swear the entire panel.

25              THE CLERK:  Would the entire panel

1      Proceedings

2      please stand and raise your right hand.

3                THE COURT:  Counsel.

4                THE CLERK:  Do each of you solemnly

5      swear to truthfully answer all questions

6      regarding your qualifications to serve as trial

7      jurors on this case, so help you God?

8                PROSPECTIVE JURORS:  I do.

9                THE CLERK:  Please be seated.

10               THE COURT:  Thank you.

11               Thank you all once again.

12               Ladies and gentlemen of the jury

13     panel, as I just indicated, this trial is the

14     case of the People of the State of New York

15     against Mr. Lamar Whitehead.  You have been

16     called here as possible jurors for this trial.

17               Before I begin, please let me note

18     the following.  Service as a juror is a vital

19     function of citizenship under our American

20     system of justice.  As I am sure you are aware,

21     the right to a trial separates our country from

22     many, many less unfortunate countries.  That

23     right should be jealously guarded.  Besides

24     being a traditional part of our American

25     History, jury service carries a very great and

1            Proceedings

2     important responsibility, that is to accord both

3     the defendant and the People, the accused and

4     the accuser, a fair trial.

5            To help ensure this, our first order

6     of business is to conduct an oral examination of

7     you, our prospective jurors.

8            This part of the trial is called Voir

9     Dire.  It is a French idiomatic expression

10    translated to speak the truth.  Voir Dire is the

11    jury selection process, the method by which some

12    of you will be chosen as jurors and a number of

13    others as alternates.

14           First, however, I would like to

15    explain briefly what the trial will involve and

16    the roles of the Judge and jury.  After that I

17    will begin to ask you some individual questions.

18    Please understand that I will be directing my

19    remarks to all prospective jurors.

20           Soon a number of you will be seated

21    in the jury box to my left.  I ask all of you to

22    pay close attention to the questions I will ask

23    later because if and when any of you who are

24    seated where you are now or outside the rail as

25    we call it, are called to sit up here in the

1                        Proceedings

2           jury box, I will need to know your answers to

3           these general questions.

4                   Also, if someone has problems hearing

5           my remarks, please let me know and I will be

6           happy to repeat myself.

7                   Let me emphasize, everyone who serves

8           on a criminal trial accepts the responsibility

9           that the defendant and the People will have a

10          fair trial.

11                  In order to fulfill this

12          responsibility, each juror must be free from any

13          feelings or attitude of prejudice, sympathy or

14          preconceived notions that might interfere with

15          his or her ability to be impartial and

16          therefore, render a fair and just verdict based

17          solely on the evidence in this case.

18                  As to the questions, some are

19          designed or asked to reveal such feelings or

20          attitudes both conscious and unconscious.

21          Later, besides my questions you may be

22          questioned by the attorneys.  Please don't be

23          offended by any of these questions.  I remind

24          you, you were just sworn to tell the truth so

25          you will answer them honestly, as I know you

1        Proceedings

2        will, in fairness to yourself and to the parties

3        in this case.

4               As I have indicated, the trial which

5        is about to begin is a criminal action against

6        the defendant, Mr. Lamar Whitehead.

7               I will now refer you to the formal

8        indictment.

9               Count one charges the defendant with

10       Scheme to Defraud in the First Degree,

11       allegedly, committed as follows.

12              The defendant, Lamar Whitehead, on or

13       about and between September of two thousand and

14       four through March of two thousand and five, in

15       Suffolk County, engaged in a scheme constituting

16       a systematic ongoing course of conduct with the

17       intent to defraud more than one person or to

18       obtain property from more than one person by

19       false or fraudulent pretenses, representations

20       or promises and so obtains property with a value

21       in excess of one thousand dollars from one or

22       more such persons, to wit:  The defendant, using

23       the identity of various Suffolk County residents

24       obtained or attempted to obtain car loans from

25       the E-Loan Corporation and others in excess of

1       Proceedings

2       one thousand dollars.

3               Count two charges the defendant with

4       Identity Theft in the First Degree.  Which reads

5       as follows.

6               The Grand Jury of Suffolk County by

7       this indictment accuses the defendant, Lamar

8       Whitehead, of the crime of Identity Theft in the

9       First Degree allegedly committed as follows.

10              The defendant, Lamar Whitehead, on or

11      about February 15, year two thousand and five,

12      assumed the identity of Maria Marcarle or

13      Marcarle, a Suffolk County resident, by using

14      the personal identifying information of that

15      person, and obtained goods, money, property or

16      services, having a value of more than two

17      thousand dollars.

18              Count eleven and fifteen also charges

19      the defendant with Scheme to Defraud -- excuse

20      me, with Identity Theft in the First Degree. The

21      difference being the names of the alleged

22      victims and the alleged date of the crimes.

23              Count three also charges the

24      defendant, Mr. Lamar Whitehead of the crime of

25      Identity Theft in the First Degree under a

1                          Proceedings

2       different theory, allegedly committed as

3       follows.

4                  The defendant, Lamar Whitehead, on or

5       about February 15, year two thousand and five,

6       assumed the identity of Miss Maria Marcarle, a

7       Suffolk County resident, by using the personal

8       identifying information of that person and

9       committed or attempted to commit a class D

10      felony or higher level crime.

11                 This is also charged against

12      Mr. Whitehead under count four, seven, eight,

13      nine, twelve, thirteen, fourteen, fifteen,

14      seventeen, eighteen, nineteen, twenty,

15      twenty-one, twenty-two, twenty-three,

16      twenty-four, twenty-five, twenty-six,

17      twenty-seven, twenty-eight, twenty-nine, thirty,

18      thirty-one, thirty-two, thirty-three, and

19      thirty-four of the indictment.

20                 Once again, the difference being the

21      names of the alleged victims and the alleged

22      date of the crime.

23                 Count five of the indictment before

24      the Court charges the defendant, Mr. Lamar

25      Whitehead, with the crime of Identity Theft in

1      Proceedings

2      the Third Degree, allegedly committed as

3      follows.

4              The defendant, Mr. Lamar Whitehead,

5      on or about March 25, the year two thousand and

6      five, assumed the identity of Miss Maria

7      Marcarle, a Suffolk County resident, by using

8      the personal identifying information of that

9      person and obtained goods, money, property or

10     services.

11             The defendant is also charged with

12     Identity Theft in the Third Degree under count

13     six and sixteen of the indictment.  Once again,

14     the differnce being the names of the alleged

15     victims and alleged date of the crime.

16             Count ten of the indictment before

17     the Court accuses the defendant, Mr. Lamar

18     Whitehead, of the crime of Attempted Grand

19     Larceny in the Second Degree, allegedly

20     committed as follows.

21             The defendant, Mr. Lamar Whitehead,

22     on or about October 14th in the year two

23     thousand and four, within the jurisdiction of

24     Suffolk County, New York, attempted to steal

25     property from Land Rover of Massapequa,

1                           Proceedings

2       specifically, a motor vehicle with a value that

3       exceeded fifty thousand dollars.

4               These charges are contained in the

5       indictment that I just partially read to you and

6       referred to you.

7               The indictment is only an accusation.

8       An indictment is proof of nothing.  You have

9       heard the expression where there is smoke there

10      is fire.  An indictment is not even smoke

11      because although smoke may be evidence of a

12      fire, an indictment is not evidence at all and

13      may not be considered as such.

14              The reason for this is that an

15      indictment is nothing more than the legal form

16      by which the State of New York brings to trial

17      the individual it claims has violated the law.

18              The indictment is neither evidence

19      nor proof of the defendant's guilt.  Indeed, the

20      defendant is presumed to be innocent and this

21      presumption of innocence continues throughout

22      the trial unless and until a jury having

23      considered all of the evidence, unanimously

24      finds that a defendant is guilty beyond a

25      reasonable doubt of the charges made against

1          Proceedings

2     that defendant.

3          Accordingly, the mere fact that there

4     are thirty-four counts or charges in the

5     indictment is of no significance nor may you

6     assign it any significance.

7          This trial is the process by which

8     those of you selected as the jury determine if

9     the State has proved the charges against the

10     defendant by sufficient evidence.

11          In that process those of you who are

12     selected as jurors and I as the Judge perform

13     separate functions.  You the jury are the

14     exclusive judges of the facts in this case.

15          During the trial counsel may suggest

16     that you draw certain conclusions but you and

17     you alone evaluate the testimony and exhibits

18     and determine their truthfulness, significance

19     and meaning.  You alone decide what truly

20     happened.  You alone decide if the evidence

21     establishes the defendant's guilt of the charges

22     beyond a reasonable doubt.  Your ultimate

23     decision is the verdict.  You may find the

24     defendant either guilty or not guilty of all of

25     the charges or some of the charges.

1                       Proceedings

2                   The fact that this action is brought

3        in the name of the People of the State of New

4        York or that a public official presents the

5        evidence does not in any way indicate that the

6        public wants a specific verdict.

7                   The People of the State are served by

8        whatever verdict the evidence justifies.

9                   I as the Judge will make no

10       determination about the defendant's guilt or

11       lack of guilt.  My function is to ensure that

12       you reach your verdict in accordance with the

13       law.  As part of that function, at the end of

14       the trial, after you have heard all of the

15       evidence, I will instruct you fully on the law

16       that applies in this case.  And just as you are

17       the exclusive judges of the facts, I am the

18       exclusive judge of the law.  You must by your

19       oath accept the law as I state it to you and

20       apply it to the facts as you find those facts to

21       be.

22                   During the trial I may rule on

23       questions concerning the conduct of this trial

24       or what evidence you may see or hear.  In making

25       these rulings I also am applying the law.  I am

1               Proceedings

2    not evaluating the facts, indicating anything

3    about the defendant's guilt or non-guilt.

4               During the trial the attorneys and I

5    may also hold brief conferences outside of your

6    hearing.  These are called side-bar conferences

7    and involve questions of law about which you

8    need not and must not be considered.

9               Now to the reason you are here today,

10   jury selection.  As I indicated, during this

11   portion of the trial the jury selection process,

12   the attorneys and I will ask you questions and

13   as I told you earlier, the purpose of these

14   questions is to elicit information concerning

15   your ability to be impartial in this case.

16              Let me also emphasize to you that the

17   purpose of this questioning is not to embarrass

18   you or to discover any personal details of your

19   lives.  The purpose is simply to determine

20   whether or not you are qualified to sit as a

21   juror in this particular case.  I advise you

22   that if there is anything you are asked by me or

23   the attorneys which would be embarrassing or

24   uncomfortable for you to answer, merely ask to

25   answer that question or questions privately and

Proceedings

1

2     you will be invited to the side-bar to speak

3     with counsel and myself, excuse me, or into the

4     jury room itself.

5                I also ask you please do not take

6     offense of any of the questions you are asked.

7     They are essential to ensure that the People and

8     defendant receive a fair trial.

9                I also must advise you that in every

10    jury trial a number of prospective jurors are

11    always excused.  I can tell you now before

12    knowing anything about any of you, that a number

13    of you will not be selected.  That is common.

14    Some of you will not be selected as jurors

15    because counsel for the prosecution and the

16    defense have the right to challenge prospective

17    jurors for what the law refers to as cause.

18    That is as a matter of law you should not sit in

19    this particular jury.  They also have a right to

20    excuse a certain amount of jurors, what is

21    called a peremptory reason, a challenge for

22    which no reason be assigned.

23                Do not be upset if you are challenged

24    or excused either for cause or peremptorily.  A

25    challenge is no reflection on you as a person or

1           Proceedings

2     on your intelligence, capacity to serve as a

3     juror, merely reflects the opinion of one of the

4     parties, which that party has a right by law to

5     act upon, that you should not sit on the jury at

6     this time.

7              At this time I will ask Mr. Avitable,

8     our court clerk to select eighteen names, and

9     follow the clerk's directions.

10             Mr. Avitable.

11             THE CLERK:  When a juror's name is

12    called, please take all your belongings and have

13    a seat in the jury box at the direction of the

14    officer.

15             Prospective juror number one, Douglas

16    Cowan, C-O-W-A-N.

17             Prospective juror number two, Rosena

18    Williams, W-I-L-L-I-A-M-S.

19             Prospective juror number three,

20    Michael David, D-A-V-I-D.

21             Prospective juror number four, Jason

22    Pedneault, P-E-D-N-E-A-U-L-T.

23             Prospective juror number five,

24    Michael Wright, W-R-I-G-H-T.

25             Prospective juror number six, Ronald

Proceedings

1
2      Clarke, C-L-A-R-K-E.

3              Prospective juror number seven, I
4      don't know if it is hyphenated, Baldassarr
5      Arenni.

6              Is that hyphened?

7              THE COURT:  I am sorry if we are
8      mispronouncing your name.

9              PROSPECTIVE JUROR:  Baldassarr
10     Arenni.  Thank you.

11             THE CLERK:  B-A-L-D-A-S-S-A-R-R
12     A-R-E-N-N-I.

13             PROSPECTIVE JUROR:  B-A-L-D-A double
14     S, A double R E, R-E-N-N-I-E.

15             THE COURT:  Baldassarre Rennie.

16             PROSPECTIVE JUROR: Yes.

17             THE COURT:  Thank you.

18             THE CLERK:  Prospective juror number
19     eight, Michele Hernandez, H-E-R-N-A-N-D-E-Z.

20             Prospective juror number nine, Evona
21     Torsel, T-O-R-S-E-L.

22             Prospective juror number ten,
23     Christian Rogers, R-O-G-E-R-S.

24             Prospective juror number eleven,
25     Kathleen Cleary, C-L-E-A-R-Y.

1              Proceedings

2                   Prospective juror number twelve,

3       Frank Falabella, F-A-L-A-B-E-L-L-A.

4                   Prospective juror number thirteen,

5       Herert Lorick, L-O-R-I-C-K.

6                   Prospective juror number fourteen,

7       Joseph Kaceztow, K-A-C-E-T-O-W.

8                   Prospective juror number fifteen,

9       Anthony Grecki, G-R-E-C-K-I.

10                  Prospective juror number sixteen,

11      Jeannette Quinn, Q-U-I-N-N.

12                  Prospective juror number seventeen,

13      Thomas Keaney, K-E-A-N-E-Y.

14                  Prospective juror number eighteen,

15      Danny Johnson, J-O-H-N-S-O-N.

16                  THE COURT:   Thank you.

17                  Show that to counsel.

18                  THE CLERK:   Sure.

19                  (Complying).

20                  THE COURT:   Thank you, Mr. Avitable.

21      And thank you all.

22                  I am going to ask you first eighteen

23      people a number of questions that call for a

24      simple yes or no answer.  On the other side of

25      the rail you should listen also, you may be

```
 1                          Proceedings
 2    asked the same questions later.
 3                    As to any question, if your answer is
 4    no, you may remain silent, I will consider
 5    silence a no answer.  But if your answer is yes,
 6    please be kind to say yes out loud and raise
 7    your hand.
 8                    If you don't understand it, I will
 9    rephrase it.
10                    The defendant is Mr. Lamar Whitehead.
11    Please stand so the prospective jurors can see
12    you.
13                    Mr. Whitehead is represented by
14    Mr. William Keahon.
15                    MR. KEAHON:  Good afternoon.
16                    THE COURT:  The People are
17    represented by the District Attorney of this
18    County, Mr. Thomas Spota.
19                    Raphael Pearl and Jodi Franzese,
20    Assistant District Attorneys will be presenting
21    the People's case in this trial.
22                    MR. PEARL:  Good afternoon.
23                    THE COURT:  Members of the panel,
24    does anyone have any serious problem seeing or
25    hearing or understanding English?
```

```
 1                        Proceedings
 2              Do any of you know the defendant or
 3       any of the attorneys personally, recognize their
 4       names?
 5              Yes.  Baldassarre Rennie.
 6              PROSPECTIVE JUROR:  I know Mr. Pearl.
 7       He prosecuted a case involving my son, and I
 8       testified in front of you in this courtroom.
 9              THE COURT:  All right.  If I can see
10       you side-bar for just a moment.
11              PROSPECTIVE JUROR:  Oh, sure.
12              (Whereupon the following occurred at
13       side-bar.)
14              PROSPECTIVE JUROR:  I am sorry, I
15       couldn't see if that was Mr. Pearl.  I haven't
16       seen him in a few years.
17              THE COURT:   How is your little --
18              PROSPECTIVE JUROR:  He is wonderful.
19       I didn't know if that would automatically
20       exclude me.  I have had no contact.
21              THE COURT:  Miss Baldassarre was a
22       witness in a case before this Court which
23       Mr. Pearl had prosecuted.
24              Now the  -- having been before me
25       testifying as a witness here, the mother of a
```

Proceedings

1

2    crime victim to.

3         PROSPECTIVE JUROR:  Uh-huh.

4         THE COURT:  Mr. Pearl was the

5    prosecutor in that case.

6         Would it make you feel uncomfortable

7    as far as this was the very courtroom itself

8    where that took place?

9         PROSPECTIVE JUROR:  No, that is okay.

10        I would have approached Judge Hudson

11   or asked the question if it posed a problem for

12   me.

13        THE COURT:  Later on we are going to

14   be bringing, might not be today, the reason I am

15   saying that, if you don't feel comfortable being

16   a juror in this case, counsel I know would

17   consent to you being released at this time.

18        PROSPECTIVE JUROR:  I mean, if it

19   would have been the same type of case, I would

20   have felt very uncomfortable but time has

21   passed, I really haven't contacted.

22        THE COURT:  Then you can take your

23   seat within the potential jurors.  When we call

24   people later, we will not have time today,

25   Monday we will be calling people one at a time.

Case 2:12-cv-04946-AMD   Document 15-6   Filed 10/07/16   Page 42 of 79 PageID #: 2036

Case 2:12-cv-04946-AMD   Document 15-6   Filed 10/07/16   Page 42 of 79 PageID #: 2036


Proceedings

1 
2 just promise me, and it is actually just, it is

3 a big promise that what you have suffered

4 through, we discussed last week that it would

5 not color your judgment either for or against

6 the People or for or against Mr. Keahon's

7 client.  Do you feel comfortable giving me that

8 assurance?

9         PROSPECTIVE JUROR: Actually I felt

10 quite comfortable.  It has been two years since

11 I have been in the courtroom.  Everybody has

12 moved on.  My little guy is fine.  He is five.

13         THE COURT:  That is important.

14         Anything else you would like to

15 discuss privately as far as that goes or any

16 other yes answers?

17         PROSPECTIVE JUROR:  Oh, to the

18 questions that were --

19         THE COURT:  Yeah.  Do you have any

20 other questions?

21         PROSPECTIVE JUROR:  I told you I sat

22 on the Grand Jury.

23         THE COURT:  Okay.

24         All right.

25         MR. KEAHON:  Judge.

1                          Proceedings

2                  THE COURT:  Any follow-up questions?

3                  MR. KEAHON:  If I may.

4                  I didn't really hear everything that

5          was said up at the bench because I was kind of

6          in the back.

7                  PROSPECTIVE JUROR:  Sure.  Would you

8          like me to repeat it?

9                  MR. KEAHON:  If you don't mind, sure.

10                  PROSPECTIVE JUROR:  About, I guess --

11          well, he is five, so -- I have four children.

12          My youngest child, when he was two, was sexually

13          assaulted.  At the time Mr. Pearl was the

14          District Attorney that was assigned to the case

15          and I testified in front of Judge Hudson in this

16          particular courtroom.  About two years ago.

17                  MR. KEAHON:  And who was the

18          defendant in the case?

19                  PROSPECTIVE JUROR:  Um-- a person by

20          the name of Alfred Dayton.

21                  MR. KEAHON:  And was he a friend of

22          the family or --

23                  PROSPECTIVE JUROR:  Um -- I owned a

24          storefront at the time and he was somebody that

25          had volunteered in my store.  And apparently

```
 1                     Proceedings
 2   when I guess everything all came about, they
 3   were -- I guess another child involved, he was
 4   incarcerated.
 5              MR. KEAHON:  I am sorry, Ma'am.
 6   Thank you.
 7              THE COURT:  Mr. Pearl, any other
 8   questions?
 9              PROSPECTIVE JUROR:  So I do -- you
10   know, I was quite surprised with all the
11   scenarios that could have happened between CI,
12   Suffolk County, and the timing, I could see
13   Judge Hudson but there was a lot of people
14   standing so I really couldn't see, you know,
15   yourself or Mr. Pearl until I got up in the box.
16   And when I left here I said, of all the
17   scenarios, how would this play out, you know,
18   really, but then I remember Mr. Pearl had said
19   he was changing departments, of that particular
20   department at the time.  So, and this is a
21   different type of a case, so.
22              THE COURT:  Uh-huh.
23              MR. PEARL:  Judge, may I ask a few
24   questions?
25              THE COURT:  Yes.
```

458

Proceedings

1

2          MR. PEARL:  I don't know you, and I

3    actually had a lot of dealings --

4          PROSPECTIVE JUROR: Yes, we did.  This

5    was, uh -- very difficult, and Mr. Pearl was

6    very helpful.  Thank God.  That is the first

7    time I ever had one of my children involved and

8    hopefully would never again.

9          MR. PEARL:  And he is doing great?

10         PROSPECTIVE JUROR:  Oh, he is great.

11   He is in kindergarten, very sociable.  Has no

12   recollection as to anything.

13         And it was a very difficult time.

14         MR. PEARL:  No, I appreciate that.

15         PROSPECTIVE JUROR:  Was extremely

16   difficult.  And you were quite helpful, you

17   know.

18         MR. PEARL:  Well, thank you.

19         PROSPECTIVE JUROR:  Because it is

20   scary for people, you know, when your child --

21         MR. PEARL:  Well, it is every

22   parent's nightmare.

23         PROSPECTIVE JUROR:  When it happened,

24   and you know, it was very difficult.  And then

25   you have other forces, you have CPS.  You know,

Proceedings

there are a lot of other things and people coming at you and they really don't offer a liaison. The first time I was offered a liaison is when I came to testify in front of the Grand Jury. That was the first time anyone had offered us a liaison.

By that time, of course, you know, we needed it at that time but it was difficult and Mr. Pearl was very helpful. He is a very nice person but that is his job. This is his profession.

MR. PEARL: Do you think it would be difficult for you to sit and listen to me to make arguments and --

PROSPECTIVE JUROR: I haven't thought about you since I left.

MR. PEARL: Well, I am glad.

PROSPECTIVE JUROR: And split out of this courtroom that day.

MR. PEARL: But if I come before you and I make an argument and tell you, well, this is what an interpretation of the evidence looks like, do you think maybe since we had such a good relationship, you would have trouble

460

1                              Proceedings

2      putting that relationship aside?

3                    PROSPECTIVE JUROR:  No.  I mean, I

4      wouldn't weigh what you said any more than, you

5      know, you did your job at the time.  By trade I

6      am a registered nurse, it is a profession.  You

7      know, that is what you do for a living.  You

8      know.  I mean, I haven't-- once we left here

9      that day, we really never really spoke about it

10     ever again.  To be quite honest, we just decided

11     it was better to --

12                    MR. KEAHON:  I just have a couple of

13     questions, if I could.

14                    PROSPECTIVE JUROR:  Sure.

15                    MR. KEAHON:  Ma'am.

16                    PROSPECTIVE JUROR: Uh-huh.

17                    MR. KEAHON:  You went through a

18     horrible tragic situation with your young child.

19                    PROSPECTIVE JUROR: Yes.

20                    MR. KEAHON:  The District Attorney's

21     Office provided a liaison for you to answer

22     questions, to sit with you, to talk with you,

23     they have a room upstairs.

24                    PROSPECTIVE JUROR: Uh-huh.

25                    MR. KEAHON:  You spent time up there.

461

Proceedings

1  I am sure you were very appreciative.

2        PROSPECTIVE JUROR:  Who, Mr. Pearl or

3  the other person?  I didn't speak to the other

4  person.  I said that was the first time I was

5  offered a liaison.  I didn't take any.  Is that

6  what you mean?  That room that they had me sit

7  in.

8        MR. KEAHON:  Yes.  As I understand

9  it, the Family Crimes Bureau has certain

10  personnel that are assigned during the trial to

11  answer any questions of the victim or the

12  family.  That didn't happen?

13        PROSPECTIVE JUROR:  No, it did not.

14        MR. PEARL:  In essence, I took that

15  position.

16        PROSPECTIVE JUROR: Yeah.

17        MR. PEARL:  I was the contact.

18        MR. KEAHON:  You put your trust in

19  Mr. Pearl to do his job the way it should be

20  done?

21        PROSPECTIVE JUROR:  Yes, I did.

22        MR. KEAHON:  And you were

23  appreciative of the efforts that he made working

24  on behalf of bringing justice to your young

462

1                      Proceedings

2      child?

3                      PROSPECTIVE JUROR:  Of course.  This

4      was a pedophile who -- and when everything came

5      out, to my understanding, it was not only my

6      child, there was at least one other child

7      involved.

8                      MR. KEAHON:  Sure.

9                      PROSPECTIVE JUROR: So I think, yes,

10     justice was served.  This is a person that was

11     perpetrating crimes against small children.

12     Yes.

13                     MR. KEAHON:  How many days were you

14     out at court, Ma'am?

15                     PROSPECTIVE JUROR:  In this

16     particular court?

17                     MR. KEAHON:  Yes.

18                     PROSPECTIVE JUROR:  Only one day and

19     it was very brief, and it was very short, yes.

20                     MR. KEAHON:  Thank you.  I have

21     nothing further.

22                     THE COURT:  Can you wait outside for

23     just a moment.

24                     PROSPECTIVE JUROR:  Sure.  No

25     problem.

1                          Proceedings

2                          (Complying.)

3                          MR. KEAHON:  I am going to challenge

4        her for cause.

5                          MR. PEARL:  I wouldn't have an

6        objection.  Too close of a relationship.  I was

7        basically the entire case, the liaison.

8                          THE COURT:  Off the record.

9                          (Whereupon there was a discussion off

10       the record.)

11                         THE COURT:  All right.  Lets bring

12       her back in.

13                         (Whereupon prospective juror

14       entering.)

15                         THE COURT:  Miss Rennie, it is no

16       reflection.

17                         PROSPECTIVE JUROR: No, that is fine.

18       I expected to be dismissed.

19                         THE COURT:  You will be discharged

20       with the thanks of the Court.

21                         PROSPECTIVE JUROR: I expected it.

22                         THE COURT:  Thank you for your

23       patriotism.

24                         PROSPECTIVE JUROR: I didn't think for

25       one moment that you were being -- that I was --

464

1          Proceedings

2                    THE COURT:  It is a matter of not

3     wanting to risk memories coming back.

4                    PROSPECTIVE JUROR: That is fine.

5                    THE COURT:  It is just something --

6                    PROSPECTIVE JUROR:  Yeah.  I come out

7     and do work when they tell me to.

8                    MR. PEARL:  Thank you.  Glad to hear

9     about your son.

10                    (Whereupon prospective juror

11     leaving.)

12                    (Whereupon prospective juror

13     entering.)

14                    THE COURT:  Hello, there,

15     Miss Hernandez, you have been very patient.

16     Have a seat.

17                    PROSPECTIVE JUROR:  Thank you.

18                    (Complying.)

19                    THE COURT:  This is Miss Hernandez,

20     juror number eight.

21                    Miss Hernandez, I always ask the last

22     question first, which is, based upon everything

23     you have heard so far, do you feel comfortable

24     promising both sides you can be fair and

25     impartial to the defendant and the People in

Proceedings

1
2      this case?

3                    PROSPECTIVE JUROR:  Absolutely.

4                    THE COURT:  You had a yes answer to

5      one or more of my questions or anything you

6      wanted to discuss privately?

7                    PROSPECTIVE JUROR:  My brother was a

8      victim of an identity theft.  That is all I

9      know.  I don't know the details.

10                   THE COURT:  You don't know any

11     details as far as was anyone apprehended?

12                   PROSPECTIVE JUROR:  I have no idea.

13     My mom told me.  Sorry.

14                   THE COURT:  Do you feel that you

15     would be able to put that out of your mind and

16     judge this case only on the evidence you hear in

17     this court?

18                   PROSPECTIVE JUROR:  Absolutely.

19                   THE COURT:  So in other words, so

20     that Mr. Whitehead doesn't have to worry about

21     when you are in this jury room deliberating with

22     the other jurors, that this can pop into your

23     head?

24                   PROSPECTIVE JUROR:  Absolutely.

25                   THE COURT:  And the other jurors can

Case 2:12-cv-04946-AMD   Document 15-6   Filed 10/07/16   Page 53 of 79 PageID #: 2047

1           Proceedings

2       be held to this proof and not anything that

3       happened to any family member?

4               PROSPECTIVE JUROR: Absolutely.

5               THE COURT:  Anything else you wanted

6       to discuss privately?

7               PROSPECTIVE JUROR:  Um-- I don't

8       know.

9               THE COURT:  It is the kind of thing

10      it is not like once you go out, that is the last

11      opportunity.  If it pops into your head, just

12      raise your hand and we can always come back

13      here.

14              PROSPECTIVE JUROR: Okay.

15              THE COURT:  Anything else?

16              PROSPECTIVE JUROR: No.

17              THE COURT:  If there is any follow-up

18      questions on the matter of Miss Hernandez'

19      brother, I prefer them remain in this room

20      rather than the courtroom, family being alleged

21      of a crime.

22              MR. PEARL:  Was your brother a

23      Suffolk County resident at the time of the

24      identity theft, was it?

25              PROSPECTIVE JUROR:  Suffolk County,

1                    Proceedings

2    Massachusetts, not Suffolk County, New York.

3                THE COURT:  The other Suffolk County.

4                PROSPECTIVE JUROR:  Typically, yes

5    but no.

6                MR. PEARL:  Have you ever spoken to

7    him about that?

8                PROSPECTIVE JUROR:  No.  His

9    financials are private.  He doesn't discuss them

10   with anybody.

11               THE COURT:  Mr. Keahon.

12               MR. KEAHON:  Yes.

13               How are you, Miss Hernandez?

14               PROSPECTIVE JUROR:  Good.  How are

15   you?

16               MR. KEAHON:  I am fine.  My name is

17   Bill Keahon.

18               PROSPECTIVE JUROR:  Nice to meet you

19   too.

20               MR. KEAHON:  When did you first learn

21   your brother was a victim of identity theft?

22               PROSPECTIVE JUROR:  Five years ago.

23               MR. KEAHON:  And no information since

24   that time?

25               PROSPECTIVE JUROR: Just that he was

```
 1                    Proceedings
 2      struck again two years later.
 3               MR. KEAHON:  The same person?
 4               PROSPECTIVE JUROR:  I don't know.
 5      Just his identity.  It happened again but that
 6      is all I know.  They didn't want to --
 7               MR. KEAHON:  Do you think -- we are
 8      asking you to sit on a case involving multiple
 9      counts of identity theft.  Would that impact you
10      in any way, what occurred to your brother?
11               PROSPECTIVE JUROR:  No because it
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

469

Proceedings

1

2      has nothing to do with this.  Completely --

3                    MR. KEAHON:  Would you sit there

4      thinking, well, maybe Mr. Whitehead did it to my

5      brother?

6                    PROSPECTIVE JUROR: No.

7                    MR. KEAHON:  You don't think

8      Mr. Whitehead did that?

9                    PROSPECTIVE JUROR:  No.

10                   MR. KEAHON:  Thank you.

11                   THE COURT:  Thank you.

12                   You can take your seat with the other

13     potential jurors.

14                   Like I said, if you think of

15     anything, just raise your hand.

16                   PROSPECTIVE JUROR:  Thank you.

17                   THE COURT:  Thank you very much.

18                   (Whereupon prospective juror

19     leaving.)

20                   (Whereupon prospective juror

21     entering.)

22                   THE COURT:  Miss Torsel, you have

23     been very patient.  Am I pronouncing your name

24     correctly?

25                   PROSPECTIVE JUROR:  Yes.

470

1            Proceedings

2        THE COURT:  Have a seat.

3        PROSPECTIVE JUROR:  (Complying.)

4        THE COURT:  Miss Torsel, I always ask

5   the last question first, which is, based upon

6   what you heard so far, would you be able to

7   promise both sides that you could be a fair and

8   impartial juror for me in this case?

9            PROSPECTIVE JUROR: Well, that is my

10  problem.  When you mentioned that it was

11  identity theft, then there was this movie I saw

12  on Lifetime and it was a true story, and it was

13  about the identity theft, and that -- just what

14  comes to my mind, everything.

15        THE COURT:  That would effect your

16  judgment?

17        PROSPECTIVE JUROR: I think so.

18        THE COURT:  Okay.

19        Any questions or consent?

20        MR. KEAHON:  I consent.

21        MR. PEARL:  I consent.

22        THE COURT:  All right.  I appreciate

23  your candor, Miss Torsel, you will be discharged

24  from this case.  Thank you very much for

25  bringing it to the Court's attention.

471

Proceedings

PROSPECTIVE JUROR: Thank you.  And  I am sorry.

THE COURT:  No no.  You will receive full credit as if you sat on this case.  Thank you.

(Whereupon prospective juror leaving.)

(Whereupon prospective juror entering.)

THE COURT:  Mr. Falabella, am I pronouncing it correctly?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Please have a seat.

PROSPECTIVE JUROR:  (Complying.)

THE COURT:  Mr. Falabella, I always ask the ultimate question before any specific questions, which is, based upon what you heard so far, a brief description of the case, would you feel comfortable promising both sides you would be fair and impartial for me on this case?

PROSPECTIVE JUROR: I don't know if I can focus on it because Friday I was okay, I had my business, I have a business I run myself and I had it sold.  It was supposed to be done the

1                          Proceedings

2      middle of this month.  I found out it was going

3      to be next month.  And also -- it is a cell

4      phone repair business.  I am not sure but I

5      think the defendant was in my store at one time

6      to have his cell phone fixed.  He just looks --

7      you know, today I looked at him, I think he

8      might have been in my store.

9                  THE COURT:  And it also sounds like

10     you will be preoccupied with your own business

11     right now.

12                 PROSPECTIVE JUROR:  Well, it wasn't

13     the case, I was selling it.  I wouldn't be

14     preoccupied but now it is going to be another

15     month.

16                 THE COURT:  Any follow-up questions?

17                 MR. KEAHON:  No.

18                 THE COURT:  Consent?

19                 MR. PEARL:  Yes, Your Honor.

20                 MR. KEAHON:  Yes.

21                 THE COURT:  You are going to be

22     discharged with the thanks of the Court.  I

23     appreciate your sacrifice so far and thank you.

24     Sorry to take up your time.  Good luck with your

25     business.

Proceedings

1

2          PROSPECTIVE JUROR: Okay.

3              (Whereupon prospective juror

4      leaving.)

5              (Whereupon prospective juror

6      entering.)

7          THE COURT:  Hello there.

8          PROSPECTIVE JUROR:  Good afternoon.

9          THE COURT:  Good afternoon, sir.

10         PROSPECTIVE JUROR:  Anthony Grecki.

11         THE COURT:  Mr. Grecki, please have a

12     seat.  You were so patient these past few days.

13         PROSPECTIVE JUROR:  No problem.

14         THE COURT:  I always ask the ultimate

15     question first, which is, based upon what you

16     have heard, my brief description of the case,

17     would you feel comfortable promising both sides

18     you will be fair and impartial in the case?

19         PROSPECTIVE JUROR:  Yes.

20         THE COURT:  You had one or more

21     questions you wished to discuss privately?

22         PROSPECTIVE JUROR: I had two things

23     against me.  One when I was seventeen, an

24     assault charge that was dropped to an ACOD, that

25     was twenty-seven years ago.  And fifteen years

1                          Proceedings

2      ago I had a DWI, that was felony.

3                     THE COURT:  Do you think you were

4      treated fairly by the justice system?

5                     PROSPECTIVE JUROR: Yes.

6                     THE COURT:  Did it give you any

7      negative feelings towards the police or District

8      Attorney's Office or defense attorneys, that you

9      feel might color your judgment as far as either

10     reviewing of the People's case or as you see

11     Mr. Keahon and his client?

12                    PROSPECTIVE JUROR:  No.

13                    THE COURT:  Let me ask, was it

14     resolved by trial or by a mutually agreeable

15     plea?

16                    PROSPECTIVE JUROR: For?

17                    THE COURT:  For the DWI.

18                    PROSPECTIVE JUROR:  The DWI, it was

19     mutual, plea.

20                    THE COURT:  Okay.

21                    Do you have difficulty -- we are

22     exercising a trial at this point in time, you

23     can assure the Court you will not hold that

24     against Mr. Keahon's client?

25                    PROSPECTIVE JUROR: Yes.

475

1          Proceedings

2          THE COURT:  Anything else you had a

3    yes answer t?

4          PROSPECTIVE JUROR:  No.

5          THE COURT:  All right.

6          Any follow-up questions I would like

7    it to remain in this room.  Beginning with the

8    People.

9          MR. PEARL:  Do you have any

10   questions?

11         MS. FRANZESE:  No.

12         MR. PEARL:  Thank you.

13         THE COURT:  Mr. Keahon, any follow-up

14   questions?

15         MR. KEAHON:  No, thanks.

16         THE COURT:  Then Mr. Grecki, you can

17   take your seat with the potential jurors.  Thank

18   you very much again.

19         (Whereupon prospective juror

20   leaving.)

21         THE COURT:  Off the record.

22         (Whereupon there was a discussion off

23   the record.)

24         COURT OFFICER:  That is it for now.

25         Do you want juror number two?

476

1              Proceedings

2              THE COURT:  We want juror number two,

3    please.

4              (Whereupon prospective juror

5    entering.)

6              THE COURT:  Miss Williams, sorry to

7    bring you back again.

8              Please have a seat.

9              PROSPECTIVE JUROR:  Thank you.

10             (Complying.)

11             THE COURT:  We just had a follow-up

12   question outside of the presence of the jury

13   regarding the detective who is friends with your

14   family.  That is detective --

15             PROSPECTIVE JUROR:  Tom Gabriele.

16             THE COURT:  Tom Gabriele.

17             THE COURT:  Again, how is he friends

18   with your father or uncle?

19             PROSPECTIVE JUROR:  He um -- he is

20   friends with my mom.  We met at church and so we

21   see each other regularly.  I am aware of the

22   work that he does with identity theft and I do

23   respect him a lot as a person.  And he has given

24   several talks which he does in depth for

25   research.  So I would have to say that his-- I

1                                Proceedings

2    definitely think he is very credible.

3                    THE COURT:  Okay.  And that is the

4    question.  Is that everyone who is charged with

5    a crime has the right to an even playing field.

6                    PROSPECTIVE JUROR:  Sure.

7                    THE COURT:  And every witness who

8    comes in has a blank canvas.

9                    Do you feel that because you know

10   Detective Gabriele before today through your

11   family, when you said you think he is very

12   credible, that you have given him a bit of a

13   home -- like a home field advantage so to speak,

14   when it comes to that?

15                   PROSPECTIVE JUROR:  Perhaps but I

16   would think everyone in his situation would be

17   just as credible because of the line of work

18   that they do.

19                   THE COURT:  You heard my instructions

20   about police officer testimony, that a police

21   officer takes the same oath as another witness

22   and just by virtue of their occupation they're

23   not entitled to more or less credibility than

24   anyone else.

25                   In other words, you have to look at

478

1                        Proceedings

2     them as a witness, ask them the same questions,

3     analyze the witness's testimony and then make

4     that decision.

5               Could you do that or would you tend

6     to credit a police officer's testimony more?

7               PROSPECTIVE JUROR: I would be able to

8     do that but I have to say not only him do I know

9     but my uncle was retired from the NYPD but then

10    again, my grandfather was a Supreme Court

11    Justice and he always said you give anyone

12    equal --

13               THE COURT:  Who is your grandfather?

14               PROSPECTIVE JUROR:  He is deceased

15    now but he was in Jamaica.

16               THE COURT:  May I ask?

17               PROSPECTIVE JUROR:  William Goshio.

18               THE COURT:  Was he on the Appellate

19    Division?

20               PROSPECTIVE JUROR:  I am not exactly

21    sure.

22               THE COURT:  I digress my apologies.

23               Everyone, follow-up questions.

24    Beginning with the People.

25               MR. PEARL:  No, thank you.

1                           Proceedings

2                       MR. KEAHON:  Yes.

3                   How are you?

4                   PROSPECTIVE JUROR:  Good.

5                       MR. KEAHON:  My name is Bill Keahon.

6           Nice to meet you.

7                       PROSPECTIVE JUROR:  Nice to meet you.

8                       MR. KEAHON:  Detective Gabriele is a

9           friend of your mothers?

10                      PROSPECTIVE JUROR: Yes.

11                      MR. KEAHON:  He attends church with

12          you?

13                      PROSPECTIVE JUROR:  Yes.

14                      MR. KEAHON:  He speaks at church?

15                      PROSPECTIVE JUROR:  He does.

16                      MR. KEAHON:  You -- how long have you

17          known him?

18                      PROSPECTIVE JUROR:  For, I would say

19          probably around five years.

20                      MR. KEAHON:  And you respect him a

21          great deal?

22                      PROSPECTIVE JUROR: I do.

23                      MR. KEAHON:  And you respect anyone

24          else that holds his position?

25                      PROSPECTIVE JUROR:  I do.

1                          Proceedings

2                          MR. KEAHON:  You give him a lot of

3      credibility.

4                          Do you think that he could take the

5      witness stand, swear to tell the truth, and lie?

6                          PROSPECTIVE JUROR:  No.

7                          MR. KEAHON:  Thank you very much.

8                          THE COURT:  Miss Williams, if you can

9      wait outside for just a moment.

10                         PROSPECTIVE JUROR: Sure.  Thank you.

11                         THE COURT:  We will call you right

12     back in.

13                         PROSPECTIVE JUROR:  (Complying.)

14                         MR. KEAHON:  I would challenge for

15     cause.

16                         MR. PEARL:  No objection.

17                         THE COURT:  Okay.  That is consent.

18                         Can we call her back in.

19                         (Whereupon prospective juror

20     entering.)

21                         THE COURT:  Hello, Miss Williams, you

22     are going to be discharged with the thanks of

23     the Court.  I think counsel wishing you too.

24                         Thank you for your time.

25                         PROSPECTIVE JUROR: Thank you.

Proceedings

1

2          MR. KEAHON:  Don't tell anybody but I

3  happen to agree with you about Detective

4  Gabriele.

5          PROSPECTIVE JUROR: Thank you.  Bye

6  bye.

7          MR. KEAHON:  That was off the record.

8          THE COURT:  All right.  We have to

9  fill some seats.

10          THE CLERK:  Prospective juror number

11  one is Judith Miller.

12          Bring her right back here?

13          THE COURT:  How many do we have left,

14  about?

15          THE CLERK:  Nineteen.

16          MR. KEAHON:  We got plenty.

17          THE CLERK:  No answer?

18          COURT OFFICER:  No answer.

19          THE CLERK:  No appearance.

20          COURT OFFICER:  Unless she went to

21  the bathroom.

22          THE CLERK:  Patricia Austin.

23          Prospective juror one, Patricia

24  Austin, A-U-S-T-I-N.

25          (Whereupon prospective juror

1                              Proceedings

2          entering.)

3                      THE COURT:  Hello, Miss Austin.

4                      PROSPECTIVE JUROR:  Hi, how are you?

5                      THE COURT:  Please have a seat.

6                      PROSPECTIVE JUROR: (Complying.)

7                      THE COURT:  Miss Austin, the reason

8      that we detoured you on your way out to the,

9      you're taking your seat with the other potential

10     jurors is because you heard the description of

11     the case.  You also heard some of the questions.

12                     PROSPECTIVE JUROR: Right.

13                     THE COURT:  Before I give you the

14     shorthand refresher questions, I will cut to the

15     ultimate one, based on what you heard so far as

16     far as a thumbnail sketch of this case, you

17     think you could promise me you would be fair and

18     impartial both to the People and defendant in

19     this case?

20                     PROSPECTIVE JUROR:  I would think so.

21                     THE COURT:  Do you feel comfortable

22     giving me your word as to that?

23                     PROSPECTIVE JUROR: Sure.

24                     THE COURT:  We will go over the

25     refresher questions which are a little shorter.

483

1
Proceedings

By now you are a veteran of the jury selection
process.

Do you recognize any of the names
that I had mentioned?

PROSPECTIVE JUROR: No, I didn't.

THE COURT:  Do you recognize counsel
for the defense or People or Mr. Whitehead?

PROSPECTIVE JUROR:  No, I do not.

THE COURT:  Have you or anyone close
to you had a conflict with the law aside from a
minor vehicle and traffic infraction?

PROSPECTIVE JUROR: My son had a
DWI.

THE COURT:  About how long ago was
this?

PROSPECTIVE JUROR: About four years
ago.

THE COURT:  Do you feel he was
treated fairly by the system?

PROSPECTIVE JUROR: Not the police.

THE COURT:  Do you feel that that
gives you negative feelings, as a result, if a
police officer takes the stand, that you would
give their testimony more or less weight by the

```
 1                       Proceedings
 2      nature of their occupation?
 3                   PROSPECTIVE JUROR: No.
 4                   THE COURT:  You heard what I said as
 5      far as police officer testimony?
 6                   PROSPECTIVE JUROR: Yes.
 7                   THE COURT:  Would you be able to
 8      follow that instruction?
 9                   PROSPECTIVE JUROR: I think so.
10                   THE COURT:  Have you heard about this
11      case at all?
12                   PROSPECTIVE JUROR: No.
13                   THE COURT:  You or anyone close to
14      you work in law enforcement now or in the past?
15                   PROSPECTIVE JUROR: Yes.  My
16      brother's a retired New York City Detective and
17      my nephew.
18                   MR. KEAHON:  Was that your brother,
19      Ma'am?
20                   PROSPECTIVE JUROR: Yes.  And
21      nephew's a New York City Detective.  And my
22      other nephew's a Federal Judgeship.  I am very
23      impressed.
24                   THE COURT:  Who is it?
25                   PROSPECTIVE JUROR: His name is
```

1                          Proceedings

2      William Powell.   He is in West Virginia but he

3      is up for a Federal Judgeship.

4                     THE COURT:  Good luck to you.

5                     PROSPECTIVE JUROR: Very proud of him.

6                     THE COURT:  You should be.

7                     And that answer -- well, you or

8      someone close to you work in a law office?  I

9      take it Judge Powell.

10                    PROSPECTIVE JUROR:  Yes.  Yes.

11                    THE COURT:  You or anyone close to

12     you been the victim of a crime, in particular

13     identity theft?

14                    PROSPECTIVE JUROR: No.

15                    THE COURT:  You or anyone close to

16     you, other than what happened with your son,

17     accused of a crime?

18                    PROSPECTIVE JUROR: No.

19                    THE COURT:  Do you have any prior

20     Grand Jury or Trial Jury experience?

21                    PROSPECTIVE JUROR: I was on a civil

22     case about eight years ago.

23                    THE COURT:  Without telling me the

24     ultimate verdict that you did have, would be --

25     did you reach a verdict or was it settled?

486

1

Proceedings

2          PROSPECTIVE JUROR:  No.  We reached a

3     verdict.

4          THE COURT:  Were you in the Armed

5     Services, by any chance?

6          PROSPECTIVE JUROR: No.

7          THE COURT:  Do you feel you have any

8     sympathies, biases that would prevent you from

9     being a fair or impartial juror in this case,

10    otherwise unable to keep an open mind?

11         PROSPECTIVE JUROR:  No.

12         THE COURT:  Anything you would like

13    to discuss privately?

14         PROSPECTIVE JUROR: That is about it.

15         THE COURT:  Any follow-up questions

16    with what happened to Miss Austin's son a few

17    years ago I would like to remain in this room.

18    I will begin with the People.

19         MR. PEARL:  What was unfair about the

20    police?

21         PROSPECTIVE JUROR: I felt -- he was

22    drunk, he was wrong and he drove into a pole.

23    And when they asked him if he needed to see a

24    medical, he said, obnoxious as he was, he said

25    no.  And then they threw him in jail without

1                    Proceedings
2    really looking too close.  And when he wound up
3    in front of the Judge the next day, he had a
4    broken nose and seventeen stitches in his head.
5          So I feel they could have looked a
6    little closer.  He didn't really know whether he
7    needed a doctor but he needed a doctor.  Other
8    than that, I don't think he was wrongfully
9    accused or punished.  I just thought they could
10   have been a little bit more --
11                    MR. PEARL:  Attentive to his medical
12   needs?
13                    PROSPECTIVE JUROR:  Yes.
14                    Other than that --
15                    MR. PEARL:  How was that case
16   resolved?
17                    PROSPECTIVE JUROR:  He was put on
18   Probation for three years and had his license
19   pulled for three years.
20                    MR. PEARL:  How old was he when he
21   committed that?
22                    PROSPECTIVE JUROR:  Twenty-three.
23                    MR. PEARL:  Do you think that the
24   District Attorney's Office handled it
25   inappropriate, too hard a position?

488

Proceedings

1

2          PROSPECTIVE JUROR:  No, not at all.

3   I don't think they -- like I said, the only

4   problem I had, I wished they just checked to

5   make sure that he was okay.  That that is about

6   it.  No, the way it was handled was fine.

7          MR. PEARL:  Thank you.

8          THE COURT:  Mr. Keahon.

9          MR. KEAHON:  I have nothing.  Thank

10  you.

11          THE COURT:  Miss Austin, you can take

12  your seat with the other potential jurors.

13  Thank you so much.

14          PROSPECTIVE JUROR:  Thank you.

15          THE COURT:  You're welcome.

16          PROSPECTIVE JUROR:  (Complying.)

17          THE CLERK:  Prospective juror number

18  two, James Kaufold, K-A-U-F-O-L-D.

19          MR. KEAHON:  K-A-U-F --

20          THE CLERK:  O-L-D.

21          MR. PEARL:  What was the first name?

22          THE CLERK:  James.

23          (Whereupon prospective juror

24  entering.)

25          THE COURT:  Hello, Mr. Kaufold.  Am I

1          Proceedings

2    pronouncing your name correctly?

3          PROSPECTIVE JUROR:  Yeah.  Kaufold.

4          THE COURT:  Mr. Kaufold, before you

5    take a seat with the potential jurors, I have a

6    detour here so I can ask you those questions,

7    bring you up to speed but I always ask you the

8    ultimate question first.

9          Based upon what you have heard, do

10   you feel comfortable promising both sides you

11   can be a fair and impartial juror for me in this

12   case?

13         PROSPECTIVE JUROR:  Yes.

14         THE COURT:  All right.

15         Now since you are a jury veteran,

16   right now you have been able to hear the other

17   questions posed to the other jurors.  I can give

18   you the questions in a slightly more abbreviated

19   form.

20         Are you familiar with, recognize any

21   of the names that I mentioned before or

22   recognize the names of counsel, either for the

23   People or defense?

24         PROSPECTIVE JUROR: No.

25         THE COURT:  Recognize Mr. Whitehead?

1                        Proceedings

2            PROSPECTIVE JUROR: No.

3            THE COURT:  Have you or anyone close

4     to you had a conflict with the law aside from a

5     Vehicle and Traffic Law infraction?

6            PROSPECTIVE JUROR:  No.

7            THE COURT:  Have you or anyone close

8     to you been accused of a crime or been the

9     victim of a crime, in particular, identity theft

10    or allegations involving the theft of a person's

11    identity?

12            PROSPECTIVE JUROR: No.

13            THE COURT:  All right.

14            Have you been in the Armed Forces?

15            PROSPECTIVE JUROR: No.

16            THE COURT:  I apologize if I asked

17    you this before.  Have you heard about the case

18    before?

19            PROSPECTIVE JUROR: No.

20            THE COURT:  Anyone close to you work

21    in law enforcement now or in the past?

22            PROSPECTIVE JUROR:  Yes.  My

23    brother's a police officer.

24            THE COURT:  Okay.  You heard my

25    admonition or instructions on the law regarding

1          Proceedings

2     police officer testimony, that they take the

3     same oath as other witnesses and by virtue of

4     their occupation entitled to no more or less

5     credibility than any other witness.  You are to

6     observe them and judge their testimony as you

7     would any other witness.

8               Would you be able to follow my

9     instruction?

10               PROSPECTIVE JUROR: Yes.

11               THE COURT:  You or anyone close to

12    you work in a law office now or in the past?

13               PROSPECTIVE JUROR:  My cousin's a

14    lawyer.

15               THE COURT:  Okay.

16               You are close with your cousin?

17               PROSPECTIVE JUROR: No, not really.  I

18    know he is a lawyer, I am not sure exactly what

19    kind of lawyer.

20               THE COURT:  Any prior Grand Jury or

21    Trial Jury experience?

22               PROSPECTIVE JUROR: No.

23               THE COURT:  Do you feel that you have

24    any sympathies or biases based on prior

25    experience that would prevent you from being a

492

1                           Proceedings

2          fair and impartial juror, otherwise unable to

3          keep an open mind?

4                    PROSPECTIVE JUROR: No.

5                    THE COURT:  Is there anything you

6          would like to discuss privately?

7                    PROSPECTIVE JUROR:  No.

8                    THE COURT:  Then you can take your

9          seat with the other prospective jurors.

10                   MR. KEAHON:  I have a question.

11                   Your brother's with the police force

12         where?

13                   PROSPECTIVE JUROR:  Suffolk County,

14         4th Precinct.

15                   MR. KEAHON:  I am sorry?

16                   THE COURT:  The 4th Precinct.

17                   MR. KEAHON:  I do have some questions

18         then.

19                   THE COURT:  Do you mind discussing

20         them in open court or would you like to discuss

21         them here?

22                   PROSPECTIVE JUROR: I can do it now.

23                   THE COURT:  Okay.  Feel free.

24                   MR. KEAHON:  You have heard a list of

25         detective names and police officers, James, that