ORIGINAL          1

COUNTY COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK : PART VII
----------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK      :
                                         :     COURT CASE NO.:
        -against-                        :     539-07
                                         :
LAMAR WHITEHEAD,                         :
                    Defendant.           :
----------------------------------------X

                        June 30, 2008
                        Riverhead, New York


            B E F O R E:  HON. JAMES HUDSON,
                          COUNTY COURT JUDGE


MINUTES OF SENTENCING


A P P E A R A N C E S:

                HON. THOMAS J. SPOTA, III, ESQ.
                District Attorney of Suffolk County
                For the People
                200 Center Drive
                Riverhead, New York  11901

                BY:  RAPHAEL PEARL, ESQ.,
                     Assistant District Attorney


                WILLIAM KEAHON, ESQ.,
                Attorney For the Defendant

                                        FILED
                                        APR 29 2009
                                        CLERK OF SUFFOLK COUNTY
R E P O R T E D   B Y:

                LINDA DUTRA,
                SENIOR COURT REPORTER

1

2          THE CLERK:  Calendar number 21,

3    Lamar Whitehead.

4          MR. KEAHON:  William Keahon for the

5    Defendant.

6          MR. PEARL:  Raphael Pearl for the

7    People.

8          Judge, before we --I have two

9    applications with O.P.s and judgements.

10          (Whereupon the Defendant was

11    incarcerated, and produced before the

12    Court at this time.)

13          THE COURT:  Is your client ready

14    for sentence?

15          MR. KEAHON:  Yes, Judge.

16          THE COURT:  Sorry to have kept you

17    waiting.

18          MR. KEAHON:  I have a motion to

19    make.  I understand that Mr. Pearl has

20    some housekeeping matters he wanted to

21    address.

22          THE COURT:  Thank you.

23          The People have an application

24    prior to sentence?

25          MR. PEARL:  Two applications, your

1
2      Honor.
3              Initially, I have an application
4      for a stay away Order of Protection to be
5      issued.  One in favor of Anita Bryant, and
6      one in favor of Georgia Fortune. I'm doing
7      this pursuant to CPL 530.13.
8              Initially, you heard from Ms.
9      Fortune I believe at a hearing or trial
10     where she established fact force to Court
11     to find good cause to issue a Temporary
12     Order of Protection.  We've spoken to her
13     since the conviction.  She has continued
14     to indicate she has fear from this
15     Defendant.  She testified at trial now.
16              And based upon the domestic
17     situation they had, she's asking for a
18     Stay Away Order of Protection.
19              Additonally, Ms. Bryant-- the Court
20     found good cause to the issue the
21     Temporary Order of Protection for the
22     Co-Defendant awaiting sentence before your
23     Honor in this case. She has indicated that
24     she would like a Permanent Order of
25     Protection.

1

2      She still has a fear based upon her

3      testifying against this Defendant at

4      trial.  And we ask for --the Order of

5      Protection be issued, as well, pursuant to

6      530.13.  I believe it's subdivision four.

7          MR. KEAHON:  To save some time,

8      your Honor, my client is prepared to

9      consent.  And I would ask for a hearing on

10     these requests, but my client indicated to

11     me that he has no objection.  He would

12     consent.

13         THE COURT:  Thank you.

14         MR. PEARL:  And, Judge, I do have a

15     second application when the Court is

16     ready.

17         THE COURT:  Thank you.  I'll hear

18     you.

19         MR. PEARL:  Thank you, your Honor.

20         Pursuant to CPL 420.10, your Honor,

21     the People have submitted to the Court two

22     restitution judgement orders we're asking

23     the Court to issue.

24         This Defendant was convicted on

25     Counts Eleven, and Twelve, Thirteen, and

1
2      Fourteen on April 1, 2008.  Counts Eleven
3      and Twelve concern a BMW involved.  Which
4      was Sweeney and Capital One Auto Finance.
5      Fifty five thousand dollars.  Testimony at
6      trial, that was actually a funded loan.
7      It went through.  As well as Counts Twelve
8      and Thirteen, was Woyciech Wachnik,
9      through E Loan Corporation; financed
10     $64,000.00.  I believe that was
11     established at trial.
12             Based on the fact that the jury
13     found the Defendant guilty of those counts
14     beyond a reasonable doubt, I'd ask that
15     restitution judgement orders be issued
16     pursuant to C.P.L. Section 420.10, to the
17     appropriate financial institutions.
18             MR. KEAHON:  I'd oppose those being
19     granted, and ask for a hearing.
20             THE COURT:  If I could see Counsel
21     side-bar for a moment?
22                 (Whereupon an off-the-record
23     discussion was held between the Court, the
24     Assistant District Attorney, and the
25     Defense Attorney.)

1
2          THE COURT:  Based upon review of
3    applicable statute of Criminal Procedure
4    Law Section 420.10, it does not appear to
5    mandate a hearing.  And instead, based
6    upon the proof adduced at trial, I find
7    that the question of the restitution
8    judgement order has been satisfactorily
9    established.
10          The application for a hearing on
11   the same, Mr. Keahon, then will be denied.
12   Your exception will be noted.
13          The Court will issue two
14   restitution judgement orders in the amount
15   of $64,000.00 to E Loan Corporation, and
16   $55,000.00 to Capital One Auto Finance.
17   Once again, based upon what I felt to be
18   unequivocal proof adduced before this
19   Court at trial.
20          MR. KEAHON:  Respectfully, I do
21   take exception.
22          THE COURT:  That is your right.
23          MR. PEARL:  Thank you, your Honor.
24          THE COURT:  People's application
25   --I believe you indicated you had an

1

2    application before the Court?

3         MR. KEAHON:  Yes, Judge.

4         I reserved my right at the end of

5    the trial, and after the verdict.  And

6    now, I'm making a motion for the Court to

7    dismiss all charges presently pending

8    against my client; as it's my belief

9    having been the attorney during the entire

10   presentation of the case, that there's

11   been a complete failure of the People to

12   prove their case beyond a reasonable doubt

13   as to each of the charges, and as to each

14   of the elements contained therein of each

15   of the charges.

16        I base that not only on the record,

17   but more specifically, I base it on

18   several things I'd like to comment on now

19   if I may, Judge?

20        THE COURT:  Yes.

21        I'd like to hear you.

22        MR. KEAHON:  The crux of the proof

23   of the People's case was two-fold.  That a

24   computer found in my client's home that

25   was used to store and transfer identity

theft information.

This identifying information was stolen, and used from September '04 to January '05.

Unfortunately for the People, the proof in this case, was that the computer in question -- that is the one located at my client's home -- by the People's own proof, didn't get to the United States until January '05.  And wasn't sold in a retail store 'til approximately March '05.

Secondly, the Prosecution's witness Valorie Rodriguez -- who worked at Baron Honda September '04 to December '04, testified that she never gave information, or made available information to my client 'til after January '05.

It's interesting that she never worked at Baron Honda in January '05.  Her last day was mid December of '04.

In support of my position, I would remind the Court of Gilda Tricarico's testimony -- who was an executive employee at Baron Honda.  And she testified that

9

1
2      Valorie Rodriguez never had access to
3      dealer tracking programs, and a password
4      contained therein.
5              Additionally, we know that a
6      computer expert at trial for the
7      Prosecution, in his report to the District
8      Attorney's Office, indicated that he
9      examined a Sony computer, not a Gateway
10     computer.  That is a Gateway computer
11     taken from my client's home.
12             Additonally, your Honor, the Court
13     denied all of my requests to make motions
14     concerning the search warrant at my
15     client's house, as well as the vehicle
16     that my client was stopped in.
17             None of the other prior attorneys
18     had made such a motion.
19             I asked the Court when I came onto
20     the case, permission to do that.  The
21     Court denied me that opportunity.
22             We know within the record, there
23     are numerous Brady violations.  The record
24     is clear on that.
25             We know that there are inconsistent

1

2      verdicts as to 8 counts involving four

3      individuals that allege Identity Theft on

4      a specific date with a specific person.

5           It's interesting that the jury

6      returned on four of those counts guilty,

7      and four not guilty.  It's totally

8      inconsistent.

9           I'd like to address myself to the

10      Probation Report, if I may?

11           THE COURT:  Yes.  Certainly.

12           MR. KEAHON:  On page two of the

13      Probation Report; where it talks about

14      education and schooling, it fails to

15      mention my client had three years college

16      at both Shore University and Eastern New

17      Mexico University.

18           I ask that the be included.

19           THE COURT:  Do the People wish to

20      be heard?

21           We will go point by point.

22           MR. PEARL:  No objection, your

23      Honor.

24           THE COURT:  If I could have the

25      institutions again?

MR. KEAHON:  Yes.

Three years college between Shaw University in North Carolina, and Eastern New Mexico UNIVERSITY.

MR. PEARL:  I believe that was somewhat mentioned in the body of the PSI.

THE COURT:  It should also be mentioned there.

And if Counsel has no objection, we will write in, and insert at this time.

Thank you.  Please continue.

MR. KEAHON:  On the third page where it talks about my client's legal history, the third case with a date of 3/7/06, in the last column over to the right, it indicates on 10/17/06 he was found guilty.  On 11/2/06; the return date, he paid $200.00 bond and absconded.

He never absconded, anyway.

MR. PEARL:  Judge, I would consent to having that pay $200.00 bond and absconded removed after New Mexico, because that's the case that he paid $200.00 bond and absconded to New Mexico.

1

2          THE COURT:  Mr. Keahon?

3          MR. KEAHON:  I'll accept his

4   agreement.  I'll accept his agreement to

5   take it out of where it has been put in by

6   the Probation Department.  But I will not

7   agree to put it in another location.

8          MR. PEARL:  Judge?

9          THE COURT:  Do the People wish to

10  be heard?

11         MR. PEARL:  Judge, we had this

12  during the --before Judge Pits, I believe,

13  during --for the bail hearing.  And we've

14  spoken with New Mexico authorities

15  personally, Ms. Franzese and myself.

16         They indicated that-- it says in

17  the PSI -- I believe it's just ministerial

18  error, where she didn't attach it to one

19  below it.  Instead, the one above it.

20         But we're told by the Corrections

21  in New Mexico, it was $200.00 paid on the

22  misdemeanor.  The Defendant absconded.

23  And they will not extradite outside the

24  State of New Mexico.

25         THE COURT:  All right.

13

But since it does appear in error, and you have conceded it does not properly appear before the matter in New York Supreme, I will strike it.

MR. KEAHON:  Thank you, Judge.

As to the next item that's indicated; 6/11/06, Careless Driving, this information is supplied by the Suffolk County District Attorney's Office that such a charge exits.  And that as per Suffolk DA's Office, will not extradite.

There is nothing on any record check that they could supply to this Court, that indicates anything about extradition, anything about a $200.00 bond, anything about absconding, and anything about Careless Driving.

And if they can't produce it now, I ask that it that be stricken.

MR. PEARL:  Judge, during the writ, Mr. Keahon talked about this.  And his client agreed that he has Careless Driving in New Mexico.

So, I don't understand why there's

14

one thing said before one tribunal, and
something else said before this tribunal.

That was not the argument when we
did the writ.  They agreed there was
Careless Driving.  They're now saying it
doesn't exist.

To clarify, you could go under New
Mexico.com.  The corrections system.  You
could see it listed right there.

THE COURT:  Mr. Keahon?

MR. KEAHON:  Respectfully, Judge,
if I made any comment at some other
occasion in front of some other Judge, I
would have --it's a traffic ticket, that's
all.  Not Careless Driving.  Not a
misdemeanor.  Not anything about
extradition.  Not anything about $200.00
bond and absconding.

THE COURT:  Are we aware as to what
status the Careless Driving is listed,
since there is no--

MR. PEARL:  It's a misdemeanor.

THE COURT:  Is it a misdemeanor?

MR. PEARL:  Yes, in New Mexico.

1

2          THE COURT:  Does it correspond in

3    an unclassified misdemeanor in New York?

4          Do they make distinctions --

5          MR. PEARL:  That, I don't know.

6          THE COURT:  --with laws in our

7    sister jurisdiction?

8          MR. KEAHON:  Why wouldn't it show

9    up in a record check?

10          MR. PEARL:  It did.  That's how we

11    know about it.

12          MR. KEAHON:  Respectfully, this

13    information has to --6/11/06 was clearly

14    supplied by the District Attorney's

15    Office.

16          THE COURT:  Does it appear on the

17    NYSID?

18          MR. PEARL:  Judge, I don't have the

19    NYSID before me.

20          MR. KEAHON:  It doesn't.

21          THE COURT:  As an Officer of the

22    Court --

23          MR. KEAHON:  I'd take that back.  I

24    don't think it does.

25          THE COURT:  All right.

1

2          Then, in that case, we will move to

3     the next one.

4          Your application to strike that

5     will be denied.  Thank you.

6          We'll move to the next.

7          MR. KEAHON:  But, if he can't--

8     respectfully, if the DA can't state to you

9     totally, that it does appear on the NYSIS,

10    then we're at a draw.  And think my client

11    wins.

12         MR. PEARL:  Judge, I could state as

13    an Officer of the Court, we spoke to the

14    Corrections Department in New Mexico.

15    They verified the warrant.  They verified

16    he absconded.  They verified the bond.

17         It's more reliable than a NYSID.

18         We actually spoke to the

19    Corrections Department in New Mexico.

20         MR. KEAHON:  Who spoke?

21         MR. PEARL:  Ms. Franzese and

22    myself.

23         MS. FRANZESE:  I did.

24         THE COURT:  Your word, as an

25    Officer of the Court?

1

2      MS. FRANZESE:  I did, your Honor.

3      I also spoke with the Magistrate.

4      Jodi Franzese for the People.

5      THE COURT:  Yes.  Thank you.

6      Yes.  That was sufficient.

7      MS. FRANZESE:  Yes, Judge.

8      Thank you.

9      THE COURT:  Then it will remain.

10     Your objection will be noted.

11     MR. KEAHON:  Thank you, Judge.

12     We take exception.

13     The 7/16/07 on page three; which

14  indicates 2/28/08 over on the right-hand

15  side with O, and then 4/24/08 VFWO --

16  whatever that stuff means, I don't know --

17  I move to strike it.  And in its place,

18  indicate that my client received an

19  A.C.O.D.  Because I spoke to the attorney

20  that handled it.

21     His name is Jim Cassoris.

22     MR. PEARL:  Yes, Judge.

23     We spoke to an Assistant.  It was

24  somebody different.  But A.C.O.D.d out.

25     THE COURT:  When was an A.C.O.D.

1

2      granted?

3              MR. PEARL:  Maybe a week or two

4      ago.

5              MR. KEAHON:  I think maybe three or

6      four weeks ago, Judge.

7              THE COURT:  Any objection to

8      striking these, other than to note that it

9      was-- there is an A.C.O.D --

10             MR. KEAHON:  Yep.  That's fine.

11             THE COURT:  --pending at this time?

12             MR. PEARL:  No objection, Judge.

13             THE COURT:  Thank you.

14             MR. PEARL:  Judge, if we're going

15     to do that, 3/7/07; the Defendant's

16     conviction in Manhattan was upheld by the

17     First Department.  And is-- leave to

18     appeal was denied by the Court of Appeals.

19             So, could we amend the PSI to

20     indicate that the Defendant was sentenced

21     to one year in prison based on his

22     conviction in Manhattan Criminal;

23     Possession of Stolen Property on 3/7/06?

24             THE COURT:  Mr. Keahon?

25             MR. KEAHON:  Judge, I have no

problem with the fact that he was found

guilty, and he was sentenced to one year.

THE COURT:  Thank you.

MR. KEAHON:  Next, Judge, the

January 27, 2006; on the legal history,

indicates he was charged with Possession

of a Stolen Handgun, and Possession of a

Bullet Proof Vest.

It's my understanding that --based

hearsay; but I believe it to be accurate,

because I'm told that an attorney from New

Jersey was spoken to -- not by me -- that

there was no charge of Possession of a

Bulletproof Vest.  And that the other

charge was Theft of a Gun, not Possession

of a Stolen Handgun.

THE COURT:  People?

MR. PEARL:  Judge, I don't know

exactly what New Jersey --other than, I do

know he was in possession of a stolen

handgun stolen from Virginia.  It was in

his house.  He's being prosecuted in

Burgon County, New Jersey.

I spoke to an Assistant District

1

2 Attorney.  And that might be going to

3 trial, as well.

4   MR. KEAHON:  Did he receive an

5 A.C.O.D. on that?

6   MR. PEARL:  No.

7   MR. KEAHON:  Can you tell me what

8 disposition was worked out; if any?

9   MR. PEARL:  It's pending.  It's not

10 resolved yet.

11   MR. KEAHON:  And I don't know if a

12 detainer was actually lodged.

13   MR. PEARL:  I think it was in our

14 jail.  I believe it was.

15   I think the 1/11 date there was a

16 hold on the Defendant in Burgon County

17 based on that handgun.  I just don't know

18 what the statutes are in New Jersey.  How

19 their statutes read.

20   MR. KEAHON:  Okay.

21   Judge, if I may on page four?

22   THE COURT:  Yes.

23   MR. KEAHON:  The third paragraph

24 from the bottom.  And this paragraph is

25 talking about a meeting the Probation

1
2      Officer had with two Prosecutors on the

3      case.

4           And it was in party to-- based on

5      this paragraph -- to the Probation

6      Officer -- that quote a few of the

7      Defendant's victim were from other states

8      including Tennessee and Florida.  And it

9      was believed that a million dollars.  And

10     it is believed that the Defendant's scheme

11     netted at least a million dollars.  With

12     much of the fraud involving on-line banks.

13          I move to strike that number.  That

14     was never proven.

15          We have the District Attorney

16     standing before this Court prior to even

17     the sentencing begun, asking for a

18     restitution order in the amount of

19     $65,000.00 for a Mercedes.  And $55,000.00

20     for a BMW.  And 55 and 65 is not a

21     million.

22          THE COURT:  It clearly states this

23     is the People's opinion.  The Court knows

24     what the proof was adduced at trial.

25          MR. KEAHON:  So, then I ask it

1

2      --that be amended.  Because you then know

3      that this --the proof was 55 and 65.

4              THE COURT:  Well, the scheme to

5      defraud, however, is in some ways

6      open-ended.

7              MR. KEAHON:  No.  "Netted at

8      least."

9              THE COURT:  Excuse me?

10             MR. KEAHON:  The words are, "Netted

11     at least."  That means in your pocket.

12     Netted.

13             THE COURT:  Do the People wish to

14     be heard?

15             MR. PEARL:  Judge, we did have a

16     discussion with the Probation Department.

17     I don't think that's an exact statement of

18     what was said.  The entire Scheme to

19     Defraud --including out of jurisdiction

20     cases --was approximately over three

21     million dollars worth of thefts.

22             He netted approximately; give or

23     take, around a million dollars outside,

24     including the entire scheme.

25             The People are aware that this

Defendant was defrauding over 55 other
victims outside of the limited Suffolk
County victims.

In Suffolk County, the Defendant
netted $134,000.00.  And he approached a
million dollars of attempts to scheme.

That's what it --we discussed with
probation.

THE COURT:  So, it appears that the
Department of Probation inadvertently
mischaracterized some of your statement.

MR. PEARL:  Yes.

And it was a very complicated
indictment.

THE COURT:  Then when you say net,
you agree that should say $134,000.00?

MR. PEARL:  Yes, Judge.

MR. KEAHON:  Before you mark that,
it's my position to say 120--the only
proof we have, is 65 and 55.

My math --I may be wrong-- that's
120,000.

MR. PEARL:  We also have the motor
vehicle from E Loan was convicted of in.

1

2          MR. KEAHON:  You --he got it back.

3          MR. PEARL:  But he netted at one

4     point.

5          MR. KEAHON:  No.  That's not

6     necessary.

7          THE COURT:  I'm going to leave it

8     at $125,000.00.

9          MR. KEAHON:  Respectfully take

10     exception.

11          Thank you, Judge.

12          THE COURT:  Thank you.

13          As you were saying, Mr. Keahon?

14          MR. KEAHON:  Yes.

15          I take issue with the statement

16     contained at the bottom statement.  The

17     same paragraph that ADA Pearl feels this

18     is the biggest ID theft in Suffolk County

19     history.  And that the Defendant is a

20     significant part of an ID theft ring.

21          Number one, there's been no proof

22     of --establishing that my client was part

23     of an ID theft ring.

24          And secondly, that this is the

25     biggest ID theft ring in Suffolk County

1

2      history -- I don't know how he makes a

3      statement like that.

4           We know this probation report

5      follows my client to any upstate facility

6      that you may --that he may be directed to.

7      And that when the parole board makes

8      certain decisions on parole, they look to

9      the integrity of this report in guiding

10     them to make any decision.

11          THE COURT:  People?

12          MR. PEARL:  Your Honor, I don't

13     recall specifically saying this to

14     probation.  But frankly, it is the largest

15     identity theft to come through Suffolk

16     County.  The largest Identity Theft trial

17     to be done in Suffolk County.

18     Particularly, since the statute was

19     enacted in October of 2002.

20          And that being said, Judge, we are

21     aware with the investigation --it came out

22     through the trial --that this Defendant

23     was using other people in part of the

24     ring.  He was one of the central players

25     of the ring.

1

2              That being said, your Honor, it is

3      what --it is my opinion it is one of the

4      largest Identity Theft rings to come

5      through Suffolk County since October 2002,

6      when the statute was enacted.

7              THE COURT:   Thank you.

8              Thank you, Mr. Keahon.   Your

9      exception being noted; the People's

10     opinion will remain in the Presentence

11     Report.

12             MR. KEAHON:   Well, then, they --he

13     just stated --respectfully, your Honor --

14     that it's one of the biggest.   Not the

15     biggest.   And the words in the probation

16     report indicates that he feels that it is

17     the --

18             MR. PEARL:   I'll correct myself,

19     Judge.   It is the biggest Identity Theft

20     made.

21             MR. KEAHON:   The record is made.

22             THE COURT:   Then we will move on.

23             MR. KEAHON:   Yes.   Thank you.

24             The same page, last paragraph,

25     Detective Gabriel states that he believes

1

2    that there were additional cases in

3    Suffolk County.  Around 55.

4         A, there's no proof of that; where

5    this county does not have jurisdiction.

6         B, there's no proof of that.

7         I limit myself to that comment at

8    this point in time.

9         THE COURT:  Do the People wish to

10   be heard?

11        MR. PEARL:  Judge, just what page

12   are we on?

13        THE COURT:  This is page four at

14   the ultimate paragraph.

15        MR. PEARL:  Judge, there were at

16   least 55 other cases.

17        Once again, I think it's a

18   ministerial error in the PSI that were

19   outside the jurisdiction of Suffolk

20   County.  That's why we didn't have

21   jurisdiction to prosecute the case.

22        THE COURT:  We come back.  It's

23   troublesome to list uncharged crimes which

24   the Defendant was not obliged to defend at

25   trial.  And that he should not have to

1

2      defend at this juncture.

3              So, the reference to the additional

4      cases in Suffolk County are around 55 --

5      which this county does not have

6      jurisdiction -- will be stricken.  And

7      we'll begin then, the paragraph,

8      "Detective Gabriel states that the

9      Defendant was obtaining loans on line."

10             Thank you, Mr. Keahon.

11             MR. KEAHON:  Thank you.

12             Also, the statement that-- the last

13     sentence on page four.  "The Defendant was

14     obtaining loans on-line, and over the

15     phone, and believed to be part of a New

16     York identity fraud theft ring."

17             THE COURT:  For the reasons in

18     which I allowed it to be included based

19     upon Mr. Pearl's statement, I will allow

20     it to remain in as a statement from

21     Detective Gabriel.

22             Your exception will be noted.

23             MR. KEAHON:  Thank you, Judge.

24             THE COURT:  You're welcome.

25             MR. KEAHON:  Page 5; the top.  "He

29

believes that the Defendant got identification information from his girlfriend, and others; and used this information to secure loans."

There is nothing in this record that indicates that my client got any identifying information from any others.

THE COURT:  I believe that was the proof adduced at trial resulting in your client's conviction.

Mr. Keahon, I don't think --your exception will be noted.  It will remain.

MR. KEAHON:  Thank you.

Robert O'Shinski.  Page 5, the second to last paragraph; the middle of that paragraph.

"He" --meaning Robert O'Shinski ---"stated that the Defendant never showed up."  But the paperwork was dropped off.  By who, we don't know.  And he knew that the Defendant had tried to swindle Land Rover of Massapequa, but was unsuccessful.

Respectfully, Mr. O'Shinski knew

1

2      nothing.

3              THE COURT:  People?

4              MR. PEARL:  Judge, that was the

5      proof adduced at trial.

6              The Defendant dropped off the Land

7      Rover paper.  His fingerprints were on it.

8              He tried to --for lack of a better

9      term --swindle, I believe 55 thousand

10     silver Land Rovers or Range Rovers from

11     Massapequa.

12             MR. KEAHON:  Respectfully, the

13     paragraph I'm citing to the Court is

14     indicating in the probation report that he

15     had some type of special personal

16     knowledge, when he had none.

17             THE COURT:  Thank you.

18             Your exception being noted, it will

19     remain in the Presentence Report.  Thank

20     you.

21             Mr. Keahon?

22             MR. KEAHON:  Thank you, Judge.

23             There's a series of individuals

24     that are quoted as indicating about their

25     credit being ruined and damaged.  And it

goes on for several pages.

I would note for the Court, that you were present in court.  And I would say 90 percent of the people that were asked --when they were permitted to be asked --"What's the status of your credit? And were you affected by it?", they said, "No."

THE COURT:  Well, the --with exception of the first person who I think the People had asked a question, and then an answer was given that I sustained your application to bar the People from making inquiry because I felt it had no bearing whatsoever on your client's guilt or innocence --effecting the crime; if any. But they are appropriate at this juncture for the Court to consider.

Your application in that regard is denied.  And your exception will be noted.

MR. KEAHON:  Thank you, Judge.

That's --I have nothing else to say to the Court, other than, respectfully I do believe that this case will be reversed

on appeal.  I believe that there is
significant issues for the Court.

My client's family are presently in
court.  As his wife, mother, and other
relatives.

And this is a non-violent crime.
We have people every day in this county,
that are charged with Rapes and
Manslaughters; that are sentenced to 5
years, 7 years, 9 years.

This is non-violent.  The amount of
money that's in dispute in this case, is
--as we've said --$120,000.00.

I know the District Attorney's
Office is going to ask for the maximum
sentence.

Why?  I don't understand.  Maybe
it's good print news.  I don't know.

But, I ask the Court to show some
mercy as to my client.

THE COURT:  You have the right to
speak after your colleague makes his
recommendation of the Court.  First,
however, I will rule on your application

33

1
2       to dismiss the indictment before this

3       Court, pursuant to Article 332.

4               Do the People wish to respond?

5               MR. PEARL:  No.  We'd rest on the

6       record at this trial.

7               Additionally, just to make it clear

8       so it doesn't sit out there; there were

9       numerous motions made in this case,

10      including a motion for a Probable Cause

11      Hearing, and other types of suppression

12      hearings.

13              I believe there were two Omnibus

14      motions submitted to the Court through the

15      four Counsel that came in on this case.

16              They were all answered.  And they

17      were denied by this Court appropriately;

18      it's the People's position.

19              I just didn't want to leave that

20      out there hanging; that there were

21      suppression motions made.  The other

22      Counsels made those before Mr. Keahon came

23      on the trial.

24              MR. KEAHON:  I reviewed

25      respectfully, your Honor, the motions of

the other Counsel.  Not one prior Counsel
requested, and put in supporting documents
and/or information that would require the
Court to consider an attack on the search
warrants of both the house and the car.
That's why I asked for the opportunity to
do so.

One of the prior Counsel said it
should be suppressed, but offered that
it's -- told us that the car and house
should be suppressed, but offered no legal
basis.  I wanted the opportunity to do
that.

Respectfully, this Court would not
permit it.  And that's the way it went.

THE COURT:  Your predecessors'
motions also resulted in a hearing being
set down on the question of identification
--which was successful to a large extent,
resulting in suppression of same.

But, you took up the cause late,
Mr. Keahon.  You did an outstanding job.

MR. KEAHON:  Thank you, Judge.

THE COURT:  Which I have only

1

2      compliments.

3              Now, the --based upon the People's

4      response to your verbal motion, and for

5      the-- based on the proof adduced at trial,

6      I find that there is no basis to grant

7      your motion to --seeking to set aside the

8      verdict of the jury, or to dismiss the

9      indictment your.

10             Exception will be noted.

11             MR. KEAHON:   Thank you.

12             THE COURT:   Thank you.   We will

13     proceed.

14             Before I hear the People's

15     recommendation, do any of the victims, or

16     victims' representatives wish to address

17     the Court?

18             MR. PEARL:   To that end, there is

19     nobody in this courtroom to speak.

20             I would point out that Nerina Sperl

21     did show up on two or three occasions to

22     speak.   I --obviously sentence was

23     adjourned.   She wasn't able to make it

24     today.

25             She did want the Court to know that

1
2    she had a --put in significant hours to
3    help fix her credit problems.  Even though
4    it was caught early by the Suffolk County
5    Police Department, she didn't suffer that
6    kind of consequences as some other victims
7    did.
8        And that is the --really affected
9    how she does business, and how it affected
10    her, and her ability to trust other
11    people.
12        I do have a letter from Gloria
13    Conaty, that I'd like to read into the
14    record, that she wrote to the Court.
15        It's dated April 28, 2008.
16        It says, "To the Justice of the
17    Criminal Court, I would like to have this
18    statement read into the criminal
19    proceedings pertaining to charges of
20    Identity Theft, perpetrated by Mr. Lamar
21    Whitehead."
22        "Mr. Whitehead; without my
23    knowledge or consent, illegally accessed
24    personal credit information by use of the
25    internet.  He unlawfully obtained this

37

1

2      information from Baron Honda's computer

3      files."

4              "Fortunately for me, the vigilance

5      of the Suffolk County Identity Theft Squad

6      prevented any illegal transaction from

7      taking place.  Had it not been for the

8      prompt action from the police, I could

9      only image the irreparable damage that

10     could have been done to my credit rating."

11             "The very nature of Mr. Whitehead's

12     crime is a personal affront to me."

13             "I believe that the Court's

14     responsibility, is to protect the rights

15     of law abiding citizens.  I feel that my

16     rights were violated.  And I hope that the

17     Court will render a just punishment for

18     Mr. Whitehead's theft of my identity."

19             "Respectfully, Gloria A. Conaty."

20             Additionally, your Honor, if I may

21     continue?

22             THE COURT:  Yes, please.

23             MR. PEARL:  Your Honor sat through

24     the-- I guess approximately 9 week trial.

25     You heard every victim that marched

1

2  through this courtroom, and testified

3  about how each had to endure having their

4  credit affected.

5      This Defendant victimized over a

6  dozen Suffolk County victims.  He also

7  victimized people from the State of

8  Tennessee, and the State of Florida.

9  Being Rhonda Ghassabian and Christina

10  Brooks from Florida.

11      In the course of the these thefts,

12  it's the People's position that the

13  Defendant obtained $134,000.00 of cash or

14  automobiles.  And he approached a million

15  dollars in theft.

16      I did specifically remind the Court

17  one person who wasn't able to be here.

18  Rhonda Ghassabian from Tennessee.  She is

19  due with child very shortly.  She wasn't

20  able to make the trip.

21      She testified at trial.  She told

22  us countless times, it took her over two

23  and a half years to be able to get any

24  credit after this Defendant victimized

25  her.

1

2          And I remember Ms. Ghassabian's

3    personal information was found in the

4    jacket --in the sleeve.  Her date of

5    birth, social security number, and her

6    name.

7          You have Woyciech Wachnik; who's

8    still having trouble.  Getting calls from

9    creditors because of the Land Rover this

10   Defendant tried to steal.

11         Your Honor, this Defendant; in a

12   systematic way, went around and destroyed

13   good names and reputations of all these

14   victims.

15         The Court had the opportunity to

16   see through the course of the numerous

17   conferences and the 9 week trial, how this

18   Defendant displayed a level of --for lack

19   of a better term --uberous and greedy.

20   I'd suggest, rarely seen in this court

21   house.

22         This Defendant used everything and

23   anything to avoid responsibility.

24   Including not taking any responsibility

25   for his actions in the PSI.

40

1

2          And I venture to guess he won't

3    take any responsibility for today.

4          He doesn't deserve any mercy from

5    this Court.

6          This Defendant went so far as to

7    use his own child as an excuse to get

8    mercy from this Court.  And at one point,

9    dressed as a priest, and came into the

10   courtroom, and sited scripture to this

11   Court.

12         Along those lines, your Honor, when

13   --the People do recommend state

14   incarceration.  And I hope the Court does

15   sentence the Defendant to state

16   incarceration.

17         There is a scripture that this

18   Defendant should be mindful of from the

19   Book of Proverbs.  And it's, "A good name

20   is to be more desired than great wealth.

21   Favor is better than silver and gold."

22         That is something that the

23   Defendant could spend his time; when he's

24   doing his state time, thinking about.

25         Accordingly, your Honor, the People

are making the following recommendations:

As to Count Three, we recommend two and third to 7 years. As to County Four, the People recommend a consecutive two and third to 7 years. As to Count Five, the People recommend an additional consecutive two and third to 7 years. As to Count Six, the People recommend a consecutive two and third to 7. As to Count Eleven, the People recommend a consecutive two and third to 7. As to Count Fourteen, the People recommend a consecutive two and third to 7. For a total of 14 years to 42 years.

I do understand, your Honor, that pursuant to Penal Law Section 730, that it may be modified to the sentence to read as an indeterminate of 10 to 20. However, the People are still recommending their sentence of 14 to 42 years.

Your Honor, as to each and every other conviction -- and I'm not going to go through each one --we'd ask the Court to sentence the Defendant to the maximum

1                                                          42

2          state prison to run concurrent with that

3          14 to 42 years.

4                    Thank you, your Honor.

5                    THE COURT:  Thank you very much,

6          Mr. Pearl,

7                    MR. KEAHON:  Just one comment if I

8          may, Judge?

9                    THE COURT:  You may speak at length

10          if you wish, Mr. Keahon. It's your right.

11                    MR. KEAHON:  As to the comment by

12          the Assistant District Attorney that my

13          client made no statements saying that he's

14          sorry in the PSI, I think is uncalled for.

15          I think it's improper.

16                    He's read the PSI.  He saw where

17          the probation officer indicated that --I

18          indicated to probation that my client was

19          --would not make any statements.  So, it's

20          me; the.

21                    MR. KEAHON: , who gave instruction

22          to the client not to make any statements.

23                    And then again, to refer and tell

24          this Court that comment for a predicate to

25          the sentence of my client not admitting

1

2          his guilt, and therefore sentence him more

3          harshly because he refuses to accept his

4          guilt, I would suggest to the Court that

5          he has every right to stand mute; to let

6          me address the Court.  And to hope and

7          pray that in the appellate process this

8          case will be reversed.

9                So, I don't know if you want to say

10         anything?

11                THE DEFENDANT:  Yes.

12                MR. KEAHON:  Okay.

13                He does intend to say something,

14         Judge.  I'm finished with what I had to

15         say.

16                THE COURT:  Thank you, Mr. Keahon.

17                It's your turn, Mr. Whitehead.  Is

18         there anything you wish to say before the

19         Court imposes sentence upon you?

20                THE DEFENDANT:  First and foremost,

21         I just want to thank God for allowing me

22         to wake up to see today.

23                Second, I want to thank my family

24         for supporting me.

25                And, um, that --this have been a

1

2      rough, rough time for me and my family.

3      This District Attorney sits here as an

4      Officer of the Court, portrays to be a

5      perfect Officer of the Court.  Which he is

6      not.

7             They've put my family and myself

8      through so much trials and tribulations,

9      beyond your wildest imagination.  They've

10     had friends from New York City arrest me.

11     They've took me out in the rain, carrying

12     my bags, shackled up.

13            Everything that this District

14     Attorney had to do.  He deceived the

15     Court.

16            If the victims was here during this

17     trial, they would have no hatred for me,

18     whatsoever.  If the victims was able to

19     see the things they covered up, they would

20     have no hatred for me.

21            Mr. Keahon is a phenomenal

22     attorney.  He's a blessed man by God.

23     Because he didn't have to treat me the way

24     he treated me.

25            I've been through three attorneys

1

2   prior to Mr. Keahon, that all ripped me

3   off.  First and foremost, Robert Macedonio

4   lied to me over and over again; because of

5   my distance.  I lived in the city, and he

6   worked out here.

7       All he told me, was that he was

8   putting in motions on my behalf.  "There's

9   no way.  There's no way they're going to

10   be able to convict you."  Putting in

11   motions.

12       And then there's a letter from the

13   District Attorney that says-- in recepit

14   to my.

15       MR. KEAHON:  --they-- that he never

16   told me about on September '06 -- said

17   they have no --"We have no voice

18   recordings, whatsoever."  But in August of

19   2005, they played those voice recordings.

20   They overwhelmed the jury within the Grand

21   Jury.

22       So, they have misled attorneys.

23       The same letter, they said that the

24   --the same letter they wrote, said they

25   have no voice recordings.  They played

1
2      those same voice recordings in August
3      2005.   That's all the District Attorney
4      did.   Kept misleading.
5           And I just want to thank you also,
6      for being the Judge that you are.   Because
7      you respected me as a man.   You looked at
8      my character.
9           You've been a Judge for quite some
10     time.   You seen different types of people
11     come in front of you.
12          And, your Honor, I don't have to do
13     nothing illegal.   I have a family.   I'm
14     married.
15          Tomorrow is my first year
16     anniversary.   I spent my birthday in here.
17          I'm a family man.   I have my son.
18     I would never put my son on the line.
19     Never.
20          My father was killed when I was two
21     months old, by police officers.   White
22     police officers.   But, do I hate white
23     people?   No.
24          In the bible --since you want to
25     get biblical --it says, "You can defile a

man with words.  But what not goes into

his mouth, but what comes out his mouth

that comes from his heart."

That's how to defile a man's

spirit.  From his heart.  You look at a

man's spirit.

These people put me through pain,

man.  Pain.  Pain.  Beyond pain.  And left

my wife out there with nobody.

I didn't know I was going to get

remanded.  I didn't know that.

I had business venture that I

worked.

I've been in front of your Court

two and a half years.  Never missed a

court date.  I respected you.

And, your Honor, you told --you

said, "Mr. Whitehead, I promise you'll

have a fair trial."

And that's all they did, man, was

play under the table.  And deceive, man.

Make everything look right.  It wasn't

that.

That Detective Gabriel, man.  He

48

tormented me, my family.  Tormented my
business while I was trying to make money
to pay for an attorney.

He called my office.  Threatened my
employees.

They --you want to talk about
credit?

My credit is shot.  I lost my house
because I've been incarcerated.  They
spreaded me throughout the papers.

And for you to say that I can't
come in here and walk as a priest?

Listen.  I fear God.  I don't fear
you.  I don't fear the District Attorney.
I fear God.

For me to come in here as imposter
--you --I don't --you have no respect.
You --there's no way I could respect you
more than God.  Just to impose as
something.  I don't impose.

And if you want to get back to
scripture-- 105.15 says, "Touch not my
appointing, and do my prophet no harm."

And if you want the scripture, look

at the Judge.  And ask Judge Hudson --this
is why judges was profound to be judges.
And chapter two and 16, it says that God
was with the judges because Israel was
being taken over by the Babylonians.  And
so, God loved Israel.  And so that --and
he didn't want to see Israel die, too.

So, this is what brought forth
judges, so Israel would not spoil.  So the
judges could judge the enemy, to save the
righteous, and look at their heart, and
understand.

I love God.  And you quote me
scripture about there's a season.  There's
a season for mercy and a season for
leniency.  And a season to see my spirit,
and understand that my son and my wife
don't deserve it, man.

I wasn't accused, or convicted of
hurting nobody.  And these numbers
--that's like killing someone.  Come on,
man.

You-- look at my record, man.  Look
at my record, man.  I help young people.

50

I help the church.

I don't have to sit here, and say-- lie to nobody.  I don't need no leniency from Mr. Pearl.  All I need is leniency from God and Jesus Christ, man.

And, yes.  I am an ordained minister.  And, yes.  I preach.  Yes.  I preach the gospel.

Judge Hudson, man, like I told my wife as she cried to me on the phone from time to time that she's struggling --I said, "You got to be strong."  I said --and I call her baby.  I said, "Baby, I drink juice out of a lotion bottle.  They have done me wrong."

AUDIENCE MEMBER:  Oh, God.

THE DEFENDANT:  They have done me wrong, Judge Hudson.

Not to mention through my investigation, Macedonio was friends with Detective Gabriel.  He used to go to high school with him.

They done me wrong, man.

When they took me in the alleyway.

51

When I came to you and told you they took
me in the alleyway, you said my attorney
will handle it.

Macedonio ain't do nothing.

My other.

MR. KEAHON:  Camille Abbate, she
took my money, and left because she's
running for office.

I was so --this is new to me.  Your
Honor, man, don't take me from my son.  My
son needs me.  I'm not using my son as
leverage, but my father was taken from me.

You think just --and I know this is
going to get overturned.  I know this is
going to get overturned.

Mr. Keahon had to do what he didn't
do for me, your Honor.

I was scared.  I was scared.  I
didn't trust nobody.  I was scared.

And you want to know what?  That's
why every time I came to court, they want
to remand me.

And you said from my --out your
mouth, "Bail is not punishment.  It's

surety that he comes back."

I never disobeyed the Court.

And Mr. Keahon will call me times of night, just to talk to me, and ask me different things.

Your Honor, man, my first year anniversary is tomorrow, man.  I'm in New York theological seminary; which is a ministerial school that I was president of my class.  I was president of my class. And I couldn't finish my other semester because I was remanded.

I deal with the District Attorney's Office in Brooklyn helping kids, starting a program while this was going on.

Your Honor, I don't have to lie to you.

The other thing is --another thing. When you read the bible, it shows you can't change character.  You can't change spirit.  You could fool somebody for a little while, but you can't change it. The real them will come out.

You've seen me two and a half

53

years.

And First Corinthians 11, 13, and --um --13 and 11, it says, "When I was a child I thought as a child.  I understood as a child.  But now with God I'm a man." Since you want to get biblical, Mr. Pearl.

And they it says that in Psalms 23, "Though I walk through the valley of the shadow of death, I'll not walk through to death because God is with me."

This is just a shadow, because this will be overturned.

And the things that I seen Mr. Keahon pick up, he didn't have to do that. He didn't have to do what he did.

And I just ask you to just consider -- your Honor, when you said that as a --there's a season for trial, I went out there and tried to find a lawyer.  I found him two days.  And I met him--I met him two days before my trial.

I drove out here to meet with him. I drove out to meet with him.

And I established my character with

54

him.  I established my --who I was with

him.

He would have never took this case.

Not before no money.  He would have never

took this case.

And he complimented me throughout

the trial.  He said, "Lamar, you're a good

client."  He said, "You fight them,

Lamar."

That's what I'm about, Mr. --Judge

Hudson.  I got to fight for my freedom.

They did my family wrong, man.

They made this whole case--my life a whole

debacle, man.  I didn't know which way was

up or down.

I could remember I called your

office.  I was afraid.  I was afraid that

--to be --I'm just going to be honest.  I

was afraid they had your ear.

I was afraid the things they were

doing.  Things they were doing to me that

you don't know about.

It will take me all day to explain.

But, they know, and he knows.  It was

personal vendetta.

It's not about-- you could put
aside --I'm just talking about my
character.  You could put aside the guilty
or not guilty.  Put aside.  But fighting
fair.  They did not fight fair.  That's
why he has a smile on his face.

Mr. Pearl, man, let me tell you
something, man.  I just want to say one
thing to you.  That I'm still going to be
a man of God no matter what you say, man.
No matter what you do, I'm still going to
love my Jesus.  Because he died for me.
He didn't have to die.  He died for me.

And I don't have to perform for
you.  For what?  You have no judge over
me.  I don't have to perform for you.

You know in your heart you deceive.
You did everything possible.  Every
witness that you put up there to talk
against me; Mr. Keahon caught them in
numerous lies.  And they had agreements.

Your Honor, all I want is a chance.
My son first birthday is coming up.  And I

want to be there.  My father wasn't there
for mine.

          And then he says 14 to 42 years.
Who did I kill?

          I read in the paper --I've been
studying.  Men stole 450 million dollars,
getting 14 to 20 years.  A man stole 200
million dollars.  Getting 6 years.

          And he says 10 to --14 to 42 years.
People killing people getting two to
fours, and he says 14 to 42 years.

          Your Honor, all you did was respect
me every time I came to this court.  I was
a little frightened once you remanded me,
but I got closer to God.  I got closer to
my wife.  I got closer to my family.  I
got closer to them.

          I understood who have my back, and
who don't.  There's a season for time
where you got to see who have your back.

          My lawyer had my back.  I keep
saying that, because you don't understand
how I've been ripped off.  You --he had my
back.  And he gave me time to talk.  He

talked to me.  Nobody want to talk to me.
I didn't understand this.

Manhattan trial was atrocious.  It
went a day and a half, almost two days.
It was atrocious.  I didn't know which way
was up.

And this is what they did to me.
And I've paid the price.

And these victims says that it took
them years.  A lot of my business partners
Googled my name.  My business --a lot of
business down the drain.  No trust.

District Attorney stole my
identity.  I went through pain, your
Honor.

I don't know if you already have a
sentence already written down, or if this
made any sense.  But, I've sat here and
watched you two and a half years give
mercy to people, and give leniency to
people.  And I seen you sentence a lot of
people.  And seen their families cry.  And
I seen them-- I seen it.

And I ask --actually, your Honor,

1

2    when you sentenced one of the boys --a boy

3    killed someone.  I'm going briefly.  His

4    family was out there.  They went out.  And

5    they was all discombobulated.  And they

6    had a press circle with them.

7         And I prayed with them, because

8    they needed strength.  That's when I had

9    my collar on.  I prayed with them because

10    they needed strength.

11         And do you know, your Honor?  I had

12    so much to think about when I was in jail.

13         You have a nickname in there.

14    That's scary.  They call you Hang 'em High

15    Hudson in there.

16         THE COURT:  It's more because of

17    the H with the H, anyway, with the names.

18         THE DEFENDANT:  They said you

19    sentence hard.  That's what they say.

20         And this is torment.  And then this

21    District Attorney calls my attorney.  The

22    District Attorney calls my attorney to

23    show-- they know they're going to lose

24    --to say they want to work out something.

25    They want me to admit.  They would give me

59

a lesser sentence.

Yes.  That's why they kept postponing; to give me a lesser sentence so then-- that I won't appeal.

MR. KEAHON:  Judge, let me clear up the record in that regard.

I had conversations with the District Attorney's Office.  And I know that the Court on occasion will sentence more leniently if the individual accepts responsibility at the time of sentence. So, I had a number of conversations with Mr. Pearl, and with Jody; concerning where they would be at in recommendation. Depending upon what might be said by my client.

I passed that along to my client.

I had a number of conversations with the Assistant --District Attorney's Office.  And it was not going to go anywhere.  It was not something that I could accept, or that he could accept.

So, I just want the record to be clear on what my client is talking about

1

2       there.

3                   THE COURT:   Thank you.

4                   MR. KEAHON:   And I felt it was

5       imperative for me to put that on the

6       record.

7                   THE COURT:   Thank you.

8                   THE DEFENDANT:   Your Honor, I'm

9       pretty much done.

10                  You know, I just ask you for

11      leniency, your Honor.   And just, your

12      Honor, just look at me, man.   You seen me

13      from a boy turn into a man.

14                  Jail is not going to do anything

15      for me.   Nothing.

16                  I'm already intelligent.   I'm

17      already helping people.   I'm already

18      walking the walk of God.   I'm doing the

19      right thing.

20                  I haven't been in trouble until the

21      detective calls his friends, and arrests

22      me.   And then they dismiss the charges.

23                  But, I haven't been in trouble,

24      your Honor.   I haven't done anything

25      wrong, your Honor.

61

Jail is not going to do anything
for me.  Nothing.

If you give me a thousand, or two
thousand hours of Community Service, I
will serve that to serve and help people.

I have prayer every night.  Every
single night I have bible study.  And
every Sunday I preach to them about God.

Use me to change a lot of them
brothers in there.  Their lives, man.
People that got sentenced to 25 years to
life.

Your Honor, jail is not going to do
anything, your Honor.  All it's going to
do, is hurt my family, hurt my wife.
She's struggling.  Hurt my son.

It's rough growing up without a
father.  It's rough, your Honor.
Especially to be my race.  It's rough.

And I'm not asking for no-- I'm not
playing no pity party.  I'm talking from
the heart, your Honor.  The heart.

That's all.  I'm finished talking
about it, your Honor.

1                                                      62

2                    Your Honor, I know God is with me.

3          And I just want to say this last thing,

4          your Honor.  When I was going through this

5          trial, and Mr. John White had got

6          sentenced, I was out there.

7                    I heard a lot of court officials

8          say she's going to feel a lot of heat

9          behind this.  And I heard a lot of people

10         say that she is not running.  And that she

11         has nothing to worry about.

12                   It was a --political.  They was

13         thinking more political, and not thinking

14         about a person's life.

15                   And I ask you, your Honor, think

16         about my life please.  Please think about

17         my life.

18                   I'm more of an asset to people on

19         the outside, than to be on the inside.

20                   My --me and my wife made vows

21         yesterday.  Tomorrow it will be a year.

22         We haven't been able to enjoy our

23         wedding -- I mean I our marriage,

24         whatsoever.

25                   I just ask for the chance, your

Honor.  You could sentence me now.  You go
home to your family.  And everybody go
home with their family.

But for 8 weeks --8 and a half
weeks, I drove from the city; an hour and
a half back and forth.  Back and forth.

Even my mother got sick because we
used to sit in the car.  It was cold.  She
got sick.  She couldn't come the last week
because she was sick.

I was obedient to the Court.

Your Honor, I thank you for the
opportunity to express my gratitude.  And
I just hope you understand how much I
appreciate you for being the Judge that
you are.

I'm not looking for no pity party,
as the District Attorney say.  And I'm
just telling you from my heart, your
Honor.

If I lied to you, may God strike me
down right now.  I am a man of God.  And I
will walk with God, just like he walked
with me.  And I will be consistent with

64

 2 him.  And I will have faith all the way,

 3 your Honor.

 4   And I thank you for this

 5 opportunity -- for giving me this

 6 opportunity to tell you, because I

 7 couldn't speak a lot of the times.  It was

 8 just, we got new court date.  I never knew

 9 what was going on.  I never knew what was

10 going on.

11   So, I thank you, your Honor.  And I

12 want to once again thank my Counsel, Mr.

13 Keahon, for his hard work, man.  And his

14 honesty to me, man.

15   That's all I wanted, was honesty.

16 And if I had him in the beginning, I

17 probably wouldn't be here.

18   And I want to thank my family for

19 their prayers, and their support, and

20 their love.

21   Your Honor, man, thank you.

22   THE COURT:   You're welcome.

23   Mr. Whitehead, when you came before

24 this Court, you were released.  You came

25 back every occasion.

1

2          You refered to the way you were

3     treated by this Court.   The Court viewed

4     you as an innocent man at all times, until

5     that one moment.   This is when you talk

6     about judges before, you forgot about 12

7     other ones.

8          You had one Judge of the law.   And

9     you --according to best of my ability, I

10    attempted to make sure that you received a

11    --all your legal and constitutional

12    rights.   And that is for a higher and

13    wiser Court to determine; whether or not

14    my decisions were in error or not.   And as

15    always, I accept their decision, their

16    determination, and their direction.

17         But you had 12 sworn judges of the

18    facts -- strangers to you --that heard all

19    the evidence in this case, and unanimously

20    found that you had committed these crimes.

21         You could declare your innocence.

22    That is your right.   But when --in the

23    same token, repentance does earn a reward

24    when it is sincere.

25         Initially, the Court imposes upon

66

1
2      you as part of your sentence a mandatory

3      state surcharge in the amount of $320.00.

4              THE CLERK:  There's restitution.

5              THE COURT:  That will be waived in

6      light of the restitution judgement orders

7      which are being executed at this time in

8      the amount of $55,000.00 to Capital One

9      Auto Finance Group, and $64,000.00 to E

10     Loan Corporation.

11             The Court is also granting the

12     People's application for a Permanent Order

13     of Protection against you.

14             You'll have no contact with Anita

15     Bryant or Georgia Fortune.

16             If you violate the terms of that

17     Order of Protection, charges could be

18     filed against you.  Which, depending upon

19     the manner in which they are violated, if

20     they result in serious physical injury to

21     beneficiary, your could receive up to 7

22     years in state prison for Aggravated

23     Criminal Contempt.

24             Initially, I would like to commend

25     the attorneys in this case.  Mr. Keahon;

1

2    in spite of overwhelming proof presented

3    by the People, you represented your client

4    zealously, and with dignity, in the best

5    tradition of the Defense Bar.  And it was

6    truly an honor to have you before this

7    Court.  I thank you.

8         And for the District Attorneys, Mr.

9    Pearl, Ms. Francese; I wish to convey the

10   Court's praise for the thoroughness and

11   skill with which the Prosecution presented

12   their evidence and legal argument.

13        In particular, the Court wishes to

14   note that during this trial, Mr. Pearl,

15   Defense Counsel's request, undertook an

16   investigation to obtain what could

17   possibly be exculpatory evidence relating

18   to a computer.  Such an act of attempt to

19   pursue what could be exonerated proof,

20   amply demonstrates that despite your

21   vigorous accuracy, you never lost sight of

22   your obligation not to obtain a

23   conviction, but to see that justice be

24   done.

25        You have the Court's thanks.

1

2          For you, Mr. Whitehead, I could

3     have no thanks or praise.  Despite your

4     vehement protestation of innocence, the

5     jury has decided otherwise.  And they have

6     defined reality as far as I'm concerned.

7          At this time, my concern is

8     exclusively towards your victims.  Those

9     decent people whose names that you stole

10    so you could have a lifestyle that they

11    couldn't afford, and you didn't deserve.

12         Where the mitigating factors that

13    could justify a merciful sentence; I

14    assure you, Mr. Whitehead, I have looked

15    for them.  I have sifted for them.  I do

16    so in every case before me.

17         You have a mother who sent me a

18    letter, who loves you very much.  You have

19    a wife who has stood by you, and a young

20    son who needs his father.  And it does

21    weigh upon me.

22         I know that in sentencing you, I

23    sentence them.  They did no wrong.

24    Nothing wrong, at all.

25         But your victims also have

1

2       families; whose lives that you disrupted.

3             And I looked very closely at the

4       Presentence Report, for any sign of

5       remorse.  I looked very closely at you now

6       as you spoke.  I noted that as you

7       spoke -- I looked at you.  You didn't look

8       away.

9             I was looking for something.

10      Remorse, repentance, taking

11      responsibility.  Something that would show

12      that you understood the enormity of what

13      you did.

14            But you consider yourself to be a

15      victim.  That is wrong.  In light of what

16      the jury has said, that is wrong.

17            I don't need a Presentence Report

18      to tell me everything about you, because

19      you forget something, Mr. Whitehead.  That

20      I watched you the entire trial, as well.

21            The only emotion that I ever saw

22      you display, was anger.

23            Various witness testified.

24            Shame, and remorse, and repentance;

25      that would be appropriate under the

1

2          circumstances, and perhaps would move this

3          Court to mercy-- were, and continue to be

4          conspicuously absent.

5                    The Court is left with the question

6          of how to punish such behavior.  How to

7          address it.

8                    Such crimes --there's been new law

9          enacted in 2002.  Your victims have all

10         suffered.

11                   The Court-- from the probation

12         report --demonstrates you have changed

13         their lives, credit rating, and reduced

14         business practice.  Changed due to the

15         fear that you put in them.

16                   Your lack of remorse, though, shows

17         that you are more than capable of resuming

18         the scheme once you return to society.

19         Preventing this from occurring while

20         you're incarcerated.

21                   I have been informed that the New

22         York State Department of Corrections will

23         prevent you from having computer access

24         while in their care.

25                   So, Lamar Whitehead, it is the

sentence of this Court that you be taken
from this place, and turned over to the
custody of the New York State Department
of Corrections.  And while in their charge
and care, you'll serve the following
period of incarceration:

For Count One of the indictment;
Scheme to Defraud in the First Degree, an
indeterminate period of incarceration of
not less than one and a third, to no more
than four years in state prison.

For Count Three of the indictment;
Identity Theft in the First Degree, an
indeterminate period of incarceration of
not not less than one, to no more than
three years in state prison.

As to Count Four of the indictment;
Identity Theft in the First Degree, an
indeterminate period of incarceration of
not less than one, to no more than three
years in state prison.

As to Count Six of the indictment;
for Identity Theft in the Third Degree, a
determinate period of incarceration of one

1
2  year.
3  As to Count Ten of the indictment;
4  Identity Theft in the First Degree, an
5  indeterminate period of incarceration of
6  not less than one, no more than three
7  years in state prison.
8  As to Count Twelve; Identity Theft
9  in the First Degree, an indeterminate
10 period of incarceration of not less than
11 one, to no more than three years in state
12 prison.
13 And as to Count Fourteen of the
14 indictment; Attempted Grand Larceny in the
15 Second Degree, an indeterminate period of
16 incarceration of not less than one, no
17 more than three years in state prison.
18 As to Count Fifteen of the
19 indictment; Identity Theft in the First
20 Degree, an indeterminate period of
21 incarceration of not less than one, no
22 more than three years in state prison.
23 As to Count Sixteen of the
24 indictment; Identity Theft in the First
25 Degree, an indeterminate period of

incarceration of not less than one, no more than three years.

As to Count Nineteen of the indictment; Identity Theft in the First Degree, an indeterminate period of incarceration of one to three years.

As to Count Twenty of the indictment; Identity Theft in the First Degree, an indeterminate period of incarceration of one to three years.

As to Count Twenty One; Identity Theft in the Third Degree, a determinate period of incarceration of one year.

As to Count Twenty Two; Identity Theft in the First Degree, an indeterminate period of incarceration of one to three years.

As to Count 24; Identity Theft in the First Degree; an indeterminate period of incarceration of one to three years.

As to Count Thirty 30; Identity Theft in the First Degree, an indeterminate period of incarceration of one to three years.

74

As to Count Thirty Six; Identity
Theft in the First Degree, an
indeterminate period of incarceration of
one to three years.

As to Count Forty Two; Identity
Theft in the First Degree, an
indeterminate period of incarceration of
one to three years.

These counts are charges relating
to the names --lives of 9 persons.  Mary
Macarle, Nerina and Raymond Sperl, Nauri
Khabieh, Joseph Sweeney, Gloria Conaty,
Brian Smith, Woyciech Wachnik, Briton
Lawlor, and one company; Land Rover of
Massapequa.

Although these convictions pertain
to Identity Theft, and Attempted Grand
Larceny; they could all theoretically run
consecutively.

The Court is mindful of the
guidance provided by the Appeals Courts,
which warn against such remedy which may
be violative to the 8th Amendment.

Defense Counsel has pointed out

1

2      these were non-violent crimes.  I thank

3      him for that advice.  I'm aware of the

4      sentence handed down to violent offenders.

5      Some allowance must be made.

6           I say this to you, Mr. Whitehead.

7      You fired no pistol.  You furnished no

8      blade.  You drew no blood.

9           You are probably one of the most

10     dangerous men ever to walk into my

11     courtroom.  You are a new type of

12     criminal.  The internet predator.  I find

13     your potential to be as frightening as the

14     internet is promising.

15          Let's reflect for a moment on the

16     effect you had on the lives of some of

17     your victims --as the People eloquently

18     detailed-- resulting from your crimes, as

19     far as their lost credit.

20          Some people won't --Maria Macarle

21     is no longer using the internet.

22          Ms. Sperl-- she and her husband are

23     no longer applying for instant credit.

24          Mr. Wachnik said he worked very

25     hard since he came to this country in

1

2      hopes of having a better life.  His credit

3      score is not the same.  He is afraid to

4      open his mail; thinking that you have

5      given his information to someone else.

6           Mr. Lawlor recalled missing time at

7      work.  He had to change all his credit

8      cards because of what you did.

9           All of this leads me to say you

10     must be stopped, and all who would follow

11     your example.  Just as importantly, your

12     victims should see that the person who

13     stole their most precious possession of

14     all --since it's a day for quotation --I

15     won't quote scripture to you, because you

16     are a better authority.  But Shakespeare

17     said, "Good name in men and women dear my

18     Lord is the immediate jewel of their

19     souls.  He who steals my purse steals

20     nothing.  Tis trash.  And has been slave

21     to thousands.  But he who robs me of my

22     good name, steals from me that which not

23     enriches him, but it leaves me poor

24     indeed."

25           Accordingly, your sentence shall

run consecutively.  In part, based upon
the number of your victims.

Count One; Scheme to Defraud, will
be imposed consecutively with all other
sentences imposed herein

Counts Three, Four, and Six
pertaining to Ms. Marcarle, will run
concurrently with each other, consecutive
with all other counts.

Count Ten, pertaining to Ms. Sperl,
will run consecutively to all other
counts.

Count Twelve, pertaining to Mr.
Khabieh, will run consecutive with all
other counts.

Count Fourteen, pertaining to Land
Rover of Massapequa, will run consecutive
with all other counts.

Counts Fifteen and Sixteen,
pertaining to Mr. Sweeney, will run
concurrently with each other, and
consecutively with all other counts.

Counts Nineteen, Twenty, and Twenty
One, pertaining to Mr. Wachnik, will run

1

2      concurrently with each other, and

3      consecutive with all other counts.

4             Counts Twenty Two and Twenty Four,

5      pertaining to Mr. Lawlor, will run

6      concurrently with each other, and

7      consecutive with all other counts.

8             Count Thirty, pertaining to Mr.

9      Smith, will run consecutively with all

10     other counts.

11            Count Thirty Six, pertaining to Mr.

12     Sperl, will run consecutively with all

13     other counts.

14            Count Forty Two pertaining to Ms.

15     Conaty, will run consecutive with all

16     other counts.

17            For a total of not less than 10, no

18     more than 30 years in state prison.

19            Pursuant to Penal Law Section 7.30,

20     this sentence shall be deemed to be

21     indeterminate term of 10 to 20 years.

22            At this time I wish to advise you

23     you have a right to appeal this sentence

24     imposed upon you by filing a notice of

25     appeal with the Clerk of this Court within

```
 1
 2          30 days from today's date.
 3                A similar notice must be served
 4          upon the District Attorney.
 5                If you can not afford an attorney,
 6          you may make application to have an
 7          attorney assigned to you without charge.
 8                Although discussed at length, Mr.
 9          Keahon; for the record at your
10          convenience, would you be so kind as to
11          advise your client of his rights to appeal
12          in writing?
13                MR. KEAHON:  I will, Judge.
14                He'll be filing.
15                THE COURT:  Excuse me.  The Order
16          of Protection expiration date; in light of
17          the Court's sentence, will be June 30,
18          2036.
19                MR. KEAHON:  We'll be filing a
20          notice of appeal this week, Judge.
21                THE COURT:  Thank you.
22                Follow the Officers' instructions,
23          please.
24                *     *     *     *     *
25                C E R T I F I C A T I O N
```

80

1

2

3          I, Linda Dutra, hereby certify that the above

4    and foregoing is a true and accurate transcription of

5    my stenographic notes.

6

7

8

_____

LINDA DUTRA

9                        Senior Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25