**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ FEB 0 6 2016 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                     :

LAMAR WHITEHEAD          :

          Petitioner,   :

     – against –   :

WILLIAM T. HAGGETT, Superintendent,   :
Mt. McGregor Correctional Facility   :

         Respondent.   :
                     :
------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

12-cv-04946 (AMD)

**ANN M. DONNELLY**, District Judge.

The petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On April 1, 2008, following a jury trial in Suffolk County, New York, the petitioner was convicted of one count of Scheme to Defraud in the First Degree, one count of Attempted Grand Larceny in the Second Degree, thirteen counts of Identity Theft in the First Degree, and two counts of Identity Theft in the Third Degree. (Dkt. No. 1 at 2.) The petitioner challenges his conviction under the Fifth, Sixth, and Fourteenth Amendments. (*Id.* at 1-2.) Specifically, he asserts that his trial lawyer was ineffective and that the court improperly admitted evidence of uncharged crimes and a witness's unsworn testimony. For the reasons that follow, the petition for a writ of habeas corpus is denied.

## FACTUAL BACKGROUND

### I.  Overview

The petitioner's conviction arose out of a fraudulent loan scheme. The trial established that the petitioner exploited his former girlfriend, Valerie Rodriguez, who had access to personal identifying information through a computer credit check program at a Baron Honda car dealership, where she worked. The scheme involved creating fake email accounts and voicemail boxes using stolen identifying information, filling out fraudulent loan applications, and using these loans to obtain vehicles.

### II.  Investigation

On May 5, 2005, Maria Macarle received a telephone call from a loan representative about a recent application. (Dkt. 16, Ex. 20 at 56–57.) Because Ms. Macarle had not applied for a loan, she called the Suffolk County Police Department. (Dkt. 16, Ex. 12 at 80.) Detective Thomas Gabriele investigated and determined that someone took out a loan in Ms. Macarle's name to purchase a motorcycle at Kings Cycles in Brooklyn, New York. (Dkt. 16, Ex. 20 at 59:7-19.) The loan included a sales agreement in her name (*Id.* at 60:4–63:13) and a copy of a driver's license that had her name, but someone else's picture. (*Id.* at 61:10-12, 64:7-18.) The person in the photograph was later identified as Anita Bryant, the petitioner's friend. (*Id.* at 64:7-24; 73:22-74:12.)

On June 7, 2005, Detective Gabriele learned that the petitioner had been arrested in Manhattan while riding the motorcycle purchased in Ms. Macarle's name. (Dkt. 16, Ex. 19 at 94:3-99:13; *id.* Ex. 21 at 16:14–17:4.) The same month, Detective Gabriele traced a phone number on the sales-purchase documents to Aerobeep and Voicemail Services, a business that provides customers with phone numbers and mail receiving services. (Dkt. 16, Ex. 20 at 74:16-

77:19; Dkt. 16, Ex. 19 at 27:20-29:20.) He asked for a list of accounts associated with that number, and in July of 2005 he recorded voicemails associated with those accounts. (Dkt. 16, Ex. 20 at 74:21-79:7.) He discovered that the petitioner had an Aerobeep account and that several phone numbers used in fraudulent loan applications were opened under other Aerobeep accounts. (*Id.* at 30:10-52:25; Dkt. 16, Ex. 20 at 82:6-89:23.) For example, an account in the name of "John Wilson" purchased 10 numbers, including the one that was included on the motorcycle sales agreement under Maria Macarle's name. (Dkt. 16, Ex. 29 at 37:7-39:23; Dkt. 16, Ex. 20 at 63:11-18.)

On August 5, 2005, Detective Gabriele sought and obtained search warrants from a Suffolk County judge for two residences in connection with the identity theft investigation. (Dkt. 16, Ex. 21, 65:20-69:25.) He seized two computer systems from one of the houses, and submitted them for forensic analysis. (*Id.* at 71:1-74:10.)

The detective's investigation of telephone and bank records revealed that the personal identifying information of several Baron Honda customers was used to create fraudulent loan applications. (Dkt. 16, Ex. 20, at 86-89; Dkt. 16, Ex. 21 at 19-47, 89-100.)

From January 23 through 25 of 2006, Detective Gabriele and other officers began surveilling the petitioner's home in Teaneck, New Jersey. (Dkt. 16, Ex. 30 at 38:10-44:25.) On January 25th, the officers saw the defendant drive his car into New York, where they arrested him. (*Id.* at 46:1-48:20.) The same day, Judge Toni Bean issued a search warrant for the petitioner's car, where officers found documents, clothing, and three cell phones. (*Id.* at 68-80.) The documents included a Con Edison bill, which Detective Gabriele testified was used "as address verification" for several false loan applications. (Dkt. 16, Ex. 31, at 32:10-33:24.)

On January 27, 2006, Detective Gabriele contacted the Teaneck Police Department to obtain a search warrant for the petitioner's home in Teaneck, New Jersey. (*Id.* at 78:22-79:10.) A Teaneck detective, Michael Richter, obtained a search warrant from a municipal court judge, and Detective Gabriele joined officers from the Teaneck Police Department to execute the warrant. (Dkt. 1, Ex. 12 at 9; *id.*, Ex. 14 at 8.) They seized a laptop computer, cell phones, and various documents. (Dkt. 1, Ex. 14 at 11.) On January 30, 2006, the Suffolk County Court issued a computer search warrant to search the laptop and three cell phones. (Dkt. 1, Ex. 34 at 1.)

III.     Pre-Trial Proceedings

On February 3, 2006, the petitioner was charged in Suffolk County with one count of Attempted Identity Theft in the First Degree and one count of Attempted Grand Larceny in the Second Degree. (Dkt. 1, Ex. 35.) His attorney, Robert Macedonio, filed discovery motions seeking search warrants issued against the petitioner's property and "the affidavit(s) and returns thereof," as well as property (or photographs of property) seized pursuant to those warrants. (Dkt. 1, Ex. 36 at 2; Dkt. 1, Ex. 37 at 10.) Assistant District Attorney (ADA) Douglas Byrne responded "the People [we]re in possession of three Cellular Phones and one vehicle." (Dkt. 1, Ex. 38 at 3.) He did not address the laptop or the warrants, and noted that all requests not addressed were beyond the scope of what the state discovery law required. (*Id.* (citing N.Y. Crim. Proc. Law § 240.20).[1] The petitioner claims that Mr. Macedonio told him "that there was no evidence in the case and that the indictment would not stand." (Affidavit of Lamar Whitehead, ("Pet. Aff.") Dkt. 1, Ex. 41 ¶ 3.)

---

[1] Contrary to ADA Byrne's statement, "search warrants and search warrant applications are discoverable under CPL § 240.20(1)(h)." *People v. Chahine*, 150 Misc. 2d 242, 243, 568 N.Y.S.2d 526, 527 (N.Y. County Crim. Ct. 1991).

On April 25, 2006, the People filed a superseding indictment charging the petitioner with three counts of Attempted Identity Theft in the First Degree, one count of Attempted Grand Larceny in the Second Degree, two counts of Identity Theft in the First Degree, two counts of Grand Larceny in the Third Degree, and three counts of Unlawful Possession of Personal Identification Information in the Third Degree. (Dkt. 1, Ex. 39 at 1-2.)

In March of 2006, the petitioner was indicted in New York County for criminal possession of a 2004 Land Rover—the car that was searched in connection with the Suffolk County case against him. (Dkt. 16 ¶ 9.)[2]

On August 28, 2006, ADA Byrne supplemented his response to the petitioner's prior discovery motion, but still did not mention the warrants or seizures of other evidence. (Dkt. 1, Ex. 40 at 3.)

In September of 2006, the petitioner discharged Mr. Macedonio and retained Ms. Camille Russell. (Pet. Aff. ¶ 5.) At that point, based on the ADA's response to defense counsel's discovery demands, Ms. Russell believed that the trial evidence would be limited to "a Manila envelope, a Geico insurance card, several pieces of mail, Mr. Whitehead's statement and a fingerprint analysis." (Affidavit of Camille Russell ("Russell Aff.") Dkt. 1, Ex. 42 ¶ 2.) On September 19, 2006, "the Assistant District Attorney revealed that he intended to introduce tape recordings" as evidence and invited Ms. Russell to review all the physical evidence he intended to introduce. (*Id.* ¶ 6.)

On September 20, 2006 Ms. Russell moved to preclude any evidence that the prosecution did not disclose in response to earlier discovery demands, as well as any evidence obtained in

---

[2] In November of 2006, the petitioner was convicted of Criminal Possession of Stolen Property in the Third Degree after the jury found that "[a] motor vehicle recovered from [his] possession was obtained by using the stolen identity of a Tennessee resident to obtain a loan from Capital One Auto Financing, on which no payments were ever made." *People v. Whitehead*, 48 A.D.3d 237, 237, 850 N.Y.S.2d 444, 445 (2008). He was sentenced to one year in prison.

violation of the petitioner's constitutional rights. (Dkt. 1, Ex. 43 at ¶¶ 22-33.) In this motion, she challenged the validity of any search warrants issued in the case. Counsel claims that she did not have actual knowledge of any search warrants, but "made boilerplate arguments," including assertions that the warrants were issued without probable cause and were executed beyond their scope. (Russell Aff. ¶ 8.) On September 27, 2006, Ms. Russell went to the assigned assistant district attorney's office to review the physical evidence in the case. (*Id.* ¶ 7.) She listened to tape recordings, viewed an identification card with the petitioner's photograph, and examined a chart that the Suffolk County Police Department prepared for the case. (*Id.*)

In his response to counsel's omnibus motion, the ADA stated that "Ms. Russell was able to see all property seized from the defendant,…was able to listen to tapes of the defendant," and that she saw "property seized pursuant to a New Jersey search warrant and the subsequent search of the defendant's vehicle." (Dkt. 1, Ex. 44 at 3.) According to the prosecutor, the only piece of evidence counsel did not see was "a laptop computer seized from a New Jersey search warrant;" the ADA represented that the computer would be "available to defense counsel" for review. (*Id.*) The ADA urged the court to deny the petitioner's motion to suppress, because the property recovered from him was seized pursuant to a valid search warrant and was made available to the petitioner's counsel. (*Id.* at 3-4.)[3]

The court denied the petitioner's motion for a hearing to determine whether the search warrant was supported by probable cause, noting that such hearings are not "available for the asking by boilerplate allegations." (Dkt. 1, Ex. 45 at 4.) Ms. Russell did not renew her motions. According to the petitioner, he became aware of the New Jersey search warrant in October of

---

[3] The respondent's brief indicates that Ms. Russell filed a reply to the People's response, but her reply is not part of the record. (Dkt. 8 at 29.)

6

2006; he claims that Ms. Russell told him they "could not file any motion against the search warrant unless [they obtained] the affidavit for the search warrant." (Pet. Aff ¶ 6.)

At some point, the assistant district attorney offered the petitioner the opportunity to plead guilty to a misdemeanor in exchange for a one-year sentence. (Russell Aff. ¶ 13.) The petitioner declined the offer and went to trial.

In November of 2006, the petitioner discharged Ms. Russell and retained Ms. Camille Abate—an associate of Andrew Soleil, who represented the petitioner in his New York County trial a month earlier. (Dkt. 7 ¶ 9; *see also id.* Ex. 1.)[4] In January of 2007, the People filed a second superseding indictment charging the petitioner with 57 counts of identity theft. (Dkt. 1, Ex. 46.)[5] According to the petitioner, he told Ms. Abate that there was a search warrant but that he had not received the search warrant affidavits; she told him that "she would follow up on this." (Pet. Aff. ¶ 11.) The petitioner claims that Ms. Abate was running for political office and, as a result, was difficult to reach; he only spoke with her at court. (*Id.* ¶ 12.) On January 18, 2008, the District Attorney's office sent Ms. Abate the search warrant affidavits, which she did not challenge. (*Id.* ¶ 13; *see also* Affidavit of William Keahon ("Keahon Aff."), Dkt. 1, Ex. 48 ¶ 8.) The petitioner claims he was unaware of this disclosure.

Pretrial hearings on the petitioner's motion to suppress statements and identification evidence began on November 7, 2007, before the Honorable James Hudson. Ms. Abate advised Judge Hudson that she was prepared to do the hearing, but that the petitioner intended to retain other counsel for the trial. (Dkt. 16, Ex. 1 at 2-3.) The petitioner requested an adjournment of both the hearing and the trial until he could get another lawyer. (*Id.* at 3-8.) Judge Hudson

---

[4] Ms. Abate represented him in his appeal from the New York County conviction. *Id. People v. Whitehead*, 48 A.D.3d 237, 237, 850 N.Y.S.2d 444, 445 (2008).
[5] On February 5, 2007, the District Attorney moved to dismiss 23 counts. (Dkt. 16, Ex. 4 at 2–3.)

denied the motion to adjourn the hearing. (*Id.* at 8-11.) At the conclusion of the hearing, the judge reserved decision on the motion to suppress, and adjourned the case to January 15, 2008 for jury selection. On January 8, 2008, the petitioner still had not retained a new lawyer, and the court gave him until February 4, 2008.

On that date, William Keahon appeared for the petitioner, and Ms. Abate was relieved.[6] The prosecutor moved to re-open the suppression hearing to present additional evidence, which the court granted. At the end of that hearing, Mr. Keahon asked if there had been any motions with respect to the search warrants, and noted that there was no indication that "any attorney... has done anything to contravene the search warrant that was issued." (Dkt. 16, Ex. 3 at 156:16-157:5.) Judge Hudson advised counsel that Ms. Russell had made a motion that was denied and gave counsel a copy of the decision. (*Id.* at 157: 6-19.)

Mr. Keahon did not discover until after the trial that the search warrant affidavits were disclosed to Ms. Abate on January 18, 2008. (Keahon Aff. ¶ 8.) Mr. Keahon claims that if he had known about these disclosures, he "would have filed detailed motions to controvert the warrants" and "would have been able to effectively respond to the Court's ruling that [his] motion was untimely." (*Id.* ¶ 11.)

IV.     Trial Evidence

The evidence at trial established that in 2004, the petitioner's girlfriend, Valerie Rodriguez, was on the sales team at a car dealership, Baron Honda. (Dkt. 16, Ex. 21, at 83:8-89:19.) She had access to a program called Dealer Track, which contained the personal information and credit histories of the dealership's customers. (*Id.* at 89:20-90:25.) The petitioner asked Ms. Rodriguez for her password to the program, as well as names of individuals

---

[6] Mr. Keahon asserts that he was not adequately prepared, because Ms. Abate never returned his calls. (Keahon Aff. ¶ 4.)

with good credit scores. (*Id.* at 97:1-100:21.) Baron Honda customers whose identities were stolen and used in fraudulent loan applications, as well as other identity fraud victims, including Brenda Ridenour and Katherine Reid, also testified. (Dkt. 16, Ex. 19 at 73–76; Dkt. 16. Ex. 28 at 10–13.) Ridenour and Reid were not victims of the charged conduct; however, the documents seized from the petitioner's possession included their personal information, and Ms. Reid's name was used on one of the voicemail boxes. (Dkt. 16. Ex 28 at 6–7.)[7]

Detective Gabriele testified about Ms. Macarle's initial call to the police and his subsequent investigation of the motorcycle incident and the identity fraud scheme. His testimony spanned several days: February 27 (Dkt. 16, Ex. 20 at 53), February 28 (Dkt. 16, Ex. 21 at 16), March 14 (Dkt. 16, Ex. 30 at 12), March 17 (Dkt. 16, Ex. 31 at 22, 73), March 18 (Dkt. 16, Ex. 32 at 27), March 20 (Dkt. 16, Ex. 34 at 54–55), and March 25, 2008 (Dkt. 16, Ex. 35 at 16–17). On one occasion when Detective Gabriele resumed the stand after a break, the clerk did not remind him that he was still under oath. (Dkt. 16, Ex. 30 at 12.) Defense counsel did not object. (*Id.*)

The assistant district attorney presented loan applications, phone records, and other documents linking the petitioner to the identity thefts. (Dkt. 16, Ex. 21 at 19–47; Dkt. 16, Ex. 31 at 32–36.) The jury also saw the contents of the petitioner's laptop, which included the car dealership's credit check software, documents, cookies, Internet Protocol addresses, and internet files related to loan applications. (Dkt. 16, Ex. 36 at 15-20, 40-65.) Multiple witnesses identified the petitioner's voice as the voice on the fraudulent voicemails. (Dkt. 16, Ex. 21 at 110–120; Dkt. 16, Ex. 23 at 56–62; Dkt. 16, Ex. 26 at 113–27.)

---

[7] Ms. Reid's testimony was admitted over the objection of the defense counsel.

On April 1, 2008, the petitioner was convicted of one count of Scheme to Defraud in the First Degree, one count of Attempted Grand Larceny in the Second Degree, thirteen counts of Identity Theft in the First Degree, and two counts of Identity Theft in the Third Degree. He acquitted of seventeen of the thirty-four counts against him, and was sentenced to an indeterminate term of from ten to twenty years in prison.

## PROCEDURAL HISTORY

The petitioner appealed his conviction to the Appellate Division, Second Department on July 16, 2008. (Pet. App. Br., Dkt. 7, Ex. 3 at vii.) He raised two issues relevant to his federal habeas petition. First, he argued that the failure to swear in Detective Gabriele violated his right to due process. (*Id.* at 51.) Second, he challenged the admission of Ridenour and Reid's testimony as evidence of uncharged crimes. (*Id.* at 54.) The petitioner did not argue that he was denied effective assistance of counsel. (*Id.* at viii.)

The petitioner moved, pursuant to Criminal Procedural Law § 440.10 (1) (g) and (h), to vacate his judgment in July of 2010. (Dkt. 7, Ex. 8 at 1–2.) He argued that the People's failure to provide a fingerprint identification report materially prejudiced his case because it could have been used to impeach the Suffolk County Police Department evidence specialist. (*Id.* at 9–10.) On October 6, 2010, the County Court denied the motion. (Dkt. 7, Ex. 10 at 1–2.)

The Second Department affirmed the petitioner's conviction on May 17, 2011. (Dkt. 7, Ex. 6.)[8] The court rejected the petitioner's claim about the failure to re-swear the detective when he continued his testimony, since he failed to object. (*Id.* at 3.) The court also held that the trial court's decision to admit evidence of uncharged crimes was proper because it "show[ed] a

---

[8] The court modified the defendant's sentence, ordering that the sentences on some of the counts run concurrently rather than consecutively. (Dkt. 7, Ex. 6, at 3.)

common scheme or plan, or the absence of mistake or accident, and the probative value of the evidence outweighed any possible prejudice." (*Id.* at 2 (citations omitted).) [9]

On June 15, 2011, the petitioner applied for leave to appeal to the New York Court of Appeals. (Dkt. 7, Ex. 7 at 1.) Among other claims, he reasserted his challenges to the admission of prior uncharged crimes, (*Id.* at 10), and the failure to re-administer the oath to Detective Gabriele when he resumed his testimony, (*Id.* at 14). The Court of Appeals denied the petitioner's application for leave to appeal on August 4, 2011. (*Id.* at 22.)

On April 4, 2012, the petitioner made another 440.10 motion to vacate his conviction. For the first time, he claimed he was denied the effective assistance of counsel; he faulted Ms. Russell's advice during the plea process, as well as her and Ms. Abate's failure to challenge the search warrants in his case. (Dkt. 7, Ex. 11 at 21-35.) Judge Hudson rejected the motion, ruling that the petitioner's claim was precluded by his failure to raise it on direct appeal. (Dkt. 7, Ex. 13 at 2-3.)

The petitioner sought leave to appeal the denial of the motion to vacate the judgment on September 24, 2012. (Dkt. 1, Ex. 11 at 1.) The Appellate Division, Second Department denied the application on December 4, 2012. (Dkt. 7, Ex. 13 at 4.) He filed this petition for a writ of habeas corpus on October 3, 2012.

---

[9] The petitioner made several other claims, as well. He argued that the trial judge should have granted his motion for a mistrial because "the People did not disclose that a witness failed to identify the defendant from a photograph shown to him by a detective." (Dkt. 7, Ex. 6, at 2.) The Second Department held that the trial court cured any potential prejudice by requiring the People to re-call the witness for further cross-examination. (*Id.* at 2-3.) The petitioner also claimed that the People elicited prejudicial testimony, but the Second Department found that any prejudice was cured when the trial court "sustained the defense objections to the challenged testimony, struck the testimony, and issued prompt curative instructions to the jury." (*Id.* at 3 (citations omitted).) Finally, the Second Department rejected the petitioner's argument that the jury verdict sheet improperly included a statutory element of the crime; the court explained that defense counsel "explicitly stated that he had no objection to the verdict sheet." (*Id.*)

# DISCUSSION

I.     Legal Standard

In reviewing a habeas petition, a federal court must not "review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This doctrine applies to both substantive and procedural state law grounds. *Id.* at 729-30.

A "federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Murdock v. Sposato*, No. 14-CV-2931(JS), 2016 WL 5173256, at *3 (E.D.N.Y. Sept. 21, 2016) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523, 146 L.Ed. 2d 389 (2000) (internal brackets omitted)). Alternatively, a federal habeas court may grant a writ if the state court unreasonably applies a correct legal principle to the facts. *Id.* (citing *Williams*, 529 U.S. at 413, 120 S. Ct. at 1523).

Before a petitioner can seek federal habeas corpus relief, 28 U.S.C. § 2254(b)(1) provides that a habeas petitioner must exhaust the remedies available in the state court by giving the state courts a fair and full opportunity to review the merits of the claim. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). In other words, a petitioner must present 'the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)). The petitioner raises three claims: that his lawyers were ineffective, that the

12

trial court improperly admitted evidence of uncharged crimes, and that a detective was not reminded of the oath at one point during his testimony.[10] I address each argument in turn.

II.    Analysis

### A. Ineffective Assistance of Counsel

The petitioner claims that the prosecution's late disclosure of the search warrant affidavits deprived him of the effective assistance of counsel in three ways. First, he claims that had the second of his four lawyers, Camille Russell, known the full extent of the materials seized pursuant to the warrant, she would have counseled the petitioner to accept the prosecution's offer of a misdemeanor plea. (Pet. Br. at 31-38, Dkt. 1, Ex. 2-3.) Second, the petitioner argues that his third lawyer, Camille Abate, was ineffective because once she received the search warrant materials, she took no action and did not notify the next lawyer, William Keahon, about the search warrants. (Pet. Br. at 38-49, Dkt. 1, Ex. 3-4.) Third, Ms. Abate's shortcomings, the argument goes, hamstrung Mr. Keahon and rendered him ineffective. (Dkt. 7, Ex. 11 ¶¶ 4-5, 15.)

The respondent counters that by failing to make these claims on direct appeal, the petitioner has procedurally defaulted. As support for this position, the respondent cites Judge Hudson's denial of the petitioner's third § 440.10 motion, in which the judge ruled that the petitioner should have made his claim to the Appellate Division. In any event, the respondent argues, the record demonstrates that counsel were aware of the seized materials and that all of the petitioner's lawyers represented him effectively.

---

[10] The petitioner's reply brief contains new allegations. To the extent he asserts a new claim based on those allegations, it remains unexhausted. In its response to the petitioner's ineffective assistance of counsel claim regarding the plea process, the state noted that the "petitioner was given the opportunity to receive the minimum sentence after the 57-count indictment was filed" but "[t]his offer was rejected which indicates that he had no desire to plead guilty." (Dkt. 8 at 26; *see also* Dkt. 7 ¶ 25.) In his reply, the petitioner claimed that "Ms. Abate never advised him of this plea offer" and that he was not aware of the offer until he received the response. (Dkt. 13 at 4.) The petitioner never presented legal or factual allegations regarding this issue in state court, thus the claim has not been exhausted and, to the extent he asserts it here, I decline to review it.

### a. *Procedural Default*

The parties agree that the petitioner presented his ineffectiveness theory to Judge Hudson. Judge Hudson denied the petitioner's motion to vacate, finding that he failed to exhaust his ineffectiveness claim on direct appeal, as required by New York Criminal Procedural Law § 440.10(2)(c), which states as follows:

> [A] court must deny a motion to vacate judgment when...sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him[.]

(Dkt. 7, Ex. 13 (quoting N.Y. Crim. P. L. § 440.10(2)(c)). Where a petitioner "unjustifiably failed to argue [an] ineffective assistance claim on direct appeal despite a sufficient record, and consequently waived the claim under § 440.10(2)(c)...[the] claim is procedurally defaulted for the purposes of federal habeas review as well." *Sweet v. Bennett*, 353 F.3d 135, 140 (2d. Cir. 2003). Judge Hudson found that the petitioner did not provide an adequate reason for failing to assert his ineffective assistance of counsel claim on direct appeal. (Dkt. 7, Ex. 13, at 2.)

"A habeas petitioner may....challenge a procedural bar on the ground that it is not "'firmly established and regularly followed' by the state in question." *Pierotti v. Walsh*, 834 F.3d 171, 177 (2d Cir. 2016) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991)). Additionally "even if a procedural bar is 'firmly established and regularly followed,' a petitioner may still challenge the adequacy of the bar in exceptional cases where the state court's application of the rule was 'exorbitant,' 'render[ing] the state ground inadequate to

stop consideration of a federal question.'" *Id.* (quoting *Lee v. Kemna*, 534 U.S. 362, 376, 122

S.Ct. 877, 151 L.Ed.2d 820 (2002)).

Federal courts consider several "guideposts" in evaluating whether a state procedural rule

is adequate to support a determination of default:

> [W]hether the alleged procedural violation was actually relied on
> in the trial court, and whether perfect compliance with the state
> rule would have changed the trial court's decision; (2) whether
> state caselaw indicated that compliance with the rule was
> demanded in the specific circumstances presented; and (3) whether
> petitioner had "substantially complied" with the rule given "the
> realities of trial," and, therefore, whether demanding perfect
> compliance with the rule would serve a legitimate governmental
> interest.

*Murden v. Artuz*, 497 F.3d 178, 192 (2d Cir. 2007) (quoting *Cotto v. Herbert*, 331 F.3d 217, 240

(2d Cir. 2003); *see also id.* ("The *Cotto* guideposts also apply to testing the adequacy of a

procedural default raised in a state collateral proceeding.") (citing *Clark v. Perez*, 450 F.Supp.2d

396, 426 (S.D.N.Y. 2006)). Where a court "assess[es] the contours of a state court's denial of

collateral review because of a petitioner's failure to raise an issue on direct appeal," the court

"focus[es] on the second of the *Cotto* guideposts," which "considers whether state case law

indicates that compliance with a procedural rule *was required* under the specific circumstances

of the case." *Pierotti*, 834 F.3d at 177 (quoting *Fulton v. Graham*, 802 F.3d 257, 262–63 (2d Cir.

2015)). "Because of comity concerns, a decision that a state procedural rule is inadequate should

not be made 'lightly or without clear support in state law.'" *Murden*, 497 F.3d at 192 (quoting

*Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999)).

"Where the basis for a claim of ineffective assistance of counsel is well established in the

trial record, a state court's reliance on subsection (2)(c) provides an independent and adequate

procedural bar to federal habeas review." *Murden*, 497 F.3d at 196 (citing *Sweet v. Bennett*, 353

F.3d 135, 140 (2d Cir. 2003)). Because "not every ineffective assistance claim is sufficiently presented in a trial record…the New York Court of Appeals has long recognized that a Section 440.10 proceeding is often superior to a direct appeal for asserting such claims." *Id.* A petitioner is not barred from raising an ineffective assistance of counsel claim if "sufficient facts do not appear on the record of the proceedings underlying the judgment to have permitted" adequate review of the issue on direct appeal." *Id.* (quoting *People v. Harris*, 109 A.D.2d 351, 491 N.Y.S.2d 678, 687 (App. Div. 1985) (citation omitted)).

In this case, while some of the facts underlying the petitioner's claim appear on the record, others do not. Some details about the search warrants and the timeline of their disclosure appear in the motion practice and in the trial transcript. In contrast, the record does not contain details of the plea discussions and the various attorneys' thought processes and strategies throughout the prosecution.

The County Court's decision denying the petitioner's motion to vacate the judgment did not address the specifics of the petitioner's ineffective assistance of counsel claim because the court ruled that the claim was procedurally barred.

i.   The Plea Bargaining Process Claim

State and federal case law make it clear that the failure to raise an ineffective assistance of counsel claim on direct appeal does not preclude a petitioner from raising the claim in a motion to vacate, since the plea process is not part of the trial record.

In *Fulton v. Graham*, the Second Circuit considered whether a petitioner was barred from raising an ineffective assistance of counsel claim regarding the plea bargaining process after he failed to do so on direct appeal, and held that he was not. The court observed that "the weight of state case law suggests that New York courts do not ordinarily apply § 440.10(2)(c) to bar claims

of ineffective assistance based on out-of-court conversations between a defendant and his counsel;" in fact, "state courts ordinarily demand that such ineffective assistance claims be brought in collateral proceedings, rather than on direct appeal." 802 F.3d 257, 263 (2d Cir. 2015) (citing *People v. Haffiz*, 19 N.Y.3d 883, 951 N.Y.S.2d 690, 976 N.E.2d 216 (2012) (ineffective assistance of counsel claim regarding plea discussions was "predicated on hearsay matters and facts not found in the record on appeal," thus "should be raised in a postconviction application under CPL article 440, where the basis of the claim may be fully developed."); *People v. Peque*, 22 N.Y.3d 168, 202, 980 N.Y.S.2d 280 (2013) (Where "a defendant's complaint about counsel is predicated on factors such as ... advice or preparation that do not appear on the face of the record, the defendant must raise his or her claim via a CPL 440.10 motion.").

In this instance, since the petitioner's claim about the plea process is premised, at least in part, on out-of-court discussions with his attorney, he was not required to raise his ineffective assistance of counsel claim about the plea bargaining process in his direct appeal.[11] Thus, the claim is not procedurally barred.

ii.     The Failure to Investigate/File Motions Claim

The petitioner argues that he could not have raised the claim that Ms. Abate was ineffective in his direct appeal, because it is based on information that he discovered after the appeal. (Pet. Br. at 41-42; Dkt. 1, Ex. 3.) Specifically, the petitioner asserts that he did not know that Ms. Abate actually had the search warrant affidavits until August of 2011, after his appeal was decided. (Dkt. 7, Ex. 11 ¶ 15; *see also* Dkt.1, Ex. 5 (Decision & Order of the App. Div., 2d. Dept., issued May 17, 2011).) Thus, he claims he could not have asserted that she was ineffective

---

[11] Notably, the petitioner did not assert this claim in his first motion to vacate, either. The County Court had discretion to deny his motion on that ground, but was not required to do so. N.Y. Crim. Proc. L. §440.10 (3)(c). Since Judge Hudson's decision does not cite this procedural rule, and since its application was discretionary, I do not address it here.

for her failure to challenge those warrants, or her failure to provide those warrants to his subsequent counsel.

In *Murden v. Artuz*, the Second Circuit considered a petitioner's allegation that his attorney failed to call a witness during a sentencing proceeding and thus provided ineffective assistance of counsel. *Murden*, 497 F.3d at 196. In that case, the state court relied on subsection (2)(c) to deny the petitioner's 440 motion. The Second Circuit found the state failed to show "that state courts regularly demand compliance with this rule when a defendant makes reference to uncalled witnesses in the course of a sentencing proceeding." *Id.* The court held that "there was an insufficient exploration of Murden's accusation to enable him to litigate this issue on direct review" and thus his claim was not procedurally barred. *Id.*

In *Pierotti v. Walsh*, the petitioner asserted that his counsel was ineffective because he failed to make accommodations for the petitioner's hearing impairment. 834 F.3d 171 (2d Cir. 2016). The state court denied the petitioner's motion to vacate because he failed to raise the claim on direct appeal. *Id.* at 174-75. The Second Circuit held that the petitioner's claim was not procedurally barred because it "ultimately turn[ed] on facts appearing outside the record, such as his trial counsel's alleged awareness of [the] hearing impairment" and "[w]ithout this information, the Appellate Division could not have adjudicated [his] ineffective assistance of counsel claim on direct appeal." *Id.* at 179.

The petitioner and Mr. Keahon, the attorney he retained after Ms. Abate, submitted sworn affidavits stating that they did not discover until August 24, 2011 that the search warrant affidavits were disclosed to Ms. Abate on January 18, 2008. (Pet. Aff. ¶ 13, Keahon Aff. ¶ 8.) Mr. Keahon claims that if he had known about these disclosures, he "would have filed detailed

motions to controvert the warrants" and "would have been able to effectively respond to the Court's ruling that [his] motion was untimely." (Keahon Aff. ¶ 11.)

The petitioner's direct appeal was decided on May 17, 2011—nearly three months before the petitioner learned of the January, 2008 search warrant disclosures. (Dkt. 1, Ex. 5.) Accordingly, the petitioner's claim that Ms. Abate provided ineffective assistance of counsel "ultimately turns on facts appearing outside the record" such that "the Appellate Division could not have adjudicated his ineffective assistance of counsel claim on direct appeal." *Pierotti*, 834 F.3d, at 179.

In light of these circumstances, "the state court's reliance on Section 440.10(2)(c) to bar [the petitioner's] claim represents an 'exorbitant application' of the state rule" and "Section 440.10(2)(c) [i]s 'inadequate' to foreclose review of [the petitioner's] ineffective assistance of trial counsel claim." *Pierotti*, 834 F.3d at 180 (citing *Fulton*, 802 F.3d at 264) (internal brackets omitted)). I will now turn to the merits of the petitioner's federal ineffective assistance of counsel claim.

### b. Merits

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), a federal court may not grant habeas relief "on the basis of any claim adjudicated on the merits in state court unless that adjudication 'resulted in a decision contrary to, or [that] involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Bennett v. Fischer*, 246 F. App'x 761, 764 (2d Cir. 2007) (quoting 28 U.S.C. § 2254(d)). "'Adjudicated on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is

based on the substance of the claim advanced, rather than on a procedural, or other, ground."
*Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001) (citations omitted).

As discussed above, Judge Hudson cited a procedural ground for denying the petitioner's claim, (Dkt. 1, Ex. 10 at 2 (citing N.Y. Crim. Proc. L. § 440.10(2)(c)); however, he denied the petitioner's claim on the merits as well. Specifically, the judge stated the following:

> The thrust of the movant's arguments comprises a position that the validity of the search warrants through which evidence was collected in this case should have been reviewed at pre-trial hearings. This Court has already ruled on that issue and for reasons stated at the time of those rulings, such hearings have been denied. We are constrained by the doctrines of res judicata and the law of the case to uphold the rulings, absent some new evidence or authority to the contrary, none of which has been provided to this Court.

*Id.* Presumably, these statements refer to the judge's prior denial of Ms. Russell's motion challenging the validity of the search warrant, and of Mr. Keahon's request for additional pre-trial litigation on this issue. The judge did not address the plaintiff's claims that Ms. Russell was ineffective during the plea process, or that Ms. Abate should have challenged the warrants once she received the affidavits and should have informed Mr. Keahon that she received the warrant affidavits on January 18, 2008. Nevertheless, "[n]othing in the phrase 'adjudicated on the merits' requires the state court to have explained its reasoning process." *Sellan,* 261 F.3d at 311. Accordingly, the state court's decision is entitled to AEDPA deference.

To prevail on a claim of ineffective assistance of counsel under the Sixth Amendment, the petitioner must show that his "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); and "that the deficient performance prejudiced the defense." *Id.* at 687. With respect to the prejudice prong of the inquiry, the petitioner must demonstrate a "reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The two-part *Strickland* inquiry applies to the petitioner's ineffectiveness claim regarding the plea process as well as his claim regarding counsel's failure to contravene the warrants. *See Lafler v. Cooper,* —— U.S. ——, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012) (holding that the *Strickland* inquiry governs challenges to guilty pleas based on the ineffective assistance of counsel); *Davis v. Greiner,* 428 F.3d 81, 87 (2d Cir. 2005) (citing *United States v. Gordon,* 156 F.3d 376, 379 (2d Cir. 1998) (per curiam)).

Furthermore, because the state court "summarily rejected [the petitioner's] ineffective assistance claim on the merits," the district court must focus on the "ultimate decision" rather than its reasoning. *Davis,* 428 F.3d at 88 (citing *Aeid v. Bennett,* 296 F.3d 58, 62 (2d Cir. 2002) (internal quotation marks omitted); *Sellan,* 261 F.3d at 311-12)); *see also Anthoulis v. N.Y.,* No. 12 CIV. 6253 BMC, 2013 WL 5726154, at *5 (E.D.N.Y. Oct. 21, 2013), *aff'd,* 586 F. App'x 790 (2d Cir. 2014) (noting that a court legally implies a petitioner failed to satisfy the Strickland inquiry when it denies an ineffective assistance claim) (citing *Cullen v. Pinholster,* —— U.S. —— –, 131 S.Ct. 1388, 1406, 179 L.Ed.2d 557 (2011)).

### i. The Plea Process

Ms. Russell represented the petitioner from September of 2006 through January of 2007, during which time the petitioner considered pleading guilty in exchange for a reduced sentence. The petitioner claims that Ms. Russell was ineffective because she did not counsel him to plead guilty. He argues that as a result of the district attorney's failure to comply with discovery demands, Ms. Russell was not equipped to advise him about the evidence against him or the potential risks of going to trial.

The Second Circuit has held that an attorney "must communicate to the defendant the terms of [a] plea offer…and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000). Under the *Strickland* standard, the petitioner must show that but for Ms. Russell's alleged errors, he would have pleaded guilty. *See Missouri v. Frye,* —— U.S. ——, 132 S.Ct. 1399, 1409, 182 L.Ed.2d 379 (2012) ("Where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty.") (internal quotation marks and citation omitted).

The petitioner concedes that Ms. Russell conveyed the plea offer to him, but argues that her assessment of the strengths and weaknesses of the case against him was flawed because she did not know how strong the case was. According to the petitioner, if he were "aware of the evidence that the DA…was going to use to charge [him] with additional crimes later, [he] absolutely would have viewed the plea offer differently and accepted it." (Pet. Aff. ¶ 8.) Ms. Russell submitted an affidavit in support of the petitioner's position. She claims that she informed the petitioner of the evidence and "lack of evidence" against him and advised him accordingly, but if she were "aware of the several search warrants and the analysis of this evidence…[she] would certainly have recommended acceptance of the plea." (Russell Aff. ¶ 13.) Likewise, the petitioner claims that he "repeatedly asked" Ms. Russell whether she comprehensively described all the evidence against him, she confirmed that she did. (Pet. Aff. ¶¶ 7-8.) The petitioner "relied on this advice" and did not accept the plea offer. (*Id.*)

The respondent argues that Ms. Russell was well-aware of the evidence against the petitioner. The record demonstrates that although Ms. Russell may not have received copies of the search warrant affidavits, she met with the ADA, and examined "all property seized from the defendant," except for his laptop computer. (Dkt. 1, Ex. 44 at 3.) The ADA's October 2, 2006 response to her omnibus motion makes clear that this property was "seized pursuant to a New Jersey search warrant and the subsequent search of the [petitioner's] vehicle," and that Ms. Russell could inspect the laptop at her convenience, assertions that counsel did not dispute at the time. (*Id.*) Accordingly, as of October, 2006, the petitioner and his attorney were aware of the warrants, the property, and the computer. (*Id.*; *see also* Pet. Aff. ¶ 6, Russell Aff. ¶¶ 8-10.)

The District Attorney represents that plea negotiations took place from October through December of 2006. (Dkt. 8 at 25; *see also* Michael Miller Affirmation in Response (Miller Aff.), Dkt. 7, Ex. 12. ¶ 20.) Thus, the petitioner and Ms. Russell knew about the warrants and the property seized pursuant to them, during the plea negotiations. Facing an 11-count indictment, the petitioner declined the plea offer. His lawyer's failure to foresee that the prosecutor would locate additional victims and bring additional charges does not mean that she was ineffective.

Under these circumstances, the state court's decision to reject the petitioner's ineffective assistance of counsel claim was not objectively unreasonable, and the petitioner's motion for relief on this ground is denied.

> ii.      The Failure to Investigate/File Motions Claim

Another facet of the petitioner's ineffective assistance claim is that his lawyers should have taken steps to get the search warrants and accompanying affidavits that enabled detectives to search his home and electronic devices. He also argues that they should have moved to controvert the warrants.

### a. Defense Counsel's Performance Was Not Deficient

First, the petitioner's second attorney, Ms. Russell, did in fact file a motion to controvert the search warrants. Although Judge Hudson found the motion to be "boilerplate," the petitioner does not suggest any meaningful challenge Ms. Russell could have made to the warrants. In any event, counsel's motion made clear that she did not have copies of the warrants and that she sought to preclude evidence that the People failed to disclose in response to discovery demands. (Russell Aff. ¶¶ 8-10.) Thus, Judge Hudson was aware that Ms. Russell did not have copies of the warrants and still denied her motion. The question before me is not whether the motion was correctly decided, but whether Ms. Russell provided ineffective assistance of counsel. It is clear from the record that she did not.

The petitioner's attacks on Ms. Abate's performance are equally flawed. Ms. Abate received the search warrant affidavits, but did not contravene them or discuss them with Mr. Keahon. (Keahon Aff. ¶¶ 7-8; Dkt. 16, Ex. 3 at 154:11-157:18.) When he learned about them, having just stepped in as the petitioner's fourth lawyer, he asked the court for the opportunity to litigate them. The court explained that Ms. Russell already challenged the search warrants and that her motion was denied on October 30, 2006. (Dkt. 16, Ex. 3 at 157:6-15.) Mr. Keahon claims that if he had known about these disclosures, he "would have filed detailed motions to controvert the warrants" and "would have been able to effectively respond to the Court's ruling that [his] motion was untimely." (Keahon Aff. ¶ 11.)

Ms. Abate's decision not to make another challenge to the search warrants does not mean that she was ineffective. An attorney need not assert challenges she believes would be "counterproductive" or initiate investigations she expects to be "fruitless." *Gersten v. Senkowski*, 426 F.3d 588, 610 (2d Cir. 2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 525, 123

S. Ct. 2527, 2530, 156 L. Ed. 2d 471 (2003)). Since Ms. Russell's challenge to the warrants was denied, Ms. Abate's decision not to make another challenge was not objectively unreasonable. On the contrary, most lawyers would recognize that it would be fruitless to raise a second challenge to warrants that, as discussed below, were facially sufficient.

Because her decision not to challenge the warrants a second time was not ineffective, her failure to discuss the warrants with Mr. Keahon was also not ineffective. Mr. Keahon's concern was that no one had litigated the warrants. The court advised him that prior counsel had made a motion and that it was denied.

b. The Petitioner Was Not Prejudiced.

Even if the petitioner's lawyers should have taken additional action on the warrants, the petitioner does not demonstrate that he was prejudiced, as required under *Strickland*. There is nothing about the warrants themselves that suggests that an additional challenge would have been successful. After all, for both warrants, detectives submitted sworn affidavits that included specific representations to judges who found probable cause to issue the warrants.

The petitioner claims that the Teaneck warrant was deficient because Michael Richter and Detective Gabriele both signed the warrant application but only Officer Richter appeared before the magistrate judge. (Pet. Br., ECF 1, Ex. 3 at 10-11.) He also claims that Detective Gabriele's affidavit was defective because, although it was notarized, it was not dated and "there is no indication that the document was actually sworn to." (*Id.* at 11.) Citing no case law, the petitioner asserts that these alleged discrepancies invalidate the warrant because "the affidavit was the sole basis for probable cause" and "the submission of a warrant application in Teaneck, New Jersey by a law enforcement officer whose jurisdiction is limited to Suffolk County was improper..." (*Id.* at 10-11.) Likewise, the petitioner challenges the validity of the warrant to

search his cell phones and computer on the grounds that it was the fruit of the Teaneck warrant and was not supported by sworn testimony. Additionally, while the warrant "bears the stamp of the court's signature," the petitioner suggests that the stamp is insufficient and that notations on the page somehow undermine the credibility of the signature. (Pet. Br. Dkt. 1, Ex. 4 at 2-3.)

The respondent contends that warrant application complied with the statutory requirement that it be made "in writing and...subscribed and sworn to by a public servant," and that the application complied with the constitutional requirement that it be "supported by Oath or affirmation." (Dkt. 8 at 32 (citing *People v. Brown*, 40 N.Y.2d 183, 185–86, 352 N.E.2d 545, 545 (1976)); *see also* N.Y. Crim. Proc. Law § 690.35 (listing statutory warrant requirements).

Omissions or inaccuracies in a warrant do not necessarily require suppression. *United States v. Canfield*, 212 F.3d 713, 717–18 (2d Cir. 2000) (citing *United States v. Trzaska,* 111 F.3d 1019, 1027 (2d Cir. 1997)). For that remedy, a defendant must prove that the "'(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the issuing judge's probable cause finding.'" *Id.* (citing *United States v. Salameh,* 152 F.3d 88, 113 (2d Cir. 1998) (alterations omitted). To determine whether an affidavit's errors or omissions require suppression, "a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant." *Id.* "If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate." *Id.*

In this instance, the alleged omissions in the affidavit were immaterial.  Even if Detective Gabriele was not "examined under oath...there were 'adequate safeguards against the rendition of false information' since [he] could be prosecuted for falsely reporting an incident, if he lied."

26

*See People v. Brown*, 40 N.Y.2d 183, 188, 352 N.E.2d 545, 548 (1976) (citing Penal Law §

240.50). An unsworn affidavit, in combination with an oath or affirmation, may be sufficient to

establish probable cause. *Id.*; *see also People v. McIver*, 39 A.D.2d 671, 671, 331 N.Y.S.2d 979,

980–81 ("[T]he essential element was the oath or affirmation of the applicant before an officer

having authority to administer the oath. In the absence of evidence to the contrary, there is a

presumption that the judge, in reciting that the officer swore to the document, properly carried

out the function of his office and truthfully stated the fact. A similar presumption would attach to

the approval of the assistant district attorney."), *aff'd*, 31 N.Y.2d 735, 290 N.E.2d 147 (1972)

To obtain the Teaneck warrant, Detective Richter appeared before a magistrate, provided

a sworn affirmation, and represented that Detective Gabriele's affidavit was sworn in front of a

notary. The omission of the date of the swearing and the addition of Detective Gabriele's

signature to the warrant application does nothing to undermine Detective Richter's oath. *See*

*People v. Brown*, 40 N.Y.2d 183, 188, 352 N.E.2d 545, 548 (1976) ("[T]he record shows a

conscientious effort to comply with constitutional and statutory requirements applicable to

search warrants....even if the resolution of the case were 'doubtful or marginal' we would

determine it as we have in the past by relying on 'the preference to be accorded to warrants'")

(citations omitted).

The petitioner also challenges "[t]he manner in which the property was disposed of after

the execution of the warrant." (Pet. Br., Dkt. 1, Ex. 3-4.) He argues that the Teaneck warrant

directed that the property be maintained by the Teaneck Police Department, but that the police

reports and trial testimony indicate that Detective Gabriele took the items to Suffolk County.

Under New York law, upon receiving property seized pursuant to a warrant, a court must do one

of the following:

> (a) Retain it in the custody of the court pending further disposition thereof pursuant to subdivision two or some other provision of law; or
>
> (b) Direct that it be held in the custody of the person who applied for the warrant, or of the police officer who executed it, or of the governmental or official agency or department by which either such public servant is employed, upon condition that upon order of such court such property be returned thereto or delivered to another court.

N.Y. Crim. Proc. Law § 690.55. The warrant directs Officer Richter or any officer of the State of New Jersey to "seize and take into [their] possession all such specified property." (Dkt. 1, Ex. 12 at 10.)

Assuming for the sake of argument that the seized property was improperly transferred to Suffolk County, this error would not, on its own, require suppression of evidence. Both New York and New Jersey courts have held that technical "noncompliance with the return and inventory provisions of CPL 690.50(5) does not undermine the validity of the search warrant or the search." *People v. Fernandez*, 61 A.D.3d 891, 891, 878 N.Y.S.2d 92, 93 (2009); *see also State v Nguyen,* 419 NJ Super 413, 17 A3d 256 (Sup Ct, App Div 2011). There is no indication that the People violated the petitioner's substantive rights by maintaining his property in Suffolk County rather than Teaneck and, thus, there is no reason to believe any suppression motion on this ground would have been successful. Accordingly, Ms. Abate's decision not to make such a motion was not prejudicial.

Finally, with respect to the electronic warrant, the petitioner does not cite any case law in support of his argument that use of a signature stamp rather than an original signature rendered the search warrant unconstitutional or contrary to statutory law, and this Court has not found any.

In sum, none of the objections the petitioner raises would have undermined the legality of the warrants. Moreover, when Judge Hudson denied Ms. Russell's motion, he knew that she had

not yet received copies of the search warrant affidavits. Similarly, he knew that Mr. Keahon was concerned about the warrants and denied his motion. Judge Hudson considered the issue yet again when the petitioner raised it in his 440 motion, and was not persuaded that any of the petitioner's lawyers were ineffective.

The petitioner has not established that Judge Hudson's decision was "so wrong that no reasonable jurist could think that it was right," *Sancho v. Smith*, No. 16 CIV. 0868 (BMC), 2016 WL 1171592, at *6 (E.D.N.Y. Mar. 24, 2016), *certificate of appealability denied* (Aug. 23, 2016), thus he has failed to meet the standard required for habeas relief.

B. Evidence of Uncharged Crimes

The petitioner's second claim is that Judge Hudson's decision to admit evidence of uncharged crimes violated his Fifth and Sixth Amendment rights to substantive due process and undermined the fairness of his trial. (Dkt. 1, Ex. 4 at 7.) The petitioner did not fairly present this claim on direct appeal in state court and, as a consequence, he is precluded from doing so in this Court.

To permit federal habeas review, "the 'substance' of [a habeas petitioner's] federal claim must have been 'fairly presented' to the state appellate court." *Smith v. Duncan*, 411 F.3d 340, 349 (2d. Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 278 (1971)). In the context of evidentiary-based federal due process claims, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan v. Henry*, 513 U.S. 364, 366 (1995). In *Duncan v. Henry*, a federal habeas petitioner had claimed in state court that an evidentiary ruling violated state law, but neglected to assert that the ruling likewise violated federal due process. *Id.* Accordingly, the state appellate court analyzed the

29

evidentiary error by applying the relevant state law. *Id.* The Supreme Court held that the petitioner did not fairly present the claim, and thus could not assert the claim in federal habeas proceedings. It was not sufficient that the standards of review for state evidentiary errors and evidentiary-based federal due process claims were "somewhat similar." *Id.* (citing *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard*, 404 U.S. at 275).

In his state appeal, the petitioner raised the evidentiary claim only as a violation of state law, not as a violation of federal law. He relied exclusively on New York state cases and argued that the evidence of uncharged crimes violated the New York evidentiary regime. (Dkt. 7, Ex. 3 at 63-68.) In ruling against the petitioner's claims on appeal, the Appellate Division concluded that based on New York state law, the trial judge correctly ruled that the evidence of uncharged crimes was admissible to show a common scheme or plan, or the absence of mistake or accident, and the probative value of the evidence outweighed any possible prejudice. (Dkt. 7, Ex. 6 at 2) (citing *People v. Alvino*, 71 N.Y.2d 233, 241–42; *People v. Vails*, 43 N.Y.2d 364, 368–69; *People v. Desir*, 285 A.D.2d 655; *People v. Resek*, 3 N.Y.3d 385).

Because this state standard of review for evidentiary errors is merely similar and not identical to federal habeas review, the petitioner has not sufficiently exhausted his claim. In New York, courts weight the probative value of evidence against any possible prejudice—the same standard applied by the state appellate court in *Duncan*. 513 U.S. at 366. Due to the differences between the state and federal standards, as well as the petitioner's failure to raise the federal claim in his state appellate court brief, he did not sufficiently exhaust his federal claim in state court.

C. Receipt of Unsworn Testimony

The petitioner's third claim is that the apparent failure of the court clerk to remind Detective Gabriele that he was still under oath, on one occasion after a lunch break, violated the petitioner's Fifth and Sixth Amendment rights. The Appellate Division held that the defendant waived any argument that the testimony was not properly admitted because he did not object to the apparent oversight. (Dkt. 7, Ex. 6 at 2 (citing *Matter of Brown v. Ristich*, 325 N.E.2d 533, 538 (1975)). Under New York law:

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.

N.Y. Crim. Proc. Law § 470.05(2).

The Second Circuit has "held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011) (citing *Whitley*, 642 F.3d 278, 286–87 (2d Cir. 2011); *Richardson v. Greene*, 497 F.3d 212, 219 (2d Cir. 2007); *Garvey v. Duncan*, 485 F.3d 709, 718 (2d Cir. 2007); *Taylor v. Harris*, 640 F.2d 1, 2 (2d Cir. 1981) (per curiam)). As such, the contemporaneous objection rule represents an independent and adequate ground for decision for the purposes of habeas review. *Id.*

D. Review of Procedurally Defaulted Claims

Procedural default of a federal claim in state court based on an independent and adequate state procedural rule bars federal habeas review unless (1) the petitioner can demonstrate cause for the default and actual prejudice as a result of the violation of federal law or (2) the petitioner can demonstrate that the failure to review the claim will result in a fundamental miscarriage of

justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The petitioner has made neither showing here with respect to the defaulted claims. Accordingly, the petition is denied.

## CONCLUSION

The petition for writ of habeas corpus is denied in its entirety. The case is dismissed. A certificate of appealability will not be issued. *See* 28 U.S.C. § 2253(c).

**SO ORDERED.**


s/Ann M. Donnelly
_____
Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
February 3, 2016